# EXHIBIT 58

| | |
|---|---|
| **From:** | Shondale Seymour <shondales@first organization.com> |
| **Sent:** | Monday, October 29, 2007 10:30 PM |
| **To:** | Mark McCormick <markmc@skfoods.com> |
| **Subject:** | FW: FIN46 template - SKV Fin46 [both files] |
| **Attach:** | FIN 46(R) Analysis Worksheet v06-01b.doc; FIN46R Reconsideration Event Analysis Worksheet v4 .doc |

FYI – I'm cleaning out old follow-up items and came across this.

ss

---

**From:** Abigail Pike [mailto:Abigail.Pike@mossadams.com]
**Sent:** Thursday, August 16, 2007 6:15 PM
**To:** Darrell Carlis; Shondale Seymour
**Cc:** Dan Nutley
**Subject:** FW: Fin46 template - SKV Fin46 [both files]

Sorry forgot the 2nd file.

Abbie
Abigail Pike  |  Moss Adams LLP
Direct 209.955.6111 | Fax 209.955.6199

---

**From:** Abigail Pike
**Sent:** Thursday, August 16, 2007 6:14 PM
**To:** 'Darrell Carlis'; 'Shondale Seymour'
**Cc:** Dan Nutley
**Subject:** Fin46 template - SKV Fin46

Darrel -
Here's the template.  Also we have one separately for reconsideration events (which just triggers you back to the first worksheet, but I did include it here anyway).

Shondale -
I faxed Darrell the copy of SKV's prior Fin46 (it won't scan well-handwritten very light). I looked at current SKV financials, had some discussions with our FIN46 folks to brainstorm FIN46 and SKV, then discussed with Darrell. I'll send another email with some thoughts.

Abbie
Abigail Pike  |  Moss Adams LLP
3121 W. March Lane Ste 100 | Stockton Ca 95219
Direct 209.955.6111 | Fax 209.955.6199
Email abigail.pike@mossadams.com

---

**CONFIDENTIALITY NOTICE:**  This email and any attachments are for the sole use of the intended recipient(s) and contain information that may be confidential and/or legally privileged.  If you have received this email in error, please notify the sender by reply email and delete the message.  Any disclosure, copying, distribution or use of this communication by someone other than the intended recipient is prohibited.

SHARP_CH15 000302

v06-01b

**Enter Client Name Here**
**Enter WP Name Here**
**Enter Engagement Date Here**

Reporting Entity (Entity A):  Reporting Entity Name Here

Potential VIE (Entity B):  Potential VIE Entity Name Here

Potential VIE Formation Date:

## I.  Background

Document the pertinent details of the relationship of the entities including all relevant factors such as initial involvement of the entities, ownership and control characteristics fo the entities, transactions between the entities and any relevant related parties, significant changes and developments, consider need for organizational chart.

## II.  VIE Reconsideration Events

The initial determination of whether an entity is a variable interest entity shall be reconsidered if one or more of the following occur:

*Response should indicate a "Yes" or "No" and a comment for all "Yes" answers regarding the most recent such reconsideration event.*

1.  Has Entity B's governing documents or contractual arrangements been changed in a manner that changes the characteristics or adequacy of Entity B's equity investment at risk?
    *Comment if checked "Yes"*           ☐ Yes      ☐ No

2.  Has Entity B's equity or some part thereof been returned to the equity investors, and other interests have become exposed to expected losses of the entity (i.e. equity at risk is no longer considered sufficient per paragraph 5a)?
    *Comment if checked "Yes"*           ☐ Yes      ☐ No

3.  Has Entity B's equity been increased by equity investors, such that Entity B is now considered to have adequate equity at risk per paragraph 5a?
    *Comment if checked "Yes"*           ☐ Yes      ☐ No

4.  Has Entity B changed activities or changed assets, compared to those that were anticipated at the later of the inception of Entity B or the latest reconsideration event, that change the entity's expected losses?
    *Comment if checked "Yes"*           ☐ Yes      ☐ No

5.  Pursuant to FIN 46(R), par. 7, the most recent date at which consideration of whether a variable interest entity exists is determined to be as follows:
    *Comment*

## III. Primary Beneficiary Reconsideration Events

Page 1 of 7

SHARP_CH15 000303

v06-01b

Have there been any of the following "primary beneficiary" reconsideration events per Paragraph 15 of the Interpretation?

*Response should indicate a "Yes" or "No" and a comment for all "Yes" answers regarding the most recent such reconsideration event.*

1. Has Entity B's governing documents or contractual arrangements been changed in a manner that reallocates between the existing primary beneficiary and other unrelated parties:  ☐ Yes  ☐ No
   (a) The obligation to absorb the expected losses of the variable interest entity, or
   (b) The right to receive the expected residual returns of the variable interest entity?
   *Comment if checked "Yes"*

2. Has the primary beneficiary sold or otherwise disposed of all or part of its variable interests to unrelated parties?  ☐ Yes  ☐ No
   *Comment if checked "Yes"*

3. Has Entity B issued new variable interests to parties other than the primary beneficiary or the primary beneficiary's related parties?  ☐ Yes  ☐ No
   *Comment if checked "Yes"*

4. Has a holder of a variable interest that is not the primary beneficiary acquired additional variable interests in the variable interest entity, such that it changes who is the primary beneficiary?  ☐ Yes  ☐ No
   *Comment if checked "Yes"*

5. Pursuant to FIN 46(R), par. 15, the most recent date at which consideration of whether the Entity A is the primary beneficiary of Entity B is determined to be as follows: ☐
   *Comment*

*The remaining portions of this memo should be performed using the fact pattern and data as of the latest reconsideration events regarding whether Entity B is a VIE and whether Entity A is the primary beneficiary.*

## IV. VARIABLE INTEREST ENTITY ANALYSIS
### Step 1 – Is Entity B scoped out?
Consider the following to determine if Entity B is scoped out under paragraph 4:

1. Is Entity B a not-for-profit organization as defined in paragraph 168 of FASB Statement No. 117?  ☐ Yes  ☐ No
   *NOTE: A not-for-profit organization may be related parties for purposes of applying paragraphs 16 and 17 of the Interpretation. If a not-for-profit entity is used by business enterprises in a manner similar to a variable interest entity in an effort to circumvent the provisions of the Interpretation, that not-for-profit entity shall be subject to the Interpretation.*

Page 2 of 7

SHARP_CH15 000304

v06-01b

*Comment if checked "Yes"*

2. Is Entity B an employee benefit plan subject to the provisions of FASB Statements No. 87, Employers' Accounting for Pensions, No. 106, Employers' Accounting for Postretirement Benefits Other Than Pensions, and No. 112, Employers' Accounting for Post-employment Benefits?    ☐ Yes    ☐ No
*Comment if checked "Yes"*

3. Is Entity B a qualifying special-purpose entity as described in paragraph 35 of FASB Statement No. 140, Accounting for Transfers and Servicing of Financial Assets and Extinguishments of Liabilities, or a "formerly qualifying SPE" as described in paragraph 25 of Statement 140?    ☐ Yes    ☐ No
   *NOTE: Neither a transfer of financial assets nor its affiliates shall consolidate a qualifying special-purpose entity as described in paragraph 35 of FASB Statement No. 140, Accounting for Transfers and Servicing of Financial Assets and Extinguishments of Liabilities, or a "formerly qualifying SPE" as described in paragraph 25 of Statement 140. A transferor reports its rights and obligations related to the qualifying special-purpose entity according to the requirements of Statement 140.*
*Comment if checked "Yes"*

4. Are both Entity A and Entity B enterprises subject to SEC Regulation S-X, Rule 6-03(c)(1)?    ☐ Yes    ☐ No
*Comment if checked "Yes"*

5. Is Entity B a life insurance entity as described in the AICPA Audit and Accounting Guide, Life and Health Insurance Entities?    ☐ Yes    ☐ No
   *NOTE: Separate accounts of life insurance entities as described in the AICPA Audit and Accounting Guide, Life and Health Insurance Entities, are not subject to consolidation according to the requirements of this Interpretation.*
*Comment if checked "Yes"*

6. Is Entity A unable to obtain the following information for any interests in a VIE (or potential VIE) created before December 31, 2003?    ☐ Yes    ☐ No
   (a) Whether Entity B is a variable interest entity.
   (b) Whether Entity A is Entity B's primary beneficiary.
   (c) The accounting required to consolidate Entity B.
   *NOTE: This scope exception is expected to be extremely rare. The scope exception in this provision applies only as long as the reporting enterprise continues to be unable to obtain the necessary information. Paragraph 26 requires certain disclosures to be made about interests in entities subject to this provision. Paragraph 41 provides transition guidance for an enterprise that subsequently obtains the information necessary to apply this Interpretation to an entity subject to this exception.*
*Comment if checked "Yes"*

7. Is Entity B an entity that is deemed to be a business under the definition in Appendix C?    ☐ Yes    ☐ No
   **(If this scope exception applies – see further questions 7a – 7d below)**
   *NOTE: The definition of a business for use in Appendix C of the Interpretation is as follows: A business is a self-sustaining integrated set of activities and assets conducted and managed for the purpose of providing a return to investors. A business consists of (a) inputs, (b) processes applied to those inputs, and (c) resulting outputs that are used to generate revenues. For a set of activities and assets to be a*

SHARP_CH15 000305

v06-01b

*business, it must contain all of the inputs and processes necessary for it to conduct normal operations, which include the ability to sustain a revenue stream by providing its outputs to customers.*
*Comment if checked "Yes"*

8.  Is Entity B a governmental organization or a financing entity established by a governmental organization (unless the financing entity (1) is not a governmental organization and (2) is used by the business enterprise in a manner similar to a variable interest entity in an effort to circumvent the provisions of the Interpretation)? ☐ Yes   ☐ No
*Comment if checked "Yes"*

*If any of the answers above are yes – Entity B __may__ be scoped out provided that the following items are addressed if question 7 above is the only "Yes" answer.*

**The following must be addressed if question 7 above was the only "Yes" answer.** Where a potential scope exception to the Interpretation is identified due to Entity B being deemed a business under the definition in Appendix C, consider if any of the following exist:

7a. Was Entity A, its related parties, or both significantly involved in the design or redesign of Entity B? ☐ Yes   ☐ No
*NOTE: this condition does not apply if the entity is an operating joint venture under joint control of the reporting enterprise and one or more independent parties or a franchisee.*
*Comment if checked "No"*

7b. Is Entity B designed so that substantially all of its activities either involve or are conducted on behalf of the reporting enterprise and its related parties? ☐ Yes   ☐ No
*Comment if checked "No"*

7c. Does Entity A and its related parties provide more than half of the total of the equity, subordinated debt, and other forms of subordinated financial support to Entity B (based on an analysis of the fair values of the interests in Entity B)? ☐ Yes   ☐ No
*Comment if checked "No"*

7d. Are the activities of Entity B primarily related to securitizations or other forms of asset-backed financings or single-lessee leasing arrangements? ☐ Yes   ☐ No
*Comment if checked "No"*

If any of the above four answers are "Yes", Entity B is __not__ scoped out under the business exception, and further FIN 46(R) analysis is required.

**Step 1 Overall Response:  Is Entity B Scoped out?** ☐ Yes   ☐ No

*If "YES", the remainder of this memo is not applicable as Entity B meets a scope exception in FIN 46(R), if "NO" continue to Step 2*

Page 4 of 7

SHARP_CH15 000306

v06-01b

**Step 2 – What are the variable interests in Entity B?**
List all known implicit and explicit variable interests held by Entity A and its related party group in Entity B and identify whether the VI is implicit or explicit:

| | Individual/Entity | Description of the nature of the variable interest: |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |

List other known variable interests held by others outside Entity A's related party group and identify whether the VI is implicit or explicit:

| | Individual/Entity | Description of the nature of the variable interest: |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |

*If no variable interests held by Entity A (or the related party group which includes Entity A) are identified above the remainder of this memo is not applicable. If variable interests held by Entity A (or the related party group which includes Entity A) have been identified continue to Step 3.*

**Step 3 – Determine whether, as a group, the holders of the equity investment have insufficient equity at risk or lack the characteristics of a controlling financial interest. Consider the following:**

1. Is the total equity investment at risk insufficient to permit the entity to finance its activities without additional subordinated financial support provided by any parties, including equity holders as outlined in FIN 46(R), Par. 5a? Describe why it is or is not considered to be sufficient.
☐ Yes   ☐ No
*Comments:*

2. As a group do the holders of the equity investment at risk lack any one of the three characteristics of a controlling financial interest (as outlined in FIN 46(R), Par. 5b)?
☐ Yes   ☐ No
*Comments:*

3. As a group are the holders of the equity investment at risk considered to lack the characteristic outlined in FIN 46(R), Par 5b(1) because (i) the voting rights of some investors are not proportional to their obligations to absorb the expected losses of the entity, their rights to receive the expected residual returns of the entity, or both **and** (ii) substantially all of the entity's activities (for example, providing financing or buying assets) either involve or are conducted on behalf of an investor that has disproportionately few voting rights (as outlined in FIN 46(R), Par. 5c)?
*NOTE: For purposes of applying this requirement, enterprises shall consider each party's obligations to absorb expected losses and rights to receive expected residual returns related to all of that party's interests in the entity and not only to its equity investment at risk.*

SHARP_CH15 000307

BMO 001389

v06-01b

☐ Yes   ☐ No
*Comments:*

**Step 3 Overall Response: As a group do the holders of the equity investment have insufficient equity at risk, or lack the characteristics of a controlling financial interest?**   ☐ YES   ☐ NO

*If "YES", Entity B has characteristics of a VIE; continue to step 4. If "NO", Entity B does not have characteristics of a VIE and the remainder of this memo is not applicable.*

**Step 4A – Consider whether, as a group, Entity A _and_ its related parties are the primary beneficiary of Entity B:**
Is the related party group (RPG) as discussed in FIN 46(R), Par. 16 - 17, which includes Entity A and its related parties, in the aggregate more closely related to Entity B than any single third party that is not a member of the RPG? (Please support the determination). ☐ YES ☐ NO

*Primary Beneficiary if other than Entity A or the RPG:*

Primary Beneficiary Name Here

*Basis for determination:*

*If answer to 4A is "YES", continue to step 4B. If "NO", the remainder of this memo is not applicable, however consider disclosure requirements of FIN 46(R), Par. 24. The "Basis for determination" section above should include documentation of such consideration and identification of the location within the footnotes to the financial statements of any FIN 46(R) required disclosures.*

**Step 4B – Consider whether Entity A is the most closely related of all the related parties (as per Step 2 and 4A above) to Entity B:**
Analyze the variable interests held individually by each member of the RPG and conclude on the client's assessment as to which entity is the primary beneficiary.

Is Entity A the most closely related to Entity B of all the related parties in Step 4A?

☐ YES   ☐ NO

*Primary Beneficiary if Entity A or a member of the RPG:*

Primary Beneficiary Name Here

*Basis for determination:*

*If answer to 4B is "YES" – consolidation of Entity B by Entity A is required. If "NO", consider disclosure requirements of FIN 46(R), Par. 24. The "Basis for determination" section above should include documentation of such consideration and identification of*

Page 6 of 7

SHARP_CH15 000308

v06-01b

*the location within the footnotes to the financial statements of any FIN 46(R) required disclosures.*

## V. **ADDITIONAL COMMENTS**

SHARP_CH15 000309

BMO 001391

v07-03a

**Enter Client Name Here**
**Enter WP Name Here**
**Enter Engagement Date Here**

Reporting Entity (Entity A):    | Reporting Entity Name Here |

Potential VIE (Entity B):    | Potential VIE Entity Name Here |

Most recent FIN 46(R) evaluation date:    | |
*(This should be the formation date of Entity B or the latest VIE reconsideration date addressed in the previous engagement)*

> **PREFACE** – *This practice aid is designed to assist in evaluating and documenting your consideration of circumstances requiring reconsideration of whether the Reporting Entity holds a variable interest in a Variable Interest Entity (VIE) and if so, whether the Reporting Entity is the Primary Beneficiary (PB). This practice aid should be used only for reconsideration events and should NOT be used to evaluate new relationships of the Reporting Entity or existing relationships where we have not previously evaluated the accounting under FIN 46(R) (i.e. new clients).*

> **DOCUMENTATION EXPECTATION** – *This workpaper may be used for EACH entity in which the Reporting Entity holds a variable interest where a reconsideration event during the reporting period is reasonably possible and the FIN 46(R) impact on the reporting entity is more than insignificant. When no reconsideration events are identified after utilization of this practice aid, this workpaper should be included in the working papers as evidence of such consideration. Should this practice aid identify reconsideration events, the FIN 46(R) Analysis Worksheet on MARVIN should be completed for the (potential) variable interest entity being evaluated.*

I. **Background**

Document 1) the summary of the relationship of the entities including initial involvement of the entities, ownership and control characteristics of the entities and transactions between the entities; 2) summary of previously identified implicit and explicit variable interests held by all parties in the entity under consideration; 3) summary of previous conclusion and basis on which such determination was made as to whether the entity under consideration was a VIE and if so, which variable interest holder was the primary beneficiary (including basis for determination); and 4) significant changes, developments, and differences since the most recent FIN 46(R) evaluation.

1.  Summary of Relationship:

2.  Summary of Previously Identified Variable Interests (including implicit and explicit):

3.  Summary of Previous Conclusion (including basis for determination):

SHARP_CH15 000310

v07-03a

4. Significant Changes, Developments, or Differences Since Previous Conclusion:

SHARP_CH15 000311

BMO 001393

v07-03a

## II. VIE Reconsideration Events

Events which constitute a significant change in the design of the entity in a manner that calls into question whether (1) the entity's at-risk equity investment is sufficient or (2) the rights and obligations provided to holders of the entity's at-risk equity investment are characteristic of a controlling financial interest may require reconsideration of the entity's status under FIN 46(R).  Judgment will need to be applied to determine whether an event is a significant occurrence requiring reconsideration of the entity's status.

The initial determination of whether an entity is a variable interest entity shall be reconsidered if one or more of the following occur:
*Response should indicate a "Yes" or "No" and a comment for all "Yes" answers regarding the most recent such reconsideration event.*

1. Have Entity B's governing documents or contractual arrangements been changed in a manner that changes the characteristics or adequacy of Entity B's equity investment at risk?  ☐ Yes    ☐ No

   *The focus of this triggering event is on whether there have been significant modifications to either the design or structure of the entity under consideration and the contractual arrangements between or among parties affiliated with the entity. For example, equity investors may relinquish their rights to participate in certain decisions where those rights have been transferred to other variable interest holders associated with the entity. Although determining that there has been a change in governing documents and (or) contractual agreements should not be difficult, there also must be an evaluation associated with whether these changes affect the adequacy of the equity at risk within the entity under consideration. If the changes result in the affiliated entity not having sufficient equity at risk so that the entity can operate on a stand-alone basis, the entity would be considered a VIE and subject to the consolidation provisions within FIN 46(R).*

   | Examples: | |
   |---|---|
   | - Revisions to equity holders voting rights | - Revisions to significant service contracts |
   | - Debt refinancings | - Revisions to existing lease terms, including those that result in a new lease pursuant to FASB No. 13, *"Accounting for Leases"* |
   | - Retirement of debt at other than its contractual maturity date | |
   | - Entry into agreements with service providers | |

   *Comment if checked "Yes"*

2. Has Entity B's equity or some part thereof been returned to the equity investors **and** other interests become exposed to expected losses of the entity (i.e. equity at risk is no longer considered sufficient per paragraph 5a)?  ☐ Yes    ☐ No

   *One of the criteria that must be evaluated in implementing FIN 46(R) relates to whether an entity under consideration has sufficient equity at risk so that the entity can operate on a stand-alone basis. In those cases where there was sufficient equity at risk for the entity to operate on a stand-alone basis, and where that equity is returned to the equity investors, there is a required re-evaluation related to whether there is sufficient equity at risk.*

SHARP_CH15 000312

v07-03a

*Distribution(s) of accumulated profits in excess of working capital requirements is generally not considered a "return of equity" as contemplated herein. Essentially, there could have been sufficient equity at risk when the entity was designed or formed (and the entity was not subject to consolidation). However, the return of equity to the investors might result in there being insufficient equity at risk for the entity to operate on a stand-alone basis (and the entity would now be subject to consolidation provisions within FIN 46(R)).*

Examples:

- Returns of equity to investors (that is, distributions **in excess of earnings)**

- Purchases of guarantees or put options

*Comment if checked "Yes"*

3. Has Entity B's equity been increased by equity investors, such that Entity B is now considered to have adequate equity at risk per paragraph 5a?   ☐ Yes   ☐ No

*In developing the technical guidance requirements within FIN 46(R), the FASB specifically acknowledged that a previously identified VIE could become a voting interest entity. Further, there could be a change in the design of the entity, a capital infusion by equity investors, and (or) a change in the activities of the entity under consideration so that now there is sufficient equity at risk for the entity to operate on a stand-alone basis. However, the focus of this triggering event is on the fact that the recapitalization resulting from an additional equity investment also could result in an entity becoming a VIE where the entity previously was not a VIE. Essentially, the entity needs to be "evaluated anew" if and when there is an additional equity investment to determine whether the entity is subject to the consolidation provisions in FIN 46(R).*

Examples:

- Additional contributions by existing equity holders

- Issuances of additional equity interests

*Comment if checked "Yes"*

4. Has Entity B changed activities or changed assets, compared to those that were anticipated at the later of the inception of Entity B or the latest reconsideration event, that change the entity's expected losses?   ☐ Yes   ☐ No

*In the initial FIN 46(R) analysis, an evaluation needs to be made related to whether there is sufficient equity at risk for the entity under consideration to operate on a stand-alone basis without help from others. That analysis encompasses current and anticipated activities associated with the entity under consideration. This triggering event relates to circumstances where the additional activities of the entity under consideration were not current activities or anticipated activities at the initial or latest FIN 46R consideration date. The activities that would result in the reconsideration would be those undertaken by the entity under consideration that were not included in the initial evaluation related to whether there was sufficient equity at risk for the entity to operate without additional subordinated support. Fundamentally, the evaluation required because of these additional activities relates to whether there is still enough equity at risk for the entity under consideration to operate on a stand-alone basis because the entity now has undertaken these new activities.*

Page 4 of 6

SHARP_CH15 000313

v07-03a

---

Examples:

- Entry into a significant new line of business increases the entity's expected losses

- Significant curtailment of the entity's existing activities through sale of assets or discontinuance of a line of business

- Retirement of debt at other than its contractual maturity date

- Significant acquisition of new assets

---

*Comment if checked "Yes"*

**CONCLUSION**:   If any of the above enumerated items are checked "Yes", a VIE reconsideration event has been identified which will require a reevaluation of the entity. You should complete the FIN 46(R) Analysis Worksheet to determine if the entity under consideration is a VIE. In such cases a reconsideration of the primary beneficiary will also be required.

If none of the above enumerated items was checked "Yes", pursuant to FIN 46(R), par. 7 and based on the prior FIN 46(R) evaluation, the most recent date at which consideration of whether a variable interest entity exists is determined to be as follows:

*Comment*

---

### III. Primary Beneficiary Reconsideration Events

Under certain circumstances an enterprise with a variable interest in a variable interest entity shall reconsider whether it is the primary beneficiary of the variable interest entity. Only substantive changes would result in a reconsideration event. Judgment will need to be applied to determine whether an event is a significant occurrence requiring primary beneficiary reconsideration by the reporting entity.

The most recent determination of whether the reporting entity is the primary beneficiary of a variable interest entity shall be reconsidered if one or more of the following occur:
*Response should indicate a "Yes" or "No" and a comment for all "Yes" answers regarding the most recent such reconsideration event.*

1. Have Entity B's governing documents or contractual arrangements been changed in a manner that reallocates between the existing primary beneficiary and other unrelated parties:
   (a) The obligation to absorb the expected losses of the variable interest entity, or
   (b) The right to receive the expected residual returns of the variable interest entity?
   *Comment if checked "Yes"*
   ☐ Yes      ☐ No

2. Has the existing primary beneficiary

SHARP_CH15 000314

v07-03a

sold or otherwise disposed of all or part of its variable interests to unrelated parties?           ☐ Yes      ☐ No
*Comment if checked "Yes"*

3. Has Entity B issued new variable interests to parties other than the primary beneficiary or the primary beneficiary's related parties?           ☐ Yes      ☐ No
*Comment if checked "Yes"*

4. Has a holder of a variable interest that is not the primary beneficiary acquired additional variable interests in the variable interest entity, such that it changes who is the primary beneficiary?           ☐ Yes      ☐ No
*Comment if checked "Yes"*

**CONCLUSION:** If any of the above enumerated items was checked "Yes", you should complete the FIN 46(R) Analysis Worksheet.

If none of the above enumerated items was checked "Yes", pursuant to FIN 46(R), par. 15 and based on the prior FIN 46(R) evaluation, the most recent date at which consideration of whether the Entity A is the primary beneficiary of Entity B is determined to be as follows:

*Comment*

SHARP_CH15 000315

BMO 001397

# EXHIBIT 59

**From:** Mark McCormick [markmc@skfoods.com]
**Sent:** Monday, December 17, 2007 7:09 PM
**To:** Dan Nutley
**Subject:** Re: FIN 46

Thanks

----- Original Message -----
From: Dan Nutley <Dan.Nutley@mossadams.com>
To: Mark McCormick
Sent: Mon Dec 17 16:04:53 2007
Subject: RE: FIN 46

Yes, transfer needs to be effective 11/1/06.


Thanks


Dan


Dan Nutley
Partner
Moss Adams, LLP
Office: 209 955 6108
Cell: 209 481 0631
dan.nutley@mossadams.com

---

From: Mark McCormick [mailto:markmc@skfoods.com]
Sent: Monday, December 17, 2007 11:50 AM
To: Dan Nutley
Subject: FIN 46


What is the effective date of the transfer of the Cedenco notes to the new trust .... 11/01/06 ?


Mark M. McCormick

Executive Vice President – Treasurer


SK Foods, LP

Executive Offices

200 Sky Park Drive

1

MA00000244

# EXHIBIT 60

## Sean Farrell

| | |
|---|---|
| **From:** | Gary Perry Law [gary@garyperrylaw.com] |
| **Sent:** | Monday, December 17, 2007 2:22 PM |
| **To:** | Mark McCormick |
| **Subject:** | Re: SKF Aviation |

We can do that. I will have the trust  with that name fed ex  to Scott so you will have tomorrow. Gary
Gary Perry
gary@garyperrylaw.com

-----Original Message-----
From: "Mark McCormick" <markmc@skfoods.com>
Date: Mon, 17 Dec 2007 12:07:17
To:<gary@garyperrylaw.com>, "Wayne Boos" <WBoos@booscpa.com>,       "Scott Salyer" <scotts@skfoods.com>
Subject: RE: SKF Aviation

Thanks Gary ..

How about the SSC&L 2007 Trust  -----  Scott, Stephanie, Caroline and Louis !

-----Original Message-----
From: Gary Perry Law [mailto:gary@garyperrylaw.com]
Sent: Monday, December 17, 2007 11:53 AM
To: Wayne Boos; Mark McCormick; Scott Salyer
Subject: Re: SKF Aviation

I am sending the new grantor trust out by federal express today. I have called it the SC 2007 Trust. I have also included an updated version of the existing revocable trust with the revised successor trustees inserted. With with respect to the Fin. 46 matter, the new trust will be used to satisfy Dan Nutley's requirement that the trust be a grantor trust. The other  part of the structure is the document used to create the obligation on the part of the new trust for the Cedenco debt. I will email that to you today. Gary

Gary Perry
gary@garyperrylaw.com

-----Original Message-----
From: "Wayne Boos" <wboos@booscpa.com>
Date: Sun, 16 Dec 2007 15:34:34
To:<gary@garyperrylaw.com>
Cc:"Darrell Carlis" <dcarlis@booscpa.com>
Subject: RE: SKF Aviation

Thanks Gary, 40 acres may be better type of asset rather than personal residence. We are meeting with Mark on Monday. We will get back with you then.

Wayne

Wayne W. Boos CPA

11/16/2010

Boos & Associates
Fig Garden Financial Center
5260 North Palm Avenue, Suite 120 | Fresno, California 93704
Phone (Main): 1.559.449-7688 | Phone (Direct): 1.559.436-3181
Fax: 1.559.449.1934 | Cell: 1.559.288-2366
E-mail: wboos@booscpa.com

*****Any tax advice included in this written or electronic communication was not intended or written to be used, and it cannot be used by the taxpayer, for the purpose of avoiding any penalties that may be imposed on the taxpayer by any governmental taxing authority or agency*****

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this message. Any disclosure, copying, or distribution of this message, or the taking of any action based on it, is strictly prohibited.

-----Original Message-----
From: Gary Perry Law [mailto:gary@garyperrylaw.com]
Sent: Thursday, December 13, 2007 3:47 PM
To: Wayne Boos
Subject: Re: SKF Aviation

Paperwork was done but I have not seen anything signed. Also we need to finalize the gift to be split with Scott's wife prior to Jan 1. Scott mentioned the house but what do you think about an interest in the LLC that owns the 40 acres by the plant ?
Gary

Gary Perry
gary@garyperrylaw.com

-----Original Message-----
From: "Wayne Boos" <wboos@booscpa.com>
Date: Thu, 13 Dec 2007 17:24:32
To:<gary@garyperrylaw.com>
Cc:"Darrell Carlis \(DCarlis@booscpa.com\)" <IMCEAEX-
_O=BOOSCPA_ou=first+20administrative+20group_cn=Recipients_cn=DCarlis@portal.local>

Subject: SKF Aviation

Hi Gary, Mark from SK asked that I follow up with you regarding distribution of SFK Aviation, LLC from SKPM to Scott's trust on July 1, 2007. Was the paperwork completed for this? If not, we will need to work on this to get it finalized. Let me or Darrell know if any questions.

Thanks

Wayne

11/16/2010

Re: SKF Aviation

Wayne W. Boos CPA

---

Boos & Associates

Fig Garden Financial Center
5260 North Palm Avenue, Suite 120 | Fresno, California 93704
Phone (Main): 1.559.449.7688 | Phone (Direct): 1.559.436-3181

Fax: 1.559.449.1934 | Cell: 1.559.288-2366
E-mail: wboos@booscpa.com

*****Any tax advice included in this written or electronic communication was not intended or written to be used, and it cannot be used by the taxpayer, for the purpose of avoiding any penalties that may be imposed on the taxpayer by any governmental taxing authority or agency*****

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this message. Any disclosure, copying, or distribution of this message, or the taking of any action based on it, is strictly prohibited.

11/16/2010

BMO 001402

# EXHIBIT 61

# GARY G. PERRY

Attorney at Law
2251 Fair Oaks Blvd., Suite 200
Sacramento, CA 95825

Phone: (916) 649-0742                                                Fax: (916) 649-0010

# FACSIMILE COVER PAGE

## PERSONAL AND CONFIDENTIAL

DATE:      December 17, 2007

FAX:       (559) 449-1934

PLEASE DELIVER THE FOLLOWING PAGES TO:

NAME:      Wayne Boos, CPA

COMPANY:  SK Foods

FROM:      Gary G. Perry, Esq

ITEMS TRANSMITTED: Debt Assignment Agreement

TOTAL PAGES (including this cover): 5

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE NOTIFY US AS SOON AS
POSSIBLE
AT (916) 649-0742.  ASK FOR JULIE

CONFIDENTIALITY NOTICE: The information in this facsimile is confidential and also may be legally privileged. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the addressee, or the employee or agent responsible to deliver this facsimile to the intended recipient, you are hereby notified that any review, use, dissemination, distribution, disclosure, copying or taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original facsimile to us at the above address via the U.S. Postal Service. Thank you.

BMO 001403

**GARY G. PERRY**

ATTORNEY AT LAW

2251 Fair Oaks Boulevard, Suite 200

Sacramento, California 95825

Telephone
(916) 649-0742

Facsimile
(916) 649-0010

## ATTORNEY CLIENT PRIVILEGED COMMUNICATION

December 17, 2007

**SENT VIA FAX (831) 655-5906**

Mr. F. Scott Salyer
SK Foods, L. P.
200 Sky Park Drive
Monterey, CA 93940

     **RE:**    Debt Assignment Agreement

Dear Scott:

    Enclosed please find the form of agreement to be used in connection with the Cedenco debt assignment.  I am also providing a copy to Wayne Boos and Mark McCormick.  Please give me a call with any questions.

               Sincerely yours,

               GARY G. PERRY

GGP/jp
Enclosure

cc:   Mark McCormick (w/encl.)
       Wayne Boos, CPA (w/encl.)

## DEBT ASSIGNMENT AGREEMENT

This Debt Assignment Agreement is entered into by and among SK Foods, L.P., a California Limited Partnership (the "Partnership"), SSC&L 2007 Trust (the "Trust"), and Cedenco Foods, Limited, a New Zealand Company ("Cedenco") on this ___ day of December, 2007.

### RECITALS

A.   The Partnership holds debt on which Cedenco is the obligor (the "Debt").

B.   The Trust has agreed to become an obligor of the Debt without releasing Cedenco from liability for the payment of the Debt.

C.   The parties hereto desire that effective as of the date hereof the Trust shall be an obligor of the Debt in favor of the Partnership.

Now, therefore, the parties agree as follows:

1.   Debt Assignment.  Without reducing, altering, or otherwise affecting the liability of Cedenco for the payment of the Debt or the terms for payment of the Debt, Cedenco hereby assigns its obligations for the payment of the Debt to the Trust and the Trust hereby assumes the obligations of Cedenco under the terms of the Debt.

2.   Consent.  The Partnership hereby consents to the assignment set forth in Section 1. Notwithstanding the consent of the Partnership to the assignment, Cedenco shall remain liable for all of its obligations to the Partnership arising out of or related to the Debt.

3.   Indemnity.  Cedenco shall indemnify and hold harmless the Trust from any liability, loss, damages, claims, and costs arising out or related to this Agreement and the Debt.

4.   Notices/Delivery.  Unless otherwise provided herein, any notice, tender or delivery to be given hereunder by either party to the other may be effected by personal delivery or by registered or certified mail, postage prepaid, return receipt requested.  Mailed notice shall be addressed as set forth below:

Partnership   SK Foods, L.P.
        P.O. Box 160
        Lemoore, CA  93245
        Attn: Mark McCormick

BMO 001405

Cedenco            Cedenco Foods, Limited
                   P.O. Box 160
                   Lemoore, CA  93245
                   Attn: Mark McCormick

Trust              SSC&L 2007 Trust
                   200 Sky Park Drive
                   Monterey, CA 93940
                   Attn: Scott Salyer

Either party may change such address for notification purposes by sending written notice thereof to the other party pursuant to this section. Mailed notice, shall be deemed delivered within three (3) days after deposit thereof in the United States mail.

5.      Waivers. No Waiver of any breach of any covenant or provision herein contained shall be deemed a waiver of any preceding or succeeding breach thereof, or of any other covenant or provision herein contained. No extension of time for performance of any obligation or act shall be deemed an extension of the time for performance of any other obligation.

6.      Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the permitted successors and assigns of the parties hereto.

7.      Professional Fees. If either party commences an action against the other to interpret or enforce any of the terms of this Agreement or because of the breach by the other party of any of the terms hereof, the losing party shall pay to the prevailing party reasonable attorneys' fees, costs and expenses and court costs and other costs of action incurred in connection with the prosecution or defense of such action, whether or not the action is prosecuted to a final judgment. For the purpose of this Agreement, the terms "attorneys fees" or "attorneys" fees and costs" shall mean the fees and expenses of counsel to the parties hereto, which may include printing, photostating, duplicating and other expenses, air freight charges, and fees billed for law clerks, paralegals, librarians and others not admitted to the bar but performing services under the supervision of an attorney. The terms "attorneys fees" or "attorneys" fees and costs" shall also include, without limitation, all such fees and expenses incurred with respect to appeals, arbitrations and bankruptcy proceedings, and whether or not any action or proceeding is brought with respect to the matter for which said fees and expenses were incurred. The term "attorney" shall have the same meaning as "counsel".

8.      Entire Agreement. This Agreement (including all exhibits attached hereto) is the final expression of, and contains the entire agreement between, the parties with respect to the subject matter hereof and supersedes all prior understandings with respect to thereto. This Agreement may not be modified, changed, supplemented, superseded, canceled or terminated, nor may any obligations hereunder be waived, except by written instrument signed by the party to be charged or by its agent duly authorized in writing or as otherwise expressly permitted herein.

2

BMO 001406

The parties do not intend to confer any benefit hereunder on any person, firm or corporation other than the parties hereto and lawful assignees.

9.   Time of Essence.  Partners hereby acknowledge and agree that time is strictly of the essence with respect to each and every term, condition, obligation and provision hereof and that failure to timely perform any of the terms, conditions, obligations or provisions hereof by either party shall constitute a material breach of and a non-curable default under this Agreement by the party so failing to perform.

10.   Construction.  Headings at the beginning of each section and subsection are solely for the convenience of the parties and are not part of the Agreement.  Whenever required by the context of this Agreement, the singular shall include the plural and the masculine shall include the feminine and vice versa.  This Agreement shall not be construed as if it had been prepared by one of the parties, but rather as if both parties had prepared the same.  Unless otherwise indicated, all references to sections, subsections are to this Agreement.  The words "include" or "including" mean include or including, as the case may be, without limitation.

11.   Governing Law.  The parties hereto acknowledge that this Agreement has been negotiated and entered into in the State of California.  The parties hereto expressly agree that this Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of California.

12.   Days of Week/Time.  If any date for performance herein falls on a Saturday, Sunday, or holiday, as defined in Section 6700 of the California Government Code, the time for such performance shall be extended to 5:00 p.m. on the next business day.

13.   Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument.

14.   Exhibits.  Each of the exhibits attached hereto is incorporated into and made a part of this Agreement as though fully set forth herein.

15.   Facsimile Signatures.  In order to expedite the transaction contemplated herein, facsimile signatures may be used in place of original signatures on this Agreement.  The Partners intend to be bound by the signatures on the facsimile document, are aware that the other party will rely on the facsimile signatures, and hereby waive any defenses to the enforcement of the terms of this Agreement based on the use of a facsimile signature.

3

BMO 001407

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

<u>Partnership</u>

SK Foods, L.P., a California limited partnership

By:    SK PM Corp., a California corporation
General Partner

        By:   _____

<u>Cedenco</u>

Cedenco Foods, Limited, a New Zealand Company

By:   _____

<u>SSC&L Trust</u>

SSC&L Trust

By:   _____
     Scott Salyer, Trustee

4

# EXHIBIT 62

## Sean Farrell

**From:**    Gary Perry Law [gary@garyperrylaw.com]
**Sent:**    Tuesday, December 18, 2007 12:02 PM
**To:**      Mark McCormick
**Subject:** Re: SKF Aviation

I will correct the trust and the agreement. Gary
Gary Perry
gary@garyperrylaw.com

-----Original Message-----
From: "Mark McCormick" <markmc@skfoods.com>
Date: Tue, 18 Dec 2007 09:31:57
To:"Wayne Boos" <wboos@booscpa.com>, <gary@garyperrylaw.com>,      "Scott Salyer" <scotts@skfoods.com>
Cc:"Nick Frankish" <NICK@cedenco.co.nz>
Subject: RE: SKF Aviation

Dan Nutley confirmed the effective date of the new trust will be 11/01/06.   We need to let Nick Frankish now what we are
doing.

-----Original Message-----
From: Wayne Boos [mailto:wboos@booscpa.com]
Sent: Monday, December 17, 2007 5:07 PM
To: gary@garyperrylaw.com; Mark McCormick; Scott Salyer
Subject: RE: SKF Aviation

Gary/Mark, I received the fax. Did this need to be effective 11/1/06 (rather than Dec 07) to avoid the FIN 46 issues?

Wayne W. Boos CPA

Boos & Associates
Fig Garden Financial Center
5260 North Palm Avenue, Suite 120 | Fresno, California 93704
Phone (Main): 1.559.449-7688 | Phone (Direct): 1.559.436-3181
Fax: 1.559.449.1934 | Cell: 1.559.288-2366
E-mail: wboos@booscpa.com

*****Any tax advice included in this written or electronic communication was not intended or written to be used, and it cannot be used by the taxpayer, for the purpose of avoiding any penalties that may be imposed on the taxpayer by any governmental taxing authority or agency*****

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law.  If you are not the intended recipient, you should delete this message.  Any disclosure, copying, or distribution of this message, or the taking of any action based on it, is strictly prohibited.

11/22/2010

-----Original Message-----
From: Gary Perry Law [mailto:gary@garyperrylaw.com]
Sent: Monday, December 17, 2007 11:53 AM
To: Wayne Boos; Mark McCormick; Scott Salyer
Subject: Re: SKF Aviation

I am sending the new grantor trust out by federal express today. I have called it the SC 2007 Trust. I have also included an updated version of the existing revocable trust with the revised successor trustees inserted. With with respect to the Fin. 46 matter, the new trust will be used to satisfy Dan Nutley's requirement that the trust be a grantor trust. The other part of the structure is the document used to create the obligation on the part of the new trust for the Cedenco debt. I will email that to you today. Gary

Gary Perry
gary@garyperrylaw.com

-----Original Message-----
From: "Wayne Boos" <wboos@booscpa.com>
Date: Sun, 16 Dec 2007 15:34:34
To:<gary@garyperrylaw.com>
Cc:"Darrell Carlis" <dcarlis@booscpa.com>
Subject: RE: SKF Aviation

Thanks Gary, 40 acres may be better type of asset rather than personal residence. We are meeting with Mark on Monday. We will get back with you then.

Wayne

Wayne W. Boos CPA

_____

Boos & Associates
Fig Garden Financial Center
5260 North Palm Avenue, Suite 120 | Fresno, California 93704
Phone (Main): 1.559.449-7688 | Phone (Direct): 1.559.436-3181
Fax: 1.559.449.1934 | Cell: 1.559.288-2366
E-mail: wboos@booscpa.com

*****Any tax advice included in this written or electronic communication was not intended or written to be used, and it cannot be used by the taxpayer, for the purpose of avoiding any penalties that may be imposed on the taxpayer by any governmental taxing authority or agency*****

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this message. Any disclosure, copying, or distribution of this message, or the taking of any action based on it, is strictly prohibited.

-----Original Message-----
From: Gary Perry Law [mailto:gary@garyperrylaw.com]
Sent: Thursday, December 13, 2007 3:47 PM
To: Wayne Boos

11/22/2010

BMO 001410

Subject: Re: SKF Aviation

Paperwork was done but I have not seen anything signed. Also we need to finalize the gift to be split with Scott's wife prior to Jan 1. Scott mentioned the house but what do you think about an interest in the LLC that owns the 40 acres by the plant ? Gary

Gary Perry
gary@garyperrylaw.com

-----Original Message-----
From: "Wayne Boos" <wboos@booscpa.com>
Date: Thu, 13 Dec 2007 17:24:32
To:<gary@garyperrylaw.com>
Cc:"Darrell Carlis \(DCarlis@booscpa.com\)" <IMCEAEX-
_O=BOOSCPA_ou=first+20administrative+20group_cn=Recipients_cn=DCarlis@portal.local>

Subject: SKF Aviation

Hi Gary, Mark from SK asked that I follow up with you regarding distribution of SFK Aviation, LLC from SKPM to Scott's trust on July 1, 2007. Was the paperwork completed for this? If not, we will need to work on this to get it finalized. Let me or Darrell know if any questions.

Thanks

Wayne

Wayne W. Boos CPA

―――――――――――――――――――――――

Boos & Associates

Fig Garden Financial Center
5260 North Palm Avenue, Suite 120 | Fresno, California 93704
Phone (Main): 1.559.449-7688 | Phone (Direct): 1.559.436-3181

Fax: 1.559.449.1934 | Cell: 1.559.288-2366
E-mail: wboos@booscpa.com

*****Any tax advice included in this written or electronic communication was not intended or written to be used, and it cannot be used by the taxpayer, for the purpose of avoiding any penalties that may be imposed on the taxpayer by any governmental taxing authority or agency*****

This message (including any attachments) contains confidential information intended for a specific individual and purpose,

11/22/2010

Re: SKF Aviation                                                                    Page 4 of 4

and is protected by law.  If you are not the intended recipient, you should delete this message.  Any disclosure, copying, or
distribution of this message, or the taking of any action based on it, is strictly prohibited.

11/22/2010

# EXHIBIT 63

# GARY G. PERRY
### ATTORNEY AT LAW
2251 Fair Oaks Boulevard, Suite 200
Sacramento, California 95825

Telephone
(916) 649-0742

Facsimile
(916) 649-0010

## ATTORNEY-CLIENT PRIVILEGED COMMUNICATION

December 18, 2007

*Via Federal Express*

Mr. F. Scott Salyer
SK Foods
200 Sky Park Drive
Monterey, CA 93940

Re:   **Revised Documents**

Dear Scott:

I got the email from Mark and have corrected the date of each document. Enclosed please find **two (2) execution originals** of each of the revised documents.

1.   SSC&L 2007 TRUST. Please sign as Settlor and Trustee where indicated on page 42.

2.   Certified Abstract of Trust Agreement (SSC&L 2007 Trust). Please sign as Settlor and Trustee on page 8.

3.   Debt Assignment Agreement. Please sign as trustee on page 4 where indicated. Please have the other appropriate parties sign the agreement on page 4 as well.

Once completed, please return one (1) set of the enclosed originals to me. Please retain the other set of originals. I have enclosed a pre-addressed, stamped envelope for your convenience.

Mr. F. Scott Salyer
December 18, 2007
Page 2

If you have any questions, please do not hesitate to give me a call. I look forward to hearing from you soon.

Sincerely yours,

Gary G. Perry

GGP/jp
Enclosures

cc:  Mark McCormick (w/o encl.)
     Wayne Boos, CPA (w/o encl.)

# EXHIBIT 64

| | |
|---|---|
| **From:** | Gary Perry Law <gary@garyperrylaw.com> |
| **Sent:** | Wednesday, April 2, 2008 6:37 AM |
| **To:** | Lisa Crist <lisac@skfoods.com> |
| **Subject:** | Re: SKF Australia |

Let me confirm with Wayne. Gary
Gary Perry
gary@garyperrylaw.com
-----Original Message-----
From: "Lisa Crist" <lisac@skfoods.com>
Date: Tue, 1 Apr 2008 19:25:03
To:<gary@garyperrylaw.com>
Subject: SKF Australia
Hello Gary,

I'm here in NZ with Nick Frankish and we are questioning the dates of the resolutions, should they be November 1, 2007 vs. November 1, 2006? Nick mentioned talking about it in 2007 to get in front of the FIN 46 requirements.

I just wanted to double check before Scott signs them. If indeed the dates should reflect 11/1/07, I can make the changes.

Thank you for your clarification,

Lisa

Lisa Crist
EVP of Administration
SK Foods Group
1175 19th Ave
Lemoore, CA 93245-0160
(559) 924-6544 - Office
(559) 924-0178 - Fax
www.skfoods.com: <http://www.skfoods.com>

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, any disclosure, copying, distribution, or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply e-mail, and delete the original transmission and its attachments without reading or saving in any manner. We reserve the right to monitor all email communications. Although we believe this email and any attachments are virus-free, we do not guarantee that it is virus-free, and we accept no liability for any loss or damage arising from its use. Thank you.

**SHARP_CH15 000727**