# EXHIBIT 91



April 17, 2009


Dear Larry:

In an effort of good faith and keeping with our mutual interest in maximizing value of secured assets, SK Foods proposes the following:

- Each side will sign mutual general releases covering all parties, banks, and all SK entities, Officers, Directors, Shareholders and Individuals.

- Release of SKF, LLC Guarantor

- Bank will establish a legal defense fund of $2,000,000.00 in cash funds to cover legal issues for SK Foods Officers and Directors.

- Salyer Family will agree to sell Buyers (s) farm land sufficient to comply with all waste water permits for both factories.  Buyer will assume debt on existing land in Williams; Colusa County.

- In exchange, Bank will release lien and any interest in Tahoe Property.

- SK Foods will agree to Duff and Phelps sale process as a going concern if Banks continue funding of Bank approved operating budget through the close of escrow.

- SK Foods will agree as part of sale process to file necessary voluntary Chapter 11 with entities to be determined.

- Bank will approve reasonable employee compensation plan through sale of assets, including current Executives.

- Executive Management will in exchange maximize asset value and operating cost savings.


Regards,

Scott Salyer
Chairman of the Board

# EXHIBIT 92

**Wayne Boos**

| | |
|---|---|
| **From:** | Sandi Anthony <Sandi@garyperrylaw.com> |
| **Sent:** | Tuesday, April 28, 2009 2:23 PM |
| **To:** | scott@scottsalyer.net;  fscott.salyer@gmail.com;  Wayne  Boos |
| **Cc:** | jiacopi@aol.com;  gary@garyperrylaw.com |
| **Subject:** | SAS & CGS, LLC |

Scott and Wayne: Attached is formation document for new entity to acquire ownership of AUS/NZ.  Federal ID no. is: 26-4762595
Gary.

1



ROSS MILLER
Secretary of State
204 North Carson Street, Suite 4
Carson City, Nevada 89701-4520
(775) 684 5708
Website: www.nvsos.gov

## Articles of Organization
## Limited-Liability Company
(PURSUANT TO NRS CHAPTER 86)

USE BLACK INK ONLY - DO NOT HIGHLIGHT                    ABOVE SPACE IS FOR OFFICE USE ONLY

| | | |
|---|---|---|
| **1. Name of Limited-Liability Company:** (must contain approved limited-liability company wording; see instructions) | SAS & CGS, LLC | Check box if a Series Limited-Liability Company ☐ |

**2. Registered Agent for Service of Process:** (check only one box)

☒ Commercial Registered Agent: Corporation Trust Company of Nevada
Name

☐ Noncommercial Registered Agent    *OR*    ☐ Office or Position with Entity
(name and address below)                      (name and address below)

Name of Noncommercial Registered Agent OR Name of Title of Office or Other Position with Entity

| 6100 Neil Road | Reno | Nevada 89501 |
|---|---|---|
| Street Address | City | Zip Code |
| 6100 Neil Road | Reno | Nevada 89501 |
| Mailing Address (if different from street address) | City | Zip Code |

**3. Dissolution Date:** (optional)    Latest date upon which the company is to dissolve (if existence is not perpetual)

**4. Management:** (required)    Company shall be managed by:   ☐ Manager(s)   **OR**   ☒ Member(s)
(check only one box)

**5. Name and Address of each Manager or Managing Member:** (attach additional page if more than 3)

| 1) SAS 2007 Trust | | |
|---|---|---|
| Name | | |
| 200 Sky Park Drive | Monterey, | CA    93940 |
| Street Address | City | State    Zip Code |
| 2) CGS 2007 Trust | | |
| Name | | |
| 200 Sky Park Drive | Monterey, | CA    93940 |
| Street Address | City | State    Zip Code |
| 3) | | |
| Name | | |
| Street Address | City | State    Zip Code |

**6. Name, Address and Signature of Organizer:** (attach additional page if more than 1 organizer)

| Gary G. Perry, Esq. | X _____ | |
|---|---|---|
| Name | Organizer Signature | |
| 2251 FAIR OAKS BLVD., SUITE 200 | SACRAMENTO | CA    95825 |
| Address | City | State    Zip Code |

**7. Certificate of Acceptance of Appointment of Registered Agent:**

*I hereby accept appointment as Registered Agent for the above named Entity*

X _____                                    4/28/09

Authorized Signature of Registered Agent or On Behalf of Registered Agent Entity    Date

*The form must be accompanied by appropriate fees.*

Nevada Secretary of State NRS 86 Dis C Articles
Revised on 3-18-09

# EXHIBIT 93

## Wayne Boos

| | |
|---|---|
| **From:** | Gary Perry <gary@garyperrylaw.com> |
| **Sent:** | Tuesday, April 28, 2009 6:44 PM |
| **To:** | Wayne Boos |
| **Subject:** | Re: NZ/AUS |

Yes. The intent is to transfer all of it.
Sent from my Verizon Wireless BlackBerry

——Original Message——
From: Wayne Boos <wboos@BOOSCPA.com>

Date: Tue, 28 Apr 2009 18:32:09
To: 'gary@garyperrylaw.com'< gary@garyperrylaw.com >
Subject: RE: NZ/AUS

Gary, I spoke with Nick and he is going to seek advise later today on the potential transfer of SKPM shares. Is Scott also contemplating transferring his 45% interest to this new LLC as well.

Wayne W. Boos CPA

_____

Boos & Associates
Fig Garden Financial Center
5260 North Palm Avenue, Suite 120 | Fresno, California 93704
Phone (Main): 1.559.449-7688 | Phone (Direct): 1.559.408-7281
Fax (Main): 1.559.449.1934 | Fax (Direct): 1.559.408-7381
Cell: 1.559.288-2366
E-mail: wboos@booscpa.com

? Please consider the environment before printing this e-mail

——Original Message——
From: Gary Perry [mailto:gary@garyperrylaw.com]
Sent: Monday, April 27, 2009 2:18 PM
To: Wayne Boos
Cc: F. Scott Salyer; John Jiacopi
Subject: NZ/AUS

Hi Wayne: I wanted to follow up on conclusions from meeting on Friday. We need to get Nick and their counsel to prepare transfer docs to transfer NZ and Aus equities to the new Nevada LLC formed by the two 2007 trusts. I'll have all info on new entity in the morning. NZ first will go to SKPM and Scott's trust from SK Foods, LLC. With respect to the $1 million note from SKF Aviation, Scott will transfer the note to SKPM for its interest in NZ and Aus. Scott will then sell NZ and Aus to the new Nev LLC. Do you have a copy of the $1million note? Gary
Sent from my Verizon Wireless BlackBerry

1

*****Any tax advice included in this written or electronic communication was not intended or written to be used, and it cannot be used by the taxpayer, for the purpose of avoiding any penalties that may be imposed on the taxpayer by any governmental taxing authority or agency*****

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law.  If you are not the intended recipient, you should delete this message.  Any disclosure, copying, or distribution of this message, or the taking of any action based on it, is strictly prohibited.

2

# EXHIBIT 94

**Wayne Boos**

| | |
|---|---|
| **From:** | Shondale Seymour <ShondaleS@skfoods.com> |
| **Sent:** | Thursday, May 21, 2009 12:09 AM |
| **To:** | Wayne Boos |
| **Subject:** | FW: info |

Any idea what Nick is talking abou t/

**From:** Nick Frankish [mailto:NICK@cedenco.co.nz]
**Sent:** Wednesday, May 20, 2009 7:38 PM
**To:** Shondale Seymour
**Subject:** info

Shondale

I am just updating some filing in Australia, specifically the transfer of SKFA ownership from SKFLP to SKPM and SS Revoc Trust. Can you please confirm

- The registered office of SK PM Corp
- The registered address for SS Revocable trust
- Whether there was any consideration for the transfer of the 100 shares 55/45

Thanks

Nick

N   Frankish | Group CFO | Cei  nco Foods | Level 2, 12 Heather Street, Parnell, Auckland 1052. PO Box 137-337, Parnell, Auckland, 1151 | DDI: (+64 9) 362 0803 | PH: (+64 9) 362 0800 | Fax: (+64 9) 362 0806 | www.cedenco.com

1

# EXHIBIT 95

BILL OF SALE
MONTEREY PENINSULA FARMING, LLC
FOREIGN STOCK HOLDINGS
TO FAST FALCON, LLC

Monterey Peninsula Farms, LLC, ("Seller"), for consideration ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓ the receipt of which is hereby acknowledged in the form of an installment note from Fast Falcon, LLC ("Buyer") does sell, assign, transfer and convey and has delivered unto Buyer, and or its successors and assigns, all of Seller's rights, title and interests in and to that certain property as set forth below:

       100.00% of the stock of the following foreign corporations:

       SK Foods Australia Pty. Ltd. and related, subsidiary entities, and

       SK Foods International (New Zealand) and related, subsidiary entities



Buyer understands that an investment in the LLC being transferred hereby ("Units") is speculative and involves a high degree of risk, and that the Units have not been registered or qualified under the Securities Act of 1933, as amended, the securities laws of the State of California, or any other applicable blue sky laws, and that neither the Securities and Exchange Commission nor any other government office or agency have approved or disapproved the Units or passed upon or endorsed the merits of the offering for sale of the Units. Buyer represents and warrants that it (or its Trustee) is an experienced investor in unregistered and restricted securities of private companies and/or in closely held investments and companies; that it (or its Trustee) has such knowledge and experience in business and financial matters as to be capable of evaluating the merits and risks of an investment in the Units; and that it has evaluated this investment in light of its experience and agrees that Buyer will accept the substantial risks of its investment in the Units.

       Buyer acknowledges that there are substantial restrictions on the transferability of the Units, that there is no public market for the Units and none is expected to develop, and, accordingly, it may not be possible to liquidate the investment in the Company. Buyer is acquiring the Units for investment purposes for its own account only and not with a view to or for sale in connection with any distribution of all or any part of the Units. Buyer has no contract, undertaking, agreement or arrangement to sell or otherwise transfer or dispose of the Units or any portion thereof to any other person, and no other person will have any direct or indirect beneficial interest in or right to the Units.



       Buyer represents and warrants that it has: (a) made its own investigation of the Units, including all matters pertaining to the value of the Units, the Company, and the real and personal property owned by the Company, the assets and liabilities of the Company, the title to and physical condition of the Company's real property, and federal, state, county, and city laws, ordinances, rules and regulations affecting the ownership, leasing, and operation of the Company's property; (b) has not received or relied upon any representation or warranty of Seller concerning the condition or value of the Units, the Company or the Company's property; and (c) had full opportunity to ask all questions of Seller and its agents and to review all documents and other relevant information concerning the Units, the Company, and the Company's property that Buyer deems relevant in evaluating the risks of purchasing the Units, and that all such questions and all such information have been fully and completely answered or made available to Buyer to its full satisfaction.

       Buyer shall indemnify and hold harmless Seller and any of its employees, agents, attorneys, and registered representatives who was or is a party or is threatened to be made a party to any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative, or investigative, by reason of or arising from any misrepresentation or misstatement of facts or omission to represent or state facts made by Buyer herein, against losses, liabilities, and expenses (including attorneys' fees, judgments, fines, and amounts paid in settlement, payable as incurred) incurred by the indemnified person in connection with that action, suit, or proceeding.

BILL OF SALE
MONTEREY PENINSULA FARMING, LLC
FOREIGN STOCK HOLDINGS
TO FAST FALCON, LLC

Seller denies and disclaims any express or implied representation or warranty concerning the value of the Units or the operation, condition or value of the Company or the Company's property. Buyer accepts the Units transferred hereby AS IS.

IN WITNESS WHEREOF, FAST FALCON, LLC has executed this BILL OF SALE effective as of JUNE 29, 2009.

MONTEREY PENINSULA
FARMS, LLC,
GERARD A. ROSE, TRUSTEE OF
THE CAROLINE G. SALYER 1999 TRUST
THE STEFANIE A. SALYER 1999 TRUST,
AS MEMBERS:

_____

ACCEPTED:

FAST FALCON, LLC,
SCOTT SALYER,
MANAGER:

_____

# EXHIBIT 96

BILL OF SALE
MONTEREY PENINSULA FARMING, LLC
FOREIGN STOCK HOLDINGS
TO FAST FALCON, LLC

Monterey Peninsula Farms, LLC, ("Seller"), for consideration of One Million Dollars and No Cents ($1,000,000.00), the receipt of which is hereby acknowledged in the form of an installment note from Fast Falcon, LLC ("Buyer") does sell, assign, transfer and convey and has delivered unto Buyer, and or its successors and assigns, all of Seller's rights, title and interests in and to that certain property as set forth below:

100.00% of the stock of the following foreign corporations:

SK Foods Australia Pty, Ltd. and related, subsidiary entities, and

SK Foods International (New Zealand) and related, subsidiary entities



Buyer understands that an investment in the LLC being transferred hereby ("Units") is speculative and involves a high degree of risk, and that the Units have not been registered or qualified under the Securities Act of 1933, as amended, the securities laws of the State of California, or any other applicable blue sky laws, and that neither the Securities and Exchange Commission nor any other government office or agency have approved or disapproved the Units or passed upon or endorsed the merits of the offering for sale of the Units. Buyer represents and warrants that it (or its Trustee) is an experienced investor in unregistered and restricted securities of private companies and/or in closely held investments and companies; that it (or its Trustee) has such knowledge and experience in business and financial matters as to be capable of evaluating the merits and risks of an investment in the Units; and that it has evaluated this investment in light of its experience and agrees that Buyer will accept the substantial risks of its investment in the Units.

Buyer acknowledges that there are substantial restrictions on the transferability of the Units, that there is no public market for the Units and none is expected to develop, and, accordingly, it may not be possible to liquidate the investment in the Company. Buyer is acquiring the Units for investment purposes for its own account only and not with a view to or for sale in connection with any distribution of all or any part of the Units. Buyer has no contract, undertaking, agreement or arrangement to sell or otherwise transfer or dispose of the Units or any portion thereof to any other person, and no other person will have any direct or indirect beneficial interest in or right to the Units.

Buyer represents and warrants that it has: (a) made its own investigation of the Units, including all matters pertaining to the value of the Units, the Company, and the real and personal property owned by the Company, the assets and liabilities of the Company, the title to and physical condition of the Company's real property, and federal, state, county, and city laws, ordinances, rules and regulations affecting the ownership, leasing, and operation of the Company's property; (b) has not received or relied upon any representation or warranty of Seller concerning the condition or value of the Units, the Company or the Company's property; and (c) had full opportunity to ask all questions of Seller and its agents and to review all documents and other relevant information concerning the Units, the Company, and the Company's property that Buyer deems relevant in evaluating the risks of purchasing the Units, and that all such questions and all such information have been fully and completely answered or made available to Buyer to its full satisfaction.

Buyer shall indemnify and hold harmless Seller and any of its employees, agents, attorneys, and registered representatives who was or is a party or is threatened to be made a party to any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative, or investigative, by reason of or arising from any misrepresentation or misstatement of facts or omission to represent or state facts made by Buyer herein, against losses, liabilities, and expenses (including attorneys' fees, judgments, fines, and amounts paid in settlement, payable as incurred) incurred by the indemnified person in connection with that action, suit, or proceeding.

Page 1 of 2

BMO 001507

BILL OF SALE
MONTEREY PENINSULA FARMING, LLC
FOREIGN STOCK HOLDINGS
TO FAST FALCON, LLC

Seller denies and disclaims any express or implied representation or warranty concerning the value of the Units or the operation, condition or value of the Company or the Company's property. Buyer accepts the Units transferred hereby AS IS.

IN WITNESS WHEREOF, FAST FALCON, LLC has executed this BILL OF SALE effective as of JUNE 29, 2009.

MONTEREY PENINSULA
FARMS, LLC,
GERARD A. ROSE, TRUSTEE OF
THE CAROLINE G. SALYER 1999 TRUST
THE STEFANIE A. SALYER 1999 TRUST,
AS MEMBERS:                                    

ACCEPTED:

FAST FALCON, LLC,
SCOTT SALYER,
MANAGER:

BMO 001508

# EXHIBIT 97

1  BENJAMIN B. WAGNER
   United States Attorney
2  SEAN C. FLYNN
   Assistant U.S. Attorney
3  501 "I" Street, Suite 10-100
   Sacramento, California 95814
4  Telephone: (916) 554-2771

5

6

7                IN THE UNITED STATES DISTRICT COURT

8            FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10  UNITED STATES OF AMERICA,      )    CR. No. S-10-0061-GEB
                                   )
11                 Plaintiff,      )    GOVERNMENT'S SUPPLEMENTAL
                                   )    EXHIBITS IN SUPPORT OF ITS
12            v.                   )    MOTION SEEKING DEFENDANT
                                   )    FREDERICK SCOTT SALYER'S
13  FREDERICK SCOTT SALYER,        )    PRETRIAL DETENTION
                                   )
14                 Defendant.      )    Date: March 3, 2010
    ───────────────────────────────)    Time: 2:00 p.m.
15                                      Hon. Edmund F. Brennan

16       In support of its Motion Seeking Defendant Frederick Scott

17  Salyer's Pretrial Detention, the United States respectfully submits

18  to the Court the following four exhibits, which have recently been

19  obtained by the government during the course of its investigation.

20       The first document, denoted as Exhibit MM, is the four-page

21  declaration of Soraya Cayen, who was a witness to a conversation

22  between Jeanne Johnston and Scott Salyer, during which Salyer

23  instructed Johnston to remove artwork, guns and other valuables from

24  Salyer's house in Pebble Beach, California.  According to the

25  declaration, Salyer also specifically asked Ms. Cayen if she could

26  help him obtain citizenship in Brazil.

27       Additional documents, denoted as Exhibits NN, OO and PP

28  constitute additional emails from Salyer's email account that have

                              -1-

just recently been obtained by the government pursuant to a judicially authorized search warrant served on Google.   The government has been dutifully reviewing email seized pursuant to this warrant pursuant to it obligations under Comprehensive Drug Testing.   The United States believes that additional and relevant emails and documents potentially may be uncovered and brought to the Court's attention in the coming days.   Exhibit NN constitutes an email between Salyer and a Swiss banker, in which Salyer instructs the banker to transfer $3,250,000 to "Credit Andorra" so that the money can be used for the purchase of "property" or a "home" in Andorra.

Dated: March 2, 2010                    Respectfully submitted,
                                        BENJAMIN B. WAGNER
                                        U.S. ATTORNEY

                               by:   /s/ Sean C. Flynn
                                     SEAN C. FLYNN
                                     Assistant U.S. Attorney

-2-

# EXHIBIT MM

BMO 001511

1   BENJAMIN B. WAGNER
    United States Attorney
2   SEAN C. FLYNN
    MATTHEW D. SEGAL
3   Assistant U.S. Attorneys
    501 "I" Street, Suite 10-100
4   Sacramento, California 95814
    Telephone: (916) 554-2771

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,    )   No. 2:10-CR-61 GEB
                        )
12           Plaintiff,   )   DECLARATION OF SORAYA CAYEN
                        )
13        v.          )   Date: March 3, 2010
                        )   Time: 2:00 p.m.
14   FREDERICK SCOTT SALYER,   )   Hon. Edmund F. Brennan
             Defendant.   )
15   _____)

16

17   I, Soraya Cayen, hereby declare and say under penalty of perjury as

18   follows:

19       1.   I submit this declaration in relation to the above-

20   captioned case.

21       2.    I am a resident of Carmel, California. I have known

22   Scott Salyer and Jeanne Johnston for many years. Jeanne Johnston has

23   purchased jewelry from my store. I understood from Jeanne Johnston

24   that she acted as Scott Salyer's personal assistant. On occasion,

25   she told me that she was buying jewelry for gifts to be given by

26   Scott Salyer. In December 2008, Scott Salyer came with Jeanne

27   Johnston to my store to select gifts for his daughters and

28   girlfriend. Since that time, Scott Salyer has come to my store from

                                  1

1  time to time to purchase jewelry.  In addition, I have met with Scott

2  Salyer with Jeanne Johnston and others for drinks and dinner on

3  several occasions in the last year.

4      3.  On or about October 10, 2009, I arranged to meet Scott

5  Salyer and Jeanne Johnston for lunch and drinks at Cassanova

6  Restaurant in Carmel, California.  The lunch lasted for several

7  hours.

8      4.  During this luncheon, Scott Salyer told me and Jeanne

9  Johnston that he was very concerned about the contents of his home in

10  Pebble Beach.  He said that the house was for sale and that he

11  thought some of his property had been taken from the house.  He said

12  that his former wife, Lindsay Salyer, may have been taking his

13  property.  He said that he was especially concerned about artwork at

14  the house.

15      5.  At the luncheon, and in my presence, Scott Salyer asked

16  Jeanne Johnston to remove his valuables from his house for

17  safekeeping.  He told her specifically to take artwork and guns from

18  the house.  He expressed particular concern about two paintings that

19  hung above his bed.  He asked her to take those paintings from his

20  house as soon as possible.

21      6.  Scott asked Jeanne Johnston at this lunch to try to sell

22  anything she could.  He said several times that he needed money.

23      7.  At the same lunch, Scott Salyer said that he was going to

24  Paris and could not take his dog, Louis.  I offered to take care of

25  his dog for him.  After discussion between myself, Scott Salyer and

26  Jeanne Johnston, Scott Salyer decided that Jeanne's daughter would

27  take his dog.  Jeanne Johnston said that she would take care of it.

28  I said I would help Jeanne Johnston as needed.

2

1        8.   In the same luncheon, Scott Salyer talked about meeting me

2  in Rio de Janeiro, Brazil.  I had told Scott Salyer previously that

3  my family lived in Brazil.  Scott Salyer asked me if I knew anything

4  about how to get citizenship in Brazil.  I told him that I couldn't

5  help him, but I might be able to refer him to a lawyer in Brazil who

6  could help him.  He also talked about possibly establishing residence

7  in Paraguay or Uruguay.  He did not say why he wanted to establish

8  residency outside the United States.  I told him to be very careful

9  about Paraguay because I thought it was a dangerous place.

10      9.   Scott Salyer spoke about starting a business outside of the

11  United States at this luncheon.  He said he could not do business in

12  the United States anymore because of his bankruptcy.  He mentioned

13  the possibility of buying a hotel outside of the United States.

14     10.   I was shocked to learn from a Deputy Sheriff that Scott

15  Salyer had filed a police report claiming that Jeanne Johnston had

16  stolen his property.  I don't believe that Jeanne Johnston stole his

17  property because I was present when Scott Salyer told her to take the

18  property from his house.  After speaking with the deputy, I called

19  Bob Pruett.  Jeanne Johnston gave me his phone number.  I understood

20  that Bob Pruett was acting as trustee.  He also seemed to be acting

21  as Scott Salyer's personal assistant.

22     11.   In the conversation with Bob Pruett I told him that what

23  Scott Salyer said in the police report was not true — that it was not

24  what happened.  Bob Pruett said that he agreed with me.

25

26  I declare under penalty of perjury under the laws of the United

27  States of America that the foregoing is true and correct to my

28  //

3

1  personal knowledge, information, and belief.

2

3  Executed in Carmel, California, on March 1, 2010.

4

5

6  _____

7              SORAYA CAYEN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

BMO 001515

# EXHIBIT NN

BMO 001516

**Subject:** Re: transfer
**From:** ████████████████████████
**Date:** Mon, 04 Jan 2010 10:02:27 +0100
**To:** Scott Salyer <fscott.salyer@gmail.com>

Dear Scott,

Happy New Year to you! Congratulations to your new home.

Please send me a fax order with your original signature to ████████████
the bank needs your signature for such amounts. Also, name and address of the
receiving party.  Thank you so much. As soon as we have the details and the fax,
the bank will proceed.

Kind regards,

████████


-------- Original-Nachricht --------
Datum: Sat, 2 Jan 2010 01:15:23 -0800
Von: Scott Salyer <fscott.salyer@gmail.com>
An: ████████████████████████
Betreff: transfer


████████

Happy New Year .....

As we previously discussed , I have found a property to invest in and need
to transfer some $ .

Please Transfer $ 3,000,000 USD to :

SWIFT CODE : CRDAADAD
I.B.A.N. # ████████████████ B200

ADDITIONAL FUNDS SHOULD BE ARRIVING IN MARCH FOR MANAGEMENT ....

Please conform when wire has been sent .

Scott Salyer
Manager
Fast Falcon


--
Jetzt kostenlos herunterladen: Internet Explorer 8 und Mozilla Firefox 3.5 -
sicherer, schneller und einfacher! http://portal.gmx.net/de/go/chbrowser

BMO 001517

**Subject:** Fwd: transfer
**From:** Scott Salyer <fscottsalyer@gmail.com>
**Date:** Sun, 10 Jan 2010 12:26:55 -0800
**To:** Scott Salyer <fscott.salyer@gmail.com>

January 5th, 2010

Dear ████

Please transfer $ 3,250,000 from Fast Falcon account to : Credit Andorra
Area De Banca Privada ,
Av. Meritxell, 80 -AD500 Andorra LA Vella
tel 376 888 637 fax 376 888 641
ATTENTION . Xavier Bernat Gabriel
SWIFT CODE : ██████████
I.B.A.N number ███████████████ B200

Please confirm when transfer has been made.

Sincerely,

Scott Salyer
Manager Fast Falcon

On Mon, Jan 4, 2010 at 10:02 AM, ███████████████████████ > wrote:
Dear Scott,

Happy New Year to you! Congratulations to your new home.

Please send me a fax order with your original signature to ███████████ - the bank needs your signature for such amounts. Also, name and address of the receiving party. Thank you so much. As soon as we have the details and the fax, the bank will proceed.

Kind regards,

# EXHIBIT OO

BMO 001519

**Subject:** Re: Andorra 2009 Information
**From:** Scott Salyer <scott@scottsalyer.net>
**Date:** Thu, 24 Sep 2009 07:57:31 -0700
**To:** Tribune <maju23@dial.pipex.com>

Thanks 

Scott

On Thu, Sep 24, 2009 at 3:21 AM, Tribune <maju23@dial.pipex.com> wrote:
Thank you for letting me know Scott.

I spoke to Peter this morning and he is awre that the package will be arriving and will go through them upon receipt to make sure all is in order and we will let you know immediately if all is ok.

Regards.



———Original Message———

**From:** Scott Salyer
**Date:** 09/23/09 21:21:34
**To:** Tribune
**Subject:** Re: Andorra 2009 Information

My Secretary Jeannie will be sending information .

Thank You ,

Scott

On Wed, Sep 23, 2009 at 12:30 PM, Tribune <maju23@dial.pipex.com> wrote:
Thank you for your messages Scott.

Yes, absolutely, if you can send the documents you have we will go through them and check all is in order for the residency office.

It's going to be Peter who will be showing you the properties, introducing you to the banks and getting your residency in the Andorra la Vella office (I am in the UK office at the moment) and I will call Peter tomorrow to tell him to expect their arrival and to check all is in order.

Have you a mobile number we can call you on when that is done?

BMO 001520

The Andorra office details are:

Peter Lucas, Invico, Edifici Eland-Unio, 5th Floor Door 2, Carrer del Fener 11, Andorra la Vella.

The office phone number is Andorra (376) 807 970.

Regards.



————Original Message————

**From:** Scott Salyer
**Date:** 09/23/09 16:36:01
**To:** Tribune
**Subject:** Re: Andorra 2009 Information



Thank you for the information .

I have all the information you require .
Can I copy and send to you to get started ?

I will be in EU late next week or the following .

Need a physical address to overnight documents .

Scott
On Wed, Sep 23, 2009 at 3:21 AM, Tribune <maju23@dial.pipex.com> wrote:

> We can do residency for you in 45 days Scott - assuming you are a U.S. citizen?
>
> We do offer a full residency service for a nominal 500 Euros, a lawyer will often charge 6000 Euros. We have been doing residency for some 30 years and actually offer a better service than a lawyer, for example accompanying you to the residency office for the interview if you don't speak Catalan, collating and checking all the information is correct, etc. before application.
>
> When you visit Andorra as well as showing you appropriate properties we will be pleased to take the time to discuss residency, introduce you to the banks for account opening, etc.
>
> I would suggest a visit during the working week to allow the viewings and to see the banks - 48 hours in Andorra would allow the properties and

villages to be shown to you and to see the banks, discuss residency, etc.

If you wanted to organise a bank account during your forthcoming visit they will need a utility bill showing your current address and to see your passport, along with a letter from your bank showing you are a client of theirs (this can be addressed 'To Whom It May Concern').

Part of an application for residency involves a certificate of good conduct from the police. This can often be the longest part of the residency application so it might be worth applying for dependent upon when you are thinking of taking residency, but worth bearing in mind also is that the Andorra residency office will accept it only up to 90 days from the date on the certificate.

If you are a U.S. citizen and your passport shows you were born in the U.S. just apply to where you are living at the moment (your local police station or perhaps their HQ should be able to provide the application form), but if your passport shows you were born elsewhere you will need one from there too - I will be happy to advise on this before your visit if it doesn't look straightforward so you can have things in hand if you were considering residency.

Regards.

Tribune Properties

——Original Message——

*From:* Scott Salyer
*Date:* 09/22/09 22:58:54
*To:* Tribune
*Subject:* Re: Andorra 2009 Information



Thank you for the excellent report .
How long does it take to get residency ?
Assuming , the prospect meets all the requirements ?

Interested in your Principality ...

Scott

BMO 001522

On Tue, Sep 22, 2009 at 12:13 PM, Tribune <maju23@dial.pipex.com>
wrote:

Thank you for your message Scott, and please find attached our
Andorra A-Z.

Are you hoping still to visit Andorra in the next month or two?

Regards.

████████

Tribune Properties

———Original Message———

*From:* Scott Salyer
*Date:* 22/09/2009 15:10:56
*To:* Tribune
*Subject:* Re: Andorra 2009 Information

████

That would be very helpful,

Thank you ,

Scott

On Tue, Sep 22, 2009 at 6:13 AM, Tribune <maju23@dial.pipex.com>
wrote:

Mr. Salyer,

We produce a small guide to Andorra called Andorra A-Z, and
this has information about buying property in Andorra,
residency, health care, bank account opening, etc.

If you would like a copy just let me know and I will e-mail it to
you.

Regards.

████████

Tribune Properties

3/1/2010 3:35 PM

BMO 001523

# EXHIBIT PP

**Subject:** RE: Documents
**From:** "Xavier BERNAT GABRIEL" <xbernat@creditandorra.ad>
**Date:** Thu, 28 Jan 2010 19:34:30 +0100
**To:** "Scott Salyer" <fscott.salyer@gmail.com>

Dear Mr Salyer,

Thank you for your visit, it was a pleasure to meet and discuss. Could you please fill and send by fax or email the document that I attach in this email. It's only for our records.

Kind regards,

Xavier Bernat
Crèdit Andorrà
Av. Meritxell, 80
AD500 Andorra la Vella
Andorra

████████████████

email: xbernat@creditandorra.ad

**De:** Scott Salyer [mailto:fscott.salyer@gmail.com]
**Enviado el:** jue 28/01/2010 12:55
**Para:** Xavier BERNAT GABRIEL
**Asunto:** Re: Documents

Xavier

Thank you for the meeting and speedy service .

Peter said , you needed some document signed .

I plan to return in next ten days to close property papers .

Asked bank to resend letter of recommendation and will be meeting with former Deloitte accountant to get letter and paper work .

See you soon ,

Scott

On Wed, Jan 27, 2010 at 1:40 AM, Xavier BERNAT GABRIEL <xbernat@creditandorra.ad> wrote:
Dear Mr Salyer,

In order to complete the information related to the account, I remember you the information that we need:

- A letter of recomendation of another bank
- The documents related to the company which sent the money

Thanks for your help.

BMO 001525

Kind regards,

Xavier Bernat
Crèdit Andorrà
Av. Meritxell, 80
AD500 Andorra la Vella
Andorra
█████████████████

email: xbernat@creditandorra.ad

--

Scott Salyer

|  | Content-Description: | W9.pdf |
| W9.pdf | Content-Type: | application/pdf |
|  | Content-Encoding: | base64 |

3/1/2010 3:23 PM

BMO 001526

**Subject:** Re: transfer
**From:** Scott Salyer <fscott.salyer@gmail.com>
**Date:** Tue, 19 Jan 2010 13:47:58 -0800
**To:** Xavier BERNAT GABRIEL <xbernat@creditandorra.ad>

Xavier

Thank you .

I'll be at your office Tuesday at 11:30am .

Scott

On Tue, Jan 19, 2010 at 4:24 AM, Xavier BERNAT GABRIEL <xbernat@creditandorra.ad> wrote:
Dear Mr Salyer,

I will have for you the platinum. If it's possible for you, we can meet at 11h30 on tuesday.

kind regards,

Xavier Bernat
Crèdit Andorrà
Av. Meritxell, 80
AD500 Andorra la Vella
Andorra
██████████

email: xbernat@creditandorra.ad


**De:** Scott Salyer [mailto:fscott.salyer@gmail.com]
**Enviado el:** lun 18/01/2010 23:27

**Para:** Xavier BERNAT GABRIEL
**Asunto:** Re: transfer

Xavier

If you could get a Platinum card ,that would be great .
Look forward to seeing you next week , Monday or Tuesday .

Thank you ,

Scott
On Mon, Jan 18, 2010 at 8:43 AM, Xavier BERNAT GABRIEL <xbernat@creditandorra.ad>
wrote:
Dear Mr Salyer,

I will have for next week your credit card. Do you prefer a platinum or a gold card? we have also
a Visa Unicef Card if you prefer.

Please tell us in advance when you expect to come to see us next week.

BMO 001527

Also, if you need that we book a hotel or a taxi from the airport for you, please tell us.

Best regards,

Xavier Bernat
Crèdit Andorrà
Av. Meritxell, 80
AD500 Andorra la Vella
Andorra

email: xbernat@creditandorra.ad

**De:** Scott Salyer [mailto:fscott.salyer@gmail.com]
**Enviado el:** sáb 16/01/2010 21:25

**Para:** Xavier BERNAT GABRIEL
**Asunto:** Re: transfer

Xavier

Just a secure return that remains liquid for 30days notice , as I plan to be investing all or part of the money in real estate .

Long term intention is to stay with your Bank .

Another request , could you arrange a credit card ?

I will be converting some of this money to euro's in the next 30-60 days , so will need your Bank assistance .

Planning a visit to your City week of January 25th .

Hope to catch up for a visit ,

Scott

On Mon, Jan 11, 2010 at 9:51 AM, Xavier BERNAT GABRIEL <xbernat@creditandorra.ad> wrote:
  Dear Mr Salyer,

  In order to give you a good recomendation, could you tell me which objective do you have with this amount? Which type of risk are you looking for?

  Kind regards,

  Xavier Bernat
  Crèdit Andorrà
  Av. Meritxell, 80
  AD500 Andorra la Vella
  Andorra

BMO 001528

Case5:11-mc-80133-EJD   Document37-4   Filed09/02/11   Page38 of 85

**De:** Scott Salyer [mailto:fscott.salyer@gmail.com]
**Enviado el:** sáb 09/01/2010 11:06
**Para:** Xavier BERNAT GABRIEL
**Asunto:** Re: transfer

Xavier

Thank You ,

Scott

On Fri, Jan 8, 2010 at 9:59 AM, Xavier BERNAT GABRIEL <xbernat@creditandorra.ad>
wrote:

Dear Mr. Salyer,

We have received your transfer. I wish you a good weekend.

Kind regards,

Xavier Bernat
Crèdit Andorrà
Av. Meritxell, 80
AD500 Andorra la Vella
Andorra

**De:** Scott Salyer [mailto:fscott.salyer@gmail.com]
**Enviado el:** mié 06/01/2010 21:47
**Para:** Xavier BERNAT GABRIEL
**Asunto:** transfer

Xavier

As we discussed , I will be transferring money into my new account .
The wire should arrive in USD tomorrow ( Thursday 01-07-2010 ) .

Let me know options for funds once received .

Scott Salyer

—

Scott Salyer

3/1/2010 3:23 PM

BMO 001529

\-\-
Scott Salyer


\-\-
Scott Salyer


\-\-
Scott Salyer

BMO 001530

# EXHIBIT 98

2010-02016
FILED
March 20, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0002497943

**3 PAGES**

Gregory C. Nuti (CSBN151754)
E-Mail: gnuti@schnader.com
Kevin W. Coleman (CSBN 168538)
E-Mail: kcoleman@schnader.com
Michael M. Carlson (CSBN 088048)
E-Mail: mcarlson@schnader.com
Kathryn N. Richter (CSBN 100129)
E-Mail: krichter@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
One Montgomery Street, Suite 2200
San Francisco, California 94104-5501
Telephone: 415-364-6700
Facsimile: 415-364-6785

John K. Gisleson (Pro Hac Vice)
E-Mail:jgisleson@schnader.com
Keith E. Whitson (Pro Hac Vice)
E-Mail: kwhitson@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
Fifth Avenue Place
120 Fifth Avenue, Suite 2700
Pittsburgh, Pennsylvania 15222-3001
Telephone: 412-577-5200
Facsimile: 412-765-3858

Attorneys for
Chapter 11 Trustee, Bradley D. Sharp

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| IN RE: | )Case No. 09-29162-D-11 |
| | ) |
| SK FOODS, L.P., A CALIFORNIA LIMITED PARTNERSHIP, | )Chapter 11 |
| | ) |
| DEBTOR. | )DC No. SH-1 |
| | ) |
| | )PRELIMINARY INJUNCTION |
| | )[Revised Proposed Order] |
| | ) |
| | )Date:   March 18, 2010 |
| | )Time:  1:30 p.m. |
| | )Place:  Dept. D, 6th Floor, Courtroom 34 |
| | )          501 I Street, Sacramento, CA |
| | ) |
| | ) |
| | ) |
| CAPTION CONTINUED ON NEXT PAGE | ) |

RECEIVED
March 19, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002497943

NARY INJUNCTION

PHDATA 3282129_1

BMO 001545

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785

| | |
|---|---|
| BRADLEY D. SHARP, et al., | ) |
| Plaintiff, | ) AP NO. 09-02692 D |
| vs. | ) |
| SSC Farms I, LLC, et al., | ) |
| Defendants. | ) |
| BRADLEY D. SHARP, et al. | ) AP NO. 10-02014 D |
| Plaintiff, | ) |
| vs. | ) |
| SCOTT SALYER as trustee of the Scott Salyer Revocable Trust, et al., | ) |
| Defendants. | ) |
| BRADLEY D. SHARP, et al., | ) AP NO. 10-02016 D |
| Plaintiff, | ) |
| vs. | ) |
| SKF AVIATION, LLC, et al., | ) |
| Defendants. | ) |

**TO: ALL DEFENDANTS IN THE ABOVE-CAPTIONED ADVERSARY PROCEEDINGS ("YOU") AND THEIR COUNSEL:**

YOU, YOUR officers, YOUR agents, servants, employees and attorneys (with respect to attorneys only, excluding monies received or to be received for fees and costs) and those in active concert or participation with YOU or them (the "Enjoined Entities") ARE HEREBY RESTRAINED AND ENJOINED from selling, transferring, encumbering or moving to any location outside of California, except upon application to this Court with good cause shown, any and all assets that had been transferred to YOU by or through SK Foods, including but not limited to real property purportedly titled in the name of SSC Farming, LLC, SSC Farms I, LLC

2

PRELIMINARY INJUNCTION

PHDATA 3282129_1

1  and SSC Farms II, LLC, and all funds transferred to YOU as described in the Complaints in the

2  above-captioned adversary proceedings (collectively the "Assets"). The Enjoined Entities may

3  make payments in the ordinary course of business for regular salaries, lease payments, mortgage

4  payments or utilities that become due and payable. The request for a preliminary injunction was

5  denied in the matter docketed at AP No. 10-02015.

6      This Order is granted on the 18th day of March 2010, upon consideration of the Motion

7  of Bradley D. Sharp, Chapter 11 Trustee of SK Foods, LP for a preliminary injunction, the

8  submissions and declarations in support of that Motion, and the Opposition and submissions of

9  the Defendants in response to that Motion, and after affording the parties a hearing, and good

10  cause having been shown.

11      The Court finds that the Trustee has demonstrated a likelihood of success on the merits of

12  his claims in the above-captioned adversary proceedings. The Court further finds that the

13  Trustee has demonstrated a likelihood of immediate, irreparable harm if the requested relief is

14  not granted. The Court further finds that no other remedies would provide appropriate relief.

15  The Court further finds that the balance of equities weighs in favor of granting an injunction and

16  that an injunction is in the public interest.

17      This Injunction constitutes a continuation, without interruption, of the restraints and

18  injunctions imposed upon the Enjoined Entities by this Court's March 11, 2010 Temporary

19  Restraining Order and Order to Show Cause Re Preliminary Injunction.

20      This Injunction shall continue in effect until modified or terminated by the Court.

21      Pursuant to Fed. R. Bankr. P. 7065, the Trustee is not required to file an undertaking, and

22  this Injunction is immediately effective.

23

24  Dated: March 20, 2010

25

26                                          _Robert Bardwil_

27                                          **Robert S. Bardwil, Judge**
                                            **United States Bankruptcy Court**

28

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785

3

PRELIMINARY INJUNCTION

PHDATA 3282129_1

# EXHIBIT 99

2009-02692
FILED
October 13, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002990582

1   MALCOLM S. SEGAL -SBN 075481
    JAMES R. KIRBY II - SBN 088911
2   JAMES P. MAYO - SBN 169897
    SEGAL & KIRBY LLP
3   770 L Street, Suite 1440
    Sacramento, CA 95814
4   Telephone: (916) 441-0828

5   STEVEN H. FELDERSTEIN, SBN 056978
    PAUL J. PASCUZZI, SBN 148810
6   TANIA M. MOYRON SBN 235736
    FELDERSTEIN FITZGERALD
7   WILLOUGHBY & PASCUZZI LLP
    400 Capitol Mall, Suite 1450
8   Sacramento, California 95814
    Telephone: (916) 329-7400
9   Facsimile: (916) 329-7435

10  Attorneys for Defendants Scott Salyer, Scott Salyer individually and
    as Trustee of the Scott Salyer Revocable Trust, and the Scott Salyer
11  Revocable Trust

12  ANDREA M. MILLER, State Bar No. 88992
    NAGELEY MEREDITH & MILLER, INC.
13  8001 Folsom Boulevard, Suite 100
    Sacramento, CA 95826
14  Telephone: (916) 386-8292
    Facsimile: (916) 386-8952
15  amiller@nmlawfirm.com

16  Attorneys for Defendants SK PM Corp., SK Foods, LLC, SKF
    Canning, LLC, Blackstone Ranch Corporation, Monterey Peninsula
17  Farms, LLC, Salyer Management Company, LLC, SK Farms Services,
    LLC, SK Frozen Foods, LLC, SS Farms, LLC, SSC Farming, LLC,
18  SSC Farms I, LLC SSC Farms II, LLC and SSC Farms III, LLC, SKF
    Aviation, LLC and CSSS, LP d/b/a Central Valley Shippers

19

## UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re: | CASE NO.: 09-29162-D-11 |
| SK FOODS, LP, a California limited partnership, et al., | Chapter 11<br>DCN: FWP-1 |
| Debtors. | **ORDER ON DEFENDANTS' MOTION TO MODIFY PRELIMINARY INJUNCTION** |
| | Date:   **July 22, 2010**<br>Time:   **10:00 a.m.**<br>Place:   **6th Floor, Courtroom 34** |

RECEIVED
October 11, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002990582

-1-

| | |
|---|---|
| Bradley D. Sharp, et al., | Adv. Proc. No.: 09-02692 |
|                 Plaintiff, | DCN:  FWP-1 |
| v. | |
| SSC Farms, I, LLC, et al., | |
|                 Defendants. | |
| Bradley D. Sharp, et al., | Adv. Proc. No.: 10-02014 |
|                 Plaintiff, | DCN:  FWP-1 |
| v. | |
| SCOTT SALYER as trustee of the Scott Salyer Revocable Trust, et al., | |
|                 Defendants. | |
| Bradley D. Sharp, et al., | Adv. Proc. No.: 10-02016 |
|                 Plaintiff, | DCN:  FWP-1 |
| v. | |
| SKF Aviation, LLC, et al., | |
|                 Defendants. | |

A hearing was held on July 7, 2010, at 10:00 a.m., and a continued hearing on July 22, 2010, before the Honorable Robert S. Bardwil, United States Bankruptcy Judge for the Eastern District of California, Sacramento Division, to consider the motion (the "Motion") filed by Defendants Scott Salyer individually and as Trustee of  the Scott Salyer Revocable Trust, the Scott Salyer Revocable Trust, SK PM Corp., SK Foods, LLC, SKF Canning, LLC, Blackstone Ranch Corporation, Monterey Peninsula Farms, LLC, Salyer Management Company, LLC, SK Farms Services, LLC, SK Frozen Foods, LLC, SS Farms, LLC, SSC Farming, LLC, SSC Farms I, LLC, SSC Farms II, LLC, SSC Farms III, LLC, SKF Aviation, LLC, and CSSS, LP d/b/a Central Valley Shippers (collectively, the "Defendants"), to modify the preliminary injunction, entered by the Court on March 20, 2010 (the "Preliminary Injunction"), to allow Defendant SSC Farming to sell real property and to hold the sale proceeds subject to the terms of the Injunction. The Court's findings of fact and conclusions of law were as stated at the hearing.  Appearances were as noted on the record.

BMO 001532

Upon consideration of the Motion, and all papers filed in support of the Motion, including, but not limited to, the memorandum of points and authorities and the declaration of Robert Pruett filed in support thereof, the limited opposition (the "Limited Opposition") to the Motion filed by Bradley D. Sharp (the "Trustee") as the Chapter 11 Trustee of SK Foods, L.P., a California limited partnership and RHM Industrial/Specialty Foods, Inc., a California Corporation, d/b/a Colusa County Canning Co., the reply to the Limited Opposition and the declarations of Pat Laughlin and Thomas Charter in support thereof, upon consideration of the arguments and representations made by counsel at the hearing, it appearing that notice of the hearing on the Motion was appropriate under the circumstances, and other good cause appearing, it is hereby Ordered as follows:

1. The Motion is hereby granted as provided herein;

2. The Preliminary Injunction shall be, and it is hereby, modified to allow SSC Farming to sell real property commonly known as 18-090-004, 008 and 009 and 18-080-038, in Colusa County, California (collectively, the "Properties");

3. Notwithstanding the Preliminary Injunction, SSC Farming is authorized to sell the Properties to T & P Farms (the "Sale") substantially in accordance with the terms of the contracts for sale attached hereto as Exhibit A;

4. The title company handling the Sale is authorized to pay from the sale proceeds the items listed on the closing statements attached hereto as Exhibit B;

5. SSC Farming is hereby authorized to make payments from the net sale proceeds (the "Sale Proceeds") for regular salaries, lease payments, mortgage payments or utilities of SSC Farming, incurred by it, in the ordinary course of its business, that become due and payable, up to the amounts listed on the budget attached hereto as Exhibit C for the months of August through December 31, 2010, without prejudice to further requests to use the Sale Proceeds; SSC Farming will maintain records adequate to verify these payments and will provide copies of those records to the Trustee on a monthly basis; and

6. The remaining Sale Proceeds shall be held by SSC Farming in a separate account, subject to the terms of the Preliminary Injunction, and no withdrawals will be made from that

ORDER ON DEFENDANTS' MOTION
TO MODIFY PRELIMINARY INJUNCTION

separate account without further order of the Court.  Specifically, the Sale Proceeds may not be used to pay the expense of any entity other than SSC Farming or to pay expenses other than those specified in Paragraph 5, without further order of the Court.

7.    The 14 day stay provided in Federal Rule of Bankruptcy Procedure 6004(h), to the extent applicable, is hereby waived.

APPROVED AS TO FORM:

SCHNADER HARRISON SEGAL & LEWIS LLP

_Michael A. Carlson_

Michael Carlson
Attorneys for Bradley D. Sharp
Chapter 11 Trustee

Dated:   October 13, 2010

_Robert Bardwil_

Robert S. Bardwil, Judge
United States Bankruptcy Court

-4-

ORDER ON DEFENDANTS' MOTION
TO MODIFY INJUNCTION

# EXHIBIT A

BMO 001535

## STROMER REALTY COMPANY OF CALIFORNIA
### SALES AGREEMENT AND DEPOSIT RECEIPT

Received from ___T & P Farms and/or assignees___                    Yuba City, California  September 10, 2009

Fifty Thousand and no/100------------------------------------------------------------------------- Dollars ($50,000)   the sum of

evidenced by cash ☐, personal check ☒, cashier's check ☐, or ___to be held uncashed until Seller's acceptance___
as a deposit on the purchase of the following described real property, situated in the City of __unincorporated__, County of Colusa__
State of California, to-wit:

__642.81 acres, m/l – Rice ranch located on Ohm Road and further known as assessor parcel numbers:__
__18-090-004 (321 acres), 18-090-008 (163.50 acres), 18-090-009 (158.31 acres).__

Legal description to follow and become a part hereof.
Additional Deposit of __See Exhibit A__ to be made at our office on acceptance of this offer. Subject to any restrictions, reservations,
zones, easements or set-back lines now existing or of record, and subject to existing tenancy for the purchase price of:
__Three Million Two Hundred Fourteen Thousand and Fifty & No/100-------------------------------($3,214,050) Dollars__
The balance of the purchase price is to be paid within __See Exhibit A__ days from date of acceptance, as follows, to-wit:

## PLEASE SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Possession to be given buyer          after close of escrow
AND IT IS HEREBY AGREED

1. That in the event the title to said property shall not prove merchantable and said seller shall not perfect or be able to perfect the same, within reasonable time from this date, the buyer shall have the option of demanding and receiving back said deposit and shall be released from all obligation hereunder.
2. That in the event the seller fails to accept in writing the offer to purchase herein contained within a period of ____Five (5)____ days from date of this offer shall at buyer's election immediately become null and void and said deposit shall be returned to purchaser on demand.
3. That the evidence of title is to be in the form of a title insurance policy issued by a responsible title company and to be furnished and paid for by the __SEE ATTACHED EXHIBIT "A"__
4. That in the event the improvements on said premises should be destroyed or materially damaged between the dates hereof and consummation or settlement of this purchase, this contract shall at buyer's election immediately become null and void and said deposit shall be returned to said buyer on demand.
5. That the taxes for the current fiscal year ending June 30th, following this date, and insurance acceptable to purchasers, rents and other expenses of said property shall be pro-rated from the date of delivery of deed or final contract of sale, and that the property is sold subject to approval of owner.
6. That the Buyer has investigated the said premises and the Broker and his agents, and the Seller are hereby released from any and all responsibility regarding the valuation thereof, and neither Buyer, Seller, Broker nor his agents shall be bound by any understanding, agreement, promise, or representation, express or implied, not specified herein.
7. If Buyer fails to complete said purchase as herein provided by reason of any default of Buyer, Seller shall be released from his obligation to sell the property to Buyer and may proceed against Buyer upon any claim or remedy which he may have in law or equity; provided, however, that by placing their initials here Buyer: ( ✓ _P.C_ )
Seller: ( ) agree that Seller shall retain the deposit as his liquidated damages.

Deed to be drawn as follows:

Instructions to follow in escrow.

**STROMER REALTY COMPANY OF CALIFORNIA**
591 Colusa Ave., Yuba City, CA 95991
(530) 671-2770

By: _____
Real Estate Broker – Pat Laughlin

I agree to purchase the above-described property on the terms and conditions herein stated. I have read the aforementioned provisions and they are entirely acceptable to me.

Address _PO. Box 830, 1241 Putnam Way_   X ✓ _____
Buyer – T & P Farms and/or assignees

Yuba City,   California   September 10, 2009

I agree to sell the above described property on the terms and conditions herein stated and agree to pay the above signed broker as commission the sum of __Five percent (5%) of the sales price.__
I have read the aforementioned provisions and they are entirely acceptable to me.

Seller_____
Gerard Rose - Trustee

Page 1 of 2

**EXHIBIT A**

**642.81 Assessed Acres, m/l – Rice Ranch**

**September 10, 2009 - Colusa County, California**

A)   Purchase price to be $3,214,050 all cash including the deposit.

B)   Buyer to deposit $50,000 into escrow on acceptance. At the end of the Buyer's twenty (20) day due diligence period, the $50,000 deposit will be increased to $150,000. The $150,000 is non-refundable but will credit toward the purchase price at close of escrow. If this transaction does not close within thirty (30) days, due to Seller's default, this deposit shall be immediately returned to Buyer. Additionally should Buyer not approve of his due diligence studies, the deposit will be returned to Buyer immediately upon Buyer's request.

C)   Prior to the $150,000 deposit going non-refundable to Seller, the Lis Pendens will be removed from the property. The property will also be free and clear of any liens regarding the SK Foods Bankruptcy at close of escrow.

D)   Escrow shall close within thirty (30) days of contract acceptance. The title company shall be Western Title Company, with documentary transfer taxes; CLTA Policy of Title Insurance; escrow, notary, recording, and document preparation fees being borne equally between the Seller and the Buyer.

E)   Upon acceptance of this contract a Memorandum of the Sales Agreement and Deposit Receipt will be recorded on the property.

F)   Seller shall fully cooperate with the Buyer in the execution of an Internal Revenue IRC Section 1031 tax deferred exchange on the behalf of the Buyer without any additional costs, expenses, and liabilities on behalf of the Seller.

G)   Buyer shall fully cooperate with the Seller in the execution of an Internal Revenue IRC Section 1031 tax deferred exchange on the behalf of the Seller without any additional costs, expenses, and liabilities on behalf of the Buyer.

H)   Buyer agrees it is purchasing the property and improvements in their "AS IS" "WHERE IS" condition and no representations, warranties, or guaranties whether expressed or implied by the Seller, Buyer, or their respective agents or brokers shall survive the close of escrow. This agreement shall be binding on and inure to for the benefit of the Buyers and Sellers respective heirs, successors, and assigns.

I)   Sale shall include all pumps, wells, irrigation equipment, pumping plant, water rights, FSA base, 50% of the mineral, oil, & gas rights owned by Seller, and all other rights associated with the property. In addition the sale will also include all boxes, pipes, and blinds associated with the property.

J)   Buyer shall have twenty (20) days after acceptance to make such due diligence inspections and investigations regarding the property and improvements as Buyer shall solely deem appropriate. Such investigations may include, but shall not be limited to. engineering and environmental studies, soil testing, surveys, leases, the zoning of or ability to rezone the property and improvements, access to the property and secure tax improvements, ability to secure financing for the property and improvements, ability to credits, and such other studies, inspections, reviews and economic analyses as Buyer shall require or deem appropriate to determine the feasibility and desirability to Buyer to own, lease, farm, develop, and/or sell the property and improvements. Buyer's inspections and investigations as set forth herein, is an express condition precedent to Buyer's obligations to close escrow. In the event Buyer notifies Seller in writing of its disapproval of any one of the aforementioned conditions to close of escrow prior to twenty (20) days after acceptance, this agreement shall automatically and immediately terminate. If Buyer has not notified Seller in writing of its disapproval of such matters on or before closing of business prior to twenty (20) days, it shall conclusively be deemed to have approved them. Upon the termination of this agreement, as a result of Buyer's disapproval of any of the foregoing conditions, neither party shall have any right, claim, cause of action or incur any liability in connection with Buyer exercising its rights as herein granted, and Buyer shall, in such event, receive a full and immediate refund of any and all monies in escrow, together with accrued interest thereon. Buyer and its agents shall not lien or encumber the property and improvements and shall defend, indemnify and hold Seller and its agents harmless from all costs, expenses, and liabilities including attorneys' fees and expert witness fees incurred in connection with Buyer's inspections and investigations hereunder.





BMO 001537

**STROMER REALTY COMPANY OF CALIFORNIA**
**SALES AGREEMENT AND DEPOSIT RECEIPT**

Received from   T & P Farms and/or assignees                    Yuba City , California  September 10, 2009    ,
                                                                                                    the sum of
Twenty-Five Thousand and no/100———————————————————————————— Dollars ($25,000)
evidenced by cash ☐ , personal check ☒ , cashier's check ☐ , or   to be held uncashed until Seller's acceptance
as a deposit on the purchase of the following described real property, situated in the City of _unincorporated__, County of Colusa__
State of California, to-wit:
229.09 assessed acres, m/l – Row Crop ranch located on Lone Star Road and further known as assessor's parcel
number 18-080-038.
Legal description to follow and become a part hereof.
Additional Deposit of See Exhibit A to be made at our office on acceptance of this offer. Subject to any restrictions, reservations,
zones, easements or set-back lines now existing or of record, and subject to existing tenancy for the purchase price of:
One Million One Hundred Forty Five Thousand Four Hundred Fifty & No/100——————————($1,145,450) Dollars
The balance of the purchase price is to be paid within See Exhibit A days from date of acceptance, as follows, to-wit:

**PLEASE SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF.**

Possession to be given buyer        after close of escrow
AND IT IS HEREBY AGREED
1.  That in the event the title to said property shall not prove merchantable and said seller shall not perfect or be able to perfect the
    same, within reasonable time from this date, the buyer shall have the option of demanding and receiving back said deposit and
    shall be released from all obligation hereunder.
2.  That in the event the seller fails to accept in writing the offer to purchase herein contained within a period of ____Five (5)____
    days from date of this offer shall at buyer's election immediately become null and void and said deposit shall be returned to
    purchaser on demand.
3.  That the evidence of title is to be in the form of a title insurance policy issued by a responsible title company and to be furnished
    and paid for by the  SEE ATTACHED EXHIBIT "A"
4.  That in the event the improvements on said premises should be destroyed or materially damaged between the dates hereof and
    consummation or settlement of this purchase, this contract shall at buyer's election immediately become null and void and said
    deposit shall be returned to said buyer on demand.
5.  That the taxes for the current fiscal year ending June 30th, following this date, and insurance acceptable to purchasers, rents and
    other expenses of said property shall be pro-rated from the date of delivery of deed or final contract of sale, and that the property
    is sold subject to approval of owner.
6.  That the Buyer has investigated the said premises and the Broker and his agents, and the Seller are hereby released from any and
    all responsibility regarding the valuation thereof, and neither Buyer, Seller, Broker nor his agents shall be bound by any
    understanding, agreement, promise, or representation, express or implied, not specified herein.
7.  If Buyer fails to complete said purchase as herein provided by reason of any default of Buyer, Seller shall be released from
    his obligation to sell the property to Buyer and may proceed against Buyer upon any claim or remedy which he may have
    in law or equity; provided, however, that by placing their initials here Buyer: ( ✓  P.C.  )
    Seller: (          ) agree that Seller shall retain the deposit as his liquidated damages.

          Deed to be drawn as follows:
                                             **STROMER REALTY COMPANY OF CALIFORNIA**
     Instructions to follow in escrow.             591 Colusa Ave., Yuba City, CA 95991
                                                        Real Estate Broker

                                    By: _____
                                             Real Estate Broker – Pat Laughlin

I agree to purchase the above-described property on the terms and conditions herein stated. I have read the aforementioned provisions
and they are entirely acceptable to me.

Address  P.O. Box 83/ 1741 Putman Way   X  ✓ _____
                                                  Buyer – T & P Farms and/or assignees

                                             Yuba City,   California      September 10, 2009

I agree to sell the above described property on the terms and conditions herein stated and agree to pay the above signed broker as
commission the sum of  Five percent (5%) of the sales price.
I have read the aforementioned provisions and they are entirely acceptable to me.

                                    Seller_____
                                             Gerard Rose - Trustee

Page 1 of 2

**EXHIBIT A**

**229.09 Assessed Acres, m/l – Row Crop Ranch**
**September 10, 2009 - Colusa County, California**

A)   Purchase price to be $1,145,450 all cash including the deposit.

B)   Buyer to deposit $25,000 into escrow on acceptance.  At the end of the Buyer's
     twenty (20) day due diligence period, the $25,000 deposit will be increased to $50,000.
     The $50,000 is non-refundable but will credit toward the purchase price at close of escrow.
     If this transaction does not close escrow within thirty (30) days, due to Seller's default, this
     deposit shall be immediately returned to Buyer.  Additionally should Buyer not approve of
     his due diligence studies, the deposit will be returned to Buyer immediately upon Buyer's
     request.

C)   Prior to the $50,000 deposit going non-refundable to Seller, the Lis Pendens will be
     removed from the property.  The property will also be free and clear of any liens regarding
     the SK Foods Bankruptcy at close of escrow.

D)   Escrow shall close within thirty (30) days of contract acceptance.  The title company
     shall be Western Title Company, with documentary transfer taxes; CLTA  Policy of Title
     Insurance; escrow, notary, recording, and document preparation fees being borne equally
     between the Seller and the Buyer.

E)   Upon acceptance of this contract a Memorandum of the Sales Agreement and Deposit
      Receipt will be recorded on the property.

F)   Seller shall fully cooperate with the Buyer in the execution of an Internal Revenue IRC
     Section 1031 tax deferred exchange on the behalf of the Buyer without any additional
     costs, expenses, and liabilities on behalf of the Seller.

G)   Buyer shall fully cooperate with the Seller in the execution of an Internal Revenue IRC
     Section 1031 tax deferred exchange on the behalf of the Seller without any additional
     costs, expenses, and liabilities on behalf of the Buyer.

H)   Buyer agrees it is purchasing the property and improvements in their "AS IS"
     "WHERE IS" condition and no representations, warranties, or guaranties whether
     expressed or implied by the Seller, Buyer, or their respective agents or brokers shall
     survive the close of escrow.  This agreement shall be binding on and inure to for the
     benefit of the Buyers and Sellers respective heirs, successors, and assigns.

I)   Sale shall include all pumps, wells, irrigation equipment, pumping plant, water rights,
     FSA base, 50% of the mineral, oil, & gas rights owned by Seller, and all other rights
     associated with the property.   In addition the sale will also include all boxes, pipes,
     and blinds associated with the property.

J)   Buyer shall have twenty (20) days after acceptance to make such due diligence
     inspections and investigations regarding the property and improvements as Buyer shall
     solely deem appropriate.  Such investigations may include, but shall not be limited
     to, engineering and environmental studies, soil testing, surveys, leases, the zoning of or
     ability to rezone the property and improvements, access to the property and secure tax
     improvements, ability to secure financing for the property and improvements, ability to
     credits, and such other studies, inspections, reviews and economic analyses as Buyer shall
     require or deem appropriate to determine the feasibility and desirability to Buyer to own,
     lease, farm, develop, and/or sell the property and improvements.  Buyer's inspections and
     investigations as set forth herein, is an express condition precedent to Buyer's obligations
     to close escrow.  In the event Buyer notifies Seller in writing of its disapproval of any one
     of the aforementioned conditions to close of escrow prior to twenty (20) days after
     acceptance, this agreement shall automatically and immediately terminate.  If Buyer has
     not notified Seller in writing of its disapproval of such matters on or before closing of
     business prior to twenty (20) days, it shall conclusively be deemed to have approved
     them.  Upon the termination of this agreement, as a result of Buyer's disapproval of any
     of the foregoing conditions, neither party shall have any right, claim, cause of action or
     incur any liability in connection with Buyer exercising its rights as herein granted, and
     Buyer shall, in such event, receive a full and immediate refund of any and all monies in
     escrow, together with accrued interest thereon.  Buyer and its agents shall not lien or
     encumber the property and improvements and shall defend, indemnify and hold Seller
     and its agents harmless from all costs, expenses, and liabilities including attorneys' fees
     and expert witness fees incurred in connection with  Buyer's inspections and investigations
     hereunder.



**Page 2 of 2**

# EXHIBIT B

BMO 001540

# Western Title Colusa County

Colusa, CA 95932

(530) 458-5161

## SELLER'S CLOSING STATEMENT
### ESTIMATED

| | |
|---|---|
| **Seller:** SSC Farming LLC a California Limited Liability Co. | **Escrow No:** 00072763-001-HM |
| | Close Date: |
| | Proration Date: |
| | Date Prepared: 10/07/2010 |

Property Address: **18-090-04, 18-090-08 and 18-090-09**
**Colusa County, CA**

| Description | Debit | Credit |
|---|---|---|
| **TOTAL CONSIDERATION:** | | |
| Total Consideration | | 3,214,050.00 |
| | | |
| **PRORATIONS AND ADJUSTMENTS:** | | |
| County Taxes          From 7/1/2010 To 10/22/2010 | 10,250.38 | |
| Based on Semi-Annual amount of $16,554.81 | | |
| | | |
| **PAYOFFS:** | | |
| Payoff to Equitable Life Insurance | 1,508,006.70 | |
| $1,501,569.60    Principal Balance | | |
| $3,669.60    Interest | | |
| From 10/6/2010 To 10/22/2010 | | |
| $2,767.50    Attorney's Fees | | |
| | | |
| **COMMISSIONS:** | | |
| Commission | 160,702.50 | |
| to Stromer Realty | | |
| | | |
| **ADDITIONAL CHARGES:** | | |
| Delinq tax 18-090-04 to 10/31 to County of Colusa | 18,068.54 | |
| Delinq tax 18-090-08 to 10/31to County of Colusa | 10,158.50 | |
| Delinq tax 18-090-09 to 10/31 to County of Colusa | 9,166.42 | |
| | | |
| **TITLE CHARGES:** | | |
| Title Insurance Fees to First American Title Ins. Co | 2,005.50 | |
| | | |
| **RECORDING FEES:** | | |
| Recording Fee  to Colusa County | 90.00 | |
| City/County Tax Stamps to Colusa County | 1,762.50 | |
| | | |
| **ESCROW CHARGES** | | |
| Escrow Fee to Western Title Colusa County | 1,187.50 | |
| | | |
| **Sub Totals** | 1,721,398.54 | 3,214,050.00 |
| **Proceeds Due Seller** | 1,492,651.46 | |
| **Totals** | 3,214,050.00 | 3,214,050.00 |
| | | |

SSC Farming LLC, a California Limited Liability Company

_____

By: _____    Managing Member

# Western Title Colusa County

250 3rd Street P O Box 810

Colusa, CA 95932

(530) 458-5161

## SELLER'S CLOSING STATEMENT
### ESTIMATED

| | |
|---|---|
| Seller: **SSC Farming LLC a California Limited Liability Co** | Escrow No: **00072762-001-HM** |
| | Close Date: |
| | Proration Date: |
| | Date Prepared: **10/07/2010** |

Property Address: **APN 18-080-038**
**Colusa County, CA**

| Description | Debit | Credit |
|---|---|---|
| **TOTAL CONSIDERATION:** | | |
| Total Consideration | | 1,145,450.00 |
| | | |
| **PRORATIONS AND ADJUSTMENTS:** | | |
| County Taxes          From 7/1/2010 To 10/16/2010 | 2,328.43 | |
|     Based on Semi-Annual amount of $3,971.38 | | |
| | | |
| **PAYOFFS:** | | |
| Payoff to Equitable Life Insurance | 535,362.62 | |
|    $533,077.40    Principal Balance | | |
|     $1,302.72    Interest | | |
|              From 10/6/2010 To 10/22/2010 | | |
|      $982.50    Attorney's Fees | | |
| | | |
| **COMMISSIONS:** | | |
| Commission | 57,272.50 | |
|    $57,272.50     to Stromer Realty | | |
| | | |
| **ADDITIONAL CHARGES:** | | |
| Delinquent Taxes to 10/31/10 to County of Colusa | 8,980.24 | |
| | | |
| **TITLE CHARGES:** | | |
| Title Insurance Fees to First American Title Insurance | 872.00 | |
| | | |
| **RECORDING FEES:** | | |
| Recording Fee  to County of Colusa | 90.00 | |
| City/County Tax Stamps to County of Colusa | 630.00 | |
| | | |
| **ESCROW CHARGES** | | |
| Escrow Fee to Western Title Colusa County | 937.50 | |
| **Sub Totals** | 606,473.29 | 1,145,450.00 |
| **Proceeds Due Seller** | 538,976.71 | |
| **Totals** | 1,145,450.00 | 1,145,450.00 |
| | | |

**SSC Farming LLC. a California Limited Liability Company**

_____

**By:**

# EXHIBIT C

### Budget

|  | Monthly |  |
|---|---:|---|
| *Expense* | | |
| Payroll | 15,500.00 | **A** |
| Debt Service | 10,000.00 | **B** |
| Utilities | 1,900.00 | **C** |
| **Total Budget Expense** | **27,400.00** | |

**Notes:**

**A**  Salary for one caretaker and one farming manager for SSC

**B**  Principle and interest for debt on property not for sale.   RaboBank N.A. , total $30k per quarter/3 =  $10K per month

**C**  Gas, electric and water, communications for farming operation including irrigation

# EXHIBIT 100

2009-02692
FILED
February 16, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003286683

**23 PAGES**

1

2  Gregory C. Nuti (CSBN 151754)
   E-Mail: gnuti@schnader.com

3  Kevin W. Coleman (CSBN 168538)
   E-Mail: kcoleman@schnader.com

4  Michael M. Carlson (CSBN 88048)
   E-Mail: mcarlson@schnader.com

5  SCHNADER HARRISON SEGAL & LEWIS LLP

6  One Montgomery Street, Suite 2200
   San Francisco, California  94104-5501

7  Telephone: 415-364-6700
   Facsimile: 415-364-6785

8

9  Attorneys for
   Chapter 11 Trustee, Bradley D. Sharp

10

11              **UNITED STATES BANKRUPTCY COURT**

12              **EASTERN DISTRICT OF CALIFORNIA**

13                  **SACRAMENTO DIVISION**

14  In re:                               CASE NO.: 09-29162-D-11

15  SK FOODS, LP, a California limited    Chapter 11
    partnership, et al.,                 DCN:  NMM-1

16                  Debtors.             **STIPULATION AND ORDER FURTHER**
                                         **MODIFYING PRELIMINARY**
17                                       **INJUNCTION**

18  ────────────────────────────────
    Bradley D. Sharp, et al.,            Adv. Proc. No.:  09-02692
19                                       DCN:  NMM-1
                    Plaintiff,
20
            v.
21  SSC Farms, I, LLC, et al.,

22                  Defendants.
    ────────────────────────────────    Adv. Proc. No.:  10-02014
    Bradley D. Sharp, et al.,            DCN:  NMM-1
23
                    Plaintiff,
24
            v.
25  SCOTT SALYER as trustee of the Scott
    Salyer Revocable Trust, et al.,
26
                    Defendants.
27

28

SCHNADER HARRISON SEGAL & LEWIS LLP
One Montgomery Street, Suite 2200
San Francisco, California 94104-5501
Telephone: 415-364-6700
Facsimile: 415-364-6785

RECEIVED
February 16, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003286683

...TION AND ORDER FURTHER MODIFYING PRELIMINARY INJUNCTION
BMO 001548

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785

1 | Bradley D. Sharp, et al.,                          Adv. Proc. No.:  10-02016
                                                       DCN:  NMM-1
2 |                    Plaintiff,
3 |          v.
     SKF Aviation, LLC, et al.,
4 |                    Defendants.
5 |

6          Bradley D. Sharp, as chapter 11 trustee of SK Foods, L.P. (the "Trustee"), and Fredrick

7  Scott Salyer, individually[1] and as trustee of the Scott Salyer Revocable Trust; the Scott Salyer

8  Revocable Trust; SK PM Corp.; SK Foods, LLC; SKF Canning, LLC; Blackstone Ranch

9  Corporation; Monterey Peninsula Farms, LLC; Salyer Management Company, LLC; SK Farms

10 Services, LLC; SK Frozen Foods, LLC; SS Farms, LLC; SSC Farming, LLC; SSC Farms I,

11 LLC; SSC Farms II, LLC; SSC Farms III, LLC; SKF Aviation, LLC; and CSSS, LP d/b/a

12 Central Valley Shippers (collectively, the "Defendants"), by and through their respective

13 counsel, hereby stipulate and agree (the "Stipulation and Order") as follows:

14         1.      On October 13, 2010, the Court entered the Order on Defendants' Motion to

15 Modify Preliminary Injunction (the "Order Modifying Preliminary Injunction"), modifying a

16 preliminary injunction (the "Preliminary Injunction") previously granted by the Court in the

17 above-captioned adversary proceedings, in order to allow SSC Farming, LLC ("SSC Farming")

18 to sell certain parcels of real property (the "Sale") and use some the proceeds from such sale (the

19 "Sale Proceeds") for the payment of certain expenses incurred by SSC Farming in the ordinary

20 course of business pursuant to a budget attached to the Order Modifying Preliminary Injunction

21 for the months of August through December 31, 2010 (the "Budget"), without prejudice to

22 further requests to use the Sale Proceeds.  The Court also directed that the Sale Proceeds not used

23 pursuant to the Budget were to be held in a separate account of SSC Farming, subject to the

24 terms of the Preliminary Injunction, and not to be used to pay the expenses of any entity other

25 than SSC Farming or to pay expenses other than pursuant to the Budget.

26

27
   _____
28 [1] Scott Salyer, as an individual, is not a party to any of these adversary proceedings; however, he
   is included in the list of "Defendants" and is a party to this agreement because he has been
   named as an appellant in the Appeal, as defined in this Stipulation and Order.

STIPULATION AND ORDER FURTHER MODIFYING PRELIMINARY INJUNCTION
BMO 001549

2. On October 27, 2010, the Defendants filed (in each of the three adversary proceedings in which the Order Modifying Preliminary Injunction was entered) the Notice of Appeal, appealing the Order Modifying Preliminary Injunction (the "Appeal"), and the Statement of Election to have the Appeal heard by the United States District Court for the Eastern District of California (the "District Court").

3. On November 23, 2010, the District Court entered an order reassigning the three actions of the Appeal (2:10-CV-2912-WBS, 2:10-CV-2913-FCD and 2:10-CV-2914-MCE) to Judge Lawrence K. Karlton for all further proceedings. As a result, the caption on all documents thereafter filed in the Appeal shall be shown as No. 2:10-CV-2912-LKK, 2:10-CV- 2913-LKK and 2:10-CV-2914-LKK.

4. On December 1, 2010, the Defendants filed the Statement of Issues on Appeal from Order on Defendants' Motion to Modify Preliminary Injunction for the Appeal, presenting issues to be heard on appeal concerning the use of the Sale Proceeds, but explicitly not challenging the part of the Order Modifying Preliminary Injunction to allow for the Sale.

5. On December 9, 2010, in a set of appeals (2:10-CV-810-LKK, 2:10-CV-811-LKK and 2:10-CV-812-LKK) concerning the orders entering the Preliminary Injunction, the District Court affirmed the Bankruptcy Court's issuance of the Preliminary Injunction, but instructed the Bankruptcy Court to amend the Preliminary Injunction to allow counsel for non-debtor entities to recover fees and costs in the same manner in which counsel for debtor entities recover fees and costs. On January 20, 2011, the Bankruptcy Court entered an order titled "Amended Preliminary Injunction" pursuant to the District Court's instructions.

6. On January 31, 2011, Defendants SSC Farming, LLC, SSC Farms I, LLC, SSC Farms II, LLC and SSC Farms III, LLC (collectively, the "Farming Entities") filed the Motion of Farming Entities to Further Modify the Preliminary Injunction to Permit Ordinary Course Lease and Management Transactions (the "Ordinary Course Transactions Motion") to protect and preserve assets subject to the Preliminary Injunction.

7. In order to preserve the value of the assets subject to the Trustee's claims as set forth in these Adversary Proceedings and to avoid the expense of the Appeal, the Defendants and

Schnader Harrison Segal & Lewis LLP
One Montgomery Street, Suite 2200
San Francisco, California 94104-5501
Telephone: 415-364-6700
Facsimile: 415-364-6785

the Trustee hereby agree to modify the Order Modifying Preliminary Injunction, as set forth in this Stipulation and Order (a) to allow SSC Farming to continue to use the Sale Proceeds for the purposes set forth in the Budget, after the Budget's expiration on December 31, 2010, including extending the Budget through the months of January until March 31, 2011, without prejudice to further extensions, (b) to allow the Farming Entities to use the Sale Proceeds for additional purposes not set forth in the Budget, but included in this Stipulation and Order and in the revised budget attached hereto as Exhibit A (the "<u>Revised Budget</u>") and (c) to authorize the ordinary course transactions described herein,.

In light of the foregoing, the above-referenced parties, acting through their counsel of record, do hereby stipulate to the entry of an order as follows:

1.   The Budget provided by the Order Modifying Preliminary Injunction is extended to cover the period January 1, 2011 through March 31, 2011.  SSC Farming is authorized to make payments from the Sale Proceeds for regular salaries, lease payments, mortgage payments, utilities and other expenses of SSC Farming, incurred by it in the ordinary course of its business, that become due and payable, up to but not to exceed the amounts listed in the Revised Budget for the months of January through March 31, 2011.  The Revised Budget incorporates by reference the "Basic Estimate for Planted Area of 130 acres" and the "Basic Estimate for Open Area of 227 Acres" contained in Exhibit B hereto (collectively, the "<u>Basic Estimates</u>").  The Trustee and Defendants understand and agree that the amounts contained in the Basic Estimates are estimates and are subject to change once the Manager, described below, is in place.  The Trustee and Defendants may amend the "<u>Basic Estimates</u>" portion of the Revised Budget, by mutual agreement, without further order of the Court, or may submit any dispute about such amendment to the Court for resolution.

2.   In addition, pursuant to the Revised Budget, SSC Farming is authorized to make the following payments, whether or not such payments would have previously been allowed by the Order Modifying Preliminary Injunction or the Budget for services rendered during the period January 1, 2011 through March 31, 2011:

Schnader Harrison Segal & Lewis LLP
One Montgomery Street, Suite 2200
San Francisco, California 94104-5501
Telephone: 415-364-6700
Facsimile: 415-364-6785

4

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785

(a) the fees for Jacobo's Management to act as the professional manager (the "Manager") for the Farming Entities' property known as Ranch 9 (the "Managed Property" payable under the terms described in the proposal from Jacobo's Management dated February 4, 2011 and attached hereto as Exhibit B (the "Management Proposal"). The Manager and the Farming Entities will reduce such terms to a definitive management agreement, subject to the Trustee's reasonable approval, consistent with the Management Proposal. For the avoidance of doubt, the Manager may commence its management duties immediately, notwithstanding the finalization of a definitive management agreement. Any definitive management agreement will provide for a term of one-year, with a provision providing for termination of the Manager for cause by the owner of the property.

(b) the Revised Budget will include the ordinary course wages for Teresa Brown who shall continue to act as caretaker for the home on the Managed Property, which such wages shall be approximately $18 per hour plus reimbursement for all documented out-of-pocket expenses, provided that the Farming Entities provide the Trustee with copies of all of Ms. Brown's timecards and receipts evidencing such obligations, as well as $1,500 per month to reimburse the trustee of the owners of the Farming Entities for the accounting functions necessary to undertake the reporting required under the Preliminary Injunction, the Order Modifying Preliminary Injunction and this Stipulation and Order regardless of whether such accounting costs exceed such amount.

(c) debt service on obligations (i) which are secured by the Farming Entities' real property that is subject to the Preliminary Injunction, (ii) which arose prior to entry of the Preliminary Injunction, (iii) which are listed in the document attached hereto as Exhibit C hereto, and (iv) copies of which have been provided to the Trustee. Debt service payments pursuant to this subsection shall be up to but not exceeding the amounts set forth in the Revised Budget.

STIPULATION AND ORDER FURTHER MODIFYING PRELIMINARY INJUNCTION
BMO 001552

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785

(d) operating costs recommended by the Manager and approved by the Trustee and the Farming Entities, up to but not exceeding the amounts set forth in the Revised Budget, provided that the Manager provides the Trustee and the Farming Entities with copies of all documents evidencing such obligations before they are paid as set forth in paragraph 3 below. In the absence of any other documentation, a request by the Manager to incur the particular cost is deemed sufficient for this purpose.

(e) real property taxes for the Managed Properties and the Leased Properties, up to but not exceeding the amounts set forth in the Revised Budget, provided that the Farming Entities provide the Trustee with copies of all documents evidencing such obligations before they are paid as set forth in paragraph 3 below.

(f) insurance expenses for the Managed Property and the Leased Properties, up to but not exceeding the amounts set forth in the Revised Budget, provided that the Farming Entities and/or the Manager provide the Trustee with copies of all documents evidencing such obligations before they are paid as set forth in paragraph 3 below.

(g) actual gardening, pool maintenance and utility costs incurred in connection with the maintenance for the home on the Managed Property, up to but not exceeding the amounts set forth in the Revised Budget, provided that the Farming Entities provide the Trustee with copies of all documents evidencing such obligations before they are paid as set forth in paragraph 3 below.

3. The documentation for the payments authorized in paragraph 2 above shall be provided to the Trustee and/or the Farming Entities, as the case may be, at least 24 hours prior to their payment to allow the Trustee and/or the Farming Entities an opportunity to raise questions or objections to the expenditure, provided that invoiced real property taxes and insurance expenses are deemed properly payable. In the absence of any objection or question by the Trustee and/or the Farming Entities during such 24 hour notice, the Farming Entities shall be

6

STIPULATION AND ORDER FURTHER MODIFYING PRELIMINARY INJUNCTION

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785

1    authorized to make any such payments that were the subject of the notice.  In the event an

2    objection or question is raised and is not promptly resolved, the Farming Entities shall be entitled

3    to seek relief from the Court on shortened notice.

4        4.    The Farming Entities are authorized to enter into the leases described in the

5    Ordinary Course Transactions Motion for the properties described on the maps attached hereto as

6    Exhibit D (the "Leased Properties"), subject to the following conditions: (a) the terms of the

7    leases will each be one year, (b) the leases will contain a provision that they will automatically

8    renew for an additional year if notice of termination is not provided by the owner of the property

9    60 days before the end of the one-year term, with such renewal to be at the then market rate for

10   any renewal period and the lessee has agreed to such market rate, (c) in the event that the Trustee

11   and the Farming Entities are unable to agree on a market rate for any renewal period (including,

12   through use of a neutral expert or an agreed alternative mechanism), such renewal will not be

13   effective, (d) the lease can only be renewed under the automatic renewal provisions for two

14   additional one-year terms, and shall then terminate, (e) the definitive leases are subject to the

15   reasonable approval of the Trustee solely to confirm that they conform to the conditions of this

16   paragraph; (f) the definitive leases must not contain any right of first refusal to purchase the

17   Leased Properties that is binding on the Trustee and (g) the definitive leases must limit the use of

18   water rights to the term of such leases, except that the definitive leases shall provide for the

19   reimbursement of lessee for any documented capital improvements to the Leased Properties plus

20   a factor of 5% per annum (non-compounded) on such documented capital improvements from

21   the date of the completion of such improvement to the date of reimbursement.  For the avoidance

22   of doubt, the lessee may occupy the Leased Properties immediately, notwithstanding the

23   finalization of definitive leases.  Proceeds received by the Farming Entities on account of such

24   definitive leases (the "Lease Proceeds") shall be subject to the Preliminary Injunction and treated

25   in the same manner as Sale Proceeds thereunder, including, but not limited to, each of the lessors

26   (SSC Farms I and SSC Farms II) holding the Lease Proceeds received by it in a separate account.

27   The bank fees and costs associated with opening such separate account shall be an authorized

28   expense.  The Lease Proceeds will not be commingled with the Sales Proceeds.

STIPULATION AND ORDER FURTHER MODIFYING PRELIMINARY INJUNCTION

BMO 001554

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785

5.     The Order Modifying Preliminary Injunction is modified to allow SSC Farming to use Sale Proceeds to pay the expenses of the Farming Entities other than SSC Farming to the extent set forth in the foregoing paragraph 2 and the Revised Budget; however, SSC Farming is not otherwise authorized to use Sale Proceeds to pay the expenses of any entity other than SSC Farming or to pay expenses other than pursuant to the Revised Budget, without further order of the Court or the District Court.

6.     Nothing in this Stipulation and Order shall be deemed to authorize or approve expenditures of Sale Proceeds, if any, made by SSC Farming before January 1, 2011, that were not authorized by the Order Modifying Preliminary Injunction and the Budget.

7.     The Trustee and the Farming Entities, by written agreement, may agree to extend the Revised Budget after March 31, 2011 for amounts agreeable to the Trustee, without further order of the Court or the District Court. Nonetheless, the Trustee hereby confirms its consent to extend the Revised Budget for the one-year term of the management agreement with the Manager, so long as the Manager continues to manage the Managed Property.

8.     SSC Farming will maintain records adequate to verify payments made pursuant to this Stipulation and Order and the Revised Budget. The Farming Entities shall provide the Trustee with a full monthly accounting of all funds expended pursuant to the Order Modifying Preliminary Injunction and this Stipulation and Order, including, without limitation, (a) copies of the monthly bank statements of the separate account in which SSC Farming is maintaining the Sale Proceeds pursuant to Paragraph 6 of the Order Modifying Preliminary Injunction, or any other account in which the Sale Proceeds are deposited or flow through, (b) an allocation of intercompany borrowing showing each expenditure for the benefit of each of the Defendants, sufficient to allow future reconciliation of those amounts (the "Accounting"). The Accounting will include information about amounts paid to attorneys as required by the Amended Preliminary Injunction, dated January 20, 2011. The Accounting for funds used through December 31, 2010 shall be provided within three (3) days following the approval of this Stipulation and Order by the Court. Beginning in February 2011 until the month following the period that the Revised Budget remains in effect, the Accounting for funds used in the previous

8

1   month shall be provided within seven (7) days of the end of such previous month, except that

2   bank statements will be provide within seven (7) days following receipt.

3        9.     The Farming Entities warrant and confirm that payments made under the terms of

4   this Stipulation and Order and the Revised Budget shall be for the sole purposes of preserving

5   and maintaining the value of the Defendants' Farms, and shall not be used for the personal

6   benefit of the Defendants or their owners and principals.

7        10.     The Preliminary Injunction and the Order Modifying Preliminary Injunction

8   otherwise remains in full force and effect.  The Ordinary Course Transactions Motion is resolved

9   by this Stipulation and Order.

10       11.     The Defendants shall immediately stipulate to the stay of the Appeal for the

11  period that the Revised Budget remains in effect, including any extensions thereof under

12  paragraph 7 above.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785

STIPULATION AND ORDER FURTHER MODIFYING PRELIMINARY INJUNCTION

BMO 001556

1    IT IS SO STIPULATED:

2    Dated: February 16, 2011                    SCHNADER HARRISON SEGAL & LEWIS
                                                 LLP
3

4                                                /s/ Gregory C. Nuti
5                                                GREGORY C. NUTI

6                                                Counsel for Bradley D. Sharp, as Chapter 11
                                                 Trustee of SK Foods, L.P.

7    Dated: February 16, 2011                    FELDERSTEIN FITZGERALD
                                                 WILLOUGHBY & PASCUZZI LLP
8

9                                                /s/ Paul J. Pascuzzi
10                                               PAUL J. PASCUZZI (CSBN 148810)
                                                 FELDERSTEIN FITZGERALD
11                                               WILLOUGHBY & PASCUZZI LLP
                                                 400 Capitol Mall, Suite 1450
12                                               Sacramento, CA  95814:
                                                 Telephone:  (916) 329-7400
13                                               Facsimile: (916) 329-7435
                                                 ppascuzzi@ffwplaw.com
14
                                                 Counsel for Defendants Scott Salyer,
15                                               individually and as trustee of the Scott Salyer
                                                 Revocable Trust, and the Scott Salyer Revocable
16                                               Trust

17   Dated: February 16, 2011                    SEGAL & KIRBY LLP

18

19                                               /s/ Malcolm S. Segal
                                                 MALCOLM S. SEGAL (CSBN 075481)
20                                               SEGAL & KIRBY LLC
                                                 770 L Street, Suite 1440
21                                               Sacramento, CA 95814
                                                 Telephone:  (916) 441-0828
22                                               msegal@segalandkirby.com

23                                               Counsel for Defendants Scott Salyer,
                                                 individually and as trustee of the Scott Salyer
24                                               Revocable Trust, and the Scott Salyer Revocable
                                                 Trust

25

26

27

28

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785

10

STIPULATION AND ORDER FURTHER MODIFYING PRELIMINARY INJUNCTION

BMO 001557

1    Dated: February 16, 2011                    NAGELEY MEREDITH & MILLER, INC.

2

3                                                /s/ James C. Keowen
                                                 JAMES C. KEOWEN (CSBN 173546)
4                                                ANDREA M. MILLER (CSBN 88992)
                                                 NAGELEY, MEREDITH & MILLER, INC.
5                                                8001 Folsom Street, Suite 100
                                                 Sacramento, CA 95826
6                                                Telephone:  (916) 329-7400
                                                 Facsimile: (916) 329-7435
7                                                jimkeowen@nmlawfirm.com

8                                                Counsel for Defendants SK PM Corp., SK
                                                 Foods, LLC, SKF Canning, LLC, Blackstone
9                                                Ranch Corporation, Monterey Peninsula Farms,
                                                 LLC, Salyer Management Company, LLC, SK
10                                               Farms Services, LLC, SK Frozen Foods, LLC,
                                                 SS Farms, LLC, SSC Farming, LLC, SSC Farms
11                                               I, LLC, SSC Farms II, LLC, SSC Farms III,
                                                 LLC, SKF Aviation, LLC, and CSSS, LP d/b/a
12                                               Central Valley Shippers

13   IT IS SO ORDERED.

14

15   **Dated:**  February 16, 2011

16

17                                               _Robert Bardwil_

18                                               Robert S. Bardwil, Judge
                                                 United States Bankruptcy Court

19

20

21

22

23

24

25

26

27

28

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785

STIPULATION AND ORDER FURTHER MODIFYING PRELIMINARY INJUNCTION
BMO 001558

# EXHIBIT A

FARMING ENTITIES
REVISED BUDGET (MONTHLY EXCEPT AS NOTED)

MANAGEMENT COSTS & OPERATING COSTS (PER JACOBO'S MGMT PROPOSAL)

| | |
|---|---|
| BASIC ESTIMATE FOR PLANTED AREA OF 130 ACRES | 7,471 |
| BASIC ESTIMATE FOR OPEN AREA OF 277 ACRES | 2,960 |

CARRYING COSTS (OUTSIDE OF MGMT AGRMT)

| | |
|---|---|
| ACCOUNTING REIMBURSEMENT | 1,500 |
| CARETAKER SALARY | $18 per hour plus expenses |
| HOUSE UTILITES | 1,850 |
| GARDENER | 1,650 |
| MORTGAGE | 30,000 (per quarter) |
| PROPERTY TAXES - PRIOR PERIODS | 100,465 (non-recurring) |
| PROPERTY TAXES - CURRENT YEAR | per invoice |
| INSURANCE | 3,000 |

# EXHIBIT B

BMO 001561



Jacobo's Management
19388 Excelsior Avenue
Riverdale, CA 93656
(559) 922-0488  Fax (559) 922-0231

Gregorio Jacobo          President
Laureano Jacobo          Ranch Manager

Oscar Jacobo             Office Manager

February 4, 2011

Per your request, here is a proposal for farm managing your land. We pride ourselves in being a family company and treating each individual ranch as part of our family. We ensure that your ranch will be just as important as the first. Our team is made up of experienced, well-trained supervisors who carry more than 20 years experience in the work they do. Our goal is to get your ranch to reach optimal productivity and maintain that productivity within your budget.

We've been to the property and just from experience we can tell you that this is a property with a lot of potential, but will require some time and money. The first year will be the hardest on your budget. From first glance some of the problems we noticed include weed problems, rodent control, dead trees, and missing parts from the irrigation system. There were also some signs of vandalism. We would love to meet with you in person to go over what the costs would be, but if you are unavailable to meet, we will gladly make an estimated budget for you to go over. If you are serious about investing in this property to get it to its full potential, we are more than willing to take on this job. If you would prefer not to put any money into this property, we might know of an investor who would be willing to buy it as is. We don't like cutting corners and like to do things right the first time, but can guarantee that your investment will surely pay off.

We have outlined the major points of managing thru our company. If any of these points do not satisfy you, all we ask is that you give us the opportunity to work with you on coming up with a better option. Whatever your decision, we would advise that you act now to prevent any future damage to the field and the crop.

Jacobo's Management          19388 Excelsior Ave., Riverdale, CA 93656          (559) 922-0488

- The management company will use industry standard good ag. practices.
- The management company will provide an annual budget and monthly ranch report.
- The management company will use an established PO system for all ranch purchases if required.
- The management company will provide its own ranch managers and supervisors to ensure that the job is being done to our standards.
- The management company will provide vehicles and insurance for all its supervisors.
- The management company will run in cooperation with its harvesting company and labor contracting company of choice to provide all services necessary unless otherwise specified by the ranch owner. We also provide all machinery and equipment necessary at a competitive rental fee.
- The management fee of $125.00 per acre does not include hand labor, consultation, chemicals, replacement parts, supplies or crop insurance.

**Basic Estimate for Planted Area of 130 acres**

Labor with respect to:

|  | $ / Acre | Total |
|---|---|---|
| Irrigation: | $ 25.00 | $ 3,250.00 |
| Weed Control: | $ 13.00 | $ 1,690.00 |
| Rodent Control: | $ 6.00 | $ 780.00 |
| Suckering: | $ 10.00 | $ 1,300.00 |
| Fertilizer Application: | $ 10.00 | $ 1,300.00 |
| Pruning: | $ 40.00 | $ 5,200.00 |
| Training: | $ 20.00 | $ 2,600.00 |
| Restaking: | $ 3.00 | $ 390.00 |
| Replanting: | $ 14.00 | $ 1,820.00 |
| Disc: | $ 56.00 | $ 7,280.00 |
| Clean-Up Canals: | $ 23.50 | $ 3,055.00 |
| Hand Weeding: | $ 25.00 | $ 3,250.00 |

Additional Costs:

|  |  | Total |
|---|---|---|
| Trees: | 600 trees @ $7.00 per tree | $ 4,200.00 |
| Stakes: | 1500 stakes @ $1.20 per stake | $ 1,800.00 |
| Fertilizer: | $ 160.00 | $ 20,800.00 |
| Herbicide: | $ 80.00 | $ 10,400.00 |
| Pesticide: | $ 10.00 | $ 1,300.00 |
| PCA Consultation: | $ 20.00 | $ 2,600.00 |
| Soil / Tissue Analysis: | $ 3.00 | $ 390.00 |
| Ranch Management: | $ 125.00 | $ 16,250.00 |
|  |  | $ 89,655.00 |
|  |  | $ 689.65  price per acre |

This is a rough estimate from experience and does not include repairs to irrigation system, wells, or pumps. Any expense would be brought to your attention and will not be performed without owner's approval.

All equipment necessary to perform farming duties will be provided.
Liability and Workman's Comp. Insurance will be provided.

This estimate is provided as a rough sketch and does not account for any unforeseen problems that might arise unexpectedtly.

## Basic Estimate for Open Area of 227 acres

Labor with respect to:

|  | $ / Acre | Total |
|---|---|---|
| Weed Control: | $    4.50 | $   1,021.50 |
| Disc: | $   42.00 | $   9,534.00 |

Additional Costs:

|  | $ / Acre | Total |
|---|---|---|
| Weed control to spray ditches: | $   10.00 | $   2,270.00 |
| Ranch Management: | $ 100.00 | $ 22,700.00 |
|  |  | $ 35,525.50 |
|  |  | $      156.50  per acre |

This is an estimate just to clean up the land and maintain it clean as is.

# EXHIBIT C

## **Exhibit C**

1.     Adjustable Interest Rate Promissory Note, dated February 14, 2005, by and among Blackstone Ranch, Inc., SSC Farming, LLC, SS Farms, LLC, and Valley Independent Bank (n/k/a Rabobank, N.A.).

2.     Long Form Deed of Trust, Assignment of Rents, Security Agreement, and Financing Agreement, dated February 14, 2005, by and among Blackstone Ranch, Inc., SSC Farming, LLC, First American Title, and Valley Independent Bank (n/k/a Rabobank, N.A.).

3.     Modification Agreement, dated June 5, 2007, by and among Blackstone Ranch, Inc., SSC Farming, LLC, SS Farms, LLC, and Rabobank, N.A. (f/k/a Valley Independent Bank).

4.     Modification Agreement, dated January 1, 2009, by and among Blackstone Ranch, Inc., SSC Farming, LLC, SS Farms, LLC, and Rabobank, N.A. (f/k/a Valley Independent Bank).

# EXHIBIT D

BMO 001568

# Green Barn Farms

## EXHIBIT "A-1"



*Sections 3 & 10 T20S-R19E*



*Note: "Farmable" acres*

# Nature's Fresh Farms

## EXHIBIT "A-1"



*Sections 3 & 10 T20S-R19E*



*Note: "Farmable" acres*

BMO 001570

# EXHIBIT 101

**Corporate Records & Business Registrations**

**Source Information**

| | |
|---|---|
| **This Record Last Updated:** | 04/18/2011 |
| **Database Last Updated:** | 08/30/2011 |
| **Update Frequency:** | WEEKLY |
| **Current Date:** | 09/01/2011 |
| **Source:** | AS REPORTED BY THE SECRETARY OF STATE OR OTHER OFFICIAL SOURCE |

**Company Information**

| | |
|---|---|
| **Name:** | **SK FOODS, LLC** |

**Filing Information**

| | |
|---|---|
| **Identification Number:** | LLC2882-2001 |
| **Filing Date:** | 03/21/2001 |
| **State of Incorporation:** | NEVADA |
| **Expiration Date:** | 03/21/2501 |
| **Status:** | REVOKED |
| **Status Attained Date:** | 04/01/2011 |
| **Business Type:** | DOMESTIC LIMITED LIABILITY CO |
| **Where Filed:** | CORPORATION DIV |
| | STATE CAPITOL |
| | CARSON CITY, NV 89714 |

**Registered Agent Information**

| | |
|---|---|
| **Name:** | THE CORPORATION TRUST COMPANY OF NEVADA |
| **Address:** | 311 S DIVISION ST |
| | CARSON CITY, NV 89703 |

**Principal Information**

| | |
|---|---|
| **Name:** | SCOTT SALYER REVOCABLE TRUST DTD 07/07/1984 |
| **Title:** | MEMBER |
| **Address:** | 200 SKY PARK DR |
| | MONTEREY, CA 93940 |

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

## Amendment Information

**Amendments:**                                02/20/2009 MISCELLANEOUS ANNUAL
                                               LIST;09/10-DOCUMENT ID: 20090172402-97

                                               01/22/2008 MISCELLANEOUS ANNUAL
                                               LIST;08-09-DOCUMENT ID: 20080052000-77

                                               01/25/2007 MISCELLANEOUS ANNUAL LIST-DOCUMENT ID:
                                               20070058610-59

                                               02/03/2006 MISCELLANEOUS ANNUAL LIST-DOCUMENT ID:
                                               20060074057-61

                                               03/01/2005 MISCELLANEOUS ANNUAL LIST-DOCUMENT ID:
                                               20050076331-17

                                               03/11/2004 MISCELLANEOUS ANNUAL LIST;LIST OF OF-
                                               FICERS FOR 2004 TO 2005-DOCUMENT ID: LLC2882-2001-002

                                               03/06/2003 MISCELLANEOUS ANNUAL LIST-DOCUMENT ID:
                                               LLC2882-2001-003

                                               03/22/2002 MISCELLANEOUS ANNUAL LIST-DOCUMENT ID:
                                               LLC2882-2001-004

                                               03/21/2001 MISCELLANEOUS ARTICLES OF ORGANIZA-
                                               TION-DOCUMENT ID: LLC2882-2001-001

### Additional Detail Information

**Additional Details:**                        MANAGED BY:MANAGING MEMBER

The preceding public record data is for information purposes only and is not the official record. Certified copies
can only be obtained from the official source.

The public record items reported above may have been paid, terminated, vacated or released prior to today's
date.

### Order Documents

Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387)
for on-site manual retrieval of documents related to this or other matters.
Additional charges apply.

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.