# EXHIBIT 103

**[6]**

<table>
<tr><td>1</td><td>DEAN M. GLOSTER, State Bar No. 109313<br>MARK D. PETERSEN, State Bar No. 111956</td></tr>
<tr><td>2</td><td>KELLY A. WOODRUFF, State Bar No. 160235<br>FARELLA BRAUN + MARTEL LLP</td></tr>
<tr><td>3</td><td>235 Montgomery Street, 17th Floor<br>San Francisco, CA 94014</td></tr>
<tr><td>4</td><td>Telephone: (415) 954-4400<br>Facsimile: (415) 954-4480</td></tr>
<tr><td>5</td><td>dgloster@fbm.com<br>mpetersen@fbm.com</td></tr>
<tr><td>6</td><td>kwoodruff@fbm.com</td></tr>
</table>

1   DEAN M. GLOSTER, State Bar No. 109313
    MARK D. PETERSEN, State Bar No. 111956
2   KELLY A. WOODRUFF, State Bar No. 160235
    FARELLA BRAUN + MARTEL LLP
3   235 Montgomery Street, 17th Floor
    San Francisco, CA 94014
4   Telephone: (415) 954-4400
    Facsimile: (415) 954-4480
5   dgloster@fbm.com
    mpetersen@fbm.com
6   kwoodruff@fbm.com

7   Counsel for Scott Salyer, as trustee of the Scott Salyer
    Revocable Trust; the Scott Salyer Revocable Trust; the
8   SSC&L 2007 Trust, SKPM Corp., and Monterey
    Peninsula Farms, LLC
9

10              UNITED STATES BANKRUPTCY COURT

11              EASTERN DISTRICT OF CALIFORNIA

12                  SACRAMENTO DIVISION

| | |
|---|---|
| 13  In re:<br><br>14  SK Foods, L.P., a California<br>15  limited partnership,<br><br>16  Debtor. | CASE NO.: 09-29162-D-11<br><br>Chapter 11 |
| 17<br>18  Bradley D. Sharp, Chapter 11<br>     Trustee,<br><br>19              Plaintiff<br><br>20      v.<br><br>21  SKPM Corporation, *et al.*,<br><br>22              Defendants. | Adv. Proc. No. 11-02337<br><br>**OPPOSITION TO TRUSTEE'S**<br>***EX PARTE* MOTION FOR A**<br>**TEMPORARY RESTRAINING**<br>**ORDER AND ORDER TO SHOW**<br>**CAUSE RE PRELIMINARY**<br>**INJUNCTION** |
| 23<br>24<br>25<br>26<br>27<br>28 | Date:    September 1, 2011<br>Time:    10:00 a.m.<br>Place:   Courtroom 34<br>         501 "I" Street, 6th Floor<br>         Sacramento, CA<br>Judge:   Hon. Robert S. Bardwil |

1    Not only is the Trustee's *Ex Parte* Motion for a Temporary Restraining Order and Order

2    to Show Cause re Preliminary Injunction ("Motion") utterly without merit, it is yet another

3    example of the Trustee's blatant and contemptuous disregard for the spirit of this Court's Stay

4    Orders, issued on June 28, 2011 in every other adversary proceeding pending in this bankruptcy

5    case against Scott Salyer or his related entities ("Stay Orders").  The Trustee's Motion should be

6    denied, and the Court should instead, immediately issue a stay of proceedings in this adversary

7    proceeding on the same terms as the Stay Orders, and certify that stay for direct appeal to the

8    Ninth Circuit to be consolidated with the appeals of the other nine Stay Orders.

9                                    **ARGUMENT**

10   **I.     THERE IS NO IMMINENT IRREPARABLE HARM JUSTIFYING THE
           ISSUANCE OF A TEMPORARY RESTRAINING ORDER OR PRELIMINARY
11         INJUNCTION.**

12           The Trustee's sole basis for seeking a temporary restraining order ("TRO") and

13   preliminary injunction *four months after filing this adversary proceeding* is that the "Defendants

14   might 'make away' with the Cedenco Assets that the Trustee seeks to recover in the adversary

15   proceeding, if not enjoined."  Motion at 28.  Leaving aside for the moment the fact that the

16   Trustee has failed entirely to establish a likelihood of success on the merits of this adversary

17   proceeding, this argument fails for at least four reasons.

18           *First*, the Defendants cannot "make away" with the Cedenco Assets[1] because none of

19   them have custody or control over them.  As the Trustee is well aware, the Cedenco Assets are

20   already out of this Court's jurisdiction and are currently held by an Australian liquidator and

21   subject to legal proceedings to determine the proper owner under Australian law.  Although

22   Defendants believe the Trustee has grossly misrepresented Australian law, the question of

23   whether the transfer of the Cedenco Assets from SK Foods to SK PM Corporation and the Scott

24   Salyer Revocable Trust (the "Divestiture") was valid under Australian law will be resolved in

25   Australia in the only courts with jurisdiction to decide that question.  As evidenced by the

26   invoices for professional fees submitted by the Trustee and his professionals in the bankruptcy

27   case, the Trustee has coordinated regularly and diligently with the Australian liquidator, and is

28   _____
     [1]   As defined in the Trustee's Motion.

actively pursuing his claim to the Cedenco Assets in those proceedings.  Further, the Trustee has just sought, and obtained, approval to engage a barrister to represent him in the Australian courts for the purpose of establishing that the Divestiture was invalid.  Because none of the Defendants controls any of the Cedenco Assets, there is no risk that they might transfer the assets, and the Trustee's Motion should be denied.

*Second*, the Trustee has not offered any evidence that the resolution of the Australian proceedings is imminent or that there is any risk that the Australian liquidator may soon distribute the Cedenco Assets.  To the contrary, the Australian Liquidator has filed a Chapter 15 bankruptcy proceeding in the United States District Court for the Northern District of California, and has obtained a blanket authorization to conduct Rule 2004 examinations of numerous parties in an effort to investigate and resolve the issue of whether the Divestiture was valid under Australian law.  To date, five examinations have taken place and at least six more subpoenas are outstanding.  According to counsel for the Australian Liquidator, none of the remaining depositions have even been scheduled yet.  Declaration of Kelly A. Woodruff ("Woodruff Decl."), Ex. A.  Accordingly, there is no imminent threat or irreparable harm justifying the issuance of a TPO at this point.

*Third*, the Trustee has not provided any explanation for waiting nearly four months to seek this TRO and preliminary injunction, when the facts alleged have been known to the Trustee since the filing of the adversary proceeding.  The Trustee's own delay in seeking preliminary relief belies his sudden concern about the threat of imminent harm, and he should be estopped by the doctrine of laches from seeking such relief at this point on an urgent, *ex parte* basis with only 24-hours' notice.

*Fourth*, if the Trustee is right on the law, and the Australian liquidator and Australian courts determine that the Divestiture was not effective under Australian law, then the Cedenco Assets will be distributed to the Trustee and there is no risk of dissipation of any assets by the Defendants.  However, if the Trustee is wrong on the law, and the Divestiture was effective under Australian law, then the Trustee has no fraudulent transfer claim against any of the Defendants because Debtor was not insolvent on November 1, 2006.

1    In sum, it is clear the Trustee is not at all worried about the Defendants' possible

2   dissipation of assets that they do not control.  Rather, the Trustee clearly seeks the TRO and

3   injunction now because, by manipulating and misleading the Defendants, this adversary

4   proceeding is not currently stayed under the Court's Stay Orders.  As the Court is aware,

5   Defendants filed a motion for a stay in this proceeding immediately upon the Trustee's having

6   filed the complaint, even before service was effected.  [Dkt. Nos. 6-9.]  Rather than filing an

7   opposition to the stay motion in light of the District Court's recent overruling of the prior denial

8   of stay orders in the other adversary proceedings, the Trustee stipulated to a stay until July 31,

9   2011.  [Dkt. No. 14.]  The parties agreed that they could renew the stay at that time, or

10  Defendants could renew their motion by August 15, 2011 and it would be considered timely.  *Id.*

11  Certainly, the Defendants understanding of the agreement was that the stay would remain in

12  place, pending final resolution of the remaining stay motions.  The Trustee, however, has taken

13  full advantage of the gap between July 31, 2011 and the time the hearing on Defendants' renewed

14  motion can be heard, and seeks this preliminary injunction in at attempt to avoid the impending

15  stay.

16    The Trustee's bad faith litigation tactics should not be condoned.  Rather, the Court

17  should grant the Defendants' renewed motion for a stay at the expedited hearing on September 1,

18  2011, as requested by Defendants, and immediately certify the stay for direct appeal to the Ninth

19  Circuit.  That would allow the Trustee to join the appeal from this adversary proceeding with his

20  motion for leave to appeal the remaining appeals to the Ninth Circuit, saving the Trustee and both

21  courts valuable time.

22  **II.    THE ONLY DEFENDANT WITH A CLAIM TO THE CEDENCO ASSETS HAS**
23  **NEVER BEEN SERVED WITH THE SUMMONS AND COMPLAINT, AND THIS**
    **COURT LACKS JURISDICTION TO ISSUE ANY ORDERS AGAINST IT.**

24    Defendant Fast Falcon, LLC has never been served with the summons and complaint in

25  this adversary proceeding.  Accordingly, service of the Trustee's Motion by service on the

26  undersigned is ineffective as to Fast Falcon, which is the only Defendant that claims an

27  ownership interest in the Cedenco Assets.

28

OPP. TO TRUSTEE'S *EX PARTE* MOTION
FOR TRO (Case No.11-02337)                    -4-                    27019\2745372.1

1    Fast Falcon is a Nevis limited liability company.  As the Trustee knows, Fast Falcon is not

2    authorized to do business in California, and has no registered agent for service of process in

3    California.  Rather, the sole member of Fast Falcon is Asia Trust Limited, as Trustee of the

4    Hawker Sydley Trust, a Cook Islands Trust.  Woodruff Decl., Ex. B.

5    Federal Rule of Bankruptcy Procedure ("FRBP") 7004(b)(3) provides for service of

6    process on foreign corporations and partnerships (and presumably also limited liability

7    companies) by mailing a copy of the summons and complaint *within the United States* to an

8    "officer, a managing or general agent, or to any other agent authorized by appointment or by law

9    to receive service of process."  The Trustee has purported to serve process on Fast Falcon by

10   serving Cary Collins on June 10, 2011 [Dkt. No. 21], Dean Gloster on August 11, 2011 [Dkt. 34],

11   and Scott Salyer on August 25, 2011 [Dkt. No. 55].  Neither Mr. Collins, nor Mr. Gloster,[2] nor

12   Mr. Salyer are managing or general agents for Fast Falcon, and none of them is authorized to

13   accept service of process on Fast Falcon's behalf.  Woodruff Decl., Exs. B and C.  Accordingly,

14   because Fast Falcon is not authorized to do business in California and has no agent for service of

15   process in California, the Trustee' attempt to use FRBP 7004(b)(3) to serve Fast Falcon was

16   ineffectual.

17   The Trustee may only effect service on a corporation outside of the United States by

18   complying with Federal Rule of Civil Procedure ("FRCP") 4(f) or (h), incorporated by FRBP

19   7004(a).  FRCP 4(h) allows service on a foreign entity in any manner prescribed by FRCP 4(f)

20   other than personal delivery, and FRCP 4(f) provides for service on a defendant in a foreign

21   country by (1) any internationally agreed means of service that is reasonably calculated to give

22   notice, (2) by a method that is reasonably calculated to give notice in compliance with the foreign

---

23   [2]   Dean Gloster and Farella Braun + Martel LLP ("FBM") are counsel for Scott Salyer, as trustee

24   of the Scott Salyer Revocable Trust; the Scott Salyer Revocable Trust; the SSC&L 2007 Trust,
     SKPM Corp., and Monterey Peninsula Farms, LLC ("Salyer Entities").  [Dkt. 71.]  Although

25   FBM filed a notice of appearance on behalf of, among others, Fast Falcon and Scott Salyer as
     Trustee of the SSC&L 2007 Trust [Dkt. No. 28], FBM was mistaken on both counts.  FBM has

26   not received an engagement letter from the manager or sole member of Fast Falcon, and Scott
     Salyer is not the Trustee of the SSC&L 2007 Trust.  FBM, therefore, withdrew its notice of

27   appearance and filed a *Corrected* Notice of Appearance on August 26, 2011.  [Dkt. No. 58.]
     Nevertheless, the attempted service of process on Fast Falcon by serving Dean Gloster and FBM

28   is ineffective under both the FRBP and FRCP.  *Labankoff v. GMAC Mortgage, LLC (In re
     Labankoff)*, 2010 WL 2384543 (9th Cir. BAP (Cal.) June 10, 2010), at *6-7.

1  country's laws, or (3) by any means not prohibited by international agreement, as the court

2  orders.  FRCP 4(f).  The Trustee has not indicated in any of his filed Certificates of Service that

3  he has complied with FRCP 4(f), or otherwise provided any notice of this adversary proceeding to

4  Fast Falcon's manager or sole member.

5  　　　Accordingly, this Court has no jurisdiction over Fast Falcon and cannot issue any orders

6  purporting to bind it.

7  　　　　　　　　　　　　　　　**CONCLUSION**

8  　　　The Trustee's Motion lacks any merit and is a transparent attempt to avoid the spirit, if not

9  the letter, of this Court's previously-issued Stay Orders.  The Motion should be denied in its

10  entirety, and instead, the Defendants' renewed motion for a stay of proceedings [Dkt. Nos. 36-42]

11  should be granted at the expedited hearing on September 1, 2011 at 10:00 a.m., and the Court

12  should immediately certify the stay order for direct appeal to the Ninth Circuit to be joined with

13  the other nine appeals of the Court's Stay Orders.

14

15  Dated:  July 19, 2011　　　　　　　　　　　FARELLA BRAUN + MARTEL LLP

16

17  　　　　　　　　　　　　　　　　By: _/s/ *Kelly A. Woodruff*_____
    　　　　　　　　　　　　　　　　　　Kelly A. Woodruff

18  　　　　　　　　　　　　　　　　Attorneys for  Scott Salyer, as trustee of the
19  　　　　　　　　　　　　　　　　Scott Salyer Revocable Trust; the Scott Salyer
    　　　　　　　　　　　　　　　　Revocable Trust; the SSC&L 2007 Trust,
20  　　　　　　　　　　　　　　　　SKPM Corp., and Monterey Peninsula Farms,
    　　　　　　　　　　　　　　　　LLC

21

22

23

24

25

26

27

28

# EXHIBIT 104

**61 Pages**

Gregory C. Nuti (CSBN 151754)
  gnuti@schnader.com
Kevin W. Coleman (CSBN 168538)
  kcoleman@schnader.com
Michael M. Carlson (CSBN 88048)
  mcarlson@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
One Montgomery Street, Suite 2200
San Francisco, California  94104-5501
Telephone: 415-364-6700
Facsimile: 415-364-6785

Attorneys for Bradley D. Sharp,
Chapter 11 Trustee

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | **Case No. 09-29162-D-11** |
| SK FOODS, L.P., A CALIFORNIA LIMITED PARTNERSHIP, | **Chapter 11** |
| DEBTOR. | |
| BRADLEY D. SHARP, et al., | **Adv. Pro. No. 11-2337** |
| Plaintiff, | **DC No. SH-1** |
| vs. | **DECLARATION OF MICHAEL M. CARLSON IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** |
| SKPM CORP., INC., SSC & L 2007 TRUST, MONTEREY PENINSULA FARMS, LLC, FREDRICK SCOTT SALYER AKA SCOTT SALYER IN HIS CAPACITY AS TRUSTEE OF THE SCOTT SALYER REVOCABLE TRUST AND TRUSTEE OF THE SSC&L 2007 TRUST, SCOTT SALYER REVOCABLE TRUST, FAST FALCON, LLC, HENRY JOHN HEATH, AND DOES 1-5, | |
| Defendants. | Date:     September 1, 2011<br>Time:    10:00 a.m.<br>Place:   Courtroom 34<br>         501 I Street, 6th Floor<br>         Sacramento, CA  95814<br><br>Judge:   Hon. Robert S. Bardwil |

I, Michael M. Carlson, do hereby declare and say:

1.     I am an attorney licensed to practice in the State of California.  I am a partner with the law firm of Schnader Harrison Segal & Lewis LLP.  I am one of the counsel of record for Bradley D. Sharp ("Trustee"), the duly appointed and acting Chapter 11 trustee for the Chapter 11 estates of SK Foods, L.P., a California limited partnership ("SK Foods"), and RH Industrial Specialty Foods, Inc., a California corporation, d/b/a Colusa County Canning Co. (collectively, with SK Foods, the "Debtors").

2.     Except for those matters identified as being statements made on information and belief, the statements made herein are of my own personal knowledge, and I could testify to the same if called as a witness.

3.     On July 14, 2011, another attorney in my office, acting at my direction, issued a subpoena to Metro United Bank, seeking all documents dated after October 13, 2010 regarding account number 560165702.  I am informed and believe that the Metro United Bank account number 560165702 is an account in the name of Defendant SSC Farming LLC, which was established pursuant to this Court's Order on Defendants' Motion to Modify Preliminary Injunction, dated October 13, 2010 ("Oct. 13 Order").  I am further informed that this account was established to hold the Sales Proceeds received by SSC Farming from its sale of certain properties (the "Colusa Properties") pursuant to the terms of the Oct. 13 Order.  I will refer to this bank account herein after as the "Sale Proceeds Account."  My belief that Metro United Bank account number 560165702 is the Sales Proceeds Account is based on the following information:  The Oct. 13 Order was an amendment to this Court's Preliminary Injunction Order, dated March 20, 2010 ("Mar. 20 Order").  Both of these orders were amended again by the Court's Stipulation and Order Further Modifying Preliminary Injunction, dated February 16, 2011 ("Feb. 16 Order").  The Feb. 16 Order required Defendants to provide the Trustee with an Accounting regarding the Sales Proceeds Account, which was to include copies of the monthly bank statements for the Sales Proceeds Account.  *See* Feb. 16 Order ¶ 8, attached to Request for Judicial Notice, filed herewith.  After the entry of the Feb. 16 Order, the Trustee has received

such bank statements from Defendants (sent by Defendants' attorneys to me).  These bank statements are for Metro United Bank account number 560165702.

4.      On or about August 22, 2011, I received Metro United Bank's response to the aforementioned subpoena.  That response consists of approximately 300 pages.  On August 30, 2011, I received additional documents from Metro United Bank.  That additional production consists of approximately 34 pages.  Collectively, I refer to these two productions as the "Metro United Bank documents."  Excerpts of those documents are attached hereto as indicated below.

5.      I have reviewed the Metro United Bank documents, and have compared the information contained in those documents to (1) the Preliminary Injunction Orders entered by the Court (the Mar. 20 Order, as subsequently modified), and (2) the Accountings that Defendants have provided regarding the Sales Proceeds Account pursuant to paragraph 8 of the Feb. 16 Order.  This comparison reveals two things:  (1) over $850,000 in withdrawals have been made from the Sales Proceeds Account that appear to be in violation of the Preliminary Injunction Orders, and (2) the Accountings provided by Defendants do not reflect all withdrawals from the Sales Proceeds Account and thereby conceal the unauthorized withdrawals.

## I.      INAPPROPRIATE WITHDRAWALS OF FUNDS SUBJECT TO THE PRELIMINARY INJUNCTION.

### A.      Withdrawals in Violation of the Oct. 13 Order.

6.      The Oct. 13 Order provides that funds in the Sales Proceeds Account may be used by SSC Farming to pay "for regular salaries, lease payments, mortgage payments or utilities of SSC Farming, incurred by it, in the in the ordinary course of its business, that become due and payable, up to the amounts listed on the budget attached [thereto] as Exhibit C for the months of August through December 31, 2010."  *See* Oct. 13 Order ¶ 5, attached to Request for Judicial Notice, filed herewith.  The budget attached to the order provides for total monthly expenditures not exceeding $27,400.  *Id*.  Thus, the total amount that could be spent for the five month period of August through December was $137,000.  The Oct. 13 Order goes on to provide (a) that "no [other] withdrawals will be made from th[e Sales Proceeds A]ccount without further order of the Court" and (b) that monies in the Sales Proceeds Account "may not be used to pay the

expense of any entity other than SSC Farming or to pay expenses other than those specified in Paragraph 5, without further order of the Court." *Id.* at ¶ 6.

### 1. Withdrawals by Collins & Associates

7.      My review of the Metro United Bank documents reveals the following withdrawal that appear to violate the Oct. 13 Order.

a.      **On November 1, 2010, check 1008 for the amount of $50,000.00 was written to Collins and Associates**.  A true and correct copy of the front and back of check 1008 from the Metro United Bank documents is attached hereto as **Exhibit 1**. Based on a comparison of the signature on the check, to the signature on the signature card included in the Metro United Bank documents, the check appears to have been signed by Robert Pruett.  A true and correct copy of the Signature Card from the Metro United Bank documents is attached hereto as **Exhibit 2**.

b.      **Also on November 1, 2010, a wire transfer of $150,000.00 was made out of the Sales Proceeds Account.**  An "Advice of Charge" document evidencing this wire transfer lists "Beneficiary's[sic]:  SSC Farming LLC."  However, the Metro United Bank documents contain another "Advice of Charge" on the same date "for outgoing wire fee" of $20.00.  This second Advice of Charge list "Beneficiary's [sic]:  Collins & Associates."  A true and correct copy of the front and back of the November 1, 2010 Advice of Charge for $150,000 from the Metro United Bank documents is attached hereto as **Exhibit 3**.  A true and correct copy of the front and back of the November 1, 2010 Advice of Charge for $20 from the Metro United Bank documents is attached hereto as **Exhibit 4**.

c.      **Also on November 10, 2010, an unnumbered check for $53,000.00 was written.**  A true and correct copy of the front and back of this unnumbered check for $53,000.00 from the Metro United Bank documents is attached hereto as **Exhibit 5**.  This check was also signed by Mr. Pruett.  No payee is shown on this check.  The back of this check shows that it was deposited to an account at Mechanics Bank "BR 29," which I interpret to mean Mechanics Bank branch 29.  Other documents show that Collins and

Associates had an account at Mechanics Bank and made deposits at that branch.  *See* Exhibit 1, page 2 (back of the check).

        d.        **On December 3, 2010, check 1003 for $100,000 was written to Collins and Associates**.  This check was also signed by Mr. Pruett.  A true and correct copy of the front and back of check 1003 from the Metro United Bank documents is attached hereto as **<u>Exhibit 6</u>**.

        8.        Thus, the Metro United Bank documents show that, on November 1, 2010, November 10, 2010 and December 3, 2010, a total of $353,000 was withdrawn from the Sales Proceeds Account.  This exceeds the total amount of Sales Proceeds that Defendants were allowed to spend the five month period of August through December ($137,000) by over $200,000.

        9.        Additionally, at least $150,000 of the money withdrawn from the Sales Proceeds Account went to Collins & Associates.  *See* Exs. 1 and 6 (checkes 1008 and 1003).  Through conversations that I have had with Van Durrer and Todd Truitt, both of the Skadden firm, and both representing Mr. Salyer, I have been informed the Collins & Associates is an accounting firm that provided accounting services to Mr. Salyer and the Defendants.  Based on these conversations, it is my understand that Collins & Associates prepares the Accountings regarding the Sales Proceeds Account, which is provided to the Trustee pursuant to paragraph 8 of the Feb. 16 Order and that Collins & Associates prepares all the checks that are written on that account, before they are signed by Mr. Pruett.  Nothing in the Oct. 13 Order provided for the payment of accountants.

        10.       Although the Metro United Bank documents do not show exactly who received the balance of the $353,000 that was withdrawn from the Sales Proceeds Account on November 1, November 10 and December 3, there are clear indications that the additional $203,000 also went to Collins & Associates.  In addition to the information identified above, a bank statement included in Metro United Bank documents shows that, on January 24, 2011, a wire transfer of $353,000.00 was deposited into the Sales Proceeds Account.  In other words, the entire amounts withdrawn on November 1, November 10 and December 3 were returned to the account on

January 24, 2011.  A true and correct copy of the bank statement from the Metro United Bank documents showing the January 24, 2011, a wire transfer deposit of $353,000.00 is attached hereto as **Exhibit 7**.

11.     The Metro United Bank documents contain an "Advice of Credit," dated January 24, 2011, indicating the "originator" of the $353,000.00 wire transfer as Cary S. Collins dba Collins & Associates.  A true and correct copy of the front and back of the January 24, 2011 Advice of Credit for $353,000.00 from the Metro United Bank documents is attached hereto as **Exhibit 8**.

12.     The return of $353,000.00 to the Sales Proceeds Account took place shortly after the Trustee made it clear that he was going to insist on receiving monthly bank statements for that account.

13.     The Feb. 16 Order was entered upon a stipulation between the parties.  The terms of that order were negotiated for several weeks in early 2011, in response to the Defendants' and Mr. Salyer's request that they be allowed to spend monies in the Sales Proceeds Account to maintain farming properties subject to the Preliminary Injunction Orders.  These negotiations took place between counsel for the Defendants and Mr. Salyer, on the one hand, and counsel for the Trustee, on the other hand.  My partner, Mr. Nuti and I were the primary negotiators on behalf of the Trustee.

14.     As part of these negotiations, on January 3, Mr. Durrer, counsel for Mr. Salyer, sent Mr. Nuti a draft stipulation, which after many changes, became the Feb. 16 Order.  On January 13, Mr. Nuti sent Mr. Durrer a revision of that stipulation which includes a requirement, for the first time, that Defendants provide the Trustee with copies of the monthly bank statements of the Sales Proceeds Account "or any other account in which the Sales Proceeds are deposited or flow through."  The language proposed by Mr. Nuti on January 13 was incorporated into the Feb. 16 Order in paragraph 8.  Thus, from at least January 13, 2011, the Defendants knew that the Trustee was going to insist on receiving banks statement for the Sales Proceeds Account as a condition for modifying the Preliminary Injunction Orders.  The return of $353,000 took place eleven days later, on January 24, 2011.

### 2.    Withdrawal by Scott Salyer

15.    In addition to the foregoing withdrawals, on December 1, 2010, check 1002 was written to F. Scott Salyer for $15,000.00.  This check was also signed by Mr. Pruett.  A true and correct copy of the front and back of check 1002 from the Metro United Bank documents is attached hereto as **Exhibit 9**.  The Accounting that was provided by Defendants for the month of December shows a payment on December 1 of $15,000 for "Farm Manager – December." The cover letter received from Mr. Durrer, which forwarded this Accounting and was dated February 22, 2011, makes the following statement, "Please also note that no invoices were given for the payment for the farm manager as such payments were made pursuant to the Budget."  A true and correct copy of the first page of the Accounting provided by Defendants for November and December (but excluding the attached supporting documentation), along with Mr. Durrer's February 22, 2011 cover letter is attached hereto as **Exhibit 10** (the "Nov.-Dec. Accounting").

16.    As explained below, the Oct. 13 Order did provide for payments to a farm manager, but the Trustee had been told that the farm management was being provided by Grewal Consulting and in fact over $23,000 in payments to Grewal Consulting are disclosed in the Accounting for this period.  *See* Exhibit 10, page 3.  The Trustee never agreed to any payments of Sales Proceeds to Scott Salyer, and would have objected to such payments if they had been disclosed.

17.    I am informed and believe, based on my following of the docket in Mr. Salyer's criminal proceedings, that Mr. Salyer was under house arrest in Monterey County California during November and December 2010.

### A.    Withdrawals in Violation of the Jan. 20 Order.

18.    This Court Amended Preliminary Injunction, dated January 20, 2011 (the "Jan. 20 Order") amended the earlier Preliminary Injunction Orders to allow monies from the Sales Proceeds Accounts to be used to pay lawyers for Defendants in connection with certain adversary proceedings and the bankruptcy proceeding.

19.     In Mr. Durrer's February 22, 2011 cover letter (Exhibit 10), he stated that "the only payment to date by Defendants for legal fees was a payment on or around February 3, 2011, to Nageley, Merideth & Miller …."  Although we have no reason to believe Mr. Durrer knew this statement to be inaccurate when he made it, it was later shown to be incorrect.

20.     On Monday, March 7, 2011 at approximately 4:59 p.m., I received an e-mail from Todd Truitt, counsel for Scott Salyer, and addressed to my partner Gregory Nuti.  (I was a "cc" on the email.)  The email attached bank statements and an accounting of funds paid out of the Sales Proceeds Account for January and February 2011, as required under the Feb. 16 Order (the "Jan.-Feb. Accounting").  Attached as **Exhibit 11** is Mr. Truitt's e-mail and the first page of the Jan.-Feb. Accounting.

21.     The Jan.-Feb. Accounting indicated that on February 1, 2011 in a series of three separate checks, SSC Farming paid Gary Perry, another counsel for Mr. Salyer, in excess of $510,000.  The payments are identified on the Accounting as "Gary Perry Legal Fees Per Court Order" and are shown as check 1015 for $339,690; check 1016 for $122,279.41 and check 1018 for $48,439.60.

22.     Copies of checks 1015, 1016 and 1018 are included in the Metro United Bank documents.  **Checks 1015 and 1016** were not written to Gary Perry.  Both checks **were written to Collins & Associates**.  **The checks total $461,969.41**.  Both checks were signed by Mr. Pruett.  True and correct copies of the front and back of checks 1015 and 1016 from the Metro United Bank documents are attached hereto as **Exhibits 12 and 13**.  (Check 1018 for $48,439.60 was written to Gary Perry.)

## II.     INACCURATE ACCOUNTINGS PURSUANT TO THE PRELIMINARY INJUNCTION ORDERS

23.     As noted above, the Feb. 16 Order required Defendants to provide both an Accounting and bank statements for the Sales Proceeds Account.  *See* Feb. 16 Order ¶ 8.  A previous order had also required Accountings, but there had been no requirement to provide bank statements.  *See* Oct. 13 Order ¶ 5; Jan. 20 ¶ 3.  Defendants never provided bank

statements for November and December 2011; the first bank statement received was the January 2011 bank statement, received on March 7, 2011.  *See* Exhibit 11.

24.     **The Nov.-Dec. Accounting (Ex. 10) received from Defendants did not reflect all of the expenditures from the Sales Proceeds Account; $353,000 in withdrawals were not disclosed.**  The following items were not reflected, in any way, in the Nov.-Dec. Accounting: (a) Check 1009 (dated November 1, 2010) the amount of $50,000.00 to Collins & Associates, (b) the November 1, 2010, a wire transfer of $150,000.00, (c) the unnumbered check (dated November 10, 2010) for $53,000.00, and (d) check 1003 (dated December 3, 2010) in the amount of $100,000 to Collins & Associates.  *Compare* Exhibit 10 to Exhibits 1, 3, 5 and 6.

25.     **The Nov.-Dec. Accounting (Ex. 10) did not accurately describe the $15,000 payment to Mr. Salyer.**  As noted above, check 1002 to Mr. Salyer (Ex. 9) is identified on the Nov.-Dec. Accounting (Ex. 10) as a payment for "Farm Manager – December."  The Oct. 13 Order did allow payments for a farm manager, and the Trustee had been informed that farm management services were being provided by Grewal Consulting.  The Nov.-Dec. Accounting shows two payments to Mr. Grewal for September, October and November farm management. The Nov.-Dec. Accounting gave the impression that the November payment was also to Mr. Grewal.

26.     **The Jan.-Feb. Accounting (Ex. 11) did not reflect the redeposit of $353,000.00, to cover earlier violations of the Preliminary Injunction Orders.** As explained above, on January 24, 2011, $353,000 was wire transferred into the Sales Proceeds Account, apparently to replace monies that had been withdrawn from that account in November and December in violation of the Preliminary Injunction.  This redeposit is not reflected in the Jan.-Feb. Accounting.  *Compare* Exhibits 7 and 11.

27.     **The Nov.-Dec. Accounting (Ex. 10) and the Jan.-Feb. Accounting (Ex. 11) inaccurately reflect the balance of the Sales Proceeds Account.**  A true and correct copy of the bank statement for the Sales Proceeds Account, from the Metro United Bank, for the period ending November 30, 2010, is attached hereto as **<u>Exhibit 14</u>**.  A true and correct copy of the bank statement for the Sales Proceeds Account, from the Metro United Bank, for the period

ending December 31, 2010, is attached hereto as **Exhibit 15**. Comparing the Nov.-Dec.

Accounting and the Jan.-Feb. Accounting to these bank statements reveal the following.

| Date | Actual Balance (per bank statement) | Balance Shown on Defendants' Accounting |
|------|-------------------------------------|------------------------------------------|
| 11/30/10 | $1,824,676.72[1] | $2,027,696.72[2] |
| 12/31/10 | $1,674,237.29[3] | $1,976,715.20[4] |

28.     These discrepancies in the closing balances of the Sales Proceeds Accounts were necessary to hide from the Trustee the $353,000 in undisclosed withdrawals.  If accurate Accounting had been provided, these withdrawals would have been discovered.

29.     **The Jan.-Feb. Accounting (Ex. 11) misidentified $461,969 paid to Collins & Associates as payment of legal fees to Gary Perry pursuant to the Amended Preliminary Injunction.**  Compare the references to checks 1015 and 1016 in Exhibit 11 with actual copies of those checks (Exhibits 12 and 13).

30.     **The March Accounting misidentified the return of the $461,969 paid to Collins & Associated as the return of legal fees by Gary Perry.**  Counsel for the Trustee complained to counsel for Scott Salyer that the payment of $510,000 to Gary Perry was not permitted under the Preliminary Injunction Orders, and counsel for Salyer agreed that the money would be repaid into the Sales Proceeds Account.  On April 7, 2011, I received an e-mail from Todd Truitt, counsel for Scott Salyer, and addressed to my partner Gregory Nuti.  (I was a "cc" on the email.)  The email attached the Accounting for the Sales Proceeds Account for March 2011, as required under the Feb. 16 Order (the "Mar. Accounting").  Attached as **Exhibit 16** is the first page of the Mar. Accounting (I have not included the back-up materials received, which are an additional 189 pages).  The Mar. Accounting shows a deposit $510,408.41 into the

[1] Exhibit 14.

[2] Exhibit 10

[3] Exhibit 15

[4] Exhibits 10 & 11

Sales Proceeds Account, which is identified as "Reversal of Gary Perry – Legal Fees."  No other documents in the Mar. Accounting indicated the source of the funds for this deposit.

      31.     The Metro United Bank documents include the deposit slip for this $510,408.41 deposit, along with copies of the checks included in the deposit.  These documents show that Mr. Perry was not the source of the entire $510,408.41 deposit.  Mr. Perry wrote two checks totaling $48,439.60.  The third check was written by Collins & Associates for the amount of $461,969.41.  A true and correct copy of the front and back of the March 28, 2011 deposit slip for the deposit of $510,408.41, along with copies of the three checks comprising that deposit are attached hereto as **Exhibit 17**.

      I declare under penalty of perjury of the laws of the United States and the State of California that the foregoing is true and correct.

      Executed this 30th day of August, 2011, in San Francisco, California.

                                  */s/  Michael M. Carlson*
                                  Michael M. Carlson

# EXHIBIT 1

BMO 001734



SSC FARMING LLC
PO BOX 192955
SAN FRANCISCO, CA 94119

METRO UNITED BANK
SAN MATEO, CA 94401
90-4210/1222

1008

1/11/2011

PAY TO THE
ORDER OF     Collins and Assoc.

$ **50,000.00

Fifty Thousand and 00/100***************************************************** DOLLARS

Collins and Assoc.

MEMO

AUTHORIZED SIGNATURE

⑆"008"⑆ ⑈1222421012⑈ 0580182020"

Details on Back
Security Features Included

BMO 001735

PAY TO THE ORDER OF

**MECHANICS BANK**
121102036

FOR DEPOSIT ONLY

**COLLINS AND ASSOCIATES**
041283147

BOFD 121102036
Mechanics Bank
2011-01-11  BR 29
1207236283

120723b283

# EXHIBIT 2

BMO 001737

 METRO UNITED BANK

# SIGNATURE CARD

FINANCIAL INSTITUTION:

METRO UNITED BANK
43 E 3RD AVENUE
SAN MATEO, CA 94401

OWNERSHIP OF ACCOUNT - CONSUMER PURPOSE

☐ INDIVIDUAL          OTHER:
☐ JOINT ACCOUNT       ☐ TENANCY IN COMMON ACCOUNT
☐ COMMUNITY PROPERTY ACCOUNT OF HUSBAND AND WIFE
☐ JOINT - Husband & Wife (RIGHT OF SURVIVORSHIP)
☐ TRUST - SEPARATE AGREEMENT:

☐ TOTTEN TRUST   OR   ☐ PAY -ON- DEATH

DESIGNATION AS DEFINED IN THIS AGREEMENT
Name and Address of Beneficiaries:

OFAC BY: W
DATE: 10/27/10

OWNERSHIP OF ACCOUNT - BUSINESS PURPOSE

☐ SOLE PROPRIETORSHIP
☐ CORPORATION:     ☐ FOR PROFIT   ☐ NOT FOR PROFIT
☐ PARTNERSHIP
☒ LIMITED LIABILITY CORPORATION

BUSINESS TYPE: Farm property rental leasing
COUNTY & STATE OF  CA
ORGANIZATION:
AUTHORIZATION DATED: 10/27/10
BUSINESS PHONE #:(415) 695-0830

DATE OPENED: 10/27/2010     BY     BETTY HO

INITIAL DEPOSIT: $-00 40,000

☐ CASH   ☐ CHECK   ☒ Wire TR

HOME PHONE# (415) 695-0830   BUSINESS PHONE # (415) 695-0830

EMAIL ADDRESS SIGNER 1:
EMAIL ADDRESS SIGNER 2:

BACKUP WITHHOLDING CERTIFICATIONS

TIN: 77-0587376

☒ TAXPAYER I.D. NUMBER - The Taxpayer Identification Number shown
above (TIN) is my correct taxpayer identification number.

☐ BACKUP WITHHOLDING - I am not subject to backup withholding
either because I have not been notified that I am subject to
backup withholding as a result of a failure to report all
interest or dividends, or the Internal Revenue Service has
notified me that I am no longer subject to backup withholding.

☐ EXEMPT RECIPIENTS - I am an exempt recipient under the
Internal Revenue Service Regulations.

SIGNATURE: I certify under penalties of perjury the statements
checked in this section and that I am a U.S. person (including
a U.S. resident alien).

X _____
SSC FARMING LLC

Account Open By:  BETTY HO

Account Responsibility By: JOHN CURTIS

---

ACCOUNT NUMBER          PORTFOLIO NUMBER
560165702                   8599

ACCOUNT OWNER (S) NAME & ADDRESS

SSC FARMING LLC

P O BOX 192955
SAN FRANCISCO, CA 94110

| TYPE OF ACCOUNT | ☐ NEW ☒ CHECKING ☐ MONEY MARKET ☐ NOW | ☐ EXISTING ☐ SAVINGS ☐ CERTIFICATE OF DEPOSIT |
| --- | --- | --- |

SIGNATURE (S) - The undersigned agree to the terms stated on
every page of this form and acknowledge receipt of a completed
copy. The undersigned further authorized the financial
institution to verify credit and employment history and / or
have a credit reporting agency prepare a credit report on the
undersigned, as individual. The undersigned also acknowledge
the receipt of a copy and agree to the terms of the following
disclosure (s):

☒ DEPOSIT ACCOUNT   ☐ FUND AVAILABILITY   ☐ TRUTH IN SAVINGS
☒ ELECTRONIC FUND TRANSFERS   ☒ PRIVACY   ☐ SUBSTITUTE CHECKS

☐ OTHER:

*IDENTIFICATION TYPE: DL = DRIVER LICENSE, PP= PASSPORT, ID= IDENTIFICATION CARD,
RA = RESIDENCE ALIEN(GREEN)

(1) X
DEBBIE PRUETT
I.D.#:              I.D.TYPE:
ISSUE BY:    ISSUE DATE:    EXP.DATE:
ISSUE PLACE:                M.N.N.:
OCCUPATION:                 S.S.N#

(2) X
I.D.#:              I.D.TYPE:
ISSUE BY:    ISSUE DATE:    EXP.DATE:    D.O.B.:
ISSUE PLACE:                M.N.N.:
OCCUPATION:                 S.S.N#

(3) X
I.D.#:              I.D.TYPE:
ISSUE BY:    ISSUE DATE:    EXP.DATE:    D.O.B.:
ISSUE PLACE:                M.N.N.:
OCCUPATION:                 S.S.N#

(4) X
I.D.#:              I.D.TYPE:
ISSUE BY:    ISSUE DATE:    EXP. DATE:    D.O.B.:
ISSUE PLACE:                M.N.N.:
OCCUPATION:                 S.S.N#

CPS 9-08-2008

# EXHIBIT 3

BMO 001739



METRO UNITED BANK

WE HAVE CHARGED YOUR ACCOUNT    **FOR OUTGOING WIRE**

BENEFICIARY'S:   SSC FARMING LLC.

Acct. No.  560165702

Date **11-1-10**  Appd.

AMOUNT **$150,000.00**

PLEASE MAKE THIS ENTRY IN YOUR REGISTER

To:

SSC FARMING LLC.

�semi1 2 2 4 2 1 0 �semi    0 5 6 0 1 6 5 7 0 2 ⑾ 0 3 8

**ADVICE OF CHARGE**   NAV-2309

BMO 001740

10007000259.11/01110

# EXHIBIT 4

BMO 001742

METRO UNITED BANK

WE HAVE CHARGED YOUR ACCOUNT _____     **FOR OUTGOING WIRE FEE**

**BENEFICIARY'S:     COLLINS & ASSOCIATES**

Acct. No.  〠〠〠〠 560165702    Date 11-1-10    Appd.

To:

SSC FARMING LLC.
3450 21ST STREET
SAN FRANCISCO, CA  94110

⑈122242102⑈   0560⑆6570 2⑈⑈04⑆

AMOUNT  **$20.00**

PLEASE MAKE THIS
ENTRY IN YOUR
REGISTER

**ADVICE OF CHARGE**     NAV-2309

10007002261 11/8118

BMO 001744

# EXHIBIT 5

BMO 001745



SSC Finance LLC
P.O. Box 192955
San Francisco, CA 94119

PAY TO THE
ORDER OF _____ Benjamin Trujillo _____

Fifty Three Thousand and 00/100 _____ DOLLARS

METRO UNITED BANK
43 East 3rd Ave, San Mateo, CA 94401-0011

FOR _____

DATE 11/16/2010

90-4210/1222

$ 53,000.00

⑈122242102⑈ 0580 ⑆188370 2⑈

BMO 001746

120542393 1

BOFD 121102036
Mechanics Bank
2010-11-16 BR 29
120542393 1

# EXHIBIT 6

1003

SSC Farming, LLC
P.O. Box 192055
San Francisco, CA

PAY TO THE
ORDER OF _Collins Rech Associates_

DATE 12/3/2010                90-4210/1222

One Hundred Thousand And 00/100 ——————————

$ 100,000 00

METRO UNITED BANK
43 East 3rd Ave., San Mateo, CA 94401-4011

DOLLARS

FOR Dr. Frances's Expenses

⑆1222421021⑆ 0560165570 2⑈

120589072 4

BOFD 121102036
Mechanics Bank
2010-12-03  BR 29
1205890724

COLLINS AND ASSOCIATES
0412831147
FOR DEPOSIT ONLY
121102036
MECHANICS BANK
PAY TO THE ORDER OF

ENDORSE HERE

# EXHIBIT 7

BMO 001751

```
                                006 00005 00              PAGE:      1
                                ACCOUNT:      560165702  01/31/2011
                                DOCUMENTS:            5
```

```
            SSC FARMING LLC                              30
            P O BOX 192955                                1
            SAN FRANCISCO CA  94119                        4
```

```
=========================================================================
SAN MATEO                          TELEPHONE:650-685-8900
43 E 3RD AVENUE
SAN MATEO, CA 94401
=========================================================================
      PLEASE DO NOT FORGET TO PICK UP YOUR IMAGE STATEMENT ORGANIZER.
```

```
=========================================================================
               BUSINESS CHECKING ACCOUNT 560165702
=========================================================================
```

| | | LAST STATEMENT 12/31/10 | 1,674,237.29 |
|---|---|---|---|
| | | 1 CREDITS | 353,000.00 |
| MINIMUM BALANCE | 1,623,844.21 | 7 DEBITS | 51,925.67 |
| AVERAGE BALANCE | 1,732,573.90 | THIS STATEMENT 01/31/11 | 1,975,311.62 |

```
          - - - - - - - - OTHER CREDITS - - - - - - - -
                                              DATE      AMOUNT
DESCRIPTION                                   01/24   353,000.00
WIRE TRANSFER
```

```
          - - - - - - - - - CHECKS - - - - - - - - -
  CHECK #..DATE......AMOUNT  CHECK #..DATE......AMOUNT  CHECK #..DATE......AMOUNT
     1008 01/12  50,000.00      1010 01/26    102.08
     1009 01/24     815.98      1011 01/26    407.76
```

```
          - - - - - - - - - OTHER DEBITS - - - - - - - -
                                              DATE      AMOUNT
DESCRIPTION                                   01/21      393.08
XXXXX7376 INTUIT PAYROLL S QUICKBOOKS         01/24       10.00
WIRE TRANSFER FEE                             01/24      196.77
XXXXX7376 INTUIT PAYROLL S QUICKBOOKS
                    * * * C O N T I N U E D * * *
```

```
                              006 00005 00           PAGE:    2
                              ACCOUNT:       560165702  01/31/2011
                              DOCUMENTS:            5
```

SSC FARMING LLC

```
================================================================
                BUSINESS CHECKING ACCOUNT 560165702
================================================================

         - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

*****************************************************************
*                     |   TOTAL FOR  |    TOTAL     |  PREVIOUS  *
*                     | THIS PERIOD  | YEAR TO DATE | YEAR TOTAL *
*--------------------------------------------------------------- *
* TOTAL OVERDRAFT FEES:  |      .00 |       .00 |        .00 *
*--------------------------------------------------------------- *
* TOTAL RETURNED ITEM FEES:  |      .00 |       .00 |        .00 *
*****************************************************************
```

# EXHIBIT 8

BMO 001754

**METRO UNITED BANK**

WE HAVE CREDITED YOUR ACCOUNT____ **FOR INCOMING WIRE**

ORIGINATOR: **CARY S COLLINS DBA COLLINS & ASSOCIATES**

PLEASE MAKE THIS
ENTRY IN YOUR
REGISTER

| Acct. No. | 0560165702 | Date 1/24/11 | Appd. | AMOUNT | **$353,000.00** |

ADVICE OF CREDIT

NAV2308

To: ⌐ **SSC FARMING LLC** ⌐

⑇1222421O2⑇ 0560165702⑈016

DDA Credits - 01/24/2011 - 560165702 - $353,000.00 - 10005001212

10005001212 01/2411

DDA Credits - 01/24/2011 - 560165702 - $353,000.00 - 10005001212

BMO 001755

# EXHIBIT 9

BMO 001756

1002

SSC Gaming, LLC
P.O. Box 192155
San Francisco, CA 94119

PAY TO THE
ORDER OF  E. Scott Sawyer

DATE 12/1/2010

90-4210/1222

Fifteen Thousand and 00/100                                                    $ 15,000.00

DOLLARS

**METRO UNITED BANK**
43 East 3rd Ave., San Mateo, CA 94401-4011

FOR Eden Management Services, 12/2010

⑈122421021⑈ 0560 85 70 2⑈

P0027280675  ▸i21137522◂
Comerica Bank
12032010 004  3

ENDORSE HERE

BMO 001758

# EXHIBIT 10

BMO 001759

# Skadden, Arps, Slate, Meagher & Flom LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000

FAX: (213) 687-5600

www.skadden.com

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
(213) 687-5200
DIRECT FAX
(213) 621-5200
EMAIL ADDRESS
VAN.DURRER@SKADDEN.COM

February 22, 2011

Gregory C. Nuti
Schnader Harrison Segal & Lewis LLP
One Montgomery Street, Suite 2200
San Francisco, CA 94104-5501

RE:     In re SK Foods, Case No. 09-29162

Dear Mr. Nuti:

Pursuant to the Stipulation and Order Further Modifying Preliminary Injunction dated February 16, 2011 (the "Budget Extension Stipulation"), enclosed herewith is the Accounting[1] for funds used by the Defendants through December 31, 2010.

The Defendants have requested copies of their bank statements. They will provide copies of these bank statements to you as soon as they are received.

The Accounting enclosed herewith includes a summary page and exhibits containing receipts with an entry in the far right column of the summary page for the certain exhibit containing the receipt(s) for the certain expense(s). Please note that the bank statements we will later provide will show the various charges related to the checking account (i.e., wire fees and check stock charge). Please also note that no invoices were given for the payments for the farm manager as such payments were made pursuant to the Budget.

As for legal fees, the only payment by the Defendants to date for legal fees was a payment on or around February 3, 2011 to Nageley, Meredith & Miller,

---

[1]     Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Budget Extension Stipulation.

Mr. Gregory C. Nuti
February 22, 2011
Page 2

Inc. in the amount of $347,128.40, which was for work performed through
December 31, 2010 excluding work performed on the "Drum Line" proceeding.
Pursuant to the Amended Preliminary Injunction dated January 20, 2011, Nageley,
Meredith & Miller, Inc. will be providing a monthly accounting to you with a
detailed report in the next few weeks.

We would also like to inquire as to the status of the proposed
management agreement with Jacobo's Management and any proposed budget for
funds to be expended pursuant to this management agreement. As the growing
season is fast approaching, we would greatly appreciate a status update as to this
open item.

If you have any questions regarding the enclosed items or anything
else, please feel free to reach out to me.

Sincerely,

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

Van C. Durrer II
Attorneys for Scott Salyer, individually and as
trustee of the Scott Salyer Revocable Trust


cc:    Michael M. Carlson
       Bradley D. Sharp

Enclosures

638821-Los Angeles Server 2A - MSW

SSC FARMING, LLC
RECEIPTS AND DISBURSEMENTS ANALYSIS - COLUSA PROCEEDS

FOR PERIOD COVERING OCTOBER 28, 2010 TO DECEMBER 31, 2010

| DESCRIPTION | DATE | AMOUNT | EXHIBIT |
|---|---|---|---|
| OPENING DEPOSIT - WESTERN TITLE RE COLUSA ESCROW | 10/28/2010 | 40,000.00 | |
| WIRE FEES | 10/28/2010 | (10.00) | |
| OPENING DEPOSIT - WESTERN TITLE RE COLUSA ESCROW | 10/29/2010 | 551,893.27 | |
| OPENING DEPOSIT - WESTERN TITLE RE COLUSA ESCROW | 10/29/2010 | 1,491,102.80 | |
| WIRE FEES | 10/29/2010 | (20.00) | |
| GREWAL CONSULTING FOR SEPTEMBER/OCTOBER FARM MANAGEMENT AND PISTACHIO WATERING | 10/29/2010 | (20,000.00) | |
| WIRE FEES | 10/29/2010 | (20.00) | |
| RABO BANK N.A. MORTGAGE | 10/29/2010 | (30,803.58) | A |
| GREWAL CONSULTING FOR NOVEMBER FARM MANAGEMENT AND PISTACHIO WATERING | 11/2/2010 | (3,400.00) | B |
| TERESA BROWN - CARETAKER SALARY | 11/5/2010 | (840.00) | C |
| CHECK STOCK CHARGE | 11/10/2010 | (205.77) | |
| | | | |
| CASH BALANCE AT 11/30/10 | | 2,027,696.72 | |
| | | | |
| TERESA BROWN - OUT OF POCKET EXPENSES AND CARETAKER SALARY (NOV/DEC) | 12/1/2010 | (3,724.57) | D |
| FARM MANAGER - DECEMBER | 12/1/2010 | (15,000.00) | |
| TERESA BROWN - REIMBURSEMENT FOR VARIOUS EXPENSES | 12/21/2010 | (1,813.34) | E |
| RABO BANK - MORTGAGE | 12/23/2010 | (29,900.00) | F |
| WASTE CONNECTIONS | 12/23/2010 | (543.61) | G |
| | | | |
| CASH BALANCE AS 12/31/10 | | 1,976,715.20 | |

# EXHIBIT 11

BMO 001763

**Barry, Linda**

| | |
|---|---|
| **From:** | Truitt, Todd [Todd.Truitt@skadden.com] |
| **Sent:** | Monday, March 07, 2011 4:58 PM |
| **To:** | Nuti, Gregory |
| **Cc:** | 'bsharp@dsi.biz'; Durrer II, Van C; Carlson, Michael M. |
| **Subject:** | SSC Farms - Accounting and Bank Statements for January and February 2011 |
| **Attachments:** | Feb 2011 Bank Statement.pdf; Jan 2011 Bank Statement.pdf; SSC Farms Accounting for Jan and Feb 2011.PDF |

Attached please find the accounting and bank statements for January and February 2011 for SSC Farms.

**Todd Truitt**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**300 South Grand Avenue | Los Angeles | California | 90071-3144**
**T: 213.687.5645 | F: 213.621.5645**
**todd.truitt@skadden.com**

------------------------------------------------------------------------------
**************************************************

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
**************************************************
**************************************************

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
**************************************************
================================================================================

1

**SSC FARMING, LLC**
RECEIPTS AND DISBURSEMENTS ANALYSIS - COLUSA PROCEEDS
FOR PERIOD COVERING JANUARY 1, 2011 TO FEBRUARY 28, 2011

| DESCRIPTION | CHECK # | DATE | AMOUNT | EXHIBIT |
|---|---|---|---|---|
| *CASH BALANCE AT 12/31/10* | | | *$1,976,715.20* | |
| | | | | |
| TERESA BROWN - PAYROLL TAXES | EFT | 1/21/2011 | (393.08) | A |
| TERESA BROWN - CARETAKER SALARY 1/1/11 TO 1/15/11 | 1009 | 1/22/2011 | (815.98) | A |
| TERESA BROWN - OUT OF POCKET COSTS | 1010 | 1/19/2011 | (102.08) | 8 |
| BANK FEE | EFT | 1/24/2011 | (10.00) | |
| TERESA BROWN - CARETAKER SALARY | 1011 | 1/24/2011 | (407.76) | C |
| TERESA BROWN - PAYROLL TAXES | EFT | 1/24/2011 | (196.77) | C |
| | | | | |
| *CASH BALANCE AT 1/31/11* | | | *$1,974,789.53* | |
| | | | | |
| RENTAL INCOME THREE MONTHS | | 2/1/2011 | 2,550.00 | |
| GARY PERRY LEGAL FEES PER COURT ORDER | 1015 | 2/1/2011 | (339,690.00) | |
| GARY PERRY LEGAL FEES PER COURT ORDER | 1016 | 2/1/2011 | (122,279.41) | |
| NAGELY MEREDITH AND MILLER LEGAL FEES PER COURT ORDER | 1017 | 2/1/2011 | (347,128.40) | |
| GARY PERRY LEGAL FEES PER COURT ORDER | 1018 | 2/1/2011 | (48,439.60) | |
| TERESA BROWN - PAYROLL TAXES | EFT | 2/2/2011 | (393.08) | D |
| TERESA BROWN - CARETAKER SALARY | 1014 | 2/3/2011 | (815.98) | D |
| RENTAL INCOME ONE MONTH | | | 850.00 | |
| TERESA BROWN - CARETAKER SALARY | 1020 | 2/22/2011 | (815.98) | E |
| TERESA BROWN - OUT OF POCKET COSTS | 1021 | 2/22/2011 | (29.70) | F |
| TERESA BROWN - PAYROLL TAXES | EFT | 2/23/2011 | (1,209.06) | G |
| MISC PAYROLL REFUND | EFT | 2/28/2011 | 132.30 | |
| | | | | |
| *CASH BALANCE AT 2/28/11* | | | *$1,117,520.62* | |

# EXHIBIT 12

BMO 001766



**SSC FARMING LLC**
PO BOX 192955
SAN FRANCISCO, CA 94119

1015

METRO UNITED BANK
SAN MATEO, CA 94401
90-4210/1222

2/1/2011

PAY TO THE
ORDER OF_____ Collins and Associates

Three Hundred Thirty-Nine Thousand Six Hundred Ninety and 00/100***********************************************************

$**339,690.00

DOLLARS

Collins and Associates
P.O. Box 192955
San Francisco, CA  94119

MEMO

AUTHORIZED SIGNATURE

⑈0010⑈5⑈ ⑆1222421021⑆ 0580⑈5770 2⑈

Security Features Included  Details on Back.

BMO 001767

**PAY TO THE ORDER OF**
**METRO UNITED BANK**
**122242102**
**FOR DEPOSIT ONLY**
**COLLINS & ASSOCIATES**
**0760053402**

# EXHIBIT 13

BMO 001769

SSC FARMING LLC
PO BOX 192955
SAN FRANCISCO, CA 94119

METRO UNITED BANK
SAN MATEO, CA 94401
90-4210/1222

1016

2/1/2011

PAY TO THE
ORDER OF    Collins and Associates

$ **122,279.41

One Hundred Twenty-Two Thousand Two Hundred Seventy-Nine and 41/100*********************************************** DOLLARS

Collins and Associates
P.O. Box 192955
San Francisco, CA  94119

AUTHORIZED SIGNATURE

MEMO

⑆001016⑆ ⑆122421202⑆ 0560185710 2⑈

BMO 001770

PAY TO THE ORDER OF
METRO UNITED BANK
122242102
FOR DEPOSIT ONLY
COLLINS & ASSOCIATES
0760053402

BMO 001771

# EXHIBIT 14

```
                                      006 00005 00              PAGE:    1
                                      ACCOUNT:        560165702  11/30/2010
                                      DOCUMENTS:              5
```

```
                                                          30
         SSC FARMING LLC                                    0
         P O BOX 192955                                     5
         SAN FRANCISCO CA   94119
```

```
===============================================================
                                 TELEPHONE:650-685-8900
SAN MATEO
43 E 3RD AVENUE
SAN MATEO, CA 94401
===============================================================
     PLEASE DO NOT FORGET TO PICK UP YOUR IMAGE STATEMENT ORGANIZER.

===============================================================
                    BUSINESS CHECKING ACCOUNT 560165702
===============================================================

                                LAST STATEMENT 10/29/10   2,062,946.07
                                        CREDITS                    .00
MINIMUM BALANCE      1,824,676.72                         238,269.35
AVERAGE BALANCE      1,867,644.03       7 DEBITS
                                THIS STATEMENT 11/30/10   1,824,676.72
```

```
       - - - - - - - - - - CHECKS - - - - - - - - - -
     CHECK #..DATE......AMOUNT  CHECK #..DATE......AMOUNT  CHECK #..DATE......AMOUNT
         *11/02  30,803.58        *11/10     840.00
         *11/04   3,400.00         11/17  53,000.00

(*) INDICATES A GAP IN CHECK NUMBER SEQUENCE
```

```
       - - - - - - - - - OTHER DEBITS - - - - - - - - -
                                                   DATE      AMOUNT
DESCRIPTION                                        11/01      20.00
WIRE TRANSFER FEE                                  11/01  150,000.00
WIRE TRANSFER                                      11/10     205.77
030 10312088910 HARLAND CLARKE CHK ORDERS
                  * * * C O N T I N U E D * * *
```

BMO 001773

```
                              006 00005 00                PAGE:     2
                              ACCOUNT:        560165702  11/30/2010
                              DOCUMENTS:           5
```

SSC FARMING LLC

===========================================================================
BUSINESS CHECKING ACCOUNT 560165702
===========================================================================

- - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

```
*************************************************************************
*                            |   TOTAL FOR    |     TOTAL        *
*                            | THIS PERIOD    |  YEAR TO DATE     *
*----------------------------------------------------------------------*
* TOTAL OVERDRAFT FEES:       |      .00       |        .00        *
*----------------------------------------------------------------------*
* TOTAL RETURNED ITEM FEES:   |      .00       |        .00        *
*************************************************************************
```

# EXHIBIT 15

BMO 001775

```
                                    006 00005 00          PAGE:      1
                                    ACCOUNT:              12/31/2010
                                    DOCUMENTS:    560165702
                                                       5
```

```
                    SSC FARMING LLC                    30
                    P O BOX 192955                      0
                    SAN FRANCISCO CA  94119-2955        5
```

==========================================================================
SAN MATEO                           TELEPHONE:650-685-8900
43 E 3RD AVENUE
SAN MATEO, CA 94401
==========================================================================
  PLEASE DO NOT FORGET TO PICK UP YOUR IMAGE STATEMENT ORGANIZER.

==========================================================================
            BUSINESS CHECKING ACCOUNT 560165702
==========================================================================

                                LAST STATEMENT 11/30/10   1,824,676.72
                                        CREDITS                   .00
MINIMUM BALANCE        1,674,237.29                         150,439.43
AVERAGE BALANCE        1,720,586.74       7 DEBITS
                                THIS STATEMENT 12/31/10   1,674,237.29

        - - - - - - - - - CHECKS - - - - - - - - -
CHECK #..DATE......AMOUNT  CHECK #..DATE......AMOUNT  CHECK #..DATE......AMOUNT
     *12/02   3,724.57     *12/06  100,000.00          12/29   1,813.34
     *12/06  15,000.00     *12/28   29,900.00

(*) INDICATES A GAP IN CHECK NUMBER SEQUENCE

          - - - - - - - - OTHER DEBITS - - - - - - - -
                                                 DATE         AMOUNT
DESCRIPTION                                      12/24           .75
XXXXX7376 INTUIT PAYROLL S QUICKBOOKS            12/24           .77
XXXXX7376 INTUIT PAYROLL S QUICKBOOKS
```

  - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

```
  ***********************************************************
  *                      |                 |                *
  *                      | TOTAL FOR       |   TOTAL        *
  *                      | THIS PERIOD     | YEAR TO DATE   *
  *----------------------|-----------------|----------------*
  * TOTAL OVERDRAFT FEES:|       .00       |        .00     *
  *----------------------|-----------------|----------------*
  * TOTAL RETURNED ITEM FEES:   .00       |        .00     *
  ***********************************************************
```

# EXHIBIT 16

BMO 001777

**SSC FARMING, LLC**
**RECEIPTS AND DISBURSEMENTS ANALYSIS - COLUSA PROCEEDS**

**FOR PERIOD COVERING MARCH 1, 2011 TO MARCH 31, 2011**

| DESCRIPTION | | DATE | AMOUNT |
|---|---|---|---|
| CASH BALANCE AT 2/28/11 | | | 1,117,520.62 |
| | | | |
| TERESA BROWN - PAYROLL TAXES | EFT | 3/9/2011 | (425.28) |
| TERESA BROWN - CARETAKER SALARY | 1022 | 3/10/2011 | (815.98) |
| WASTE CONNECTIONS - UTILITIES | 1028 | 3/14/2011 | (623.68) |
| TOTAL POOL CARE - POOL MAINTENANCE | 1029 | 3/14/2011 | (360.00) |
| RABOBANK - MORTGAGE PAYMENT | 1030 | 3/14/2011 | (29,352.97) |
| THE GAS COMPANY - UTILITIES | 1031 | 3/14/2011 | (1,426.76) |
| ROBERT PRUETT - ACCOUNTING | 1032 | 3/14/2011 | (1,300.00) |
| TERESA BROWN - OUT OF POCKET COSTS | 1033 | 3/14/2011 | (68.21) |
| RENTAL INCOME ONE MONTH | - | 3/15/2011 | 850.00 |
| LAGUNA IRRIGATION DISTRICT - WATER | 1034 | 3/16/2011 | (3,402.92) |
| COUNTY OF KINGS TAX COLLECTOR - PROPERTY TAXES | 1035 | 3/16/2011 | (4,563.10) |
| COUNTY OF KINGS TAX COLLECTOR - PROPERTY TAXES | 1036 | 3/16/2011 | (4,298.39) |
| COUNTY OF KINGS TAX COLLECTOR - PROPERTY TAXES | 1037 | 3/16/2011 | (6,920.12) |
| COUNTY OF KINGS TAX COLLECTOR - PROPERTY TAXES | 1038 | 3/16/2011 | (3,519.73) |
| COUNTY OF KINGS TAX COLLECTOR - PROPERTY TAXES | 1039 | 3/16/2011 | (39,649.96) |
| COUNTY OF KINGS TAX COLLECTOR - PROPERTY TAXES | 1040 | 3/16/2011 | (34,511.50) |
| TERESA BROWN - PAYROLL TAXES | EFT | 3/16/2011 | (564.18) |
| TERESA BROWN - CARETAKER SALARY | 1026 | 3/17/2011 | (815.98) |
| REVERSAL OF GARY PERRY - LEGAL FEES | - | 3/18/2011 | 510,408.41 |
| IRS - PAYROLL TAXES | 1041 | 3/22/2011 | (56.00) |
| IRS - PAYROLL TAXES | 1042 | 3/22/2011 | (56.00) |
| IRS - PAYROLL TAXES | 1043 | 3/22/2011 | (1,179.79) |
| IRS - PAYROLL TAXES | 1044 | 3/22/2011 | (1,735.71) |
| EMPLOYMENT DEVELOPMENT DEPT - PAYROLL TAXES | 1045 | 3/23/2011 | (235.93) |
| EMPLOYMENT DEVELOPMENT DEPT - PAYROLL TAXES | 1046 | 3/23/2011 | (206.32) |
| EMPLOYMENT DEVELOPMENT DEPT - PAYROLL TAXES | 1047 | 3/23/2011 | (360.19) |
| JACOBOS MANAGEMENT - FARM MANAGEMENT | 1049 | 3/23/2011 | (3,245.83) |
| JACOBOS MANAGEMENT - FARM MANAGEMENT | 1050 | 3/23/2011 | (1,622.92) |
| TERESA BROWN - OUT OF POCKET COSTS | 1051 | 3/23/2011 | (193.09) |
| NAGELEY, MEREDITH & MILLER, INC - LEGAL FEES | 1052 | 3/23/2011 | (23,548.92) |
| LARRY J LICHTENEGGER - LEGAL FEES | 1053 | 3/31/2011 | (23,370.00) |
| | | | |
| CASH BALANCE AT 3/31/11 | | | 1,440,349.57 |

# EXHIBIT 17

BMO 001779



DDA Credits - 03/18/2011 - 560165702 - $510,408.41 - 70001000033

70001000033 03/1811

DDA Credits - 03/18/2011 - 560165702 - $510,408.41 - 70001000033



**GARY G. PERRY ATTORNEY AT LAW**
**CLIENT TRUST**
2251 FAIR OAKS BLVD. # 200
SACRAMENTO, CA 95825
PH. 916-649-0742

90-4303/1211
002501799

1057

DATE 3/15/11

PAY TO THE ORDER OF SSC Farming, LLC          $ 15,000 00

Fifteen Thousand                              DOLLARS

★★
★★
**FIVE** 2400 Del Paso Rd., Suite 100
**STAR** Sacramento, CA 95834
**BANK** (916) 640-1500

MEMO                                          MP

⑆121143037⑆1057 002501799⑈

Transit - 03/18/2011 - $15,000.00 - 70001000034

70001000034 03/18/11>122242102<

Transit - 03/18/2011 - $15,000.00 - 70001000034



3589

**GARY G. PERRY ATTORNEY AT LAW**
(916) 649-0742
2251 FAIR OAKS BLVD. #200
SACRAMENTO, CA 95825

1400 Del Paso Rd., Suite 100
Sacramento, CA 95834
(916) 640-1300
90-4303-1211

3/17/2011

PAY TO THE
ORDER OF ___ SSC Farming, LLC _____ $ **33,439.60

Thirty-Three Thousand Four Hundred Thirty-Nine and 60/100****** _____ DOLLARS

MEMO

AUTHORIZED SIGNATURE

⑈003589⑈ ⑆121143037⑆ 00220340411⑈

Transit - 03/18/2011 - $33,439.60 - 70001000035

70001000035 03/18/11>122242182<

ENDORSE HERE
Credited to the Account of
the within named payee
Absence of Endorsement Guaranteed
METRO UNITED BANK
VAN NESS OFFICE
San Francisco CA

056 0165702

Transit - 03/18/2011 - $33,439.60 - 70001000035



**COLLINS & ASSOCIATES**
P.O. BOX 192955
SAN FRANCISCO, CA 94119

**METRO UNITED BANK**
SAN FRANCISCO, CA 94109
90-4210/1222

1121

3/18/2011

PAY TO THE
ORDER OF   SSC Farming, LLC                                            $ **461,969.41

Four Hundred Sixty-One Thousand Nine Hundred Sixty-Nine and 41/100************************************************** DOLLARS

SSC Farming, LLC

MEMO

AUTHORIZED SIGNATURE

"001121"  "122242102"  0760053403"

DDA Debits - 03/18/2011  - 760053403 - $461,969.41 - 70001000036

70001000036 03/1811

Credited to the Account of
the within named payee
Absence of Endorsement Guaranteed
METRO UNITED BANK
VAN NESS OFFICE
San Francisco CA

DDA Debits - 03/18/2011  - 760053403 - $461,969.41 - 70001000036

# EXHIBIT 105

Lisa Crist / Stefanie Salyer

**SUNDAY MARCH 30th**
4:00pm Barno depart MJC with Stefanie to Los Banos
4:30pm Barno depart Los Banos to Santa Monica
6:00pm Arrive Santa Monica

Picked up by Kurt w/ Beverly Hills Limo and taken to United Terminal 2
310-466-4998

9:45pm United Flight # 9549 non-stop to Auckland

**TUESDAY APRIL 1st**
6:30am Arrive Auckland
Will be met by Raynor Simich at the airbridge directly off flight
She will take you to your hotel
Raynor with SkyCare International
649 236 1215
Westin Confirmation Jr Suite 85825745R & 85625745R

**WEDNESDAY APRIL 2nd**
Day Open
Scott arrive Auckland around 4:00pm
7:30pm Dinner at Soul Bar & Bistro
Strolling distance from the Westin

**THURSDAY APRIL 3rd**
CTPM Workshop
7:15am pick up by car
8:15am Registration /Arrival Tea & Coffee
8:30am Start – 5:00pm Finish
Closing with Networking Drinks

**FRIDAY APRIL 4th**
CTPM Workshop
7:15 pick up by car
8:15 Registration / Arrival
8:30 Start – 5:00pm Finish

**SATURDAY APRIL 5th**
Depart Auckland for Napier
Tour Plant

Mynuagawa Warriors Hotel
Tel: 64 6 878 5234
Senfeld Suite / Verona room / Andorra room

SHARP_CH15 000720

**SUNDAY APRIL 6th**
Depart Napier for Gisborne
Arrive Gisborne

Tour Plans

Depart Gisborne for Auckland

**MONDAY APRIL 7th**
9:00am Depart Auckland for Echuca

Check in Georgian

**TUESDAY APRIL 8th**
Depart Echuca for Sydney
12:00 Arrive Sydney

2:40pm Depart Sydney for SFO United flight # 870 non-stop

10:50am Arrive SFO
Driver will be waiting for you once you are out of customs
I believe it will be Sydney and he will call Lisa's cell phone
Once you are off the plane to confirm where he is to meet you.
Angel (Sydney's boss) 415-333-5466

SHARP_CH15 000721

# EXHIBIT 106

| | |
|---|---|
| **From:** | Jeanne Johnston <jeanne.johnston@first organization.com> |
| **Sent:** | Monday, October 27, 2008 4:29 PM |
| **To:** | Mark McCormick <markmc@skfoods.com> |
| **Subject:** | FW: SKF Australia Assig. - Transfer.pdf - Adobe Acrobat Professional |
| **Attach:** | SKF Australia Assig. - Transfer.pdf |

Executed

*JJ*
**Vice President of Business Development**



Executive Office
200 Sky Park Drive
Monterey, California 93940
T: (831) 655-5400
F: (831) 655-5906
C: (831) 917-0537
Email: jeanne.johnston@skfoods.com

---

**From:** Kelly Campbell
**Sent:** Wednesday, September 10, 2008 3:33 PM
**To:** Jeanne Johnston
**Subject:** SKF Australia Assig. - Transfer.pdf - Adobe Acrobat Professional

SHARP_CH15 000968

GENERAL ASSIGNMENT AND TRANSFER

OF SHARES OF

**SK FOODS AUSTRALIA, Pty Ltd.**

For valuable consideration, receipt of which is acknowledged hereby, SK

FOODS, L. P., a California limited partnership ("Assignor"), hereby assigns and

transfers to the assignees and transferees identified on the schedule attached hereto as

Exhibit "A" and incorporated herein by this reference, all of its right, title and interest in

the outstanding shares of SK FOODS AUSTRALIA, Pty Ltd. effective as of November 1,

2006.

"Assignor"

SK FOODS, L. P., a California limited partnership

By:    SK PM CORP., a California corporation,
       General Partner

By: _____
       F. SCOTT SALYER,
       Chief Executive Officer

**SHARP_CH15 000969**

EXHIBIT "A"

## ASSIGNEES AND TRANSFEREES

1.   Scott Salyer, Trustee of the Scott Salyer          -      45 shares
     Revocable Trust, dated July 9, 1984

2.   SK PM CORP, a California corporation               -      55 shares

SHARP_CH15 000970

# EXHIBIT 107

[14]

1  DEAN M. GLOSTER, State Bar No. 109313
   MARK D. PETERSEN, State Bar No. 111956
2  KELLY A. WOODRUFF, State Bar No. 160235
   FARELLA BRAUN + MARTEL LLP
3  235 Montgomery Street, 17th Floor
   San Francisco, California 94104
4  Telephone:   (415) 954-4400
   Facsimile:    (415) 954-4480
5  dgloster@fbm.com
   mpetersen@fbm.com
6  kwoodruff@fbm.com
7
8  Attorneys for Defendants
   SKPM Corp., SSC&L 2007 Trust, Monterey
9  Peninsula Farms, LLC, Scott Salyer, in his capacity
   as Trustee of the SSC&L 2007 Trust and the Scott
10 Salyer Revocable Trust, and the Scott Salyer
   Revocable Trust
11
                    UNITED STATES BANKRUPTCYCOURT
12
                    EASTERN DISTRICT OF CALIFORNIA
13
                        SACRAMENTO DIVISION
14

| | |
|---|---|
| In re:<br><br>SK Foods, LP, ,<br><br>               Debtor.<br><br>Bradley D. Sharp, *et al.*,<br><br>               Plaintiff<br><br>      v.<br><br>SKPM Corp., *et al.*,<br><br>               Defendants. | Case No. 09-29162<br><br>Chapter 11<br><br><br>Adversary Proceeding No. 11-02337<br><br>[DCN:  SH-1]<br><br>**DECLARATION OF KELLY A. WOODRUFF IN SUPPORT OF OPPOSITION TO TRUSTEE'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Date:     September 1, 2011<br>Time:    10:00 a.m.<br>Place:   Courtroom 34<br>            501 "I" Street, 6th Floor<br>            Sacramento, CA<br>Judge:   Hon. Robert S. Bardwil |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DECLARATION OF KELLY A. WOODRUFF /
Adv. Case No. 11-02337

27019\2720902.1

BMO 001789

1    I, Kelly A. Woodruff, declare as follows:

2    1.    I am an attorney at law licensed to practice in the State of California and a member

3    of the law firm of Farella Braun & Martel LLP ("Farella"), recently engaged as counsel in this

4    action for Scott Salyer, individually and as Trustee of the Scott Salyer Revocable Trust, the

5    SSC&L 2007 Trust, SKPM Corp., Monterey Peninsula Farms, LLC and the Scott Salyer

6    Revocable Trust.  Except as otherwise indicated, all statements in this Declaration are based on

7    my personal knowledge or my review of relevant documents, and if called and sworn as a

8    witness, I could and would competently testify to the facts set forth herein.

9    2.    Attached as **Exhibit A** is a true and correct copy of an email dated August 11,

10   2011, from Robert Christmas, counsel to the Australian liquidator of the Cedenco Assets, to me.

11   3.    Attached as **Exhibit B** is a true and correct copy of a Secretary's Incumbency

12   Certificate and its attached Appointment of Manager of Limited Liability for Fast Falcon, LLC,

13   dated February 18, 2010.

14   4.    Attached as **Exhibit C** is a true and correct copy of an Appointment of Manager of

15   Limited Liability for Fast Falcon, LLC, dated May 16, 2011.

16   I declare under penalty of perjury under the laws of the State of California that the

17   foregoing is true and correct.

18

19   DATED:  August 31, 2011

20

21                          _/s/  Kelly A. Woodruff_____
                                Kelly A. Woodruff

22

23

24

25

26

27

28

DECLARATION OF KELLY A. WOODRUFF /        - 2 -
Adv. Case No. 11-02337                                                    27019\2720902.1

BMO 001790

# EXHIBIT A

## Woodruff, Kelly (30) x4403

**From:**   Christmas, Robert [RChristmas@nixonpeabody.com]
**Sent:**   Thursday, August 11, 2011 3:51 PM
**To:**   Woodruff, Kelly (30) x4403
**Cc:**   Petersen, Mark (22) x4406; Schwartz, Kristen (19) x4785
**Subject:** RE: Cedenco 2004 Examinations

With respect to scheduling, it took nearly a month of communications just to get five witnesses to appear consecutively all in one week. Accordingly, as to future examinations, I will provide as much advance notice as possible, but given that scheduling involves a witness, his/her counsel, my clients (coming from overseas) and schedule, and the need to have as many examinations take place successively as possible, we cannot also undertake to consult in advance on scheduling with you, counsel for the Trustee, counsel for BMO, and counsel for the Committee with regard to scheduling.

Robert Christmas

Robert N. H. Christmas
Partner

NIXON PEABODY LLP
ATTORNEYS AT LAW

437 Madison Avenue
New York, New York 10022
Tel.: (212) 940-3000
Direct Ext.: (212) 940-3103
Direct Fax: (866) 947-2426
e-mail: rchristmas@nixonpeabody.com

*The information in this message and any attachments is intended for the named recipients only. It contains privileged and confidential matter. Any dissemination, distribution or copying of this message is strictly prohibited. If you are not the intended recipient, please immediately reply to the sender and delete the message from your email system. Thank you.*

---

**From:** KWoodruff@fbm.com [mailto:KWoodruff@fbm.com]
**Sent:** Thursday, August 11, 2011 6:41 PM
**To:** Christmas, Robert
**Cc:** MPetersen@fbm.com; kschwartz@fbm.com
**Subject:** RE: Cedenco 2004 Examinations

Thank you.

> -----Original Message-----
> **From:** Christmas, Robert [mailto:RChristmas@nixonpeabody.com]
> **Sent:** Thursday, August 11, 2011 3:16 PM
> **To:** Woodruff, Kelly (30) x4403
> **Subject:** RE: Cedenco 2004 Examinations
>
> Kelly,
>
> Yes, there have been productions in advance of the deposition. Van Durrer has copies of all documents produced.

8/31/2011

No other depositions have been scheduled.

Robert

---

**From:** KWoodruff@fbm.com [mailto:KWoodruff@fbm.com]
**Sent:** Thursday, August 11, 2011 5:56 PM
**To:** Christmas, Robert
**Subject:** FW: Cedenco 2004 Examinations

I apologize, I got your email wrong.

-----Original Message-----
**From:**   Woodruff, Kelly (30) x4403
**Sent:**   Thursday, August 11, 2011 2:50 PM
**To:**     'rchristmas@nixonpeabody.com'
**Cc:**     'kcoleman@schnader.com'; 'rsejohns@yahoo.com'; 'gnuti@schnader.com'; 'lcisz@nixonpeabody.com'; 'Spiotto, James E. Esq.';
'Dreher, Jamie Esq.'; Petersen, Mark (22) x4406

**Subject:**   Cedenco 2004 Examinations

Mr. Christmas,

Thank you for forwarding the deposition notices for next week's Rule 2004 exams to Paul Alsdorf.  My
partner Mark Petersen and I will be attending the depositions on behalf of the Salyer entities.  The Skadden
firm is no longer representing them.

Please advise (1) whether any of the deponents has produced documents in response to the subpoena in
advance of the deposition, and (2) whether any other Rule 2004 examinations have been scheduled.  We
note that there are subpoenas issued for at least six other deponents.  We would like to be consulted
regarding scheduling if they have not yet been set.

Thank you,
Kelly Woodruff


**Kelly A. Woodruff**
Litigation Partner

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor, San Francisco, CA 94104
**D** 415.954.4403   **O** 415.954.4400   **F** 415.954.4480
kwoodruff@fbm.com | www.fbm.com
Please consider the environment before printing this email.

8/31/2011

## Woodruff, Kelly (30) x4403

| | |
|---|---|
| **From:** | Christmas, Robert [RChristmas@nixonpeabody.com] |
| **Sent:** | Thursday, August 11, 2011 3:51 PM |
| **To:** | Woodruff, Kelly (30) x4403 |
| **Cc:** | Petersen, Mark (22) x4406; Schwartz, Kristen (19) x4785 |
| **Subject:** | RE: Cedenco 2004 Examinations |

With respect to scheduling, it took nearly a month of communications just to get five witnesses to appear consecutively all in one week. Accordingly, as to future examinations, I will provide as much advance notice as possible, but given that scheduling involves a witness, his/her counsel, my clients (coming from overseas) and schedule, and the need to have as many examinations take place successively as possible, we cannot also undertake to consult in advance on scheduling with you, counsel for the Trustee, counsel for BMO, and counsel for the Committee with regard to scheduling.

Robert Christmas

Robert N. H. Christmas
Partner

# NIXON PEABODY LLP
A T T O R N E Y S   A T   L A W

437 Madison Avenue
New York, New York 10022
Tel.: (212) 940-3000
Direct Ext.: (212) 940-3103
Direct Fax: (866) 947-2426
e-mail: rchristmas@nixonpeabody.com

*The information in this message and any attachments is intended for the named recipients only. It contains privileged and confidential matter. Any dissemination, distribution or copying of this message is strictly prohibited. If you are not the intended recipient, please immediately reply to the sender and delete the message from your email system. Thank you.*

**From:** KWoodruff@fbm.com [mailto:KWoodruff@fbm.com]
**Sent:** Thursday, August 11, 2011 6:41 PM
**To:** Christmas, Robert
**Cc:** MPetersen@fbm.com; kschwartz@fbm.com
**Subject:** RE: Cedenco 2004 Examinations

Thank you.

-----Original Message-----
**From:** Christmas, Robert [mailto:RChristmas@nixonpeabody.com]
**Sent:** Thursday, August 11, 2011 3:16 PM
**To:** Woodruff, Kelly (30) x4403
**Subject:** RE: Cedenco 2004 Examinations

Kelly,

Yes, there have been productions in advance of the deposition. Van Durrer has copies of all documents produced.

8/31/2011

No other depositions have been scheduled.

Robert

---

**From:** KWoodruff@fbm.com [mailto:KWoodruff@fbm.com]
**Sent:** Thursday, August 11, 2011 5:56 PM
**To:** Christmas, Robert
**Subject:** FW: Cedenco 2004 Examinations

I apologize, I got your email wrong.

-----Original Message-----
**From:**   Woodruff, Kelly (30) x4403
**Sent:**   Thursday, August 11, 2011 2:50 PM
**To:**     'rchrisstmas@nixonpeabody.com'
**Cc:**     'kcoleman@schnader.com'; 'rsejohns@yahoo.com'; 'gnuti@schnader.com'; 'lcisz@nixonpeabody.com'; 'Spiotto, James E. Esq.'; 'Dreher, Jamie Esq.'; Petersen, Mark (22) x4406

**Subject:**   Cedenco 2004 Examinations

Mr. Christmas,

Thank you for forwarding the deposition notices for next week's Rule 2004 exams to Paul Alsdorf. My partner Mark Petersen and I will be attending the depositions on behalf of the Salyer entities. The Skadden firm is no longer representing them.

Please advise (1) whether any of the deponents has produced documents in response to the subpoena in advance of the deposition, and (2) whether any other Rule 2004 examinations have been scheduled. We note that there are subpoenas issued for at least six other deponents. We would like to be consulted regarding scheduling if they have not yet been set.

Thank you,
Kelly Woodruff

**Kelly A. Woodruff**
Litigation Partner

---

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor, San Francisco, CA 94104
D 415.954.4403   O 415.954.4400   F 415.954.4480
kwoodruff@fbm.com  |  www.fbm.com
Please consider the environment before printing this email.

8/31/2011

# EXHIBIT B

BMO 001796

# SECRETARY'S INCUMBENCY CERTIFICATE

I, JACOB STEIN, do hereby certify as follows:

1. I am the Secretary of Fast Falcon, LLC, a Nevis limited liability company formed on June 23, 2009 (herein "LLC");

2. The registered agent of the LLC is Morning Star Holdings Limited, Post Office Box 556, Main Street, Charlestown, Nevis, the West Indies;

3. The only currently acting manager of the Company is :

| Office | Officer |
|--------|---------|
| Manager | Cary Collins |

4. The undersigned, being the Secretary of the LLC, hereby certifies that this information is true and correct and accurately reflects the LLCs Certificate of Formation, the Endorsement Certificate, and the Operating Agreement.

5. The signatures following this paragraph are the true and correct signatures of the secretary of the LLC and the manager of the LLC.

February 18, 2010

_____
Secretary

_____
Manager

## APPOINTMENT OF MANAGER OF LIMITED LIABILITY COMPANY

This Appointment of Manager of Limited Liability Company is made and entered into effective as of February 18, 2010 (this "Appointment"), by and among Asia Trust Limited, Trustee of the Hawker Sydley Trust, a Cook Islands Trust (the "Member") and Cary Collins, an individual residing in San Francisco, California ("Cary") who are collectively referred to herein as the "Parties."

### RECITALS

A.     The Member is the sole member of Fast Falcon, LLC, a Nevis limited liability company (the "Company").

B.     Pursuant to Section 9(f) of the Operating Agreement of the Company, the Member has the authority and the power to remove a currently appointed manager of the Company and to appoint a new manager, and the Member would like to exercise such power.

### AGREEMENT

NOW, THEREFORE, the Parties, in consideration of the recitals set forth above, the covenants and agreements contained herein, and for other consideration, the receipt of which is hereby acknowledged, hereby agree as follows:

1.     Removal of Current Manager. The Member, pursuant to Section 9(f) of the Operating Agreement of the Company, hereby removes Frederick Scott Salyer, an individual residing in Pebble Beach, California, as the manager of the Company, and hereby terminates his ability to act or exercise authority on behalf of the Company.

2.     Appointment of New Manager. The Member hereby appoints Cary as the new Manager of the Company, and all of the rights, duties, responsibilities and authority of the Manager, as those are set out in the operating agreement of the Company, are hereby conferred upon him. Cary hereby accepts the appointment and consents to act as the manager of the Company and to carry out the duties of that office.

3.     Execution in Counterparts. This Appointment may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

4.     Governing Law. This Assignment shall be governed by, and interpreted in accordance with, the laws of Nevis.

IN WITNESS WHEREOF, the Parties have executed this Assignment as of the day and year first written above.

**Member**

**Asia Trust Limited, Trustee of the Hawker Sydley Trust**

ATP DIRECTORS LIMITED
BY ITS DULY AUTHORISED OFFICER

By: _____
Name: _____
Title: _____

**Manager**

**Accepted:**

Cary Collins, Manager

2

BMO 001799

# EXHIBIT C

BMO 001800

## APPOINTMENT OF MANAGER OF LIMITED LIABILITY COMPANY

This Appointment of Manager of Limited Liability Company is made and entered into effective as of May 16, 2011 (this "**Appointment**"), by and among Asia Trust Limited, Trustee of the Hawker Sydley Trust, a Cook Islands Trust (the "**Member**") and ATP Directors, Ltd., a company organized in the Cook Islands ("**ATP**") who are collectively referred to herein as the "**Parties.**"

### RECITALS

A.      The Member is the sole member of Fast Falcon, LLC, a Nevis limited liability company (the "**Company**").

B.      Pursuant to Section 9(f) of the Operating Agreement of the Company, the Member has the authority and the power to remove a currently appointed manager of the Company and to appoint a new manager, and the Member would like to exercise such power.

### AGREEMENT

NOW, THEREFORE, the Parties, in consideration of the recitals set forth above, the covenants and agreements contained herein, and for other consideration, the receipt of which is hereby acknowledged, hereby agree as follows:

1.      <u>Removal of Current Manager</u>. The Member, pursuant to Section 9(f) of the Operating Agreement of the Company, hereby removes Cary S. Collins, an individual residing in San Francisco, California, as the manager of the Company, and hereby terminates his ability to act or exercise authority on behalf of the Company.

2.      <u>Appointment of New Manager</u>. The Member hereby appoints ATP as the new Manager of the Company, and all of the rights, duties, responsibilities and authority of the Manager, as those are set out in the operating agreement of the Company, are hereby conferred upon it. ATP hereby accepts the appointment and consents to act as the manager of the Company and to carry out the duties of that office.

3.      <u>Execution in Counterparts</u>. This Appointment may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

4.      <u>Governing Law</u>. This Assignment shall be governed by, and interpreted in accordance with, the laws of Nevis.

　　　　　　IN WITNESS WHEREOF, the Parties have executed this Assignment as of the day and year first written above.

**Member**

**Asia Trust Limited, Trustee of the Hawker Sydley Trust**

ATP DIRECTORS LIMITED
BY ITS DULY AUTHORISED OFFICER

By: _____
Name: Angela Pope & Lora Tauira
Title: Authorised signatories

**Manager**

**Accepted:**

ATP Directors, Ltd.,
A Cook Islands company

ATP DIRECTORS LIMITED
BY ITS DULY AUTHORISED OFFICER

By: _____
Name: Angela Pope & Lora Tauira
Title: Authorised signatories.

By: _____
Name: _____
Title: _____

2

BMO 001802

# EXHIBIT 108

**313 PAGES**

Gregory C. Nuti (CSBN151754)
E-Mail: gnuti@schnader.com
Kevin W. Coleman (CSBN 168538)
E-Mail: kcoleman@schnader.com
Kathryn N. Richter (CSBN 100129)
E-Mail: krichter@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
One Montgomery Street, Suite 2200
San Francisco, California 94104-5501
Telephone: 415-364-6700
Facsimile: 415-364-6785

Attorneys for
Chapter 11 Trustee, Bradley D. Sharp

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| IN RE:<br><br>SK FOODS, L.P., A CALIFORNIA LIMITED PARTNERSHIP,<br><br>DEBTOR. | **Case No. 09-29162-D-11**<br><br>**Chapter 11** |
| BRADLEY D. SHARP, et al.,<br><br>Plaintiff,<br><br>vs.<br><br>SKPM CORP., INC., SSC & L 2007 TRUST, MONTEREY PENINSULA FARMS, LLC, FREDRICK SCOTT SALYER AKA SCOTT SALYER IN HIS CAPACITY AS TRUSTEE OF THE SCOTT SALYER REVOCABLE TRUST AND TRUSTEE OF THE SSC&L 2007 TRUST, SCOTT SALYER REVOCABLE TRUST, FAST FALCON, LLC, HENRY JOHN HEATH, AND DOES 1-5,<br><br>Defendants. | **Adv. Pro. No. 11-2337**<br><br>**DC No. SH-1**<br><br>**DECLARATION OF BRADLEY D. SHARP IN SUPPORT OF *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Date: September 1, 2011<br>Time: 10:00 a.m.<br>Place: Courtroom 34<br>501 I Street, 6th Floor<br>Sacramento, CA 95814<br><br>Judge: Hon. Robert S. Bardwil |

BMO 001803

I, Bradley D. Sharp, declare as follows:

1.      I am the duly appointed and acting Chapter 11 trustee for the estate of SK Foods, L.P., a California limited partnership ("SK Foods") and RHM Industrial/Specialty Foods, Inc. ("RHM", and collectively with SK Foods, the "Debtors").  I have personal knowledge of the facts set forth in this declaration, or have learned such facts from my review of the Debtors' books and records under my custody and control, and, if called as a witness, could and would testify competently to such facts under oath.

2.      I submit this declaration in support of my motion seeking a temporary restraining order and order to show cause re preliminary injunction in the above-captioned adversary proceeding.

## A.      The SK Foods Bankruptcy Case and the Cedenco Entities

3.      On May 7, 2009 ("Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "SK Foods Bankruptcy Case").  I was appointed the Chapter 11 trustee in the SK Foods Bankruptcy Case and presently serve in that capacity.

4.      The Debtors established foreign operations in New Zealand[1] and Australia that mirror the Debtors' operations in California in many respects based on their participation in the tomato and vegetable processing industry and on their corporate interrelationships among each other and with Debtor SK Foods' general partner and limited partner.

5.      In Australia, the entities are SK Foods Australia Pty Ltd (Aus), Cedenco JV (Aus), and Cedenco Australia (AUS) ("Cedenco Entities.")  As of the petition date, SK Foods owned the Cedenco Entities.

6.      As described below, as of the Petition Date, SK Foods was listed as the owner of record of stock held in SK Foods Australia Pty, Ltd ("Cedenco Equity Interest") and in the public records maintained by the Australian Securities & Investments Commission ("ASIC").

---

[1]      In New Zealand, the entities are Cedenco Ohakune (formerly Mountain Carrots) (NZ), SK Foods International (NZ), and Cedenco Foods (NZ).  Another entity, Sunrise Coast (Japan), merged into Cedenco Foods (NZ).  The Trustee assigned any claims with respect to these entities to BMO under the terms of the settlement with the secured lenders.

Scott Salyer asserts that the Cedenco Equity Interest was transferred to SKPM Corp. and the Scott Salyer Revocable Trust prior to the Petition Date.

7.      Moreover, the Cedenco Entities books and records reflect that they owe approximately $18 million to the Debtors (the "Intercompany Loan"), but again, Salyer contends that the Intercompany Loan was assigned pre-petition to the SSC&L 2007 Trust, a trust where Salyer is trustee and sole beneficiary.

8.      SK Foods Australia Pty Ltd is subject to liquidation proceedings in Australia ("Australian Liquidation").  Prior to the commencement of the Australian Liquidation, the Cedenco entities' secured lenders placed them into receivership.  The assets were sold, producing proceeds sufficient to pay all creditors of Cedenco in full, including the Intercompany Loan, and provide payment on account of SK Food's Cedenco Stock in an amount in excess of $32 million.

9.      After Cedenco was placed into receivership, Scott Salyer applied for the appointment of Ian Lock and John Sheahan of Sheahan Lock Partners in Adelaide, Australia as Joint Liquidators ("Sheahan/Lock" or the "Liquidator").  The Liquidator will take possession of the proceeds remaining after payment of the secured debt, and is obligated to distribute them to Cedenco's unsecured creditors and interest holders.  Under Australian insolvency procedures, the Liquidator makes the initial determination as to which claims should be paid.  Once the Liquidator determines that a claim should be paid, interested parties must petition the Australian court to oppose and enjoin disputed payments.

10.      I have submitted claims to the Liquidator for payment on account of the Intercompany Loan and the Cedenco Stock.

11.      Fast Falcon, LLC, an entity controlled by Salyer, has also submitted claims to the Liquidator for payment on account of the Intercompany Loan and Cedenco Stock claiming SK Foods transferred the Cedenco Stock to the Scott Salyer Revocable Trust and SKPM Corp. and the Intercompany Loan to the SSC&L 2007 Trust pre-petition, and that those entities subsequently transferred these assets to Monterey Peninsula Farming, another Salyer-controlled

entity, and ultimately to Fast Falcon, LLC.  Attached as **Exhibit 1** is a true and correct copy of the proof of debt filed by Fast Falcon, LLC.

**B.      Background and Attempted Pre-Petition Transfers of**
**          Intercompany Loan and Equity Interest**

12.      Documents executed in 2002 show that SK Foods LP was the registered owner of 100 shares of stock in SK Foods Australia Pty Ltd ("SKFA").  A true and correct copy of the SKFA share register dated July 3, 2002 is attached hereto as **Exhibit 2**.

13.      SK Foods LP also executed a member's consent form dated January 10, 2002 which states that SK Foods agreed to purchase 100 shares of stock in SKFA.  A true and correct copy of the member's consent form is attached hereto as **Exhibit 3**.

14.      In 2007, the accounting firm of Moss Adams was engaged to prepare audited financial statements for SK Foods' fiscal years ending October 31, 2006, and June 30, 2007[2].  During the course of the audits, Moss Adams informed SK Foods that *inter alia* because SK Foods held the Cedenco Stock and Intercompany Loan, U.S. accounting standards required that Cedenco's financials be consolidated with those of SK Foods (referred to hereafter as the "FIN 46" issue).  This created a burdensome accounting task as Cedenco's year end differed from the Debtors, and Cedenco's financial statements were audited under Australian accounting standards which required a conversion to U.S. accounting standards prior to consolidation.  To avoid the time and cost of the accounting requirements, Scott Salyer, Dan Nutley,[3] Mark McCormick,[4] Gary Perry,[5] Wayne Boos,[6] John Iacopi,[7] and others tried to devise a strategy for eliminating these assets from SK Foods financial statements while still

---

[2]       SK Foods changed the end of its fiscal year from October 31 to June 30 during this period.

[3]       An accountant at Moss Adams.

[4]       SK Foods' Executive Vice President & Treasurer.

[5]       Outside attorney.

[6]       Outside accountant at Boos & Associates.

[7]       Outside accountant at Iacopi, Lenz & Company.

complying with GAAP accounting standards.  However, they did not want to create a taxable event.
See e-mails between Wayne Boos and Scott Salyer dated August 29, 2007, attached hereto as **Exhibit 4** at SHARP_CH 15 275.

15.     Nor did they want to show a decrease in SK Foods' equity on the balance sheets.
See e-mail from Scott Salyer to Dan Nutley and Mark McCormick dated September 13, 2007
(Exh. 4 at SHARP_CH 15 280) and dated September 14, 2007 (attached to the Sharp Decl., Exh.
4 at SHARP_CH 15 281).

16.     The debate on how to structure the divestiture continued from July 2007 through
at least December 2007.  Included in the debate was whether to make the transfers "effective"
November 1, 2006 or June 30, 2007.

17.     In August 2007, Gary Perry provided documents to evidence the transfer of the
equity.  Wayne Boos instructed Salyer to destroy those drafts as the transaction as structured
created a tax liability.  *See* Sharp Decl., Exh. 4 at SHARP_CH15 268 – 275.  It appears through
e-mails exchanged between SK Foods and its outside advisors that they continued to debate how
to accomplish the divestiture without any apparent resolution through October 2007.  *See* Sharp
Decl., Exh. 4 at SHARP_CH15 268 – 298.

18.     The Moss Adams audit report for the year ending October 31, 2006 states that SK
Foods, L.P. "formed and became the sole stockholder" of SKFA in 2002.  A true and correct
copy of the October 31, 2006 Moss Adams audit report is attached hereto as **Exhibit 5**.

19.     The June 30, 2007 audited financial statements issued January 15, 2008 reflected
a reduction in owner's equity by approximately $4.8 million.  The Intercompany Loan remained
as an asset on the balance sheet, but now payable by the SSC&L Trust.  No cash or other
property was transferred to the Debtors at any time in exchange for the Cedenco Stock.  There is
no document evidencing SSC&L's purported obligation to SK Foods for payment of the
Intercompany Loan.  A true and correct copy of the June 30, 2007 Moss Adams audit report is
attached hereto as **Exhibit 6**.

20.     On March 28, 2008, Gary Perry emailed to SK Foods employee, Lisa Crist, what
appear to be execution copies of documents intended to evidence a transfer of the Cedenco Stock

("2008 Transfer Documents").  True and correct copies of the e-mail and 2008 Transfer

Documents are attached as **Exhibit 7**.

   21. Ms. Crist left two days later to attend conferences in Australia and New Zealand.

A true and correct copy of her itinerary is attached as **Exhibit 8**.  Scott Salyer was in Australia

and New Zealand at the same time.  A true and correct copy of his itinerary is attached as

**Exhibit 9**.

   22. On October 27, 2008, Jeanne Johnston sent an email to Mark McCormick

attaching signed copies of the 2008 Transfer Documents.  A copy of the e-mail is attached hereto

as **Exhibit 10** (SHARP_CH15 968-970).  To my knowledge, after a thorough search of all SK

Foods' books and records, this is the earliest record of signed copies of any "transfer"

documents.

   23. After a thorough search of all SK Foods' books and records, I have not found a

document transferring the Intercompany Loan to the SSC&L Trust, or any corresponding

document indicating any obligation owed by the SSC&L Trust to SK Foods.

**C. Attempted Post-Petition Transfer of Equity Interest**

   24. Article 5.1 of SK Foods Australia Pty Ltd.'s Constitution ("Cedenco

Constitution") specifies certain requirements that must be met in order to effect a valid transfer

of SK Foods Australia Pty Ltd shares.  Attached hereto as **Exhibit 11** is a true and correct copy

of the Cedenco Constitution.

   25. Subparagraph (d) of Article 5.1 of the Cedenco Constitution provides that:

  (d) A transferor of shares remains the holder of the shares transferred until the
    transfer is registered and the name of the transferee is entered in the register of
    members in respect of the shares.

   26. In addition, Article 2.4 of the Cedenco Constitution provides in pertinent part:

  A. Except as otherwise required by law or provided by this constitution, the
    company is entitled to treat the registered holder of a share as the absolute
    owner of that share and is not:

     1. compelled in any way to recognize a person as holding a
     share upon any trust, even if the company had notice of that trust; or

     2. compelled in any way to recognize, or bound by, any
     equitable, contingent, future or partial claim to or interest in a share on

the part of any other person except an absolute right of ownership in the registered holder, even if the company has notice of that claim or interest.

27.     The Office of the United States Trustee appointed me to serve as Chapter 11 trustee in this case on May 14, 2009.

28.     Based upon my review of the Debtors' records, Scott Salyer travelled to and was in Australia and or New Zealand on and after May 15, 2009.  On May 15, 2009, Nick Frankish, then the CFO of Cedenco, transmitted the purported 2008 Transfer Documents (now executed by Salyer) via facsimile to Henry John Heath, a Cedenco director.  The facsimile transmission sheet begins with the instruction "Looks like we need to advise ASIC [the Australian Securities & Investments Commission] of ownership change."  A copy of the faxed documents is attached hereto as **Exhibit 12** at SHARP_CH15 1438 – 1448.

29.     I obtained documents which further indicate that on May 15, 2009, emails were exchanged between Mr. Heath and Blayney Morgan, a Client Manager in the Melbourne office of Deloitte Touche Tohmatsu.  Mr. Heath asked Ms. Morgan how to advise ASIC of the ownership change.  Ms. Morgan responded by indicating that the 2008 Transfer Documents were not sufficient, and that she would need to prepare other documentation that I am advised is required by Australian law and the Cedenco Constitution (she notes that approval from Cedenco's lenders also needed to be obtained).  Mr. Frankish is copied on Ms. Morgan's email, to which he responds "The notification of SKFA ownership change needs to be done ASAP so please advise once forms are ready for signing and submission."  A copy of the e-mail is attached hereto in Exhibit 12 at SHARP_CH15 1450.  Ms. Morgan and Mr. Frankish exchange further emails discussing the share transfer issue, including the fact that ASIC will impose a fine due to the apparently late submission.  Mr. Frankish confirmed to her that the November 1, 2006 date should be used, despite the fact that it will result in the imposition of a fine.  A copy of the e-mail correspondence is attached hereto in Exhibit 12 at SHARP_CH15 1449 – 1450.

30.     It appears that Blayney Morgan ultimately sent the required share transfer forms to Nick Frankish and Mr. Heath on July 16, 2009.  A copy is attached hereto as **Exhibit 13** at SHARP_CH 15 1453 – 1469.  Mr. Frankish then forwarded them on to Richard Lawrence,

Cedenco's CEO and director, on July 19, 2009, stating "These are the share transfer documents for you, Scott, and Harry [Heath] to sign.  Shall I get Scott to sign in NZ next week or email JJ [Jeannie Johnson, Scott's assistant]."  A copy of the e-mail is attached in Exhibit 13 at SHARP_CH15 1453.

31.     Attached hereto as **Exhibit 14** are signed copies of the post-petition transfer documents produced by Deloitte Touche Tohmatsu to the Liquidators in late May 2011.

32.     I believe that the foregoing emails and other documentation that I have obtained confirm that the documentation necessary to effect a valid transfer the Cedenco shares was not created until July 16, 2009.

**D.     The Debtors Were Insolvent At Any Purported Transfer**

33.     In analyzing the Debtors' solvency, I consulted the Debtors' audited financial statements for the period ending June 30, 2008, prepared by Stoughton Davidson.  Attached hereto as **Exhibit 15** is a true and correct copy of the June 30, 2008 audited financial statements.  To the best of my knowledge, no material change occurred to the Debtors assets, liabilities, or financial condition between April 2008 and June 30, 2008.  In addition to considering the audited financial statements, I also analyzed the liabilities the Debtors had incurred as a result of criminal activities to which several officers and agents of SK Foods subsequently plead guilty.

34.     I, with the assistance of other professionals in my firm, have engaged in a preliminary analysis of the potential damage claims to customers related to the direct bribery activities.   In making my calculation, I have examined the plea agreements entered into by the Debtors' agents and purchasing managers at the Debtors' customers.  Copies of certain plea agreements are attached to the Request for Judicial Notice, filed herewith.  From those, I was able to ascertain which customers were bribed, and over what period of time.  I then determined what product was sold to each bribed customer over the period of admitted bribery for that customer up to April 2008, and then calculated the damage claims the bribed customers would be legally entitled to assert.  I am informed and believe under applicable California law, a victim of commercial bribery can recover their actual damages, or disgorgement of the tortfeasor's profits, whichever is greater.

35.     Profits were determined by the bribe, plus the revenue that the bribe generated for the briber, minus the cost of goods sold and other variable costs incurred in making the sales that generated that revenue. Using this methodology, I estimated that actual damages were at least $40 million as of April 2008, exclusive of any exemplary, punitive damages or attorneys fees to which the bribed customers would also be entitled.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct to the best of my knowledge and belief. Executed this 30th day of August 2011, at Los Angeles, California.

/s/ Bradley D. Sharp
Bradley D. Sharp, Chapter 11 Trustee

| From: | Wayne Boos <wboos@booscpa.com> |
|---|---|
| Sent: | Wednesday, August 29, 2007 8:58 AM |
| To: | Scott Salyer <scotts@skfoods.com> |
| Cc: | gary@garyperrylaw.com; Shondale Seymour <ShondaleS@skfoods.com>; Jeanne Johnston <jeanne.johnston@skfoods.com> |
| Subject: | FW: Assest Transfer Documents |
| Attach: | Asset Transfers 8-27-07.pdf |

Scott, the attached document related to foreign entities needs to be revised. As reflected THIS IS TAXABLE. I had anticipated a pro-rata spin off to each member of SK (you and SKPM). This was my email last week. Please destroy all documents related to this. These will need to be revised.

Note that the Blackstone documents are fine.

Let me know if any questions or comments.

Wayne

**Wayne W. Boos CPA**

**Boos & Associates**
Fig Garden Financial Center
5260 North Palm Avenue, Suite 120 | Fresno, California 93704
Phone (Main): 1.559.449-7688 | Phone (Direct): 1.559.436-3181
Fax: 1.559.449.1934 | Cell: 1.559.288-2366
E-mail: wboos@booscpa.com

*****Any tax advice included in this written or electronic communication was not intended or written to be used, and it cannot be used by the taxpayer, for the purpose of avoiding any penalties that may be imposed on the taxpayer by any governmental taxing authority or agency*****

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law.  If you are not the intended recipient, you should delete this message.  Any disclosure, copying, or distribution of this message, or the taking of any action based on it, is strictly prohibited.

**SHARP_CH15 000268**

RESOLUTIONS ADOPTED BY
UNANIMOUS WRITTEN CONSENT
OF THE BOARD OF DIRECTORS OF
BLACKSTONE RANCH,
A CALIFORNIA CORPORATION

I, F. SCOTT SALYER , as the Chief Executive Officer and Chairman of the Board of

Directors of BLACKSTONE RANCH, a corporation organized under the laws of the State of

California, hereby certify that the resolutions attached hereto as Exhibit "A", were adopted

by the Board of Directors effective as of June 30, 2007.

I direct that this Consent be filed with the Minutes of the proceedings of the Board

of Directors of this Corporation.

This Consent is executed pursuant to Section 307(b) of the Corporations Code of the

State of California and the Bylaws of this Corporation which authorize the taking of action

by the directors by unanimous written consent without a meeting.

F. SCOTT SALYER, Director and
Chief Executive Officer

SHARP_CH15 000269

EXHIBIT "A"

RESOLUTIONS

**WHEREAS**, the Corporation desires to authorize the distribution of that certain warehouse located in Corcoran, California ("Dividend Distribution"), to its sole shareholder, the Scott Salyer Revocable Trust, dated July 9, 1984 ("Trust");

**RESOLVED**, that the Corporation is authorized to implement the Dividend Distribution to the Trust;

**RESOLVED FURTHER**, that any officer of this Corporation is authorized to execute any instrument, grant deed, escrow instructions, or such other documents as may be necessary to effectuate the disbursement;

**RESOLVED FURTHER**, that the officers of the Corporation are hereby authorized to execute any other documents or instruments necessary to implement the resolutions adopted by the Board of Directors.

SHARP_CH15 000270

RESOLUTIONS ADOPTED BY
UNANIMOUS WRITTEN CONSENT
OF THE BOARD OF DIRECTORS OF
BLACKSTONE RANCH,
A CALIFORNIA CORPORATION

I, F. SCOTT SALYER , as the Chief Executive Officer and Chairman of the Board of Directors of BLACKSTONE RANCH, a corporation organized under the laws of the State of California, hereby certify that the resolutions attached hereto as Exhibit "A", were adopted by the Board of Directors effective as of June 30, 2007.

I direct that this Consent be filed with the Minutes of the proceedings of the Board of Directors of this Corporation.

This Consent is executed pursuant to Section 307(b) of the Corporations Code of the State of California and the Bylaws of this Corporation which authorize the taking of action by the directors by unanimous written consent without a meeting.

_____
F. SCOTT SALYER, Director and
Chief Executive Officer

**SHARP_CH15 000271**

EXHIBIT "A"

RESOLUTIONS

**WHEREAS**, the Corporation desires to authorize the distribution of that certain real property located at 3903 Ronda Road, Pebble Beach, California ("Dividend Distribution"), to it sole shareholder, the Scott Salyer Revocable Trust, dated July 9, 1984 ("Trust");

**RESOLVED**, that the Corporation is authorized to implement the Dividend Distribution to the Trust;

**RESOLVED FURTHER**, that any officer of this Corporation is authorized to execute any instrument, grant deed, escrow instructions, or such other documents as may be necessary to effectuate the disbursement;

**RESOLVED FURTHER**, that the officers of the Corporation are hereby authorized to execute any other documents or instruments necessary to implement the resolutions adopted by the Board of Directors.

SHARP_CH15 000272

RESOLUTIONS ADOPTED BY
UNANIMOUS WRITTEN CONSENT
OF THE BOARD OF DIRECTORS OF
SK FOODS INTERNATIONAL,
A NEW ZEALAND COMPANY

I, F. SCOTT SALYER , as the Chief Executive Officer and Chairman of the Board of

Directors of SK FOODS INTERNATIONAL, a company organized under the laws of the

New Zealand, hereby certify that the resolutions attached hereto as Exhibit "A", were

adopted by the Board of Directors effective as of May 31, 2007.

I direct that this Consent be filed with the Minutes of the proceedings of the Board

of Directors of this Company.

F. SCOTT SALYER,
Chairman of the Board of Directors  and
Chief Executive Officer

SHARP_CH15 000273

EXHIBIT "A"

RESOLUTIONS

**WHEREAS**, the Company desires to authorize the transfer of all of the outstanding shares of CEDENCO FOODS, LIMITED, a New Zealand Company, that are held by Company to SK FOODS, LLC, a Nevada limited liability company;

**RESOLVED**, that the Company is authorized to transer all of the outstanding shares of CEDENCO FOODS LIMITED, a New Zealand company, that are held by the Company, to SK FOODS, LLC, a Nevada limited liability company;

**RESOLVED FURTHER**, that any officer of this Corporation is authorized to execute any instrument, general assignment, stock power, or such other documents as may be necessary to effectuate the transfer of shares;

**RESOLVED FURTHER**, that the officers of the Corporation are hereby authorized to execute any other documents or instruments necessary to implement the resolutions adopted by the Board of Directors.

**SHARP_CH15 000274**

| From: | Scott Salyer <scott@first organization.com> |
| Sent: | Wednesday, August 29, 2007 9:22 AM |
| To: | Wayne Boos <wboos@booscpa.com>; 'mmccormick@fnhfarms.com'; Mark McCormick <markmc@skfoods.com>; gary@garyperrylaw.com |
| Subject: | RE: Assest Transfer Documents |

Wayne

I will destroy Cedenco documents , they have been distributed to MA and others .
You , Nick and Gary were supposed to have approved documents .

This is unacceptable to have me sign them and then at a later date say they should be destroyed .

Have you informed Gary that you No longer approve documents or did you even look at them before they we sent for signature ?


Fix this asap or I'll go elsewhere ,,,,,,,

Scott
.....................................................................................................................................................................................................................
**From:** Wayne Boos [mailto:wboos@booscpa.com]
**Sent:** Wednesday, August 29, 2007 8:58 AM
**To:** Scott Salyer
**Cc:** gary@garyperrylaw.com; Shondale Seymour; Jeanne Johnston
**Subject:** FW: Assest Transfer Documents

Scott, the attached document related to foreign entities needs to be revised. As reflected THIS IS TAXABLE. I had anticipated a pro-rata spin off to each member of SK (you and SKPM). This was my email last week. Please destroy all documents related to this. These will need to be revised.

Note that the Blackstone documents are fine.

Let me know if any questions or comments.

Wayne

**Wayne W. Boos CPA**
_____

**Boos & Associates**
Fig Garden Financial Center
5260 North Palm Avenue, Suite 120 | Fresno, California 93704
Phone (Main): 1.559.449-7688 | Phone (Direct): 1.559.436-3181
Fax: 1.559.449.1934 | Cell: 1.559.288-2366
E-mail: wboos@booscpa.com


*****Any tax advice included in this written or electronic communication was not intended or written to be used, and it cannot be used by the taxpayer, for the purpose of avoiding any penalties that may be imposed on the taxpayer by any governmental taxing authority or agency*****

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this message. Any disclosure, copying, or distribution of this message, or the taking of any

SHARP_CH15 000275

action based on it, is strictly prohibited.

SHARP_CH15 000276

| From: | Dan Nutley <Dan.Nutley@mossadams.com> |
|-------|------|
| Sent: | Thursday, September 13, 2007 4:33 PM |
| To: | Mark McCormick <markmc@skfoods.com>; Scott Salyer <scotts@skfoods.com> |
| Subject: | Making Cendenco not subject to FIN46R |
| Attach: | FS 2006 consolidating short version 2.xls |

The simplest way to make Cedenco not subject to FIN46R is to distribute both SKFLP's Notes Receivable and Stock investment in the Cedenco entities to the partners. This is not a practical solution because we understand it leads to a significant tax liability.

We have developed another idea to accomplish the same thing. It is consistent the original proposal of SKFLP selling the Cedenco related assets to Scott.

Consider SKFLP distributing the Cedenco stock to the partners. Hopefully there is enough basis to make this a nontaxable event.

Then SKFLP would sell the Notes Receivable to the partners in exchange for Notes Receivable from the partners. Suggest the Notes Receivable would be reported like a stockholder receivable in a corporation and classified as a contra to partner's equity. This classification would reduce an auditors need to be intrusive into the partners financial position.

To simplify financial reporting for the eight months ended June 30, 2007 suggest all this be made effective November 1, 2006. This would eliminate including Cedenco in the income statement.

Attached is a proforma consolidating balance sheet as if this had been done at 10/31/06. This is unique structure and will take some consideration by all parties.

If this is interesting to you we will need to involve tax and legal counsel.

Look forward to your thoughts.

Dan

Dan Nutley
Partner
Moss Adams, LLP
Office: 209 955 6108
Cell: 209 481 0631
dan.nutley@mossadams.com

**CONFIDENTIALITY NOTICE:** This email and any attachments are for the sole use of the intended recipient(s) and contain information that may be confidential and/or legally privileged. If you have received this email in error, please notify the sender by reply email and delete the message. Any disclosure, copying, distribution or use of this communication by someone other than the intended recipient is prohibited.

SHARP_CH15 000277

SHARP_CH15 000278

**SK Foods, LP**
**Proforma Distribution\Sales Cedenco**
**10/31/06 data**

| | Partnership | Cedenco Canning | SK Aviation | Sell/Distribute Cedenco Interests | Proforma Commodated |
|---|---|---|---|---|---|
| **Assets** | | | | | |
| Cash, prepaids, other current | $ 942 | $ 244 | $ 89 | | $ 1,275 |
| Trade accounts receivable | 41,268 | 3 | - | | 41,271 |
| Related party receivables | 450 | - | - | | 450 |
| Affiliated receivables | 362 | - | 97 | | 459 |
| Inventories | 75,548 | - | - | | 75,548 |
| Deferred tax assets | - | - | - | | - |
| **CURRENT ASSETS** | 118,570 | 247 | 186 | | 119,003 |
| PROP & EQUIP, + other assets | 95,258 | 7,509 | 11,151 | | 113,938 |
| RELATED PARTY RECEIVABLES | 13,306 | - | 407 | | 13,713 |
| AFFILIATED RECEIVABLES | 2,051 | - | 1,342 | | 3,403 |
| From SK Foods | | | | | |
| From NZ Cedenco | 25,826 | | | (25,826) | - |
| From SK Australia | 11,260 | | | (11,260) | - |
| INVESTMENT IN SUBSIDIARIES | 4,062 | - | - | (1,430) | 2,632 |
| **TOTAL** | $ 270,343 | $ 7,776 | $ 13,086 | (38,516) | $ 252,689 |
| **CURRENT LIABILITIES** | | | | | |
| Bank overdraft | $ 2,912 | $ 168 | $ - | | $ 3,080 |
| Bank line of credit + S/T | 44,316 | - | - | | 44,316 |
| Accounts payable and accrued | 27,105 | 2,268 | 99 | | 29,472 |
| Affiliated Accounts payable | 14 | - | 498 | | 512 |
| Payable to a related party | 5,368 | 149 | 722 | | 6,239 |
| Current portion debt | | | | | |
| Total current liabilities | 79,715 | 2,585 | 1,319 | | 83,619 |
| LONG-TERM DEBT | 76,086 | 296 | 10,062 | | 86,444 |
| RELATED PARTY DEBT | 9,010 | 1,000 | 1,000 | | 11,010 |
| AFFILIATED DEBT | 141 | 3,170 | - | | 3,311 |
| To SK Foods | | | | | |
| To NZ Cedenco | 3,862 | | | | 3,862 |
| To SK Australia | 6,435 | | | | 6,435 |
| MINORITY INTEREST IN SUBS | - | - | - | | - |
| **Total liabilities** | 175,249 | 7,051 | 12,381 | | 194,681 |

BMO 001822

SHARP_CH15 000279

| | A | B | C | D | E | F | G | H | I | J | K |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 53 | | | | | | | | | | | - |
| 54 | PARTNERS' CAPITAL/EQUITY | | | 95,094 | | 725 | | 705 | | (1,430) | 95,094 |
| 55 | | | | | | | | | | | (37,086) |
| 56 | PARTNERS' RECEIVABLE | | | | | | | | | (37,086) | |
| 57 | | | | | | | | | | | - |
| 58 | | | | | | | | | | | - |
| 59 | NONCONTROLLING INTEREST | | | - | | - | | - | | | - |
| 60 | | | | | | | | | | | 58,008 |
| 61 | PARTNERS' EQUITY | | | | | | | | | (38,516) | |
| 62 | | | | | | | | | | | - |
| 63 | | | | | | | | | | | 252,689 |
| 64 | TOTAL | | | $ 270,343 | | $ 7,276 | | $ 13,686 | | $ (38,516) | $ 252,689 |
| 65 | | | check sum | - | | - | | - | | | |
| 66 | | | | | | | | | | | |
| 67 | | | | | | | | | | | |

| From: | Scott Salyer <scott@first organization.com> |
|-------|----------------------------------------------|
| Sent: | Thursday, September 13, 2007 6:31 PM |
| To: | Dan Nutley <Dan.Nutley@mossadams.com>; Mark McCormick <markmc@skfoods.com> |
| Subject: | RE: Making Cendenco not subject to FIN46R |

This won't work ..

Try again , can't drop equity by $ 37 m

SS

**From:** Dan Nutley [mailto:Dan.Nutley@mossadams.com]
**Sent:** Thursday, September 13, 2007 4:33 PM
**To:** Mark McCormick; Scott Salyer
**Subject:** Making Cendenco not subject to FIN46R

The simplest way to make Cedenco not subject to FIN46R is to distribute both SKFLP's Notes Receivable and Stock investment in the Cedenco entities to the partners. This is not a practical solution because we understand it leads to a significant tax liability.

We have developed another idea to accomplish the same thing. It is consistent the original proposal of SKFLP selling the Cedenco related assets to Scott.

Consider SKFLP distributing the Cedenco stock to the partners. Hopefully there is enough basis to make this a nontaxable event.

Then SKFLP would sell the Notes Receivable to the partners in exchange for Notes Receivable from the partners. Suggest the Notes Receivable would be reported like a stockholder receivable in a corporation and classified as a contra to partner's equity. This classification would reduce an auditors need to be intrusive into the partners financial position.

To simplify financial reporting for the eight months ended June 30, 2007 suggest all this be made effective November 1, 2006. This would eliminate including Cedenco in the income statement.

Attached is a proforma consolidating balance sheet as if this had been done at 10/31/06. This is unique structure and will take some consideration by all parties.

If this is interesting to you we will need to involve tax and legal counsel.

Look forward to your thoughts.

Dan

Dan Nutley
Partner
Moss Adams, LLP
Office: 209 955 6108
Cell: 209 481 0631
dan.nutley@mossadams.com

**CONFIDENTIALITY NOTICE:** This email and any attachments are for the sole use of the intended recipient(s) and contain information that may be confidential and/or legally privileged. If you have received this email in error, please notify the sender by reply email and delete the message. Any disclosure, copying, distribution or use of this communication by someone other than the intended recipient is prohibited.

SHARP_CH15 000280

| From: | Scott Salyer <scott@first organization.com> |
|-------|----------------------------------------------|
| Sent: | Friday, September 14, 2007 7:09 AM |
| To: | Dan Nutley <Dan.Nutley@mossadams.com>; Mark McCormick <markmc@skfoods.com> |
| Subject: | RE: Making Cendenco not subject to FIN46R |

They are not relying on it But distributing out over a third of equity is not what they had in mind ..

Can't see how a qualified opinion works either ..

SS

**From:** Dan Nutley [mailto:Dan.Nutley@mossadams.com]
**Sent:** Friday, September 14, 2007 5:47 AM
**To:** Scott Salyer; Mark McCormick
**Subject:** RE: Making Cendenco not subject to FIN46R

Sorry.

We have been told the banks do not rely on the foreign investments and in fact prefer financial statements without the foreign subsidiaries consolidated.  In another situation we considered the banks specifying in their loan agreements they want financial statements in accordance with generally accepted accounting except for application of FIN46R to the foreign subsidiaries and making the audit report in accordance with GAAP as requested by the lenders. The client elected to have an "except for FIN46R" audit report instead, so we never finished the analysis   Is this option of a report based on GAAP as specified in lending agreements an option to pursue?  Can't be sure it would work without further analysis than we did for the other client.

Dan

Dan Nutley
Partner
Moss Adams, LLP
Office: 209 955 6108
Cell: 209 481 0631
dan.nutley@mossadams.com

**From:** Scott Salyer [mailto:scotts@skfoods.com]
**Sent:** Thursday, September 13, 2007 6:31 PM
**To:** Dan Nutley; Mark McCormick
**Subject:** RE: Making Cendenco not subject to FIN46R

This won't work ...

Try again , can't drop equity by $ 37 m

SS

**From:** Dan Nutley [mailto:Dan.Nutley@mossadams.com]
**Sent:** Thursday, September 13, 2007 4:33 PM
**To:** Mark McCormick; Scott Salyer
**Subject:** Making Cendenco not subject to FIN46R

The simplest way to make Cendenco not subject to FIN46R is to distribute both SKFLP's  Notes Receivable and Stock investment in the Cedenco entities to the partners.  This is not a practical solution because we understand

SHARP_CH15 000281

it leads to a significant tax liability.

We have developed another idea to accomplish the same thing.  It is consistent the original proposal of SKFLP selling the Cedenco related assets to Scott.

Consider SKFLP distributing the Cedenco stock to the partners.  Hopefully there is enough basis to make this a nontaxable event.

Then SKFLP would sell the Notes Receivable to the partners in exchange for Notes Receivable from the partners.  Suggest the Notes Receivable would be reported like a stockholder receivable in a corporation and classified as a contra to partner's equity.  This classification would reduce an auditors need to be intrusive into the partners financial position.

To simplify financial reporting for the eight months ended June 30, 2007 suggest all this be made effective November 1, 2006.  This would eliminate including Cedenco in the income statement.

Attached is a proforma consolidating balance sheet as if this had been done at 10/31/06.  This is unique structure and will take some consideration by all parties.

If this is interesting to you we will need to involve tax and legal counsel.

Look forward to your thoughts.

Dan

Dan Nutley
Partner
Moss Adams, LLP
Office: 209 955 6108
Cell: 209 481 0631
dan.nutley@mossadams.com

**CONFIDENTIALITY NOTICE:** This email and any attachments are for the sole use of the intended recipient(s) and contain information that may be confidential and/or legally privileged. If you have received this email in error, please notify the sender by reply email and delete the message. Any disclosure, copying, distribution or use of this communication by someone other than the intended recipient is prohibited.

**CONFIDENTIALITY NOTICE:** This email and any attachments are for the sole use of the intended recipient(s) and contain information that may be confidential and/or legally privileged. If you have received this email in error, please notify the sender by reply email and delete the message. Any disclosure, copying, distribution or use of this communication by someone other than the intended recipient is prohibited.

SHARP_CH15 000282

| | |
|---|---|
| **From:** | Dan Nutley <Dan.Nutley@mossadams.com> |
| **Sent:** | Thursday, September 20, 2007 3:27 PM |
| **To:** | Mark McCormick <markmc@skfoods.com> |
| **Subject:** | Selling Cedenco Interco debt |

The concept of distributing Cedenco stock and selling the intercompany debt to a third removes SKFLP from any relationship with Cedenco. Scott's or the Trust's guarantee of the debt would not involve SKFLP. This would solve FIN46 accounting considerations.

Chances are a third party lender could not make a transaction effective 11/1/06. Suggest the transactions be first with Scott or the Trust and then currently funded by a third party lender. As long as the funding is completed during the audit, auditors would not have to evaluate collectibility of the note from Scott or the Trust.

Dan

Dan Nutley
Partner
Moss Adams, LLP
Office: 209 955 6108
Cell: 209 481 0631
dan.nutley@mossadams.com

**From:** Mark McCormick [mailto:markmc@skfoods.com]
**Sent:** Thursday, September 20, 2007 2:33 AM
**To:** Dan Nutley; Shondale Seymour
**Subject:** Msg. frt,om MMM

Sorry ... did it again.

I have a physical exam this morning with my doctor. I'll be out of pocket until mid-morning. Dan, I'll give you a call at your office at my first opportunity.

Best,

Mark

**CONFIDENTIALITY NOTICE:** This email and any attachments are for the sole use of the intended recipient(s) and contain information that may be confidential and/or legally privileged. If you have received this email in error, please notify the sender by reply email and delete the message. Any disclosure, copying, distribution or use of this communication by someone other than the intended recipient is prohibited.

SHARP_CH15 000283

| From: | Mark Davis <MDavis@gordonrees.com> |
|---|---|
| Sent: | Wednesday, September 26, 2007 2:05 PM |
| To: | Mark McCormick <markmc@skfoods.com>; David Hay <david@antipodes99.com> |
| Cc: | Hubert Lenczowski <hlenczowski@gordonrees.com> |
| Subject: | Foreign Subsidiaries |

Mark and David,

I did a quick review to see how this has been handled. "Subsidiaries" covers more than 50% owned (voting stock or equivalent equity interests with voting rights) companies of the Borrowers or Guarantors, and such companies owned by the Subs. Beyond the 2 Borrowers and the 1 Guarantor, I don't know how many, if any, other entities there are. For purposes of the Agreement, "Subsidiaries" shall not include "Foreign Subsidiaries of the Borrowers or Guarantors" "existing as of the date of the Agreement." "Domestic Subsidiary" means each "Subsidiary" which is organized under the laws of the US or any state thereof. "Foreign Subsidiaries" are Subsidiaries that are not Domestic Subsidiaries. As the foreign entities in question and listed on Schedule 6.2 are arguably "Subs" only by accounting convention, they aren't Subsidiaries at all under this definition as Borrower/Guarantor or their Subs don't have more than 50% interests (voting stock) in those supposed subs. It sounds like right now there are no Foreign Subs.

The following is a list of where the topic of "Foreign Subsidiaries" is treated.

- 4.2. This describes the Collateral backing the Obligations (and Hedging Liability, etc.). Near the top, it indicates that the Collateral includes liens on the capital stock or other equity interest in Domestic Subs. That is what we discussed this morning. That is OK. Later it says liens on Voting Securities of Foreign Subs shall not be perfected unless required by Ad Agent or the Required Lenders during the existence of an Event of Default. As there are no Foreign Subs and you have no Voting Securities in the putative Foreign Subs, this doesn't mean anything. We can leave.
- 6.2. This is reps and warranties about Subsidiaries. It says "each Sub is duly organized, in good standing, etc.". That is OK because Sub excludes "Foreign Sub." This then goes on to say that Schedule 6.2 includes all Subsidiaries, including "Foreign Subsidiaries." Drop the ones that shouldn't be there. By leaving them there, I don't want to leave the impression that they actually are Foreign Subsidiaries. That would imply you think you have Voting Securities in them (more assets than Borrowers have). Should I delete them? Doing so could trigger a discussion, however.
- 8.17. This is a covenant about formation of Subs. If you form one, you need to let them know and add it to Schedule 6.2 and comply with Section 4 (add its equity interests to the collateral). This then says that no Borrower shall form or acquire, or permit any Sub to form or acquire, a Foreign Sub. So, this would apply to true Foreign Subs if you wanted to form or acquire one.
- 8.29. This is the new covenant about Foreign Subs. This says that if SK Foods International disposes of a Foreign Sub, SK Foods shall cause International to apply the Net Cash Proceeds of the disposition to repayment of outstanding intercompany indebtedness owing from International to SK Foods. SK Foods shall take that cash and prepay the Loans. I think we ignore this because there currently are no Foreign Subs.
- Security Agreement. That covers all assets, including securities, of the two Borrowers and the

SHARP_CH15 000284

Guarantor.  If they "own" something in an Foreign Subsidiary, it is covered.  I think that is OK as it doesn't mean you are characterizing what those foreign entities are or what they own in them.  Simply, if it is an asset of theirs, it is covered.

Please let me know what you want to do here - basically what you want done with Schedule 6.2.

Thanks,

Mark


Security Agreement

**GORDON & REES LLP**

**Mark H. Davis**
*Partner*

275 Battery Street, Suite 2000       Main Phone:   (415) 986-5900
San Francisco, CA 94111              Direct Phone:  (415) 875-4231
email: mdavis@gordonrees.com         Fax:          (415) 986-8054

San Francisco·San Diego·Los Angeles·Sacramento·Newport Beach·Las Vegas
Portland·Houston·Phoenix·Dallas·New York·Long Island·Newark·Denver
http://www.gordonrees.com

---

San Francisco * San Diego * Los Angeles * Sacramento * Orange County * Las Vegas  * Portland * Houston *
Phoenix  * Dallas * New York * Long Island * Newark *  Denver

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.
IRS CIRCULAR 230 DISCLOSURE
To ensure compliance with requirements by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**GORDON & REES LLP**
http://www.gordonrees.com

SHARP_CH15 000285

| From: | Scott Salyer <scott@first organization.com> |
|-------|---------------------------------------------|
| Sent: | Thursday, September 27, 2007 6:49 AM |
| To: | Wayne Boos <wboos@booscpa.com>; Mark McCormick <markmc@skfoods.com> |
| Subject: | RE: Cedenco Spin-off |

Wayne

Plan was changed in order to avoid Fin 46 issue .
MA said they could not audit SK and meet time line for stub period if CED was still in SK.

So the plan is to do a note exchange with a 3$^{rd}$ party ( Bank ) and pull CED out .
Paper work is not complete .

Scott

**From:** Wayne Boos [mailto:wboos@booscpa.com]
**Sent:** Wednesday, September 26, 2007 8:48 PM
**To:** Scott Salyer; Mark McCormick
**Cc:** Shondale Seymour; Darrell Carlis
**Subject:** Cedenco Spin-off

Scott/Mark, I was talking with Shondale and she was mentioning latest plan is to spin off Cedenco/Australia as of Nov 1, 2006. Is this correct? I thought this was as of 5/31. I will need to know as this will impact calendar year 2006 tax returns we are currently preparing due Oct 15th. Have the documents been prepared yet?

Thanks
Wayne

**Wayne W. Boos CPA**

**Boos & Associates**
Fig Garden Financial Center
5280 North Palm Avenue, Suite 120 | Fresno, California 93704
Phone (Main): 1.559.449-7688 | Phone (Direct): 1.559.436-3181
Fax: 1.559.449.1834 | Cell: 1.559.288-2366
E-mail: wboos@booscpa.com

*****Any tax advice included in this written or electronic communication was not intended or written to be used, and it cannot be used by the taxpayer, for the purpose of avoiding any penalties that may be imposed on the taxpayer by any governmental taxing authority or agency*****

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this message. Any disclosure, copying, or distribution of this message, or the taking of any action based on it, is strictly prohibited.

**SHARP_CH15 000286**

| From: | Shondale Seymour <shondales@first organization.com> |
|---|---|
| Sent: | Thursday, September 27, 2007 9:51 AM |
| To: | david@antipodes99.com; Mark McCormick <markmc@skfoods.com> |
| Cc: | Chad Pinter <chadp@skfoods.com>; 'wboos@booscpa.com' |
| Subject: | Cedenco spin-off |

I was talking w/ Wayne last pm and I mentioned the Cedenco spin-off. I told him I thought some of the dates had changed and that we were taking some of the transactions back from 5/31/07 to 11/1/06 to eliminate as much activity from Cedenco being considered during the 6/30/07 audit.

I understood from Wayne that this may create some additional work for the tax returns that will be filed on Oct 15th, so I told Wayne to check w/ you to get the details.....my details are all blurring together right now as I'm focusing on 6/30/07 and not on Cedenco. So, when you get the call, you'll understand why.

ss

SHARP_CH15 000287

| From: | Wayne Boos <wboos@booscpa.com> |
|---|---|
| Sent: | Tuesday, October 2, 2007 10:43 PM |
| To: | Mark McCormick <markmc@skfoods.com> |
| Cc: | Shondale Seymour <ShondaleS@skfoods.com> |
| Subject: | RE: Cedenco spin-off |

Mark, any further update on this. We will need to determine carve out as of 11/1 for tax returns if applicable.

Thanks
Wayne

**Wayne W. Boos CPA**

**Boos & Associates**
Fig Garden Financial Center
5260 North Palm Avenue, Suite 120 | Fresno, California 93704
Phone (Main): 1.559.449-7688 | Phone (Direct): 1.559.436-3181
Fax: 1.559.449.1934 | Cell: 1.559.288-2366
E-mail: wboos@booscpa.com

*****Any tax advice included in this written or electronic communication was not intended or written to be used, and it cannot be used by the taxpayer, for the purpose of avoiding any penalties that may be imposed on the taxpayer by any governmental taxing authority or agency*****

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this message. Any disclosure, copying, or distribution of this message, or the taking of any action based on it, is strictly prohibited.

**From:** Shondale Seymour [mailto:ShondaleS@skfoods.com]
**Sent:** Thursday, September 27, 2007 9:51 AM
**To:** david@antipodes99.com; Mark McCormick
**Cc:** Chad Pinter; Wayne Boos
**Subject:** Cedenco spin-off

I was talking w/ Wayne last pm and I mentioned the Cedenco spin-off. I told him I thought some of the dates had changed and that we were taking some of the transactions back from 5/31/07 to 11/1/06 to eliminate as much activity from Cedenco being considered during the 6/30/07 audit.

I understood from Wayne that this may create some additional work for the tax returns that will be filed on Oct 15th, so I told Wayne to check w/ you to get the details.....my details are all blurring together right now as I'm focusing on 6/30/07 and not on Cedenco. So, when you get the call, you'll understand why.

ss

**SHARP_CH15 000288**

| From: | Shondale Seymour <shondales@first organization.com> |
|-------|------|
| Sent: | Friday, October 5, 2007 2:40 PM |
| To: | Mark McCormick <markmc@skfoods.com> |
| Subject: | RE: Cedenco |

Mark,

Been working on audit items and just got back into e-mail.....I'll check on this and get back to you by the end of the day.

**From:** Mark McCormick
**Sent:** Thursday, October 04, 2007 3:32 PM
**To:** Shondale Seymour; Chad Pinter
**Subject:** Cedenco

Shondale,

If you were to guess ... and any guess is good enough ...  what percentage of the intercompany balance owed by Cedenco to SK is due to changes in foreign exchange rates between USD and NZD ?

Mark M. McCormick
Executive Vice President – Treasurer

SK Foods, LP
Executive Offices
200 Sky Park Drive
Monterey, CA  93940

Office  (831) 655 – 5400
Fax     (831) 655 – 5906
Cell    (408) 608 – 9321

SHARP_CH15 000289

| From: | Shondale Seymour <shondales@first organization.com> |
| Sent: | Tuesday, October 9, 2007 3:08 PM |
| To: | Mark McCormick <markmc@skfoods.com>; Chad Pinter <chadp@skfoods.com> |
| Subject: | RE: Cedenco |

Mark,

Did I ever reply to you on this?  I cannot remember, I'm sorry.

Just in case I did not, there is approx $4mm in FCX in fiscal 2007 ($3.1mm SKI and $900k SKA).  Since inception, the exchange rate has nearly doubled and the there is approx $3-4mm in FCX for SKI in the prior years also.  In 2003 there was a cash infusion to SKI of $9.3mm, of which $8.7 was paid from Aug – Oct.  This cash infusion increased the note receivable from $6mm to $15mm.  Since that time there have some additional cash infusions but a large portion of the change is due to the exchange rate.

Hope this helps.

Shondale

**From:** Mark McCormick
**Sent:** Thursday, October 04, 2007 3:32 PM
**To:** Shondale Seymour; Chad Pinter
**Subject:** Cedenco

Shondale,

If you were to guess ... and any guess is good enough ... what percentage of the intercompany balance owed by Cedenco to SK is due to changes in foreign exchange rates between USD and NZD ?

Mark M. McCormick
Executive Vice President – Treasurer

SK Foods, LP
Executive Offices
200 Sky Park Drive
Monterey, CA  93940

Office   (831) 655 – 5400
Fax      (831) 655 – 5906
Cell     (408) 608 – 9321

SHARP_CH15 000290

BMO 001834

| From: | Mark McCormick <markmc@first organization.com> |
| Sent: | Wednesday, October 10, 2007 7:21 AM |
| To: | Scott Salyer <scotts@skfoods.com> |
| Subject: | FW: Msg. from Mark McCormick re: SK Foods / Cedenco |

See below...

I have not worked through the math and do not fully understand the transaction as it is proposed.  But having said that ...here is one possible solution to the FIN 46 issue set forth by Mike Hom at Ventana Group.   Assuming that this is economically viable,  we would have to disclose this to BMO, and to the ANZ / Bank of Australia folks in advance etc...

**From:** Michael Hom [mailto:mhom@ventana-group.com]
**Sent:** Wednesday, October 10, 2007 6:48 AM
**To:** Mark McCormick
**Subject:** RE: Msg. from Mark McCormick re: SK Foods / Cedenco

Mike,

You know we are a direct bridge lender.  We could issue a bridge loan with a draw down schedule. This is how it would work.

1. We issued a commitment to buy the A/R with a factoring loan advance. We buy it for 75% of the face value (the Company gets to write down the loan difference at this time).  The Company pays a transaction fee of 10.5% for the right to buy it back at the face value within one year (Company gets the right to write off the cost as professional fees). The amount advanced will have a coupon of 10%.
2. Company accepts terms and we issue loan docs with a draw down scheduled.  We will then buy the A/R.  At closing we will then advance them $3,000,000 as part of the drawdown (Technically they get the money back that they paid for in the transaction fee).  We will issue monthly statements.
3. The Company could use then use our loan commitment as an asset (it passes mustard with GAP, because the commitment from us is collateralized by the A/R).  At the end of the year the Company exercises it right to buy back the A/R.

We will take credit for the bridge and make a press release. This would take care of the deal as a arms length transaction.

Michael

Michael Hom
Senior Vice President
The Ventana Group
750 Menlo Ave Ste 340
Menlo Park CA 94025
T: 650.566.8555x111
F: 650.566.8554

SHARP_CH15 000291

C: 650.504.3114
E: mhom@ventana-group.com

**From:** Mark McCormick [mailto:markmc@skfoods.com]
**Sent:** Wednesday, October 10, 2007 1:50 AM
**To:** Michael Hom
**Subject:** RE: Msg. from Mark McCormick re: SK Foods / Cedenco

Mike,

We are certainly willing to pay fees to facilitate the transaction. What I am trying to point out is that we don't require 30 million in cash to change hands between the parties.

mmm

**From:** Michael Hom [mailto:mhom@ventana-group.com]
**Sent:** Wednesday, October 10, 2007 12:08 AM
**To:** Mark McCormick
**Subject:** RE: Msg. from Mark McCormick re: SK Foods / Cedenco

Mark,

I have forward to several of our hedge funds. What do you need to make this a real deal?

Michael

Michael Hom
Senior Vice President
The Ventana Group
750 Menlo Ave Ste 340
Menlo Park CA 94025
T: 650.566.8555x111
F: 650.566.8554
C: 650.504.3114
E: mhom@ventana-group.com

**From:** Mark McCormick [mailto:markmc@skfoods.com]
**Sent:** Wednesday, October 03, 2007 4:27 PM
**To:** mhom@ventana-group.com
**Cc:** Scott Salyer
**Subject:** FW: Msg. from Mark McCormick re: SK Foods / Cedenco

Mike,

Further to my e-mail below .... We are not expecting any cash to change hands. This is purely a paper transaction.

mmm

**From:** Mark McCormick
**Sent:** Wednesday, October 03, 2007 4:02 PM
**To:** 'mhom@ventana-group.com'

SHARP_CH15 000292

**Cc:** Scott Salyer
**Subject:** Msg. from Mark McCormick re: SK Foods / Cedenco

Mike,

As we discussed earlier this week, SK Foods, LP is owed (net) about $30 million US from a related company (Cedenco) which is based in New Zealand and Australia. You should note that all of the companies I will refer to are ultimately owned by one person, Scott Salyer. There are no minority owners and no other board members in any of the companies. Scott Salyer is the sole shareholder and board member. The majority of the balance owed by Cedenco to SK Foods, LP is due to various intercompany transactions (of an operational nature) between the companies over the past several years. There is no immediate demand for repayment of either the principal or the interest. In fact, the intercompany amounts are subordinated to ANZ Bank in New Zealand. All of the companies have years and years of historical audited financial statements available.

So here's the deal ... under US GAAP, FIN 46 forces these entities to consolidate their financial statements due to the size of the intercompany balance. The companies have no legal or financial basis for consolidation other than through the interpretation of FIN 46 by the auditors, Moss Adams. The consolidated financials are extremely confusing to SK Foods banker's, BMO Capital Markets. There are several exceptions to the GAAP rules under FIN 46. One of the exceptions relates to banks. Our request is that we want to sell our intercompany balance owed to SK Foods to a bank at book value at the end of the fiscal year. Doing so allows SK Foods to avoid the rules of FIN 46 and not consolidate the financial statements of SK Foods, LP and Cedenco in the audit. SK Foods, LP would buy the balance owed from Cedenco back from the bank in the new fiscal year. Certainly, SK Foods would pay a banking fee to facilitate the transaction.

When I talked to Peter a few days ago and described the issue, he told me that Deloitte & Touche structured these deals for ConAgra (while Peter was employed at ConAgra) to accomplish the very same thing. Peter was very familiar with the transaction and asked that I write this e-mail to you to further describe our request. In summary, we need to find a bank or Wall Street firm that will facilitate the transaction.

You should know that Cedenco is audited by Deloitte in New Zealand. I'm going to call the audit partner at Deloitte and see if I can find their internal research and documentation on this issue.

Best,

Mark

Mark M. McCormick
Executive Vice President – Treasurer

SK Foods, LP
Executive Offices
200 Sky Park Drive
Monterey, CA 93940

Office  (831) 655 – 5400
Fax    (831) 655 – 5906
Cell   (408) 608 – 9321

**SHARP_CH15 000293**

| From: | Scott Salyer <scott@first organization.com> |
|---|---|
| Sent: | Wednesday, October 10, 2007 7:33 AM |
| To: | Mark McCormick <markmc@skfoods.com> |
| Subject: | RE: Msg. from Mark McCormick re: SK Foods / Cedenco |

This is not what we are looking for ..

SS

**From:** Mark McCormick
**Sent:** Wednesday, October 10, 2007 7:21 AM
**To:** Scott Salyer
**Subject:** FW: Msg. from Mark McCormick re: SK Foods / Cedenco

See below...

I have not worked through the math and do not fully understand the transaction as it is proposed. But having said that ...here is one possible solution to the FIN 46 issue set forth by Mike Hom at Ventana Group. Assuming that this is economically viable, we would have to disclose this to BMO, and to the ANZ / Bank of Australia folks in advance etc...

**From:** Michael Hom [mailto:mhom@ventana-group.com]
**Sent:** Wednesday, October 10, 2007 6:48 AM
**To:** Mark McCormick
**Subject:** RE: Msg. from Mark McCormick re: SK Foods / Cedenco

Mike,

You know we are a direct bridge lender. We could issue a bridge loan with a draw down schedule. This is how it would work.

1. We issued a commitment to buy the A/R with a factoring loan advance. We buy it for 75% of the face value (the Company gets to write down the loan difference at this time). The Company pays a transaction fee of 10.5% for the right to buy it back at the face value within one year (Company gets the right to write off the cost as professional fees). The amount advanced will have a coupon of 10%.
2. Company accepts terms and we issue loan docs with a draw down scheduled. We will then buy the A/R. At closing we will then advance them $3,000,000 as part of the drawdown (Technically they get the money back that they paid for in the transaction fee). We will issue monthly statements.
3. The Company could use then use our loan commitment as an asset (it passes mustard with GAP, because the commitment from us is collateralized by the A/R). At the end of the year the Company exercises it right to buy back the A/R.

We will take credit for the bridge and make a press release. This would take care of the deal as a arms length transaction.

Michael

**SHARP_CH15 000294**

Michael Hom
Senior Vice President
The Ventana Group
750 Menlo Ave Ste 340
Menlo Park CA 94025
T: 650.566.8555x111
F: 650.566.8554
C: 650.504.3114
E: mhom@ventana-group.com

**From:** Mark McCormick [mailto:markmc@skfoods.com]
**Sent:** Wednesday, October 10, 2007 1:50 AM
**To:** Michael Hom
**Subject:** RE: Msg. from Mark McCormick re: SK Foods / Cedenco

Mike,

We are certainly willing to pay fees to facilitate the transaction. What I am trying to point out is that we don't require 30 million in cash to change hands between the parties.

mmm

**From:** Michael Hom [mailto:mhom@ventana-group.com]
**Sent:** Wednesday, October 10, 2007 12:08 AM
**To:** Mark McCormick
**Subject:** RE: Msg. from Mark McCormick re: SK Foods / Cedenco

Mark,

I have forward to several of our hedge funds. What do you need to make this a real deal?

Michael

Michael Hom
Senior Vice President
The Ventana Group
750 Menlo Ave Ste 340
Menlo Park CA 94025
T: 650.566.8555x111
F: 650.566.8554
C: 650.504.3114
E: mhom@ventana-group.com

**From:** Mark McCormick [mailto:markmc@skfoods.com]
**Sent:** Wednesday, October 03, 2007 4:27 PM
**To:** mhom@ventana-group.com
**Cc:** Scott Salyer
**Subject:** FW: Msg. from Mark McCormick re: SK Foods / Cedenco

Mike,

SHARP_CH15 000295

Further to my e-mail below .... We are not expecting any cash to change hands. This is purely a paper transaction.

mmm

---

**From:** Mark McCormick
**Sent:** Wednesday, October 03, 2007 4:02 PM
**To:** 'mhom@ventana-group.com'
**Cc:** Scott Salyer
**Subject:** Msg. from Mark McCormick re: SK Foods / Cedenco

Mike,

As we discussed earlier this week, SK Foods, LP is owed (net) about $30 million US from a related company (Cedenco) which is based in New Zealand and Australia. You should note that all of the companies I will refer to are ultimately owned by one person, Scott Salyer. There are no minority owners and no other board members in any of the companies. Scott Salyer is the sole shareholder and board member. The majority of the balance owed by Cedenco to SK Foods, LP is due to various intercompany transactions (of an operational nature) between the companies over the past several years. There is no immediate demand for repayment of either the principal or the interest. In fact, the intercompany amounts are subordinated to ANZ Bank in New Zealand. All of the companies have years and years of historical audited financial statements available.

So here's the deal ... under US GAAP, FIN 46 forces these entities to consolidate their financial statements due to the size of the intercompany balance. The companies have no legal or financial basis for consolidation other than through the interpretation of FIN 46 by the auditors, Moss Adams. The consolidated financials are extremely confusing to SK Foods banker's, BMO Capital Markets. There are several exceptions to the GAAP rules under FIN 46. One of the exceptions relates to banks. Our request is that we want to sell our intercompany balance owed to SK Foods to a bank at book value at the end of the fiscal year. Doing so allows SK Foods to avoid the rules of FIN 46 and not consolidate the financial statements of SK Foods, LP and Cedenco in the audit. SK Foods, LP would buy the balance owed from Cedenco back from the bank in the new fiscal year. Certainly, SK Foods would pay a banking fee to facilitate the transaction.

When I talked to Peter a few days ago and described the issue, he told me that Deloitte & Touche structured these deals for ConAgra (while Peter was employed at ConAgra) to accomplish the very same thing. Peter was very familiar with the transaction and asked that I write this e-mail to you to further describe our request. In summary, we need to find a bank or Wall Street firm that will facilitate the transaction.

You should know that Cedenco is audited by Deloitte in New Zealand. I'm going to call the audit partner at Deloitte and see if I can find their internal research and documentation on this issue.

Best,

Mark

Mark M. McCormick
Executive Vice President – Treasurer

SK Foods, LP
Executive Offices
200 Sky Park Drive
Monterey, CA 93940

**SHARP_CH15 000296**

Office  (831) 655 – 5400
Fax     (831) 655 – 5906
Cell    (408) 608 – 9321

SHARP_CH15 000297

| From: | Scott Salyer <scott@first organization.com> |
|---|---|
| Sent: | Wednesday, October 10, 2007 7:52 AM |
| To: | Mark McCormick <markmc@skfoods.com> |
| Subject: | RE: Msg. from Mark McCormick re: SK Foods / Cedenco |

Nor expensive financing caused by some Auditor ..

SS

**From:** Mark McCormick
**Sent:** Wednesday, October 10, 2007 7:38 AM
**To:** Scott Salyer
**Subject:** RE: Msg. from Mark McCormick re: SK Foods / Cedenco

Agree ... we are not looking for more financing ...

**From:** Scott Salyer
**Sent:** Wednesday, October 10, 2007 7:33 AM
**To:** Mark McCormick
**Subject:** RE: Msg. from Mark McCormick re: SK Foods / Cedenco

This is not what we are looking for ..

SS

**From:** Mark McCormick
**Sent:** Wednesday, October 10, 2007 7:21 AM
**To:** Scott Salyer
**Subject:** FW: Msg. from Mark McCormick re: SK Foods / Cedenco

See below...

I have not worked through the math and do not fully understand the transaction as it is proposed.  But having said that ...here is one possible solution to the FIN 46 issue set forth by Mike Hom at Ventana Group.   Assuming that this is economically viable,  we would have to disclose this to BMO, and to the ANZ / Bank of Australia folks in advance etc...

**From:** Michael Hom [mailto:mhom@ventana-group.com]
**Sent:** Wednesday, October 10, 2007 6:48 AM
**To:** Mark McCormick
**Subject:** RE: Msg. from Mark McCormick re: SK Foods / Cedenco

Mike,

You know we are a direct bridge lender.  We could issue a bridge loan with a draw down schedule. This is how it would work.

1.  We issued a commitment to buy the A/R with a factoring loan advance.  We buy it for 75% of the

**SHARP_CH15 000298**

face value (the Company gets to write down the loan difference at this time).  The Company pays a transaction fee of 10.5% for the right to buy it back at the face value within one year (Company gets the right to write off the cost as professional fees). The amount advanced will have a coupon of 10%.

2.  Company accepts terms and we issue loan docs with a draw down scheduled.  We will then buy the A/R.  At closing we will then advance them $3,000,000 as part of the drawdown (Technically they get the money back that they paid for in the transaction fee).  We will issue monthly statements.

3.  The Company could use then use our loan commitment as an asset (it passes mustard with GAP, because the commitment from us is collateralized by the A/R).  At the end of the year the Company exercises it right to buy back the A/R.

We will take credit for the bridge and make a press release. This would take care of the deal as a arms length transaction.

Michael


Michael Hom
Senior Vice President
The Ventana Group
750 Menlo Ave Ste 340
Menlo Park CA 94025
T: 650.566.8555x111
F: 650.566.8554
C: 650.504.3114
E: mhom@ventana-group.com

**From:** Mark McCormick [mailto:markmc@skfoods.com]
**Sent:** Wednesday, October 10, 2007 1:50 AM
**To:** Michael Hom
**Subject:** RE: Msg. from Mark McCormick re: SK Foods / Cedenco

Mike,

We are certainly willing to pay fees to facilitate the transaction.  What I am trying to point out is that we don't require 30 million in cash to change hands between the parties.

mmm

**From:** Michael Hom [mailto:mhom@ventana-group.com]
**Sent:** Wednesday, October 10, 2007 12:08 AM
**To:** Mark McCormick
**Subject:** RE: Msg. from Mark McCormick re: SK Foods / Cedenco

Mark,

I have forward to several of our hedge funds.  What do you need to make this a real deal?

Michael

Michael Hom
Senior Vice President

SHARP_CH15 000299

The Ventana Group
750 Menlo Ave Ste 340
Menlo Park CA 94025
T: 650.566.8555x111
F: 650.566.8554
C: 650.504.3114
E: mhom@ventana-group.com

**From:** Mark McCormick [mailto:markmc@skfoods.com]
**Sent:** Wednesday, October 03, 2007 4:27 PM
**To:** mhom@ventana-group.com
**Cc:** Scott Salyer
**Subject:** FW: Msg. from Mark McCormick re: SK Foods / Cedenco

Mike,

Further to my e-mail below .... We are not expecting any cash to change hands. This is purely a paper transaction.

mmm

**From:** Mark McCormick
**Sent:** Wednesday, October 03, 2007 4:02 PM
**To:** 'mhom@ventana-group.com'
**Cc:** Scott Salyer
**Subject:** Msg. from Mark McCormick re: SK Foods / Cedenco

Mike,

As we discussed earlier this week, SK Foods, LP is owed (net) about $30 million US from a related company (Cedenco) which is based in New Zealand and Australia. You should note that all of the companies I will refer to are ultimately owned by one person, Scott Salyer. There are no minority owners and no other board members in any of the companies. Scott Salyer is the sole shareholder and board member. The majority of the balance owed by Cedenco to SK Foods, LP is due to various intercompany transactions (of an operational nature) between the companies over the past several years. There is no immediate demand for repayment of either the principal or the interest. In fact, the intercompany amounts are subordinated to ANZ Bank in New Zealand. All of the companies have years and years of historical audited financial statements available.

So here's the deal ... under US GAAP, FIN 46 forces these entities to consolidate their financial statements due to the size of the intercompany balance. The companies have no legal or financial basis for consolidation other than through the interpretation of FIN 46 by the auditors, Moss Adams. The consolidated financials are extremely confusing to SK Foods banker's, BMO Capital Markets. There are several exceptions to the GAAP rules under FIN 46. One of the exceptions relates to banks. Our request is that we want to sell our intercompany balance owed to SK Foods to a bank at book value at the end of the fiscal year. Doing so allows SK Foods to avoid the rules of FIN 46 and not consolidate the financial statements of SK Foods, LP and Cedenco in the audit. SK Foods, LP would buy the balance owed from Cedenco back from the bank in the new fiscal year. Certainly, SK Foods would pay a banking fee to facilitate the transaction.

When I talked to Peter a few days ago and described the issue, he told me that Deloitte & Touche structured these deals for ConAgra (while Peter was employed at ConAgra) to accomplish the very same thing. Peter was very familiar with the transaction and asked that I write this e-mail to you to further describe our request. In

SHARP_CH15 000300

summary, we need to find a bank or Wall Street firm that will facilitate the transaction.

You should know that Cedenco is audited by Deloitte in New Zealand.  I'm going to call the audit partner at Deloitte and see if I can find their internal research and documentation on this issue.

Best,

Mark

Mark M. McCormick
Executive Vice President – Treasurer

SK Foods, LP
Executive Offices
200 Sky Park Drive
Monterey, CA  93940

Office   (831) 655 – 5400
Fax      (831) 655 – 5906
Cell     (408) 608 – 9321

SHARP_CH15 000301

# EXHIBIT B

BMO 001846

| | |
|---|---|
| **From:** | Julie Patton <julie@garyperrylaw.com> |
| **Sent:** | Friday, March 28, 2008 11:49 AM |
| **To:** | Lisa Crist <lisac@skfoods.com> |
| **Cc:** | Mark McCormick <markmc@skfoods.com> |
| **Subject:** | General Assignment and Transfer forms |
| **Attach:** | General transfer SK Australia.06.doc; General Assign SK LLC 06.doc |

Lisa: Attached are the two forms we discussed on Wednesday. Scott's trust already owned one share of the Australia entity so he ended up with 46 shares total and 55 shares are in SKPM. Gary

**SHARP_CH15 000709**

# EXHIBIT C

BMO 001848

**REDACTED**

| | |
|---|---|
| **From:** | Harry Heath [harry.heath@bigpond.com] |
| **Sent:** | Thursday, May 26, 2011 11:24 PM |
| **To:** | Harry Heath |
| **Subject:** | FW: Scan from Konica |
| **Attachments:** | SKMBT_C25311052416230.pdf |

**From:** Nick Frankish [mailto:NICK@cedenco.co.nz]
**Sent:** Tuesday, 24 May 2011 2:38 PM
**To:** Harry Heath
**Subject:** FW: Scan from Konica

**Nick Frankish | CFO | Cedenco Foods New Zealand Ltd.** | Level 2, 12 Heather Street, Parnell, Auckland 1052.  PO Box 137-337, Parnell, Auckland, 1151 | DDI: (+64 9) 362 0803 | PH: (+64 9) 362 0800 | Fax: (+64 9) 362 0806 | www.cedenco.com

**From:** bizhubc253akl@cedenco.co.nz [mailto:bizhubc253akl@cedenco.co.nz]
**Sent:** Wednesday, 25 May 2011 4:23 a.m.
**To:** Nick Frankish
**Subject:** Scan from Konica

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

1

SHARP_CH15 001438



# Fax:

To:      Harry Heath
Attn:
Fax No:   Ceuto
Date:    15·5·09
Subject:  SkFA shareholding
From:        Nich
Pages:     5 (including cover page)

Looks like we need to advise ASIC
of change of ownership.

Nich

Cedenco Foods – Auckland
a member of the SK Foods Group
Level 2, 12 Heather St Parnell Auckland 1052
PO Box 137-337 Auckland 1151 New Zealand
Tel +64 9 362 0500  Fax +64 9 362 0508
www.cedenco.com

SHARP_CH15 001439

### GENERAL ASSIGNMENT AND TRANSFER

### OF SHARES OF

### SK FOODS AUSTRALIA, Pty Ltd.

For valuable consideration, receipt of which is acknowledged hereby, SK FOODS, L. P., a California limited partnership ("Assignor"), hereby assigns and transfers to the assignees and transferees identified on the schedule attached hereto as Exhibit "A" and incorporated herein by this reference, all of its right, title and interest in the outstanding shares of SK FOODS AUSTRALIA, Pty Ltd. effective as of November 1, 2006.

"Assignor"

SK FOODS, L. P., a California limited partnership

By:   SK PM CORP., a California corporation,
      General Partner

By: _____
    F. SCOTT SALYER,
    Chief Executive Officer

SHARP_CH15 001440

EXHIBIT "A"

ASSIGNEES AND TRANSFEREES

1.  Scott Salyer, Trustee of the Scott Salyer       -       45 shares
    Revocable Trust, dated July 9, 1984

2.  SK PM CORP, a California corporation            -       55 shares

SHARP_CH15 001441

GENERAL ASSIGNMENT AND TRANSFER

OF MEMBER INTERESTS OF

SK FOODS, LLC

For valuable consideration, receipt of which is acknowledged hereby, SK FOODS, L. P., a California limited partnership ("Assignor"), hereby assigns and transfers to the assignees and transferees identified on the schedule attached hereto as Exhibit "A" and incorporated herein by this reference, all of its right, title and interest in the outstanding member interests of SK FOODS, LLC, a Nevada limited liability company effective as of November 1, 2006.

"Assignor"

SK FOODS, L. P., a California limited partnership

By:   SK PM CORP., a California corporation,
      General Partner

By: _____
      F. SCOTT SALYER,
      Chief Executive Officer

SHARP_CH15 001442

## EXHIBIT "A"

### ASSIGNEES AND TRANSFEREES

| | | | Interest In Assignor |
|---|---|---|---|
| 1. | Scott Salyer, Trustee of the Scott Salyer Revocable Trust, dated July 9, 1984 | - | 44.55% |
| 2. | SK PM CORP, a California corporation | - | 54.45% |
| | Interest Transferred | 99% | |

SHARP_CH15 001443

GARY G. PERRY
ATTORNEY AT LAW
2251 Fair Oaks Boulevard, Suite 200
Sacramento, California 95825

Telephone
(916) 649-0742

Facsimile
(916) 649-0010

ATTORNEY CLIENT PRIVILEGED COMMUNICATION

January 14, 2008

Mr. F. Scott Salyer
SK Foods, L. P.
200 Sky Park Drive
Monterey, CA 93940

RE:    SK FOODS, L.P.

Dear Scott:

I am enclosing a copy of the executed original of the Debt Assignment Agreement for your records. Please let me know if you have any questions.

Sincerely yours,

GARY G. PERRY

GGP/jp
Enclosure

cc:    Wayne Boos, CPA (w/encl.)

SHARP_CH15 001444

## DEBT ASSIGNMENT AGREEMENT

This Debt Assignment Agreement is entered into by and among SK Foods, L.P., a California Limited Partnership (the "Partnership"), SSC&L 2007 Trust (the "Trust"), and Cedenco Foods, Limited, a New Zealand Company ("Cedenco") on this 1st day of November, 2006.

### RECITALS

A.    The Partnership holds debt on which Cedenco is the obligor (the "Debt").

B.    The Trust has agreed to become an obligor of the Debt without releasing Cedenco from liability for the payment of the Debt.

C.    The parties hereto desire that effective as of the date hereof the Trust shall be an obligor of the Debt in favor of the Partnership.

Now, therefore, the parties agree as follows:

1.    Debt Assignment. Without reducing, altering, or otherwise affecting the liability of Cedenco for the payment of the Debt or the terms for payment of the Debt, Cedenco hereby assigns its obligations for the payment of the Debt to the Trust and the Trust hereby assumes the obligations of Cedenco under the terms of the Debt.

2.    Consent. The Partnership hereby consents to the assignment set forth in Section 1. Notwithstanding the consent of the Partnership to the assignment, Cedenco shall remain liable for all of its obligations to the Partnership arising out of or related to the Debt.

3.    Indemnity. Cedenco shall indemnify and hold harmless the Trust from any liability, loss, damages, claims, and costs arising out or related to this Agreement and the Debt.

4.    Notices/Delivery. Unless otherwise provided herein, any notice, tender or delivery to be given hereunder by either party to the other may be effected by personal delivery or by registered or certified mail, postage prepaid, return receipt requested. Mailed notice shall be addressed as set forth below:

        Partnership         SK Foods, L.P.
                            P.O. Box 160
                            Lemoore, CA  93245
                            Attn: Mark McCormick

SHARP_CH15 001445