# RJN
# EXHIBIT H



FILED

JUN 28 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

<div align="center">

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

</div>

| | |
|---|---|
| In re: | Case No. 09-29162-D-11 |
| SK FOODS, L.P., | |
|           Debtor. | |
| BRADLEY D. SHARP, Chapter 11 Trustee, | Adv. Pro. No. 10-2014-D |
| | Docket Control No. MSS-2 |
|           Plaintiff, | |
| v. | DATE: June 22, 2011 |
| SCOTT SALYER, as trustee of the Scott Salyer Revocable Trust, et al., | Time: 9:30 a.m.<br>Dept: D |
|           Defendants. | |

<div align="center">

**ORDER**

</div>

The court having issued findings and analysis in the matter of Defendants' Supplemental Motion to Stay Adversary Proceedings, Docket Control No. MSS-2 (the "Motion"), which are included in the civil minutes, a copy of which is attached hereto, and good cause appearing,

IT IS HEREBY ORDERED that:

1. The Motion is granted and this adversary proceeding is stayed pending further order of this court, except as set forth below;

/ / /

1    2.   The stay shall not prevent actions by any party to

2   investigate the extent of compliance or non-compliance with the

3   preliminary injunction filed March 20, 2010 in this adversary

4   proceeding, as the same has been modified by orders of this court

5   filed October 13, 2010; January 20, 2011; February 16, 2011; May

6   1, 2011; and May 10, 2011 (collectively, the "Preliminary

7   Injunction Orders");

8    3.   The stay shall not prevent actions by the plaintiff

9   necessary to ensure the Preliminary Injunction Orders are

10  complied with, including actions seeking to modify the

11  Preliminary Injunction Orders or seeking additional relief from

12  this court intended to ensure that the assets covered by the

13  Preliminary Injunctions Orders are preserved.

14  Dated: _Teune 27_ , 2011     _Robert Bardwil_

15                              ROBERT S. BARDWIL
                                United States Bankruptcy Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA
# CIVIL MINUTES

| | | | |
|---|---|---|---|
| **Adversary Title :** | Sharp v. Salyer et al | **Case No :** 09−29162 − D − 11<br>**Adv No :** 10−02014 − D<br>**Date :** 6/22/11<br>**Time :** 10:00 | |
| **Matter :** | [210] − Supplemental Motion/Application to Stay Adversary Proceedings [MSS−2] Filed by Defendants Blackstone Ranch Corporation, Monterey Peninsula Farms, LLC, SK Farms Services, LLC, SK Foods, LLC, SK Frozen Foods, LLC, SK PM Corp., SKF Canning, LLC, SS Farms LLC, SSC Farming, LLC, SSC Farms I, LLC, SSC Farms II, LLC, SSC Farms III, LLC, Scott Salyer, Salyer Management Company, LLC, The Scott Salyer Revocable Trust (dhes) Modified on 4/28/2011 (dhes). | | OPPOSED |
| **Judge :**<br>**Courtroom Deputy :**<br>**Reporter :**<br>**Department :** | Robert S. Bardwil<br>Nancy Williams<br>Diamond Reporters<br>D | | |

**APPEARANCES for :**
**Movant(s) :**
>   Defendant's Attorney − James Keowen

**Respondent(s) :**
>   Plaintiff's Attorney − Kevin Coleman
>   Creditor's Attorney − Eric Safire, Paul Pascuzzi, Todd Dressel, Robert Asperger, James Deher, Micahel Kuzmich, Warren Felger (phone), Caroline Newman (phone)

MOTION was :

ORDER TO BE PREPARED BY :        Chambers

Final ruling:

Scott Salyer, individually and as trustee of the Scott Salyer Revocable Trust; the Scott Salyer Revocable Trust; SK PM Corporation; SK Foods, LLC; SKF Canning, LLC; Blackstone Ranch Corporation; Monterey Peninsula Farms, LLC; Salyer Management Company, LLC; SK Farms Services, LLC; SK Frozen Foods, LLC; SS Farms, LLC; SSC Farming, LLC; SS Farms I, LLC; SS Farms II, LLC; SS Farms III, LLC; SKF Aviation, LLC; and CSSS, LP, dba Central Valley Shippers (the Salyer Parties), have filed a supplemental motion to stay several adversary proceedings, including this one. (The motion is a supplemental one because the Salyer Parties filed an earlier motion for a stay that was denied. See below.) The chapter 11 trustee, Bradley D. Sharp (the trustee), opposes the motion. For the reasons set forth below, the court intends to grant the motion.

In April 2010, the Salyer Parties filed their first motion for a stay of the adversary proceedings. This court denied the motion, based in large part on what it perceived to be significant distinctions between the factual allegations in the criminal indictment against Scott Salyer and those in the adversary proceedings. On appeal by the Salyer Parties, the district court for this district reversed and, on April 14, 2011, remanded to this court to decide, in the first instance, whether discovery from or testimony of Salyer or his criminal

counsel is reasonably necessary [fn] to dispose of a particular matter before the Bankruptcy Court in the adversary proceedings. Sharp v. SSC Farms I, LLC, United States District Court, Eastern District of California, Civ. No. S-10-1492 LKK, Order filed April 14, 2011, at 5:11-15. The court defined the applicable standard as follows: A matter is reasonably necessary if [the Salyer Parties] cannot adequately defend themselves in an adversary proceeding without evidence from Salyer or his criminal counsel. Id., 5:15-18.

Thus, the court will examine the issues in this particular adversary proceeding in light of this standard. In this adversary proceeding, the trustee seeks to substantively consolidate with the debtors estate all the entities named above as Salyer Parties except Scott Salyer individually; SKF Aviation, LLC; and CSSS, LP. The trustee contends these entities operated and held themselves out to the public and their creditors as a coordinated single enterprise, with Scott Salyer as its head. The complaint sets forth a wide variety of factual allegations under headings such as shared management and administration; shared facilities, records and resources; and intercompany transfers and commingling of assets. Salyer is alleged to have controlled and/or managed all the defendant entities. It is virtually undisputed that Salyer is alleged to have been the one individual ultimately in control of the activities that are alleged to give rise to the substantive consolidation causes of action, as well as the transfers that are alleged to give rise to the preference and fraudulent transfer causes of action.

Given these allegations, it appears virtually impossible that significant proceedings could be undertaken in this adversary proceeding without evidence from Salyer and/or his criminal counsel. At a minimum, the court believes the defendants in this action are likely to require evidence from Salyer and/or his criminal counsel in order to adequately defend themselves. Salyer is the individual who is at the center of the trustees allegations in this adversary proceeding he is not alleged to have been one of a group of individuals acting together; he is alleged to have been in charge of all the entities operating as the alleged single enterprise the individual who coordinated the entire operation, who directed the other individuals, and who made all the pieces work as the alleged one. It simply strains credibility for the trustee to now suggest there is no showing that Salyer alone has any unique knowledge, necessary to the defense, which cannot be provided by other third parties who can adequately testify. Opposition to Defendants Supplemental Motion to Stay Adversary Proceedings, filed June 1, 2011 (the Opposition), at 2:3-5.

The defect in the trustees reasoning is readily apparent. The trustee lists nine other individuals he claims could testify about the allegations contained in the complaint; he summarizes the categories of information each one possesses, and concludes that he does not believe any discovery from or testimony by Salyer or his criminal counsel is necessary to proceed with the Trustees case in the Substantive Consolidation Action. Opposition, 9:3-4. However, under the standard articulated by the district court, the point is not whether the trustee could make his case, it is whether the defendants could make their case.

The trustee also misstates the burden allocated to the defendants by the district court: The District Court has placed the burden on Defendants to explain what evidence that Salyer alone possesses, without which it would be unreasonable to make them defend themselves. Opposition, 9:13-15.

[T]he Defendants arguments fall far short of identifying specifically what evidence Salyer could provide about any of the issues in the Substantive Consolidation Action, how that evidence would be reasonably necessary to Defendants defense and why that evidence could not be obtained from an alternative source.

Id., 10:5-9.

Simply stated, this court does not interpret the district courts April 14, 2011 order as requiring the defendants to make such a showing. Instead, based on the factual allegations in the adversary proceeding, the court is satisfied that Salyer is central to the disputes raised; the court need not speculate on what other sources might be available if Salyer is not, and the defendants will not be required to disprove the existence or adequacy of such other sources. (The trustees related argument that the defendants have not shown that obtaining the evidence needed for [their] defense would threaten Salyers Fifth Amendment rights (Opposition, 9:17-18) is a matter that was addressed in this courts ruling on the Salyer Parties first motion for a stay, which has been reversed by the district court; the court will not revisit the issue here.)

The real problem with the trustees opposition to the motion is that it does not apply the standard set by the district court and does not address the specific factual allegations of the complaint, but merely cites broad principles, draws broad conclusions, and charges the defendants with failing to provide sufficient particulars of the necessity of Salyers testimony. In the courts view, the factual allegations of the complaint are such that Salyers testimony (and possibly that of his criminal counsel) is likely to be central to resolution of the issues. Thus, the court concludes that evidence from Salyer and/or his criminal counsel is reasonably necessary for the defendants to adequately defend themselves in this proceeding. Accordingly, the court

will grant the motion except as limited below.

The trustee cites three recent developments as suggesting that there is a risk the preliminary injunction previously issued by this court is not adequately safeguarding the assets that are the subject of the injunction. The Salyer Parties have not adequately responded to these allegations in particular, the court does not share their belief that the trustees concerns are exaggerated, does not agree that any potential harm was remedied precisely because the Preliminary Injunction was in place (Defendants Omnibus Reply to Oppositions to Motions to Stay Adversary Proceedings, filed June 8, 2011, 10:19–20, emphasis in original), and does not view the trustees bringing these matters to the courts attention as litigation tactics. Id., 11:5–7.

The court does not perceive denial of the stay motion as an effective way to address these issues, and does not view them as tilting the balance of the Keating factors (see Keating v. Office of Thrift Supervision, 45 F.3d 322, 324–25 (9th Cir. 1995)). For one thing, if the stay motion is not granted and the litigation proceeds with respect to Salyer, the assets remain at risk in the meantime. In short, the court simply does not see a denial of the stay motion as an effective remedy for the concerns the trustee has raised. The court will, however, modify the stay of this adversary proceeding to the extent necessary to permit the trustee to take actions to investigate the extent of compliance or non-compliance with the preliminary injunction. The court will also modify the stay to ensure the injunction is complied with, including to permit the injunction to be amended or other relief to be granted to ensure the assets are preserved.

Finally, the trustee suggests that discovery could proceed against the employees, directors, officers, witnesses or other third parties related to the Defendants who would also have knowledge and information relevant to the defense without impairing Salyers Fifth Amendment rights. Opposition, 20:17–20. The trustee quotes from an exchange at the April 11, 2011 district court hearing, and concludes that all parties are in agreement that any stay that this Court might enter should not prevent the Trustee and the Defendants from taking discovery from other third parties, who have evidence related to the Adversary Proceedings. Id., 21:4–6. There is nothing in the Salyer Parties written reply to indicate that they take issue with this conclusion.

However, at the hearing on the present motion, the Salyer Parties stated that they do oppose permitting the trustee to take third–party discovery. The court has reviewed the transcript of the April 11, 2011 hearing in the district court, together with the order issued following that hearing, on April 14, 2011. Although the issue of third–party discovery was discussed at the hearing, there is nothing in the order to suggest that if this court finds that the Salyer Parties cannot adequately defend themselves in a particular adversary proceeding without discovery from or testimony of Salyer or his criminal counsel, it may nevertheless allow discovery to proceed against third parties. In short, this court has found, above, that Salyer is sufficiently at the center of the disputes in this adversary proceeding that the defendants cannot adequately defend themselves without testimony of or discovery from Salyer and/or his criminal counsel. Thus, the language of the April 14, 2011 order suggests to this court that the adversary proceeding should be stayed, with no exception for third–party discovery. Accordingly, the motion will be granted and the adversary proceeding will be stayed, except with respect to the preliminary injunction, as discussed above. The court will issue an appropriate order.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

    The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities at the addresses shown below or on the attached list.

SEE ATTACHED LIST

DATED: 6/28/11          By: _____
                                Deputy Clerk

EDC 3-070 (Rev. 6/28/10)

```
 1
 2   Kevin Coleman
     Schnader Harrison Segal & Lewis
 3   One Montgomery Street, Suite 2200
     San Francisco, CA 94104- 5501
 4
     Jaime Dreher
 5   Downey Brand, LLP
     621 Capitol Mall, 18th Floor
 6   Sacramento, CA 95814-4731

 7   Marc Levinson
     Orrick Herrington & Sutcliffe
 8   400 Capitol Mall, Suite 3000
     Sacramento, CA 95814-4497
 9
     Paul Pascuzzi
10   Felderstein Fitzgerald
        Willoughby & Pascuzzi
11   400 Capitol Mall, Suite 1450
     Sacramento, CA 95814
12
     Todd Dressel
13   Chapman and Cutler, LLP
     595 Market Street, 26th Floor
14   San Francisco, CA 94105

15   James Keowen
     Nageley Meredith & Miller, Inc.
16   8001 Folsom Blvd., Suite 100
     Sacramento, CA 95826
17
18   Larry Lichtenegger
     Lichtenegger Law Offices
19   3850 Rio Road, Suite 58
     Carmel, CA 93926
20
     Malcolm Segal
21   Segal & Kirby, LLP
     770 L Street, 1440
22   Sacramento, CA 95814
23
     Eric Safire
24   2431 Fillmore St.
     San Francisco, CA 94115
25
     Robert Asperger
26   Office of the Attorney General
     1300 I Street
27   Sacramento, CA 95814
28
```

1  Michael Kuzmich
Boutin Gibson DiGiusto Hodell, Inc.
2  555 Capitol Mall, Suite 1500
Sacramento, CA 95814

3

Warren Felger
4  Felger & Associates
726 W Barstow Ave., #106
5  Fresno, CA 93704

6  Caroline Newman
Internal Revenue Service
7  P.O. Box 683
Washington, DC 20044

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# RJN
# EXHIBIT I

2010-02015
FILED
January 11, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002340183

1  21 Pages
Gregory C. Nuti, (SBN 151754)
2  E-Mail: gnuti@schnader.com
Kevin W. Coleman (SBN 168538)
3  E-Mail: kcoleman@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
4  One Montgomery Street, Suite 2200
San Francisco, California  94104-5501
5  Telephone: 415-364-6700
Facsimile: 415-364-6785
6
John K. Gisleson (Pro Hac Vice)
7  E-Mail: jgisleson@schnader.com
Keith E. Whitson (Pro Hac Vice)
8  E-Mail: kwhitson@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
9  Fifth Avenue Place
120 Fifth Avenue, Suite 2700
10  Pittsburgh, Pennsylvania 15222-3001
Telephone: 412-577-5200
11  Facsimile: 412-765-3858

12  Attorneys for Plaintiff Bradley D. Sharp,
Chapter 11 Trustee
13

14          UNITED STATES BANKRUPTCY COURT

15          EASTERN DISTRICT OF CALIFORNIA

16          SACRAMENTO DIVISION

17
In re                                    Case No.: 09-29162
18
SK Foods, LP, a California limited partnership,    Chapter 11
19
20          Debtor.
21

22  In re                                    Case No. 09-29161
23  RHM Industrial/Specialty Foods, Inc., a    Chapter 11
24  California corporation, d/b/a Colusa County
Canning Co.,
25
26          Debtor.
27
28

SCHNADER, HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

PHDATA 3265972_v1

Adversary Complaint

<div style="margin-left:2em; margin-right:auto;">

| | |
|---|---|
| 1 | |
| 2 | Bradley D. Sharp, Chapter 11 Trustee of SK Foods, L.P., a California limited partnership and RHM Industrial Specialty Foods, Inc., a California corporation, d/b/a Colusa County Canning Co., |
| 3 | |
| 4 | |
| 5 | Plaintiffs, |
| 6 | vs. |
| 7 | Scott Salyer, in his individual capacity and as Trustee of the Scott Salyer Revocable Trust, the Scott Salyer Revocable Trust, and SKPM Corporation, |
| 8 | |
| 9 | Defendants. |

</div>

**ADVERSARY COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

A.P. No.

10

11    Bradley D. Sharp, the duly appointed and acting Chapter 11 Trustee (the "Trustee") in the

12 cases of SK Foods, L.P., a California limited partnership, and RHM Industrial Specialty Foods,

13 Inc., a California corporation, d/b/a Colusa County Canning Co., hereby files this Adversary

14 Complaint, and in support thereof, avers as follows:

15                              **INTRODUCTION**

16    The Defendants, at all relevant times, owned and controlled Debtors as well as numerous

17 other affiliated entities that do business with Debtors.  Defendants breached their fiduciary duties

18 of loyalty and care to Debtors by engaging in numerous acts designed to benefit themselves and

19 other entities in which they have an interest, all to the detriment of Debtors and their creditors.

20 Defendants not only transferred funds and assets belonging to Debtors to other entities, and used

21 Debtors to benefit these other entities in numerous ways, but they also actively attempted to

22 sabotage Debtors' operations.  This adversary proceeding seeks to recover monetary damages

23 from the Defendants for the harms suffered by these breaches.

24                              **THE PARTIES**

25    1.    Plaintiff Bradley D. Sharp is the duly appointed and acting Chapter 11 Trustee in

26 the cases of SK Foods, L.P., a California limited partnership ("SK Foods"), and RHM Industrial

27 Specialty Foods, Inc., a California corporation, d/b/a Colusa County Canning Co. ("RHM")

28 (jointly, "the Debtors").

<div style="text-align:center; font-size:smaller;">
SCHNADER HARRISON SEGAL & LEWIS LLP<br/>
ONE MONTGOMERY STREET, SUITE 2200<br/>
SAN FRANCISCO, CA 94104-5501<br/>
TELEPHONE: (415) 364-6700<br/>
FAX: (415) 364-6785
</div>

PHDATA 3265972_v1

Adversary Complaint

1     2.     SK Foods is a California limited partnership with a principal office at 1175 19th

2 Avenue, Lemoore, California.  Its registered agent is Defendant Scott Salyer.

3     3.     RHM is a California corporation with a principal place of business at 1175 19th

4 Avenue, Lemoore, California.  Its registered agent is Mark McCormick.

5     4.     Scott Salyer ("Salyer") is an individual residing in the State of California.

6     5.     The Trustee is informed and believes and thereon alleges that the Scott Salyer

7 Revocable Trust ("SSR Trust") is a California trust whose trustee is Salyer and whose sole

8 beneficiary is Salyer.

9     6.     The Trustee is informed and believes and thereon alleges that SKPM Corporation

10 ("SKPM") is a California corporation with its principal place of business located at 21 Lower

11 Ragsdale Drive, Monterey, California.  Its registered agent is Mark McCormick.

12                 **JURISDICTION AND VENUE**

13     7.     Involuntary petitions were filed with respect to these Debtors on or about May 5,

14 2009 ("Petition Date").  On or about May 7, 2009, Debtors SK Foods and RHM filed a voluntary

15 petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et.*

16 *seq.* (the "Bankruptcy Code.").

17     8.     This Court has jurisdiction over this adversary proceeding under 28 U.S.C.

18 §§ 1334 and 157, and Rule 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure.

19     9.     This is a core proceeding under 28 U.S.C. §§ 1408 and 1409.

20     10.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

21                        **FACTS**

22     11.     The SSR Trust is controlled by Salyer, who at all relevant times has been its

23 Trustee and sole beneficiary.

24     12.     SKPM is owned 100% by the SSR Trust, and Salyer has been President of and

25 controlled SKPM at all relevant times.

26     13.     SK Foods was formed on or about December 29, 1992 by SKPM (under a former

27 name) as general partner and Salyer American, a California corporation, as limited partner.  On·

28

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

Adversary Complaint                                                     PHDATA 3265972_v1

1   or about December 29, 1995, Salyer American assigned all of its right, title and interest to Salyer

2   individually.

3          14.      Since December 29, 1995, Salyer has controlled directly or indirectly 100% of the

4   ownership interests of SK Foods.

5          15.      SK Foods currently is owned 45.55% directly by the SSR Trust, which is its

6   limited partner.  The other 54.45% is owned by SKPM, which is the general partner.

7          16.      Salyer was the Chief Executive Officer of SK Foods at all relevant times.

8          17.      Salyer has been a Director of SK Foods at all relevant times.

9          18.      Scott Salyer has signed documents at various points in time representing himself

10   to hold numerous different positions with SK Foods, including Secretary, President, Director,

11   and Chief Executive Officer.  In addition, Salyer executed various documents on behalf of SK

12   Foods in his capacity as President of SKPM, the general partner.

13          19.      Through his ownership and control of SK Foods' two partners (the SSR Trust and

14   SKPM) and in his capacity as Director, CEO, President and other positions with SK Foods,

15   Salyer has exercised ultimate and complete control over SK Foods at all relevant times.

16          20.      Salyer also exercised ultimate control over RHM at all relevant times.

17          21.      Salyer directly interacted with other officers and managers, and gave instructions

18   to them concerning operation and management of the Debtors.  These officers and managers

19   followed Salyer's instructions.

20          22.      Salyer also owned and controlled many other entities that did business with

21   Debtors, including but not limited to Salyer Management Company, LLC, SKF Aviation, LLC,

22   SS Farms, LLC, SSC Farming, LLC, SSC Farms I, LLC, SSC Farms II, LLC, SSC Farms III,

23   LLC, Blackstone Ranch Corp., Monterey Peninsula Farms, LLC, SK Foods, LLC, and others.

24          23.      Salyer used his positions and interests in Debtors to provide benefits to other

25   entities in which he had an interest to the disadvantage of Debtors and their creditors, as well as

26   to fund a lavish lifestyle for himself so that he would not have to spend those monies from his

27   personal funds.

28

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE (415) 364-6700
FAX: (415) 364-6785

4

Adversary Complaint

24.     The SSR Trust and SKPM, through Salyer, caused SK Foods to provide benefits to other entities in which they or Salyer had an interest to the disadvantage of SK Foods, RHM and their creditors.

25.     Defendants at all times failed to act in good faith and in the best interests of Debtors and their creditors.  Instead, Salyer consistently pursued his self-interest and disregarded the duty of loyalty he owed to Debtors.  He pursued and authorized transactions to the detriment of Debtors and their creditors, and to further his own personal interests or those of other entities he owned and controlled.

### Transfers of Debtors' Funds and Assets

26.     The Defendants transferred or caused to be transferred money and other assets from SK Foods to these other entities in which they had an interest.

27.     Salyer directed the transfer of funds from the Debtors whenever one of the other entities in which Defendants had an interest needed money.  This pattern of transfers took place over many years and continued up through the Petition Date.

28.     On many occasions, funds or other assets were diverted from the Debtors to other parties in which Defendants had an interest without an adequate explanation of the purpose of the transaction.

29.     Some such transactions were made in order to capitalize entities in which Debtors had no interest but Defendants had an interest.

30.     As of June 30, 2007, transactions by SK Foods with certain of these other entities resulted in current related-party receivables of $18,714,000 and non-current related party receivables of $22,070,000.  As of June 30, 2008, transactions by SK Foods with certain of these entities resulted in current related-party receivables of $13,534,000 and non-current related party receivables of $22,406,000.

31.     As an example of such transfers, SK Foods paid $1.5 million to SSC Farming LLC, so that it could purchase title to certain real estate, and another $700,000 so that it could purchase title to another piece of real estate.  The land purchased by SSC Farming, LLC was land that Debtors needed for their operations so that they could discharge wastewater.  There was

SCHRADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

5                                            PHDATA 3265972_v1

no legitimate business purpose for SK Foods to provide the funds for those purchases to SSC Farming, LLC when it could have purchased the land itself for Debtors' use and thereby have control over the land.  SSC Farming, LLC had few, if any, assets at the time, and it was clear that SSC Farming, LLC would not be able to repay funds advanced by SK Foods.

32.    As another example, in November 2005, SK Foods paid $3 million to SSC Farming, LLC so that entity could pay down a line of credit with Wells Fargo held by SSC Farming, LLC, SS Farms, LLC and Blackstone Ranch Corp., all entities in which Salyer and the SSR Trust had an interest.

33.    As a result of these and other transfers, SSC Farming, LLC owed approximately $12 million to SK Foods as of December 31, 2007.

34.    As another example, although SK Foods had entered into an Agreement with Westlands Water District to purchase certain parcels of land that were within five miles of SK Foods' facility, Defendants had SSC Farms I, LLC and SSC Farms II, LLC take title to the property.  SSC Farms I, LLC and SSC Farms II, LLC did not provide any consideration to SK Foods for this purported assignment of the rights to purchase this land.  There was no benefit to, or legitimate business purpose associated with, SK Foods assigning its rights, which action in fact was to its detriment.  On information and belief, the assignment was not documented.

35.    As another example, in December 2006, Defendants caused SK Foods to transfer $4 million so that RHM and SKF Aviation, LLC could make tax prepayments.

36.    As further examples, Defendants caused SK Foods to make payment on invoices for liabilities incurred by other entities in which Defendants had an interest for costs spent on tenant improvements at the headquarters locations in Monterey, and to provide funding to certain other entities to repay intercompany liability of other related entities, with no benefit to the Debtors.

37.    When Debtors' lenders demanded that transfers of assets to related entities cease, Defendants caused Debtors to make payment of various types of "prepaid expenses" in order to shift assets away from Debtors and to other entities in which they had an interest.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

PHDATA 3265972_v1

Adversary Complaint

38.     For example, Defendants caused SK Foods to make a payment for prepaid expenses to SKF Aviation, LLC in December 2007 in the amount of $1.5 million allegedly for flights to be taken in 2008.  On information and belief, SK Foods has never been presented with any records or logs of flights to show whether and to what extent the prepaid expenses in fact were utilized, who flew on the aircraft, or the purpose of the flights.  Salyer used the aircraft repeatedly in 2008, including for his personal use.

39.     Defendants caused Debtors to make payments to SKF Aviation, LLC for transportation services that were unrelated to Debtors' business, but rather, were for Salyer's personal benefit.

40.     Defendants caused Debtors to pay $500,000 toward the cost of an aircraft purchased by SKF Aviation, LLC.

41.     SK Frozen Foods, LLC, an entity partly owned by the SSR Trust, was not capitalized by its putative owner SSR Trust, did not have any officers or employees and is a shell corporation.  SK Foods provided all the funds to capitalize SK Frozen Foods, LLC and provided that entity funds to lease premises ("Monterrey Fish Company facility") to engage in the business of flash freezing broccoli, cauliflower, and peppers.  Another Salyer entity that currently is in receivership (Salyer American Fresh Foods ("SAFF")) was to operate and fund SK Frozen Foods, LLC.  Like SK Frozen Foods, LLC, SAFF lacked the funds to purchase equipment necessary to flash freeze produce and to retrofit the facility.  As a result, Defendants caused SK Foods to purchase equipment for SK Frozen Foods, LLC, pay approximately $1 million to retrofit the facility, and pay to rent the facility.

42.     Despite SK Foods investing approximately $2 million, the SK Frozen Foods business was abandoned before operations began.  SK Foods was never repaid.

43.     Sometime in 2009, Defendants caused SK Foods to transfer assets to SK Frozen Foods, LLC for no consideration.  SK Frozen Foods, LLC then sold all of its assets in May or June 2009 to John Bryce, a former employee of SAFF.  On information and belief, Defendants or another company controlled by them retained the proceeds, and did not repay SK Foods.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

PHDATA 3265972_v1

Adversary Complaint

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

## Defendants' Use of Debtors' Funds For Their Own Benefit

44.     Salyer used his ownership and/or management control of the Debtors and the Defendants to fund an extravagant lifestyle, charging lavish expenses totaling tens of thousands of dollars per month to the Debtors and various other entities (whose revenues and other funds came directly or indirectly from the Debtors). It was not uncommon for Salyer's monthly expenses charged to the Debtors to exceed $100,000 per month. In Salyer's world, personal expenses (such as wine and dinners costing thousands of dollars each) were regularly considered business expenses so that he could avoid paying the expenses out of his own pocket. Salyer continued his excessive spending even after the Debtors experienced significant financial troubles and despite requests from Debtors' financial personnel that the expenditures be avoided or at a minimum reduced. The vast majority of the expenses he incurred were paid by SK Foods, many of which did not have legitimate business purposes, were unreasonable, and excessive.

45.     Salyer regularly charged stays at hotels and resorts to SK Foods, including charges of tens of thousands of dollars for locations in Pebble Beach, Las Vegas and Paris.

46.     Salyer also charged various purchases for him or his daughters to SK Foods, including numerous charges of tens of thousands of dollars for purchases from Neiman Marcus, a $47,000 charge from a jewelry store, and a New York shopping spree in which he charged $62,000 for various clothing purchases.

47.     Salyer caused the Debtors to pay salaries to his daughters even though for the majority of time they did not perform any services. The Debtors also made quarterly tax payments on behalf of Salyer's daughters for imputed income to their trusts. He further caused the Debtors to pay for cars, cell phones, and flights for his daughters.

48.     Salyer caused the Debtors to pay for rental cars for his ex-wives.

49.     Salyer Management Company LLC was formed by Salyer to receive purported "management fees" for services provided by SK Foods' employees. In reality, the purpose of Salyer Management Company was a conduit for money from operations of the single enterprise (SK Foods and its affiliates) to pay one of Scott Salyer's ex-wives consistent with the terms of a divorce settlement. On information and belief, the payments were approximately $50,000 per

PHDATA 3265972_v1

Adversary Complaint

1  month and an additional $1 million payment annually.  Salyer Management Company did not

2  provide reasonably equivalent value for the monies it received; rather, any services were

3  provided by employees of SK Foods, and those funds rightfully belonged to SK Foods.

### Divestiture of The Foreign Entities

5    50.    SK Foods sought to diversify its operations and access foreign markets by

6  expanding to New Zealand and Australia, whose growing seasons are different than the ones in

7  California where SK Foods' crops were located.  Several entities owned and controlled by

8  Defendants managed operations in New Zealand similar to those of SK Foods, other such entities

9  managed similar operations in Australia (collectively the "Foreign Entities").

10    51.    SK Foods paid the purchase price and associated expenses to acquire those

11  entities, and SK Foods initially owned (directly or indirectly) the Foreign Entities.

12    52.    SK Foods funded the Foreign Entities' operations through at least 2006.

13    53.    In or about December 2007, SK Foods owned the Foreign Entities as a result of

14  having expended the funds to purchase those entities.

15    54.    Defendants and/or others working at their direction caused the divestiture of the

16  Foreign Entities to other entities without consideration or benefit to SK Foods.  Further,

17  Defendants purported to "back date" the transfer to November 1, 2006.  On information and

18  belief, the transaction documents were executed well after November 2006.

19    55.    Given the assets owned and operated by the Foreign Entities and the purpose of

20  purchasing the Foreign Entities, the divestiture was not in the best interests of SK Foods and did

21  not serve a legitimate corporate purpose.

22    56.    At the time of the divestiture, the Foreign Entities owed SK Foods $18 million,

23  which was net of $10 million that SK Foods owed to the Foreign Entities.  (The Foreign Entities

24  thus owed a total of $28 million to SK Foods.)

25    57.    According to Consolidated Financial Statements for SK Foods issued for the eight

26  month period ending June 30, 2007 and dated January 15, 2008, SK Foods "sold the

27  Partnership's inter-company receivables to a revocable trust with common ownership with the

28  Partnership."

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

9

1    58.    The revocable trust referenced above is the SSC&L 2007 Trust, which was a trust

2  created by Salyer. "SSC&L" is an acronym for Scott [Salyer], Stephanie [Salyer], Caroline

3  [Salyer], and Louie. "Louie" is Salyer's dog.

4    59.    On information and belief, SSC&L had no operations, revenues, or assets.

5    60.    There was no reasonable or legitimate business purpose for transferring the

6  receivable owned by the Foreign Entities.

7    61.    On information and belief, SSC&L did not pay any money to SK Foods for the

8  inter-company receivables, which had a value of at least $18,293,000.

9    **Wastewater Discharge Agreements and Their Purported Termination**

10    62.    As set forth above, Defendants caused SK Foods to transfer its rights to purchase

11  certain land to SSC Farms I, LLC and SSC Farms II, LLC. Also as set forth above, Debtors

12  provided funds ($1.5 million and $700,000 respectively) to SSC Farming, LLC to allow it to

13  purchase several parcels of land. In each of these cases, no consideration was provided to SK

14  Foods for these transfers.

15    63.    The Defendants arranged for entities in which Defendants had an interest to take

16  title to the land, and this land was critical to Debtors' operations. In particular, Debtors had to

17  discharge wastewater on this land as part of its processing operations. Without having a location

18  to which it could discharge its wastewater, Debtors could not run their processing operations.

19    64.    Defendants caused Debtors to enter into Wastewater Discharge Agreements with

20  SSC Farming, LLC, SSC Farms I, LLC and SSC Farms II, LLC (hereinafter collectively

21  "Wastewater Entities"). Pursuant to the Wastewater Discharge Agreements, Debtors were

22  charged $400 per acre each year for the right to discharge wastewater on those lands. This

23  annual charge was equivalent to the purchase price for those properties. In other words, after

24  Debtors enabled the Wastewater Entities to purchase the land, without consideration, the

25  Wastewater Entities charged Debtors on an annual basis the same amount it cost to purchase the

26  land outright.

27    65.    Defendants unilaterally set the terms of the Wastewater Discharge Agreements, to

28  the detriment of Debtors and their creditors.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

PHDATA 3265972_v1

Adversary Complaint

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

66.   The Wastewater Discharge Agreements were not negotiated at arms-length and were merely an artifice to transfer funds from Debtors to the Wastewater Entities and to protect certain assets from Debtors' creditors.

67.   Defendants then caused Debtors to breach the terms of the Wastewater Discharge Agreements. In particular, Defendants failed to cause Debtors to make payments as required.

68.   Further, while aware of this breach, Defendants, through their counsel, specifically instructed Debtors not to make payments of amounts due and owing under the Wastewater Discharge Agreements.

69.   After instructing Debtors not to make payments under these contracts, Defendants purported to terminate the Wastewater Discharge Agreements on behalf of the Wastewater Entities and based on the Debtors' failure to make payments, thereby depriving Debtors of locations to which they could discharge wastewater.

70.   Defendants took these actions with the specific intent of crippling Debtors' ability to operate, so that Defendants and the Wastewater Entities in which Defendants had an interest would have more leverage against the Debtors and Debtors' lenders and could extract concessions from those lenders that did not benefit Debtors, but rather, benefited themselves and other entities in which they had an interest. Defendants took these actions to the direct detriment of the Debtors and their creditors.

71.   The termination of the Wastewater Discharge Agreements depressed the value of the Debtors' business, caused considerable litigation and other expenses to resolve the issues created thereby, and resulted in payments to the Wastewater Entities (which Defendants own and control) in excess of $1 million. All these damages were avoidable had Defendants complied with their fiduciary duties.

**Transfer Of The Drum Line**

72.   At the direction of Defendants or those acting under their direction and control, a valuable asset – "the Drum Line" – was transferred from SK Foods to another entity for little or no consideration and in violation of injunctions issued by this Court.

11

SCHRADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

73.     SK Foods used fiber drums in connection with its transport and processing of tomatoes.  SK Foods owned a commercial drum manufacturing line ("the Drum Line") that it used to produce its own drums.  The drum line had a value of at least $350,000.

74.     Defendants did not attempt to market the Drum Line to unrelated third parties in an effort to maximize the sales price even though the Debtors were in financial distress.

75.     At or around the Petition Date, Defendants disassembled and moved the Drum Line from SK Foods to the premises of CSSS, LP, a related party controlled by Salyer.

76.     Defendants caused SK Foods to execute a Purchase and Sale Agreement and a Promissory Note with CSSS, LP, by which SK Foods purported to sell the Drum Line to CSSS, LP and CSSS, LP purported to buy the Drum Line from SK Foods.  CSSS, LP did not pay SK Foods anything for the Drum Line; instead CSSS, LP gave SK Foods a Promissory Note, in the amount of $350,000.  No payment was required to be made by CSSS, LP to SK Foods under the Note until December 31, 2009, and the payment due then is only interest on the note, calculated at a fixed rate of 5% per annum.  Thereafter, only interest payments are required to be made until the Promissory Note came due on June 1, 2013.

77.     Salyer signed the Purchase and Sale Agreement as Chief Executive Officer of SKPM.  Gerard Rose, a purported trustee for the two trusts that purportedly own CSSS, signed the Purchase and Sale Agreement on behalf of CSSS.

78.     The Purchase and Sale Agreement did not represent an arms-length transaction, and the terms did not represent market rates and terms.

79.     CSSS, LP did not have the resources to pay for the Drum Line at the time the Purchase and Sale Agreement was executed and did not have any reasonable or realistic prospect of being able to pay for the Drum Line.

80.     The Purchase and Sale Agreement was not negotiated in good faith.

81.     On information and belief, the Purchase and Sale Agreement was executed at or around the Petition Date and back-dated to December 1, 2008 in order to conceal the true date of execution and in the hope of escaping an avoidance action.

12

PHDATA 3265972_v1

Adversary Complaint

82.     By the Petition Date, the sale of the Drum Line by SK Foods to CSSS, LP had not been reflected in the financial records of SK Foods.

83.     On August 24, 2009, this Court entered a temporary restraining order to prevent shipment of the Drum Line out of California. The Court then entered a preliminary injunction on September 3, 2009 to enjoin shipment of the Drum Line to any location outside of California.

84.     Despite the temporary restraining order and the injunction, Defendants shipped the Drum Line to New Zealand.

85.     The shipping documents list an affiliate of Defendants, Monterey Peninsula Farms, LLC, as the shipping party, which is not a party to the Purchase and Sale Agreement. The majority owner of Monterey Peninsula Farms, LLC is SSC Farming, LLC whose majority owner is the SSR Trust, whose sole beneficiary is Salyer.

86.     In litigation concerning the Drum Line, CSSS could not produce a witness who would admit to having authority to ship the Drum Line to New Zealand, who could identify the person who did have authority, and further claimed to have no employees and no ongoing operations. Only after discovery against other third parties was it discovered that Salyer authorized and directed the shipment of the Drum Line to New Zealand.

87.     On information and belief, Salyer caused the shipment in violation of the Court Orders for the benefit of himself and other entities in which Defendants have an interest.

### Other Uses of Debtors to Benefit Other Entities

88.     Defendants caused Debtors to enter into contracts solely for the benefit of other entities in which they had an interest, thereby causing harm to Debtors.

89.     Defendants caused Debtors to enter into contracts for which Defendants, acting for the benefit of other entities in which they had an interest, unilaterally set the terms. These contracts were not negotiated at arms-length, and by causing Debtors to enter into such contracts, caused harm to Debtors.

90.     For example, Defendants caused Debtors to make payment to Salyer or the SSR Trust to "rent" bins from Salyer and the SSR Trust at exorbitant prices and without any arms-

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

PHDATA 3265972_v1

Adversary Complaint

1   length negotiations.  Upon information and belief, these rental charges were unilaterally set by

2   Salyer.

3           91.   Defendants from time to time retroactively reset prices charged to Debtors by

4   other entities in which they had an interest.  For instance, near the end of 2008, when SSC Farms

5   III, LLC and SS Farms, LLC were losing money, Salyer unilaterally caused those entities to bill

6   additional amounts to SK Foods for the same services.

7           92.   Defendants also caused Debtors to guarantee loans or leases by other entities in

8   which they had an interest.  For example, SK Foods guaranteed SKF Aviation, LLC's loan used

9   to purchase an aircraft, with no benefit to SK Foods.  As another example, SK Foods guaranteed

10   various leases on behalf of SS Farms, LLC.

11           93.   Defendants caused SK Foods to provide management and administrative services

12   to other entities in which they had an interest, with no consideration.  On some occasions, SK

13   Foods allocated certain amounts to other entities to account for some of these services, but those

14   allocations were not enforced or collected.

15           94.   Defendants caused SK Foods to pay for rent, equipment and other expenses that

16   benefitted other entities in which they had an interest, with no corresponding benefit to Debtors.

17   Such expenses included insurance, employee benefits, facility leases, equipment leases,

18   automobiles and other expenses.

19           95.   In many cases in which invoices were generated by another entity in which

20   Defendants had an interest, Defendants caused Debtors to overpay those invoices.  Based on

21   information known to date, more than $2,300,000 was transferred to related parties through

22   overpaid invoices.

23           96.   Defendants withdrew funds from Debtors without any legitimate justification,

24   causing Debtors to become insolvent.  The SSR Trust withdrew more than $6 million from SK

25   Foods between January 2005 and February 2009, and SKPM withdrew almost $2.5 million over

26   that same period.

27           97.   Several former employees, brokers and directors of SK Foods have pled guilty to

28   participating in a conspiracy involving honest services mail fraud and introducing adulterated or

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

14

1  misbranded food with the intent to defraud and mislead.   Defendants allowed this conspiracy to

2  take place, and on information and belief, participated in this conspiracy. As a result of the

3  conspiracy, the Federal Bureau of Investigation conducted a raid on SK Foods' facilities in or

4  around April 2008. Publicity of the raid and the conspiracy led many customers to abandon SK

5  Foods and caused much damage to SK Foods.

6

7  *Count I (SK Foods):  Breach of Fiduciary Duty against Scott Salyer,*
   *SKPM Corporation, and the Scott Salyer Revocable Trust*

8      98.    The Trustee hereby incorporates each of the preceding paragraphs of the

9  Complaint as though set forth fully herein.

10     99.    Salyer, as a controlling member, officer, director, and shareholder of the general

11  partners of the Debtors, and as someone who exercised a high degree of control over SK Foods,

12  owed fiduciary duties of loyalty and care to SK Foods.

13     100.   SKPM, as the general partner of SK Foods, owed a fiduciary duty of loyalty and

14  care to SK Foods.

15     101.   The SSR Trust, as a partner of SK Foods and a 100% owner of the general partner

16  of SK Foods, owed fiduciary duties of loyalty and care to SK Foods.

17     102.   Salyer, SKPM, and the SSR Trust owed a duty of loyalty to SK Foods  in the

18  following manners:

19

20     a.   to account to SK Foods and hold as trustee for it any property, profit or benefit
            derived by them in the conduct of SK Foods' activities, or derived from their

21          use of SK Foods' property.

22     b.   to refrain from dealing with SK Foods in the conduct of their activities as or
            on behalf of a party having an interest adverse to SK Foods and to refrain

23          from using SK Foods' assets for the benefit of Affiliated Defendants or other
            Salyer-controlled entities and to the detriment of SK Foods.

24

25     c.   to refrain from competing with SK Foods in the conduct of SK Foods'
            activities.

26

27     d.   not to engage in self-dealing for their benefit and to the detriment of SK
            Foods.

28

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

PHDATA 3265972_v1

Adversary Complaint

103.    Salyer, SKPM, and the SSR Trust owed a duty of care to SK Foods to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

104.    Salyer, SKPM, and the SSR Trust breached the aforesaid duties as set forth more particularly above, including but not limited to:

a.  By transferring, or causing SK Foods to transfer, assets and money rightfully belonging to SK Foods to other entities in which they had an interest, with no or inadequate consideration to SK Foods.

b.  By purporting to terminate contract rights of SK Foods to the detriment of SK Foods and its creditors and to the benefit of other entities in which they had an interest.

c.  By transferring, or causing SK Foods to transfer, other funds and assets of SK Foods, through "loans" or "prepaid expenses" and other mechanisms, when there was no legitimate business reason to SK Foods, but solely for their own personal benefit or the benefit of entities in which they had an interest.

d.  By using SK Foods' funds to capitalize and operate other entities in which they had an interest, such as Salyer American Fresh Foods, including the expenditure of SK Foods' funds for retrofitting SK Frozen Foods' facility and purchasing equipment.

e.  By transferring assets of SK Foods, such as the Drum Line, to other entities in which they had an interest.

f.  By using SK Foods' funds to pay for goods or services unrelated to SK Foods' business but related to their personal interests or the interests of other entities in which they had an interest.

g.  By withdrawing funds from SK Foods, or causing funds to be withdrawn, for no legitimate business reason and without adequate consideration.

h.  By transferring opportunities of SK Foods, or causing those opportunities to be transferred, to other entities in which they had an interest for no or inadequate consideration, such as for the purchase of land needed by SK Foods for wastewater discharge and the divestiture of the Foreign Entities.

i.  By using assets of SK Foods as leverage for benefitting themselves personally or other entities in which they had an interest, with no compensation or consideration provided to SK Foods.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

Adversary Complaint

PHDATA 3265972_v1

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

j.  By taking positions on behalf of themselves and other entities in which they had an interest that were adverse to SK Foods, such as by terminating the Wastewater Discharge Agreements.

k.  By unilaterally setting or changing the terms of contracts or agreements to which SK Foods was a party to the detriment of SK Foods.

l.  By charging hundreds and hundreds of thousands of dollars in expenses that lacked legitimate business purpose and were made for Salyer's own personal benefit.

m.  By using corporate assets for their own benefit without any corporate benefit to SK Foods but at SK Foods' direct or indirect expense.

n.  By failing to act in good faith toward SK Foods in the conduct of SK Foods' financial and business affairs in furtherance of SK Foods' best interests.

o.  By failing and refusing to recognize losses of SK Foods at the time they were incurred.

p.  By engaging in tortious conduct toward SK Foods.

q.  By permitting and/or failing to prevent a conspiracy intended to defraud and mislead.

r.  By participating in a conspiracy to defraud and mislead.

s.  By failing to ensure SK Foods' compliance with all applicable laws and regulations.

t.  By allowing their counsel access to confidential information of SK Foods, and then using that information to the detriment of SK Foods.

u.  By other activities detrimental to SK Foods that may be learned during the course of discovery.

105.  As set forth above, Salyer has breached his duties as an officer and director of SK Foods. He has also breached his duties as set forth above as the officer and director of SKPM, the general partner of SK Foods, and the SSR Trust, the limited partner of SK Foods.

106.  Given the Defendants' ownership interests in the related and affiliated entities, Defendants had divided loyalties. They disregarded their duties of loyalty and care to SK Foods and took advantage of SK Foods for the benefit of the other entities they controlled.

17

PHDATA 3265972_v1

Adversary Complaint

1    107.    All of the above breaches were to the detriment of SK Foods and its creditors.

2    WHEREFORE, the Trustee prays for a judgment as set forth below.

4    *Count II (SK Foods): Breach of Partnership Agreement*

5    108.    The Trustee hereby incorporates each of the preceding paragraphs of the

6    Complaint as though set forth fully herein.

7    109.    A true and correct copy of the Partnership Agreement of SK Foods is attached

8    hereto as Exhibit A.

9    110.    The Trustee and SK Foods have performed all conditions, covenants and promises

10    required of them under the Partnership Agreement, except where performance was prevented or

11    excused by Defendants' conduct.

12    111.    Section 4.1 of the Partnership Agreement states that the General Partner shall

13    operate and manage the Partnership's business and affairs in accordance with the terms of the

14    Agreement, and will apply himself diligently in and about the business of the Partnership to the

15    utmost of his skill, power and ability.

16    112.    Salyer and SKPM breached the Partnership Agreement by, among other things,

17    failing to operate and manage the Partnership's business and affairs in accordance with the terms

18    of the Agreement and failing to apply themselves diligently to the utmost of their skill, power

19    and ability.

20    113.    Section 4.2 of the Partnership Agreement provides that the General Partner shall

21    not be authorized to do any act which would make it impossible to carry on the business of the

22    Partnership, or to possess partnership assets or property, or assign the rights in specific

23    Partnership assets or property, for other than a Partnership purpose.

24    114.    Salyer and SKPM breached the Partnership Agreement by, among other things,

25    possessing and assigning rights in SK Foods property and assets for other than Partnership

26    purposes, and for doing acts which rendered SK Foods insolvent and unable to carry on the

27    business of the Partnership.

28

SCHRADER, HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

PHDATA 3265972_v1

Adversary Complaint

115.   Section 4.3.1 of the Partnership Agreement provides that the General Partner shall take all actions which may be necessary or appropriate for the continuation of the Partnership's existence.  Section 4.3.3 of the Partnership Agreement provides that the General Partner shall devote a reasonable amount of time as necessary to managing the Partnership business and performing the General Partner's duties.

116.   Salyer and SKPM breached the Partnership Agreement by, among other things, failing to take actions necessary for the continuation of the Partnership's existence and by failing to devote a sufficient amount of time to managing the business and performing the required duties.

117.   SK Foods has been harmed as a result of the afore-mentioned breaches. WHEREFORE, the Trustee prays for judgment as set forth below.

### Count III (RHM):  Breach of Fiduciary Duty against Defendants Scott Salyer and the Scott Salyer Revocable Trust

118.   The Trustee hereby incorporates each of the preceding paragraphs of the Complaint as though set forth fully herein.

119.   The SSR Trust, as a majority shareholder of RHM, owed fiduciary duties of loyalty and care to RHM.

120.   Salyer as an officer and director of RHM, and as the trustee and beneficiary of the trust holding a majority of the ownership interests of RHM, owed fiduciary duties of loyalty and care to RHM.

121.   Salyer and the SSR Trust owed a duty of loyalty to RHM in the following manners:

    a.   to account to RHM and hold as trustee for them any property, profit or benefit derived by them in the conduct of RHM's activities, or derived from their use of RHM's' property.

    b.   to refrain from dealing with RHM in the conduct of their activities as or on behalf of a party having an interest adverse to RHM and to refrain from using RHM's assets for the benefit of Affiliated Defendants or other Salyer-controlled entities and to the detriment of RHM.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

1            c.   to refrain from competing with RHM in the conduct of RHM's activities.

2            d.   not to engage in self-dealing for their benefit and to the detriment of RHM.

3      122.     Salyer and the SSR Trust owed a duty of care to RHM  to refrain from engaging

4  in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

5      123.     Salyer and the SSR Trust breached the aforesaid duties as set forth more

6  particularly above, including but not limited to:

7

8          a.   By transferring, or causing RHM to transfer, assets and money rightfully belonging to RHM to other entities in which they had an interest, with no or

9             inadequate consideration to RHM.

10          b.   By purporting to terminate contract rights of RHM to the detriment of RHM and its creditors and to the benefit of other entities in which they had an

11             interest.

12          c.   By transferring opportunities of RHM, or causing those opportunities to be

13             transferred, to other entities in which they had an interest for no or inadequate consideration, such as for the purchase of land needed by RHM for

14             wastewater discharge.

15          d.   By taking positions on behalf of themselves and other entities in which they had an interest that were adverse to RHM, such as by terminating Wastewater

16             Discharge Agreements.

17          e.   By failing to act in good faith toward RHM in the conduct of the RHM's

18             financial and business affairs in furtherance of the RHM's  best interests.

19          f.   By failing and refusing to recognize losses of RHM at the time they were

20             incurred.

21          g.   By engaging in tortious conduct toward RHM.

22          h.   By permitting and/or failing to prevent a conspiracy intended to defraud and mislead.

23

24          i.   By participating in a conspiracy to defraud and mislead.

25          j.   By failing to ensure RHM's compliance with all applicable laws and regulations.

26          k.   By allowing their counsel access to confidential information of the Debtors

27             and then using that information to the detriment of RHM.

28          l.   By other activities detrimental to RHM that may be learned during the course of discovery.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

PHDATA 3265972_v1

Adversary Complaint

124.   All of the above breaches were to the detriment of, and caused harm to, RHM and its creditors.

WHEREFORE, the Trustee prays for a judgment as set forth below.

## *Prayer For Relief*

WHEREFORE, the Trustee prays for judgment as follows:

1.   On Count I, judgment in favor of SK Foods and against defendants Salyer, SKPM and the SSR Trust, jointly and severally, in an amount to be proved at trial;

2.   On Count II, judgment in favor of SK Foods and against defendants Salyer, SKPM and the SSR Trust, jointly and severally, in an amount to be proved at trial;

3.   On Count III, judgment in favor of RHM and against defendants Salyer and the SSR Trust, jointly and severally, in an amount to be proved at trial;

4.   Awarding prejudgment and post-judgment interest against each Defendant;

5.   For punitive damages;

6.   For costs of suit incurred herein; and

7.   For such other and further relief the Court deems just and proper.

Dated: January 11, 2010                SCHNADER HARRISON SEGAL & LEWIS LLP


/s/ Gregory C. Nuti
    Gregory C. Nuti
    Attorneys for Plaintiff Bradley D. Sharp,
    Chapter 11 Trustee

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

21

PHDATA 3265972_v1

Adversary Complaint

# RJN
# EXHIBIT J

⑰

**FILED**

JUN 2 8 2011

1

2

3        UNITED STATES BANKRUPTCY COURT ~~UNITED STATES BANKRUPTCY COURT~~
                                      EASTERN DISTRICT OF CALIFORNIA

4            EASTERN DISTRICT OF CALIFORNIA

5

6  In re:                        )        Case No. 09-29162-D-11
                                 )
7  SK FOODS, L.P.,               )
                                 )
8                                )
           Debtor.               )
9  _____)
                                 )
10 BRADLEY D. SHARP, Chapter 11  )        Adv. Pro. No. 10-2015-D
   Trustee,                      )
11                               )        Docket Control No. MSS-2
                                 )
12             Plaintiff,        )
                                 )
13 v.                            )
                                 )        DATE:   June 22, 2011
14 SCOTT SALYER, individually and)        Time:   9:30 a.m.
   as trustee of the Scott Salyer)        Dept:   D
15 Revocable Trust, et al.,      )
                                 )
16             Defendants.       )
   _____)

17

18                        __ORDER__

19      The court having issued findings and analysis in the matter

20 of Defendants' Supplemental Motion to Stay Adversary Proceedings,

21 Docket Control No. MSS-2 (the "Motion"), which are included in

22 the civil minutes, a copy of which is attached hereto, and good

23 cause appearing,

24      IT IS HEREBY ORDERED that the Motion is granted and this

25 adversary proceeding is stayed pending further order of this

26 court.

27

28 Dated:  June 27  , 2011      _Robert Bardwil_____
                                ROBERT S. BARDWIL
                                United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## CIVIL MINUTES

| | | | | |
|---|---|---|---|---|
| **Adversary Title :** | Sharp et al v. Salyer et al | **Case No :**<br>**Adv No :**<br>**Date :**<br>**Time :** | 09–29162 – D – 11<br>10–02015 – D<br>6/22/11<br>10:00 | |
| **Matter :** | [92] – Supplemental Motion/Application to Stay Adversary Proceedings [MSS–2] Filed by Defendants SKPM Corporation, Scott Salyer, The Scott Salyer Revocable Trust (dhes) | | | OPPOSED |
| **Judge :**<br>**Courtroom Deputy :**<br>**Reporter :**<br>**Department :** | Robert S. Bardwil<br>Nancy Williams<br>Diamond Reporters<br>D | | | |

**APPEARANCES for :**
**Movant(s) :**
      Defendant's Attorney – James Koewen
**Respondent(s) :**
      Plaintiff's Attorney – Kevin Coleman
      Creditor's Attorney – Eric Safire, Paul Pascuzzi, Todd Dressel, Robert Asperger, James Deher, Micaheal Kuzmich, Warren Felger (phone), Caroline Newman(phone)

MOTION was :

Final ruling:

Scott Salyer, individually and as trustee of the Scott Salyer Revocable Trust; the Scott Salyer Revocable Trust; SK PM Corporation; SK Foods, LLC; SKF Canning, LLC; Blackstone Ranch Corporation; Monterey Peninsula Farms, LLC; Salyer Management Company, LLC; SK Farms Services, LLC; SK Frozen Foods, LLC; SS Farms, LLC; SSC Farming, LLC; SS Farms I, LLC; SS Farms II, LLC; SS Farms III, LLC; SKF Aviation, LLC; and CSSS, LP, dba Central Valley Shippers (the Salyer Parties), have filed a supplemental motion to stay several adversary proceedings, including this one. (The motion is a supplemental one because the Salyer Parties filed an earlier motion for a stay that was denied. See below.) The Bank of Montreal (BMO), which has acquired the trustees claims in this adversary proceeding by assignment, opposes the motion. For the reasons set forth below, the court intends to grant the motion.

In April 2010, the Salyer Parties filed their first motion for a stay of the adversary proceedings. This court denied the motion, based in large part on what it perceived to be significant distinctions between the factual allegations in the criminal indictment against Scott Salyer and those in the adversary proceedings. On appeal by the Salyer Parties, the district court for this district reversed and, on April 14, 2011, remanded to this court to decide, in the first instance, whether discovery from or testimony of Salyer or his criminal counsel is reasonably necessary [fn] to dispose of a particular matter before the Bankruptcy Court in the adversary proceedings. Sharp v. SSC Farms I, LLC, United States District Court, Eastern District of California, Civ. No. S–10–1492 LKK, Order filed April 14, 2011, at 5:11–15. The court defined the applicable standard as follows: A matter is reasonably necessary if [the Salyer Parties] cannot adequately defend themselves in an adversary proceeding without evidence from Salyer or his criminal counsel. Id., 5:15–18.

Thus, the court will examine the issues in this particular adversary proceeding in light of this standard. In

this adversary proceeding, the trustee seeks damages for breach of fiduciary duty on the part of defendants Scott Salyer, in his individual capacity and as trustee of the Scott Salyer Revocable Trust; the Scott Salyer Revocable Trust (the Trust); and SKPM Corporation (SKPM) (collectively, the defendants). The trustee contends the defendants breached their fiduciary duties of loyalty and care to the debtor by engaging in acts to benefit themselves and other entities in which they have an interest, including diverting funds and assets of the debtor and otherwise using the debtors funds for their own benefit, causing the divestiture of the debtors foreign operations without consideration, and so on. As with the allegations in Adv. No. 10–2014 (see Item 47 above), the trustee alleges that Scott Salyer controlled the other two defendants.

> Salyer used his position and interests in Debtors to provide benefits to other entities in which he had an interest to the disadvantage of Debtors and their creditors, as well as to fund a lavish lifestyle for himself so that he would not have to spend those monies from his personal funds. [] The SSR Trust and SKPM, through Salyer, caused SK Foods to provide benefits to other entities in which they or Salyer had an interest to the disadvantage of SK Foods, RHM and their creditors. [] . . . Salyer consistently pursued his self–interest and disregarded the duty of loyalty he owed to Debtors. He pursued and authorized transactions to the detriment of Debtors and their creditors, and to further his own personal interests or those of other entities he owned and controlled.

Adversary Complaint for Breach of Fiduciary Duty, filed January 11, 2010 (Complaint), 23–25.

Given these allegations, it is virtually impossible that significant proceedings could be undertaken in this adversary proceeding without evidence from Salyer and/or his criminal counsel. Salyer is a named defendant in the adversary proceeding and is alleged to have been in charge of the other two defendants. His conduct is virtually the only conduct alleged in the complaint all the causes of action stem directly from his alleged actions. It simply strains credibility for BMO to suggest, as it does, that the need for discovery from or testimony of Salyer is speculative.

For example, BMO contends the purported need for Salyers testimony is basically as a rebuttal witness to yet unspecified future testimony of Shondale Seymour, a former officer of the Debtors. Response and Objection to Motion to Stay, filed June 1, 2011 (Response), at 1:19–21. By contrast, the complaint contains a wide variety of very specific charges, including that Salyer regularly charged to the debtor his personal hotel stays, jewelry and clothing purchases, unearned salaries and tax payments for his daughters, cars and cell phones for his daughters, and divorce settlement payments to his ex–wives; that he directed the transfer of funds from the Debtors whenever one of the other entities in which Defendants had an interest needed money (Complaint, 27); and that he transferred large amounts of money and assets among the various entities. On this latter subject, the complaint contains a high level of detail under categories such as divestiture of the foreign entities, the wastewater discharge agreements, and the transfer of the drum line. Given these allegations, the defendants need for discovery from or testimony of Salyer in order to adequately defend themselves is not speculative; it is virtually certain.

BMO also contends, in regards to the Trust and SKPM and their designation of witnesses under FRCP 30(b)(6) that:

[n]othing about Rule 30(b)(6) requires that [the designated witness] be Scott Salyer, and nothing in the rule requires that the 30(b)(6) deponent provide firsthand testimony. Here, [the defendants] will have ample time to prepare such a person to testify on any topic identified by the Trustee, and the parties can work together to come up with a reasonable deposition schedule that will accommodate [the defendants] designees familiarization with [the defendants] books and records or any other evidence to which the Rule 30(b)(6) notice requires testimony.

Respone, 2:2–9. In contrast, there is no logical reading of the district courts order that would require the Trust and SKPM to forego designating Salyer in favor of secondhand or thirdhand testimony, and thereby to face foundation, authentication, hearsay, best evidence rule, and other objections.

To accept this argument or others that the case might be disposed of on legal issues only, for which Salyers testimony would not be relevant; that the defendants could rely on business records, which are not protected by the Fifth Amendment; that Salyer could give non–incriminating testimony the court would have to speculate that such other testimony and documentary evidence would be sufficient for the Trust and SKPM to adequately defend themselves. These arguments set up higher standards than the one articulated by the district court, and this court will not impose them. Similarly, the court does not agree with BMO that the fundamental issue raised by the district court is whether the inability to offer specific testimony rises to the level of a violation of any defendants constitutional due process rights. Response, 2:24–27.

BMOs remaining arguments are red herrings. The following arguments were addressed in connection with

the Salyer Parties first motion for a stay; they were discussed in this courts ruling on that motion, which has been reversed by the district court: (1) that Salyer has not properly invoked his privilege against self-incrimination because he has done nothing more than assert a blanket Fifth Amendment claim; (2) that the events involved in the adversary proceeding are distinct from those involved in the criminal indictment; (3) that if a stay is imposed, the plaintiff will have to sit idle for perhaps years, even if the defendants assets are being depleted; and (4) the Keating factors do not warrant the imposition of a stay (see Keating v. Office of Thrift Supervision, 45 F.3d 322, 324–25 (9th Cir. 1995)). Although the district court did remand the stay matter to this court, it in no way reversed its position on these arguments, which it rejected in the original appeal, and it did not indicate in any way that these issues were again on the table. This court is bound by the district courts ruling on these issues and will not revisit them here.

For similar reasons, the court rejects BMOs argument that as a trust and a corporation, the Trust and SKPM have no Fifth Amendment privilege and should not be allowed to piggyback on Salyers privilege. Quite simply, the district court was aware of the identities and capacities of the various adversary defendants at the time it issued its order; whether a defendant itself has a Fifth Amendment privilege forms no part of the standard articulated in that order.

Simply stated, this court does not interpret the district courts April 14, 2011 order as requiring the defendants to make the type of showing BMO would require of them. Instead, based on the factual allegations in the trustees complaint, the court is satisfied that Salyer is essential to the disputes raised; the court need not speculate on what other sources might be available if Salyer is not, and the defendants will not be required to disprove the existence or adequacy of such other sources.

The real problem with BMOs opposition to the motion is that it does not apply the standard set by the district court and does not address the specific factual allegations of the complaint, but merely cites broad principles, draws broad conclusions, and charges the defendants with failing to provide sufficient particulars of the necessity of Salyers testimony. In the courts view, the factual allegations of the complaint are such that Salyers testimony (and possibly that of his criminal counsel) is likely to be central to resolution of the issues. Thus, the court concludes that evidence from Salyer and/or his criminal counsel is reasonably necessary for the defendants to adequately defend themselves in this proceeding, and applying the district courts standard as set forth in its April 14, 2011 order, the court will grant the motion.

Finally, the Salyer Parties motions to stay certain other adversary proceedings in this case, which are also on this calendar, were met with a suggestion by the trustee that discovery could proceed against the employees, directors, officers, witnesses or other third parties related to the Defendants who would also have knowledge and information relevant to the defense without impairing Salyers Fifth Amendment rights. Sharp v. Salyer, Adv. No. 10–2014, Opposition to Defendants Supplemental Motion to Stay Adversary Proceedings, filed June 1, 2011, 20:17–20. The trustee quoted from an exchange at the April 11, 2011 district court hearing, and concluded in his opposition to the stay motion that all parties are in agreement that any stay that this Court might enter should not prevent the Trustee and the Defendants from taking discovery from other third parties, who have evidence related to the Adversary Proceedings. Id., 21:4–6. The Salyer Parties filed a reply to the trustees opposition, in which they did not take issue with this conclusion.

However, at the hearing on the present motion, the Salyer Parties stated that they do oppose permitting the trustee to take third–party discovery. The court has reviewed the transcript of the April 11, 2011 hearing in the district court, together with the order issued following that hearing, on April 14, 2011. Although the issue of third–party discovery was discussed at the hearing, there is nothing in the order to suggest that if this court finds that the Salyer Parties cannot adequately defend themselves in a particular adversary proceeding without discovery from or testimony of Salyer or his criminal counsel, it may nevertheless allow discovery to proceed against third parties. In short, this court has found, above, that Salyer is sufficiently at the center of the disputes in this adversary proceeding that the defendants cannot adequately defend themselves without testimony of or discovery from Salyer and/or his criminal counsel. Thus, the language of the April 14, 2011 order suggests to this court that the adversary proceeding should be stayed, with no exception for third–party discovery. Accordingly, the motion will be granted and the adversary proceeding will be stayed. The court will issue an appropriate order.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United
States Bankruptcy Court for the Eastern District of California
hereby certifies that a copy of the document to which this
certificate is attached was mailed today to the following
entities at the addresses shown below or on the attached list.

SEE ATTACHED LIST

DATED: 6/28/11                    By: _____
                                      Deputy Clerk

EDC 3-070 (Rev. 6/28/10)

```
 1
 2   Kevin Coleman
     Schnader Harrison Segal & Lewis
     One Montgomery Street, Suite 2200
 3   San Francisco, CA 94104-5501

 4   Jaime Dreher
     Downey Brand, LLP
 5   621 Capitol Mall, 18th Floor
     Sacramento, CA 95814-4731
 6
     Marc Levinson
 7   Orrick Herrington & Sutcliffe
     400 Capitol Mall, Suite 3000
 8   Sacramento, CA 95814-4497

 9
     Paul Pascuzzi
10   Felderstein Fitzgerald
        Willoughby & Pascuzzi
11   400 Capitol Mall, Suite 1450
     Sacramento, CA 95814
12
     Todd Dressel
13   Chapman and Cutler, LLP
     595 Market Street, 26th Floor
14   San Francisco, CA 94105

15   James Keowen
     Nageley Meredith & Miller, Inc.
16   8001 Folsom Blvd., Suite 100
     Sacramento, CA 95826
17

18   Larry Lichtenegger
     Lichtenegger Law Offices
19   3850 Rio Road, Suite 58
     Carmel, CA 93926
20
     Malcolm Segal
21   Segal & Kirby, LLP
     770 L Street, 1440
22   Sacramento, CA 95814

23
     Eric Safire
24   2431 Fillmore St.
     San Francisco, CA 94115
25
     Robert Asperger
26   Office of the Attorney General
     1300 I Street
27   Sacramento, CA 95814

28
```

```
 1   Michael Kuzmich
     Boutin Gibson DiGiusto Hodell, Inc.
 2   555 Capitol Mall, Suite 1500
     Sacramento, CA 95814
 3
     Warren Felger
 4   Felger & Associates
     726 W Barstow Ave., #106
 5   Fresno, CA 93704

 6   Caroline Newman
     Internal Revenue Service
 7   P.O. Box 683
     Washington, DC 20044

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```