# RJN
# EXHIBIT K

2011-02340
FILED
May 04, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003469859

**37 PAGES**

Todd J. Dressel (State Bar No. 220812)
CHAPMAN AND CUTLER LLP
595 Market Street, 26th Floor
San Francisco, CA 94105
Telephone:   (415) 278-9088
Facsimile:   (415) 541-0506
dressel@chapman.com

James E. Spiotto *(Admitted Pro Hac Vice)*
Ann E. Acker *(Admitted Pro Hac Vice)*
James M. Heiser *(Admitted Pro Hac Vice)*
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, IL 60603
Telephone:   (312) 845-3000
Facsimile:   (312) 516-1900
spiotto@chapman.com
acker@chapman.com
heiser@chapman.com

Attorneys for Bank of Montreal, as Administrative Agent

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>SK FOODS, L.P., a California limited partnership,<br><br>Debtor. | Case No. 09-29162<br><br>Chapter 11<br><br>Adversary Proceeding No. |
| BANK OF MONTREAL, as Administrative Agent, successor by Assignment to Debtors SK Foods, L.P. and RHM Industrial Specialty Foods, Inc., a California corporation, d/b/a Colusa County Canning Co.,<br><br>Plaintiff<br><br>v.<br><br>CARY SCOTT COLLINS, an individual doing business as Collins and Associates; FREDERICK SCOTT SALYER, an individual; SAS 1999 TRUST; CGS 1999 TRUST; SAS 2007 TRUST; CGS 2007 TRUST; STEFANIE A. SALYER, an individual; CAROLINE G. SALYER, an individual; and MONTEREY PENINSULA FARMING, LLC,<br><br>Defendants. | ADVERSARY COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS, AND FOR OTHER RELIEF |

Bank of Montreal, as Administrative Agent (*"BMO"* or the *"Agent"*) as successor by assignment to Bradley D. Sharp, the duly appointed and acting Chapter 11 Trustee (collectively, the *"Trustee"* unless the context indicates otherwise) in the case of SK Foods, L.P. and RHM Industrial Specialty Foods, Inc. d/b/a Colusa County Canning Co., hereby files this Adversary Complaint, and in support thereof, avers as follows:

### SUMMARY OF ALLEGATIONS

Without authorization from the Chapter 11 Trustee or the Court, Defendant Collins, a convicted white collar criminal, apparently used "estimated" financial data to file unauthorized tax returns, schedules and other documents on behalf of the Debtors.   Additionally, earlier in the same tax year, Collins and Salyer obtained $3.2 million in apparently improper tax refunds from the Internal Revenue Service and the California Franchise Tax Board.   Collins then moved the funds to his personal account, and sent the refunds to secret overseas bank accounts in Liechtenstein and the West Indies.   This Complaint seeks to recover these transfers, seeks relief for Collins' violations of the automatic stay, as well as certain equitable relief.   Defendant Salyer, whose returns are at issue, is alleged to have employed Collins as his personal accountant to prepare the returns, have ultimate control over the overseas bank accounts, have endorsed the refund checks to Collins, and otherwise directed and controlled Collins' transfer of the funds abroad in aid of his own attempt to flee prosecution on other crimes and otherwise conceal his assets from his creditors.   Additionally, in the course of its investigation for this Complaint, the Agent discovered that Salyer and Collins purportedly transferred ownership of Cedenco Foods, SK Foods' New Zealand operations (which was subject to a separate ownership claim by the Agent) to a secret trust located in the Cook Islands, an offshore haven in the South Pacific for persons fleeing creditor claims.   The Complaint seeks to recover the value of these transfers which were made for the benefit of Salyer and his daughters.

ADVERSARY COMPLAINT

THE PARTIES

1.      BMO is the successor by assignment to Bradley D. Sharp, the duly appointed and acting Chapter 11 Trustee in the case of SK Foods, L.P., a California limited partnership ("*SK Foods*") and RHM Industrial Specialty Foods, Inc., a California corporation, d/b/a Colusa County Canning Co. ("*RHM*") (collectively, the "*Debtors*").

2.      SK Foods is a California limited partnership with its principal office at 1175 19th Avenue, Lemoore, California. Its registered agent is Scott Salyer.

3.      RHM Industrial Specialty Foods, Inc., a California corporation, d/b/a Colusa County Canning Co., is a California corporation with its principal office at 1175 19th Avenue, Lemoore, California ("*RHM*"). Its registered agent is Richard Washburn.

4.      Cary Scott Collins is an individual residing in the State of California and doing business as Collins & Associates (collectively, "*Collins*").

5.      Frederick Scott Salyer is an individual residing in the State of California.

6.      The SAS 1999 Trust is a trust created under the laws of the State of California. On information and belief, Stefanie A. Salyer is the sole beneficiary of the SAS 1999 Trust. Robert Pruett ("*Pruett*") is the current trustee of the SAS 1999 Trust.

7.      The CGS 1999 Trust is a trust created under the laws of the State of California. On information and belief, Caroline G. Salyer is the sole beneficiary of the CGS 1999 Trust. Pruett is the current trustee of the CGS 1999 Trust.

8.      The SAS 2007 Trust is a trust created under the laws of the State of California. On information and belief, Stefanie A. Salyer is the sole beneficiary of the SAS 2007 Trust. Pruett is the current trustee of the SAS 2007 Trust.

9.      The CGS 2007 Trust is a trust created under the laws of the State of California. On information and belief, Caroline G. Salyer is the sole beneficiary of the CGS 2007 Trust. Pruett is the current trustee of the CGS 2007 Trust.

ADVERSARY COMPLAINT

10.    Monterey Peninsula Farming LLC is a California Limited Liability Company.

11.    The registered agent of Monterey Peninsula Farming LLC is Cary S. Collins.

### JURISDICTION AND VENUE

12.    An involuntary petition was filed with respect to the Debtors on May 5, 2009. On May 7, 2009, the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the *"Bankruptcy Code"*).

13.    This Court found and ordered that the date of the petitions was May 5, 2009 (*"Petition Date"*).

14.    This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334 and 157, and Rules 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure. In addition, several of the claims set forth herein arise out of the United States Bankruptcy Code, 11 U.S.C. §101, *et seq.*

15.    This is a core proceeding under 28 U.S.C. §§ 1408 and 1409.

16.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### FACTUAL ALLEGATIONS

17.    SK Foods is a California limited partnership.

18.    SKPM Corporation (*"SKPM"*) is a California corporation and is the general partner of SK Foods, owning a 55% interest in SK Foods. Scott Salyer has been President of and controlled SKPM at all relevant times.

19.    The Scott Salyer Revocable Trust (*"SSR Trust"*) is a California trust. Scott Salyer is both the trustee and sole beneficiary of the SSR Trust. The SSR Trust is the only limited partner of SK Foods, owning 45% of SK Foods.

20.    The SSR Trust also owns 100% of SKPM.

- 4 -

21.     SK Foods was formed on or about December 29, 1992 by SKPM (under a former name) as general partner and Salyer American, a California corporation, as limited partner.

22.     On or about December 29, 1995, Salyer American assigned its limited partnership interest in SK Foods to Salyer individually.  Salyer thereafter transferred his limited partnership interest to the SSR Trust.

23.     At all relevant periods Salyer controlled, operated and managed SK Foods and RHM.

24.     Sixty percent of RHM is owned by SKF Canning, LLC, a Nevada limited liability company (*"SKF Canning"*), which in turn is owned 100% by the SSR Trust.

25.     Subsequent to the Petition Date, Bradley D. Sharp became the duly appointed Chapter 11 Trustee (*"Sharp"*) for SK Foods and RHM.

26.     In April of 2011, this Court entered that certain Assignment of Claims and Pending Litigation which assigned all right, title and interest and all litigation relating to this matter to BMO.

**A.     Factual Background**

27.     In 2001, Defendant Collins pled guilty in the United States District Court for the Northern District of California to the crime of making false statements on a loan application.

28.     Collins was sentenced to prison for one day, followed by a three year period of supervised release, and was ordered to pay a fine of $10,000.

29.     Collins met Salyer in April of 2009.

30.     Collins and Salyer were introduced by Magdalena Del Valle, a vice-president at Mechanics Bank.

31.     Collins purported to act as Salyer's personal accountant and also provided certain "estate planning" and various other financial services to Salyer.

ADVERSARY COMPLAINT

32.     Defendant Scott Salyer was arrested at John F. Kennedy Airport on February 4, 2010 pursuant to a twenty-count Criminal Complaint asserting violations of the RICO Act, obstruction of justice, commercial bribery, and other crimes.

33.     The criminal complaint against Salyer relates to his alleged personal orchestration of a wide ranging scheme whereby SK Foods bribed purchasing managers to purchase its product at inflated prices, much of which was adulterated because it contained mold count levels that significantly exceeded thresholds established by the FDA.

34.     Salyer's arrest ended a six month odyssey in which he attempted to gain residency in countries with no extradition treaty with the United States, and moved millions of dollars to offshore accounts in Liechtenstein, Switzerland and the West Indies.

35.     In the summer of 2009, Collins facilitated Salyer's relationship with certain bankers in Switzerland.

36.     In email correspondence between a banker in Zurich and Collins, the two discuss setting up certain "business relationships" for Collins and Salyer.

37.     In subsequent email communications between Salyer and Collins, dated July 11, 2009, the two discuss meeting with a banker at Valartis Bank in Zurich on Thursday, July 17, 2009.

38.     Notably, Collins mentions to Salyer that he had not "disclosed to Valartis any of the US legal activities" and that "face time with Swiss bankers settles their nerves."

39.     This Complaint seeks to recover any refunds which Collins and/or Salyer received on account of the unauthorized tax returns filed by Collins on behalf of the Debtors with the Internal Revenue Service and the California Franchise Tax Board.

40.     The refunds were obtained as part of a scheme carried out by Defendant Collins, in which he filed tax returns and other documents on behalf of the Debtors using fabricated financial figures or estimates to obtain improper refunds from the Internal Revenue Service.

ADVERSARY COMPLAINT

41.     These funds were subsequently transferred overseas and placed beyond the jurisdiction of the U.S. Courts.

**B.     Collins Files Unauthorized Tax Returns in Violation of the Automatic Stay**

42.     At all relevant times, Sharp controlled all accounting records for SK Foods and RHM.

43.     Sharp retained the accounting firm of Eichstaedt & Deveraux LLP to prepare the federal and state tax returns for SK Foods and RHM for the year ending in 2008.

44.     Sharp never retained Collins.

45.     The tax returns were on a 6-month extension and thus the partnership tax return for SK Foods and the corporate tax return for RHM were not due until September 15, 2009.

46.     Collins was aware that the tax returns for SK Foods and RHM were due on September 15, 2009.

47.     On September 15, 2009 Collins filed a 2008 Federal 1065 U. S. Partnership Tax Return for SK Foods LP and a 2008 120-S. U. S. Income Tax Return for an S-Corporation for RHM.

48.     Collins also filed tax returns with the California Franchise Tax Board on behalf of SK Foods and/or RHM.

49.     These returns purported to supersede the legitimate tax returns for both companies that were filed by the bankruptcy trustee, Sharp.

50.     Collins did not have access to the accounting records of SK Foods or RHM.

51.     Each line item on the tax returns prepared by Collins contained rounded numbers.

52.     The returns submitted by Collins were based on estimates.

53.      The returns submitted by Collins were and are incorrect.

ADVERSARY COMPLAINT

54. Collins had no authority from the Court or under the Bankruptcy Code to file any of these returns.

55. Collins filed the returns after the commencement of the bankruptcy cases.

56. Collins knew that SK Foods and RHM had filed for bankruptcy.

57. Collins never received authorization from Sharp to file any tax returns.

58. Collins never received authorization from the Court to file any tax returns.

59. Collins prepared Salyer's personal state and federal tax returns for 2008.

60. Collins prepared Salyer's personal state and federal tax returns for 2009.

61. Collins filed the returns at Salyer's direction.

62. The superseding tax returns for both SK Foods and RHM filed by Collins showed a significant loss that passed through to Salyer.

63. Through the subsequent filing of his own personal return, Salyer attributed the loss from SK Foods and RHM unto himself.

C. **Collins Deposits Salyer's Tax Refunds in his Personal Account and Transfers the Proceeds Overseas**

64. During August of 2009, two government refund checks in the name of Frederick Scott Salyer, totaling approximately $3,199,374.

65. Additionally, upon information and belief, by virtue of their indirect ownership of RHM, Stefanie A. Salyer and Caroline G. Salyer and/or their respective trusts attributed the loss from RHM unto themselves.

66. The refund checks were endorsed by Salyer to Collins and Associates.

67. The tax returns filed by Collins led the IRS to issue a tax refund check of $2,243,684 and the California Franchise Tax Board (the *"FTB"*) to issue a tax refund check of $955,690 in August of 2009 (the *"Tax Refunds"* and the subsequent transfers thereof, the *"Unauthorized Tax Refund Transfers"*).

- 8 -

68.     Upon information and belief, all or a substantial portion of the Tax Refunds are attributed to the Debtors.

69.     Collins deposited the IRS portion of the Tax Refunds into a Collins and Associates account at Mechanics Bank on or about August 17, 2009.

70.     Collins deposited the FTB portion of the Tax Refunds into a Collins and Associates account at Mechanics Bank on or about August 31, 2009.

71.     Collins then proceeded to open a new account in his own name on September 9, 2009 at Mechanics Bank titled "Cary S. Collins d/b/a Collins and Associates."

72.     This account was opened with a wire transfer of the approximately $3.2 million proceeds of the Tax Refunds.

73.     In an email dated on or about September 14, 2009, an associate of Collins contacted an individual at a Zurich wealth management company to let them know that "additional funds [would be] arriving that day."

74.     However, all did not go smoothly with Collins' attempts to transfer the Tax Refunds overseas.

75.     Collins' actions triggered a "suspicious activities" alert at Mechanics Bank on August 17 and August 31, 2009 due to the size of the Tax Refunds ($2,243,684 and $955,690), and because they were government refund checks made payable to Salyer.

76.     The suspicious activities alert was triggered because both of the deposits were government refund checks made payable to "Frederick S. Salyer" and it was not normal for someone to deposit such a large third party check into an account.

77.     This was particularly true because Salyer had his own accounts at Mechanics Bank.

78.     According to a report prepared by the FBI, Collins' account indicated additional suspicious activity.

- 9 -

79.     For example, there were incoming wires from other Collins' accounts, including one he held at another bank.

80.     Additionally, there were outgoing wires from Collins' account to a bank account named Fast Falcon LLC, which was located in Nevis, West Indies with an account in Liechtenstein.

81.     In a later email in the chain disclosed in Salyer's criminal case dated September 12, 2009, Salyer expresses to Collins his displeasure with Mechanics Bank based on the fact that money had not yet been sent overseas and said "Keep trying or we move to another Bank that knows how to send wires."

82.     However, Collins eventually succeeded in getting Mechanics Bank to process the wires, and wired the proceeds of the Tax Refunds overseas to an account called "Fast Falcon LLC" in Nevis, West Indies, as well as an account in Liechtenstein.

83.     In addition to the West Indies and Liechtenstein wires, there were other outgoing wires to accounts in Australia, New Zealand and the United Kingdom.

84.     The FBI subsequently interviewed bank personnel who interacted with Collins regarding the Unauthorized Tax Refund Transfers in the course of its investigation of Salyer.

85.     Collins told the account manager at Mechanics Bank that Salyer was attempting to purchase the Cedenco business, which was a family of companies affiliated with SK Foods that was subject to receivership proceeding in Australia and New Zealand.

86.     When the account manager questioned Collins as to why he was depositing Salyer's checks into his account, Collins told her that he "wanted to do it this way."

87.     Collins served as a director or officer of Cedenco.

88.     Collins told the Mechanics Bank officer that he and Salyer had created the offshore entity Fast Falcon LLC so that they could purchase the Cedenco businesses without revealing their identity.

ADVERSARY COMPLAINT

89.     Collins did this because no person or entity affiliated with Salyer was permitted to acquire that business.

90.     Collins had an ownership interest in Fast Falcon LLC.

91.     Collins had control of assets of Fast Falcon LLC.

92.     Collins has the power to transfer money from the accounts of Fast Falcon LLC to accounts both in the United States and abroad.

93.     A subsequent investigation by Mechanics Bank concluded that Collins and Salyer were using the Mechanics Bank accounts to make transfers to Fast Falcon LLC in an attempt to disguise the true ownership and origin of the funds.

94.     Mechanics Bank also concluded that Collins and Salyer had committed fraud in conjunction with the Australian-based Cedenco.

95.     Upon information and belief, the FTB and the IRS also issued other refunds that were improperly obtained by Collins and transferred abroad in a similar fashion.

96.     The Tax Refunds were property of the estate.

97.     Salyer was not indebted to Collins for an amount equal to or greater than the amount of the Tax Refunds.

98.     The Unauthorized Tax Refund Transfers were subsequently transferred to another bank account that Salyer controlled in Andorra.

99.     The funds subsequently transferred to Andorra originating from the above described transfers.

100.    Andorra is a small country in Europe that has no extradition treaty with the United States.

101.    Collins also has the power to transfer funds to and for the Andorra account.

102.    Collins has failed and refused to turn over the Tax Refunds to the estate.

ADVERSARY COMPLAINT

COUNT I:  AVOIDANCE OF POST-PETITION TRANSFERS PURSUANT TO 11 U.S.C. § 549 AND
CALIFORNIA CIVIL CODE §§ 3439.08, 3439.07 AND 3439.05 AGAINST COLLINS

103.    The Trustee incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

104.    The Unauthorized Tax Refund Transfers occurred after the Petition Date.

105.    The Unauthorized Tax Refund Transfers were transfers of the Debtors' property.

106.    Collins did not obtain authorization from the Court or Sharp to file any tax returns.

107.    Collins and Associates did not obtain authorization from the Court or Sharp to file any tax returns.

108.    Salyer did not obtain authorization from the Court or Sharp to file any tax returns on behalf of the Debtors.

109.    Neither Collins nor Salyer had authorization to obtain any of the Tax Refunds.

110.    The Unauthorized Tax Refund Transfers were made within four years of the filing of this Complaint.

111.    The Unauthorized Tax Refund Transfers were made without the Debtors receiving a reasonably equivalent value from Collins or Salyer in exchange for the Unauthorized Tax Refund Transfers because the filing of the returns was not authorized and the Debtors received nothing of value from Collins or Salyer.

112.    Further, the Debtors received less than a reasonably equivalent value because, *inter alia*, the beneficiaries of the Unauthorized Tax Refund Transfers gave nothing in exchange for the refunds.

113.    The Unauthorized Tax Refund Transfers to the benefit of Scott Salyer cannot be justified as a distribution of profits or equity on account of his ownership interests due to the fact

- 12 -

ADVERSARY COMPLAINT

that the Debtors were in bankruptcy and insolvent on the date of each of the Unauthorized Tax Refund Transfers and Scott Salyer did not directly own the Debtors.

114.    The Unauthorized Tax Refund Transfers to the benefit of Collins cannot be justified as a distribution of profits or equity because he does not have any ownership interests in the Debtors.

115.    The Debtors were insolvent on the date of each of the Unauthorized Tax Refund Transfers or became insolvent as a result of each of the Unauthorized Tax Refund Transfers.

116.    The Debtors were insolvent at all relevant times due to, *inter alia*, a scheme to defraud allegedly carried out by former members of the Debtors' senior management which began in or about January 1998 and continued through shortly before the Petition Date. This alleged scheme caused the loss of customers arising from the criminal indictment of members of the Debtors' management associated with the scheme. In addition to the scheme, there were significant operational losses associated with the failure of the Debtors' chili businesses in the 2006-2007 timeframe and other operational problems.

117.    This alleged scheme involved the bribing of purchasing managers at the Debtors' customers by members of the Debtors' management to purchase the Debtors' products at inflated prices. Often, the product which was sold as a result of the bribes was so full of mold that it was unsalable in the United States because it did not meet FDA guidelines; however, the Debtors' senior management, including defendant Scott Salyer, allegedly caused the moldy product to be misbranded by falsifying reports to show a lower mold content. A joint investigation into these activities by the FBI, IRS, FDA, and other agencies began in 2005, which led to a raid of the Debtors' businesses in April of 2008. Once the investigation was made public, many of the Debtors' customers refused to deal with them due in part to the mold issue, which led the Debtors to file for bankruptcy protection. Also, upon information and belief, absent the alleged fraudulent conduct, the Debtors would have been insolvent at an earlier date.

- 13 -

ADVERSARY COMPLAINT

118.   At all relevant times, the sum of the Debtors' actual liabilities were greater than their assets, due to, *inter alia*, the ongoing fraud and criminal activity which was concealed from the Debtors' creditors, inventory and other losses associated with the failure of the Debtors' chili businesses in the 2006-2007 timeframe, and losses associated with poor internal controls.

119.   Specifically, the Debtors were in default under loan obligations to their lenders since at least April of 2008, and were able to operate only through default waivers and periods of forbearance from that time through the Petition Date.

120.   The Unauthorized Tax Refund Transfers could be avoided under the California Uniform Fraudulent Transfer Act by a creditor, such as BMO, holding an unsecured claim which has been allowed under Section 502 of the Bankruptcy Code.

121.   The Trustee is entitled to recover the Unauthorized Tax Refund Transfers or the value of the Tax Refunds from Collins for the benefit of the estate pursuant to 11 U.S.C. §§ 549 and 550(a) and California Civil Code §§ 3439.08, 3439.07 and 3439.05.

WHEREFORE, the Trustee prays for a judgment against Collins avoiding and preserving for the benefit of the estate the Unauthorized Tax Refund Transfers and entering judgment in an amount not less than $3,199,374 together with the amount of any additional transfer of refunds received from the FTB or the IRS, plus interest, attorneys' fees and costs, including, without limitation, pre-judgment and post-judgment interest, the exact amount to be proven and determined at trial, and such other and further relief as this Court deems just and equitable.

### COUNT II: RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 550(A) AGAINST COLLINS

122.   The Trustee incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

123.   The Tax Refunds received by Collins are avoidable as set forth in Count I above.

- 14 -

ADVERSARY COMPLAINT

124.   Pursuant to 11 U.S.C. § 550(a), the Trustee may recover from Collins the Tax Refunds and the value of the Unauthorized Tax Refund Transfers, as the entity for whose benefit such transfers were made or as an immediate or mediate transferee of the Tax Refunds.

125.   In the alternative, the Tax Refunds were property of the estate pursuant to 11 U.S.C. §541 and Collins may be ordered to turn over any Tax Refunds in his possession pursuant to 11 U.S.C. §542.

WHEREFORE, the Trustee prays for a judgment against Collins avoiding and preserving for the benefit of the estate the Unauthorized Tax Refund Transfers and entering judgment in an amount not less than $3,199,374 together with the amount of any additional transfer of refunds received from the FTB or the IRS, plus interest, attorneys' fees and costs, including, without limitation, pre-judgment and post-judgment interest, the exact amount to be proven and determined at trial, and such other and further relief as this Court deems just and equitable.

### COUNT III: VIOLATION OF THE AUTOMATIC STAY AGAINST COLLINS REGARDING THE FILING OF THE UNAUTHORIZED TAX RETURNS

126.   The Trustee incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

127.   Collins filed tax returns for SK Foods and/or RHM.

128.   Collins knew that SK Foods and RHM had filed for bankruptcy.

129.   Collins filed the tax returns with the intent to obtain control over the Tax Refunds.

130.   Collins filed the tax returns in bad faith so that property of the estate could be transferred outside of the United States.

WHEREFORE, the Trustee prays for a judgment against Collins in an amount not less than $3,199,374 together with the amount of any additional transfer of refunds received from the FTB or the IRS, plus interest, attorneys' fees and costs, including, without limitation, pre-judgment

- 15 -

and post-judgment interest, the exact amount to be proven and determined at trial, punitive damages, and such other and further relief as this Court deems just and equitable.

COUNT IV: UNJUST ENRICHMENT AGAINST COLLINS FOR
AMOUNTS RECEIVED FROM THE FILING OF THE UNAUTHORIZED TAX RETURNS

131.    The Trustee incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein, and makes the following allegations in this Count IV in the alternative to the counts set forth above.

132.    In light of the wrongful scheme identified above, Collins improperly received Tax Refunds that should have otherwise been retained and used by the estate to repay the creditors of SK Foods and RHM.

133.    Collins transferred the Tax Refunds identified above to various bank accounts located outside of the United States.

134.    Upon information and belief, Collins retains control and/or possession of a portion of the Tax Refunds identified above.

135.    The Trustee was entitled to the benefit, use, and value of the Tax Refunds for the benefit of creditors.

136.    It would be inequitable to permit Collins to retain such Tax Refunds.

137.    There is no written contract between Collins and the estate that provides the estate with a claim for breach of the same against Collins.

138.    The estate has an inadequate remedy at law and is entitled to a judgment against Collins for unjust enrichment.

139.    As a result, principles of equity dictate that Collins be held liable for all damages suffered by the Trustee as a result of Collins' misconduct.

140.    The Trustee requests, *inter alia*, that the Court impose a constructive trust in favor of the Trustee as to the Tax Refunds identified above, the exact amount to which the Trustee is entitled to be proven and determined at trial.

WHEREFORE, the Trustee prays for a judgment against Collins in an amount not less than $3,199,374 together with the amount of any additional transfer of refunds received from the FTB or the IRS, plus interest, attorneys' fees and costs, including, without limitation, pre-judgment and post-judgment interest, the exact amount to be proven and determined at trial, the imposition of a constructive trust on the assets of Collins, and such other and further relief as this Court deems just and equitable.

**COUNT V: AVOIDANCE OF TRANSFERS PURSUANT TO 11 U.S.C. §§ 548, 549 AND CALIFORNIA CIVIL CODE §§ 3439.08, 3439.07 AND 3439.05 AGAINST SALYER, SAS 1999 TRUST, CGS 1999 TRUST, SAS 2007 TRUST, CGS 2007 TRUST, STEFANIE A. SALYER, AND CAROLINE G. SALYER**

141.    The Trustee incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

142.    Salyer directed Collins in filing for the Tax Refunds and making the Unauthorized Tax Refund Transfers.

143.    Salyer obtained dominion and control over the Unauthorized Tax Refund Transfers.

144.    The Unauthorized Tax Refund Transfers were made in part for Salyer's benefit.

145.    The Unauthorized Tax Refund Transfers occurred after the Petition Date.

146.    The Unauthorized Tax Refund Transfers were transfers of Debtor's property.

147.    Collins did not obtain authorization from the Court or Sharp to file any tax returns.

148.    Collins and Associates did not obtain authorization from the Court or Sharp to file any tax returns.

- 17 -

ADVERSARY COMPLAINT

149. Salyer did not obtain authorization from the Court or Sharp to file any tax returns.

150. Neither Collins nor Salyer had authorization to obtain any Tax Refunds.

151. The Unauthorized Tax Refund Transfers were made within four years of the filing of this Complaint.

152. The Unauthorized Tax Refund Transfers were made without the Debtors receiving a reasonably equivalent value from Collins or Salyer in exchange for the Unauthorized Tax Refund Transfers because the filing of the returns was not authorized and the Debtors received nothing of value from Collins or Salyer.

153. Further, the Debtors received less than a reasonably equivalent value because, *inter alia*, the beneficiaries of the Unauthorized Tax Refund Transfers gave nothing in exchange for the refunds.

154. The Unauthorized Tax Refund Transfers to the benefit of Scott Salyer cannot be justified as a distribution of profits or equity on account of his ownership interests due to the fact that the Debtors was insolvent on the date of each of the Unauthorized Tax Refund Transfers and Scott Salyer did not directly own the Debtors.

155. The Unauthorized Tax Refund Transfers to the benefit of Collins cannot be justified as a distribution of profits or equity because they do not have any ownership interests in the Debtors.

156. The Debtors were insolvent on the date of each of the Unauthorized Tax Refund Transfers or became insolvent as a result of each of the Unauthorized Tax Refund Transfers.

157. The Worker, Homeownership, and Business Assistance Act of 2009, Pub.L. No. 111-92, enacted on November 6, 2009, provided, among other things, that a taxpayer with net operating losses (*"NOLs"*) for 2008 or 2009 may elect to carry the NOL from one of those years back to the third, fourth, or fifth preceding taxable year instead of the second taxable year.

ADVERSARY COMPLAINT

158.   Salyer, and upon information and belief, the SAS 1999 Trust, CGS 1999 Trust, SAS 2007 Trust and CGS 2007 Trust received tax refunds on account of NOLs carried back to prior tax years.

159.   Since January 1, 2007, the Debtors made payments in excess of $1 million to satisfy the personal tax liabilities of Salyer and his daughters.

160.   The refunds received on account of the NOLs, including but not limited to the portion attributable to the Debtors' losses, were obtained by the Defendants without giving reasonably equivalent value because the Debtors paid the original taxes to which the refunds relate.

161.   The Debtors were insolvent or became insolvent as a result of the losses to which the NOLs relate, and may be recovered as fraudulent transfers.

162.   The Trustee is entitled to recover the Unauthorized Tax Refund Transfers or the value of the Tax Refunds from Salyer for the benefit of the estate pursuant to 11 U.S.C. §§ 548, 549 and 550(a) and California Civil Code §§ 3439.08, 3439.07 and 3439.05.

WHEREFORE, the Trustee prays for a judgment against the defendants identified in this count avoiding and preserving for the benefit of the estate the Unauthorized Tax Refund Transfers and entering judgment in an amount not less than $3,199,374 together with the amount of any additional transfer of refunds received from the FTB or the IRS and any NOLs improperly obtained, plus interest, attorneys' fees and costs, including, without limitation, pre-judgment and post-judgment interest, the exact amount to be proven and determined at trial, and such other and further relief as this Court deems just and equitable.

ADVERSARY COMPLAINT

COUNT VI: RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO
11 U.S.C. § 550(A) AGAINST SALYER, SAS 1999 TRUST, CGS 1999 TRUST,
SAS 2007 TRUST, CGS 2007 TRUST, STEFANIE A. SALYER AND CAROLINE G. SALYER

163.    The Trustee incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

164.    The Tax Refunds received by Salyer, SAS 1999 Trust, CGS 1999 Trust, SAS 2007 Trust, CGS 2007 Trust, Stefanie A. Salyer and Caroline G. Salyer are avoidable as set forth in Count V above.

165.    Pursuant to 11 U.S.C. § 550(a), the Trustee may recover from Salyer, SAS 1999 Trust, CGS 1999 Trust, SAS 2007 Trust, CGS 2007 Trust, Stefanie A. Salyer and Caroline G. Salyer the Tax Refunds and the value of the Unauthorized Tax Refund Transfers, as the entity for whose benefit such transfers were made or as an immediate or mediate transferee of the Tax Refunds.

166.    In the alternative, the Tax Refunds were property of the estate pursuant to 11 U.S.C. §541 and Salyer, SAS 1999 Trust, CGS 1999 Trust, SAS 2007 Trust, CGS 2007 Trust, Stefanie A. Salyer and Caroline G. Salyer may be ordered to turn over any Tax Refunds in their possession pursuant to 11 U.S.C. §542.

WHEREFORE, the Trustee prays for a judgment against the defendants identified in this count avoiding and preserving for the benefit of the estate the Unauthorized Tax Refund Transfers and entering judgment in an amount not less than $3,199,374 together with the amount of any additional transfer of refunds received from the FTB or the IRS and any NOLs improperly obtained, plus interest, attorneys' fees and costs, including, without limitation, pre-judgment and post-judgment interest, the exact amount to be proven and determined at trial, and such other and further relief as this Court deems just and equitable.

- 20 -

COUNT VII: VIOLATION OF THE AUTOMATIC STAY AGAINST SALYER REGARDING
THE FILING OF THE UNAUTHORIZED FEDERAL AND STATE TAX RETURNS

167.    The Trustee incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

168.    At Salyer's direction, Collins filed tax returns for SK Foods and/or RHM.

169.    Salyer knew that SK Foods and RHM had filed for bankruptcy.

170.    Collins filed the tax returns with the intent to obtain control over the Tax Refunds, *inter alia*, for Salyer's benefit.

171.    At Salyer's direction, Collins filed the tax returns in bad faith so that property of the estate could be transferred outside of the United States.

WHEREFORE, the Trustee prays for a judgment against Salyer in an amount not less than $3,199,374 together with the amount of any additional transfer of refunds received from the FTB or the IRS, plus interest, attorneys' fees and costs, including, without limitation, pre-judgment and post-judgment interest, the exact amount to be proven and determined at trial, and such other and further relief as this Court deems just and equitable.

COUNT VIII: UNJUST ENRICHMENT AGAINST SALYER, SAS 1999 TRUST, CGS 1999 TRUST,
SAS 2007 TRUST, CGS 2007 TRUST, STEFANIE A. SALYER AND CAROLINE G. SALYER
AMOUNTS RECEIVED FROM THE FILING OF THE UNAUTHORIZED TAX RETURNS, AND
TAX REFUNDS FROM NOL "CARRYBACKS"

172.    The Trustee incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein, and makes the following allegations in this Count VIII in the alternative to the counts set forth above.

173.    In light of the wrongful scheme identified above, Salyer improperly received Tax Refunds that should have otherwise been retained and used by the estate to repay the creditors of SK Foods and RHM.

ADVERSARY COMPLAINT

174.   Collins transferred the Tax Refunds identified above to various bank accounts located outside of the United States with Salyer's direction and consent.

175.   Upon information and belief, Salyer retains control and/or possession of a portion of the Tax Refunds identified above.

176.   The Trustee was entitled to the benefit, use, and value of the Tax Refunds for the benefit of creditors.

177.   It would be inequitable to permit Salyer to retain such Tax Refunds.

178.   There is no written contract between Salyer and the estate that provides the estate with a claim for breach of the same against Salyer.

179.   The estate has an inadequate remedy at law and is entitled to a judgment against Salyer for unjust enrichment.

180.   As a result, principles of equity dictate that Salyer be held liable for all damages suffered by the Trustee as a result of Collins' misconduct.

181.   The Trustee requests, *inter alia*, that the Court impose a constructive trust in favor of the Trustee as to the Tax Refunds identified above, the exact amount to which the Trustee is entitled to be proven and determined at trial.

182.   Additionally, *inter alia*, for taxable years 2006-2008, the Debtors made payments on behalf of Salyer, SAS 1999 Trust, CGS 1999 Trust, SAS 2007 Trust, CGS 2007 Trust, Stefanie A. Salyer and Caroline G. Salyer (collectively, the *"Salyer Defendants"*) in order to pay their federal and state income taxes owed upon income generated by the Debtors and other tax obligations.

183.   The estimated tax payments made by the Debtors exceeded the Salyer Defendants' actual tax liability for each tax year as described above.

184.   The Salyer Defendants did not return any of the estimated amounts that exceeded their actual tax liability, but instead retained these sums for their use and benefit.

- 22 -

ADVERSARY COMPLAINT

185.    Also, among other reasons, the Debtors' bankruptcy as well as losses associated with non-debtor entities for which the Debtors paid the Salyer Defendants' tax liabilities, has triggered tax loses that the Salyer Defendants have carried back against taxes paid in prior tax years using tax payments from the Debtors.

186.    The result of the Salyer Defendants' actions in "carrying back" the tax losses has resulted in the Salyer Defendants' obtaining tax refunds on taxes paid with funds advanced by the Debtors.

187.    The Salyer Defendants have no equitable right to retain the refunds generated from tax payments made on their behalf by the Debtors, as it is money that would not have otherwise been distributed to the Salyer Defendants and properly belongs to the Debtors' bankruptcy estates.

188.    The tax payments conferred a benefit on the Salyer Defendants who would otherwise have been required to pay the taxes paid by Debtors with personal funds.

189.    The Debtors were impoverished by the taxes paid on behalf of the Salyer Defendants because these payments were made during a time when the Debtors were experiencing financial difficulty.

190.    The Debtors were impoverished by the taxes paid on behalf of the Salyer Defendants because the Salyer Defendants have failed and refused to return the amounts advanced on their behalf.

191.    There is a direct relationship between the tax payments, retained refunds, and the impoverishment of the Debtors and their asset depletion.

192.    The Salyer Defendants appreciated and had knowledge of the benefit that the Debtors were conferring on them when paying their tax obligations because they were relieved of personal obligations to pay their corresponding tax obligations.

ADVERSARY COMPLAINT

193. There is no valid reason why the Salyer Defendants are entitled to retain the excess tax advance amounts or any consequent tax refunds as they had adequate resources and an obligation to pay their own tax obligations and have no equitable right to retain these payments.

194. Upon information and belief, the Salyer Defendants retain control and/or possession of a portion of the funds identified above.

195. The Trustee is entitled to the benefit, use, and value of those funds for the benefit of creditors.

196. It would be inequitable to permit the Salyer Defendants to retain such payments and/or distributions. Unless corrected by the Court, the tax refunds and the benefits thereof would inure exclusively to the Salyer Defendants benefit to the detriment of the Debtors.

WHEREFORE, the Trustee prays for a judgment against the defendants identified in this count in an amount not less than $3,199,374 together with the amount of any additional transfer of refunds received from the FTB or the IRS and/or the value of any NOLs improperly obtained, plus interest, attorneys' fees and costs, including, without limitation, pre-judgment and post-judgment interest, the exact amount to be proven and determined at trial, the imposition of a constructive trust on the assets of Salyer, and such other and further relief as this Court deems just and equitable.

**COUNT IX: AVOIDANCE OF FRAUDULENT TRANSFERS OF LOAN COLLATERAL AGAINST COLLINS, SALYER, SAS 1999 TRUST, CGS 1999 TRUST, SAS 2007 TRUST AND CGS 2007 TRUST, STEFANIE A. SALYER, CAROLINE G. SALYER AND MONTEREY PENINSULA FARMING, LLC ON BEHALF OF THE AGENT**

197. This count is brought on behalf of the Agent, and the Agent incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

198. On September 28, 2007, the Debtors entered into a Credit Agreement with the Agent whereby certain Lenders agreed to provide up to $200 million in financing to the Debtors.

ADVERSARY COMPLAINT

199.    Additionally, a non-debtor entity affiliated with the Debtors and controlled by Salyer, SK Foods, LLC, guaranteed the Debtors obligations under this facility.

200.    This entity held 100% of the shares of SK Foods International, a New Zealand Corporation, which in turn directly or indirectly held all of the shares of SK Foods' New Zealand operations, which was called Cedenco Foods (*"Cedenco"*).

201.    To collateralize the Agent's loan, Salyer caused both the Debtors and SK Foods LLC to execute a Security Agreement dated as of September 28, 2007 in favor of the Agent wherein they pledged substantially all of their assets to the Agent.

202.    The Agent duly filed a UCC Financing Statement covering all right, title and interest in and to all of the personal property and fixtures of SK Foods LLC, whether now owned or existing or hereafter created, acquired or arising, which was perfected on or before September 28, 2007 and remains in force.

203.    In an April 3, 2009 Forbearance Agreement, SK Foods LLC and the Debtors admitted that the Debtors were indebted to the Agent in the amount of $192,781,886, together with fees and interest, plus other amounts justly and truly owing, as of March 31, 2009 without defense, offset or counterclaim.

204.    The Agent subsequently demanded payment from SK Foods LLC for its obligations under the Guaranty, but it failed and refused to meet these obligations or to surrender possession of the Collateral, including the shares of Cedenco.

205.    Subsequent to the Petition Date, the Agent commenced an action in the United States District Court for the Northern District of Illinois on June 9, 2009 to obtain a judgment for the breach of the Guaranty and to foreclose on its Collateral, which consisted primarily of the shares of the New Zealand operations, including Cedenco.

ADVERSARY COMPLAINT

206.   Despite numerous efforts to delay the case by SK Foods LLC (including affidavit testimony by Collins attempting to delay judgment), the Agent ultimately obtained a judgment in the fall of 2010 in excess of $128 million.

207.   The Agent has commenced supplementary proceedings against SK Foods LLC and Collins, but to date it has received no meaningful response. SK Foods LLC has been held in contempt of Court for not responding, and supplementary proceedings against Collins are ongoing wherein he is contesting the personal jurisdiction of that Court and arguing that proceedings against him should be brought in California. SK Foods LLC subsequently stopped responding to Court inquiries, and its corporate charter has been revoked.[1]

208.   Shortly before this Complaint addressing the unauthorized Tax Returns was filed, the Agent received from the Chapter 11 Trustee copies of a document production that Collins and Associates produced to the Chapter 11 Trustee in another matter.

209.   These documents revealed that in 2009, after the default on the obligations to the Agent had occurred and while the bankruptcy was pending, Collins and Salyer purportedly transferred ownership of the Cedenco businesses to a trust in the Cook Islands created by Salyer for the benefit of his daughters (the *"Cook Islands Asset Transfers"*).

210.   As detailed below, recent revelations from affidavit testimony given by Collins suggest that there was a mediate transferee of these assets, Monterey Peninsula Farming LLC, which purportedly received the assets prior to their transfer to the Cook Islands.

211.   The Cook Islands are in a remote part of the South Pacific Ocean, northeast of New Zealand, between French Polynesia and American Samoa and are a haven for offshore asset protection schemes.

---

[1]   In bringing this Complaint against Collins in this Court, the Agent does not waive any of its rights with respect to the proceedings currently pending in the United States District Court for the Northern District of Illinois, or any claims regarding the New Zealand businesses.

ADVERSARY COMPLAINT

212.    On November 1, 2009, Collins received an inquiry from John Bowles, a senior manager of Westpac Bank, inquiring about Salyer's legal problems in light of published media reports and events that were occurring with the New Zealand operations.

213.    Collins and Salyer were attempting to obtain funding from Westpac Bank to facilitate their purchase of the Cedenco businesses in New Zealand and/or Australia.

214.    On November 2, 2009, Collins responded via email.  In this email, Collins tells the bank officer that Cedenco is owned by an irrevocable trust created by Salyer in the Cook Islands named "Hawker Sydley [sic] Trust."[2]

215.    The confidentiality laws of the Cook Islands purport to prohibit the disclosure of trust and banking relationships except with the consent of the customer, and purport to ensure that no creditor or foreign government can gain access to bank or trust information.

216.    As noted above, many of the Unauthorized Tax Refund Transfers went to a Nevis LLC called "Fast Falcon."  Collins and Salyer knew that asset protection trusts often use Nevis LLC's in conjunction with offshore asset protection trusts like the Cook Islands trust at issue here because it gives the creator of the trust direct control over the assets if the creator is listed as the manager of the Nevis LLC.

217.    Collins and Salyer believed that creating the Nevis LLC gave them added security in that it keeps the assets one step removed from the trustee of the Cook Islands asset protection trust.

218.    Also, since the managers and members of a Nevis LLC are not public information, the creator of the trust is able to assume control over the assets without disclosing his control on any public records.

---

[2]    It is notable that Salyer is a licensed jet pilot and that Hawker Siddeley and Falcon are two types of luxury jet aircraft.

- 27 -

ADVERSARY COMPLAINT

219.   As alleged above, Collins told personnel at Mechanics Bank that the transfers to the Nevis LLC were made to conceal Fast Falcon's affiliation with Collins and Salyer.

220.   Salyer did in fact set up or cause to be set up a Cook Islands trust called "Hawker Sydley [sic] Trust."

221.   At various times, Collins has informed this Court that he provided "estate planning" services to Salyer.

222.   Collins assisted Salyer in setting up the "Hawker Sydley [sic] Trust."

223.   Collins and Salyer, individually or with each other's assistance, caused ownership of Cedenco to be transferred to the "Hawker Sydley [sic] Trust."

224.   Collins was a director and/or officer of Cedenco.

225.   Collins also stated in his email to Westpac Bank that the Debtors' bankruptcy was precipitated by the Agent's refusal to extend further credit.  Collins also claimed that a Cedenco manager "misspoke" when he said that Cedenco was ultimately owned by Salyer's trust.

226.   SK Foods LLC was ultimately owned by the Scott Salyer Revocable Trust.

227.   The trustee of the Cook Islands trust was Asiaciti Trust Pacific Limited ("Asiaciti"), and the beneficiaries were Mr. Salyer's children and grandchildren.

228.   Asiaciti Trust is a trust company in Singapore with operations both in Nevis and in the Cook Islands.

229.   Shortly before Collins revealed the creation of the Cook Islands trust to the Westpac banker, Gerard Rose, another attorney for Salyer and his affiliated companies, sent an executed version of a document titled "Acceptance of Resignation and Appointment of Successor Trustee and Resignation" for both the SAS 2007 Trust and the CGS 2007 Trust to a paralegal at the Law Office of Gary Perry.

230.   Additionally, shortly before Collins revealed the creation of the Cook Islands trust to the Westpac banker, Gerard Rose, another attorney for Salyer and his affiliated

ADVERSARY COMPLAINT

companies, sent an executed version of a document titled "Acceptance of Resignation and Appointment of Successor Trustee and Resignation" for both the SAS 1999 Trust and the CGS 1999 Trust to a paralegal at the Law Office of Gary Perry.

231.   In these documents, Rose, who was purportedly the "acting trustee" of the trusts, resigns and Asiaciti is appointed in his place.

232.   During the time period that Collins and Salyer transferred funds to the Nevis LLC and abroad, Collins was acting as a director or officer of Cedenco as well as for SK Foods International.

233.   Collins and Salyer transferred Cedenco to a Cook Islands trust for the purpose of hindering, delaying and defrauding the Agent.

234.   Collins and Salyer knew that an action was pending in the United States District Court for the Northern District of Illinois to foreclose on the shares of Cedenco's U.S. parent company.

235.   Collins and Salyer knew that a default had occurred with respect to the Debtors and Guarantor's obligations to the Agent.

236.   Collins and Salyer set up the Cook Islands trust sometime between the Petition Date and November 2, 2009.

237.   The Cook Islands Asset Transfers were made without giving reasonably equivalent value in exchange for the Cook Islands Asset Transfers because neither SK Foods International, SK Foods LLC, or any other party having an interest in Cedenco received anything of value from Collins, Salyer, the SAS 1999 Trust, the SAS 2007 Trust, the CGS 1999 Trust, or the CGS 2007 Trust.

238.   The Cook Islands Asset Transfers to the benefit of Collins, Salyer, the SAS 1999 Trust, the SAS 2007 Trust, the CGS 1999 Trust, or the CGS 2007 Trust cannot be justified as a distribution of profits or equity on account of any aspect of their ownership interest in various

ADVERSARY COMPLAINT

Debtor-related entities due to the fact that the Debtors were in bankruptcy and insolvent on the date of each of the Cook Islands Asset Transfers, the Guarantor was insolvent on the date of the Cook Islands Asset Transfers, the Guarantor was subject to a pending foreclosure suit upon substantially all of its assets on the date of the Cook Islands Asset Transfers, and Scott Salyer did not directly own Cedenco.

239.   Any Cook Islands Asset Transfers to the benefit of Collins cannot be justified as a distribution of profits or equity because he did not have any ownership interests in Cedenco.

240.   The Cook Islands Asset Transfers rendered SK Foods LLC and SK Foods International insolvent.

241.   SK Foods LLC was insolvent at all relevant times due to, *inter alia*, a scheme to defraud allegedly carried out by former members of the Debtors' senior management which began in or about January 1998 and continued through shortly before the Petition Date. This alleged scheme caused the loss of customers arising from the criminal indictment of members of management associated with the scheme. In addition to the scheme, there were significant operational losses associated with the failure of the Debtors' chili businesses in the 2006-2007 timeframe and other operational problems.

242.   This alleged scheme involved the bribing of purchasing managers at the Debtors' customers by members of the Debtors' management to purchase the Debtors' products at inflated prices. Often, the product which was sold as a result of the bribes was so full of mold that it was unsalable in the United States because it did not meet FDA guidelines; however, the Debtors' senior management, including defendant Scott Salyer, allegedly caused the moldy product to be misbranded by falsifying reports to show a lower mold content. A joint investigation into these activities by the FBI, IRS, FDA, and other agencies began in 2005, which led to a raid of the Debtors' businesses in April of 2008. Once the investigation was made public, many of the Debtors' customers refused to deal with them due in part to the mold issue, which led them to

ADVERSARY COMPLAINT

file for bankruptcy protection and SK Foods LLC to default on its Guaranty. Also, upon information and belief, absent the alleged fraudulent conduct, the Debtors and SK Foods LLC would have been insolvent at an earlier date.

243.   At all relevant times, the sum of the SK Foods LLC's actual liabilities were greater than their assets, due to, *inter alia*, the Cook Islands Asset Transfers.

244.   Specifically, the Debtors were in default under loan obligations to their lenders since at least April of 2008, and were able to operate only through default waivers and periods of forbearance from that time through the Petition Date. Also, SK Foods LLC failed and refused to satisfy its obligations under its Guaranty.

245.   On May 4, 2011, Collins proffered an affidavit in the United States District Court for the Northern District of Illinois (Case No. 09-cv-3479), in which he testified that "[i]n about January 2009, the stock of SK Foods, International, was transferred from SK Foods, LLC, to Monterey Peninsula Farming, LLC." [Dkt. No 101-1, ¶2].

246.   However, if Collins' testimony is true, the transfer to Monterey Peninsula Farming, LLC ("*Monterey LLC*") was a fraudulent transfer.

247.   SK Foods LLC had pledged substantially all of its assets to the Agent.

248.   The Agent held a perfected security interest in the shares of SK Foods International.

249.   The purported transfer of SK Foods International to Monterey LLC was neither disclosed to nor authorized by the Agent.

250.   As of May 4, 2011, the records of the New Zealand Companies Office, which maintains the records of corporate ownership on behalf of the government of New Zealand, shows that SK Foods International is still 100% owned by SK Foods LLC.

ADVERSARY COMPLAINT

251.   As of May 4, 2011, Collins is listed as the sole director of SK Food International with the New Zealand Companies Office, yet he did not give notice of any change of the company's ownership from SK Foods LLC to Monterey LLC.

252.   Any transfer of SK Foods LLC to Monterey LLC was to an insider as Monterey LLC was controlled by Salyer and Collins, and Monterey LLC did not give reasonably equivalent value to SK Foods LLC.

253.   Neither Monterey LLC nor the Salyer Defendants gave any consideration to SK Foods LLC in exchange for the SK Foods International transfer.

254.   Neither Monterey LLC nor the Salyer Defendants gave any consideration to the Agent in exchange for the SK Foods International transfer.

255.   The purported transfer of SK Foods International to Monterey LLC was made with the actual intent to hinder, delay and defraud the Agent as part of the Salyer Defendants' scheme to transfer ownership of the New Zealand operations to Salyer's daughters, and to place assets outside the jurisdiction of U.S. courts by transferring them overseas to the Cook Islands and elsewhere.

256.   Upon information and belief, the transfer of SK Foods International to Monterey LLC does not appear on SK Foods LLC's books and records.

257.   The purported transfer of the shares of SK Foods International to Monterey LLC caused SK Foods LLC to become insolvent, as the ownership SK Foods International constituted substantially all of its assets.

258.   As of the alleged January 2009 transfer, SK Foods LLC was insolvent for the reasons set forth above.

259.   As such, if the transfer to Monterey LLC occurred, Monterey LLC is liable as an initial transferee, and the Salyer Defendants, including Stefanie A. Salyer and Caroline G. Salyer, are liable as subsequent transferees, *inter alia*, as beneficiaries of the Cook Islands trust.

ADVERSARY COMPLAINT

260.   Upon information and belief, the Cook Islands Asset Transfers and/or the alleged criminal acts described above caused Cedenco to be placed into receivership by lenders in New Zealand, which caused the Agent's security interest to lose value.

261.   The Cook Islands Asset Transfers could be avoided under the California Uniform Fraudulent Transfer Act, the Illinois Uniform Fraudulent Transfer Act, and/or applicable foreign law by a creditor, such as BMO, holding, inter alia, an unsecured claims.

262.   The Agent is entitled to recover the Cook Islands Asset Transfers or the value of thereof at the time of the transfer notwithstanding any subsequent decline in value pursuant to California Civil Code §§ 3439.08, 3439.07 and 3439.05, and/or the analogous provisions of the Illinois Uniform Fraudulent Transfer Act and/or applicable bankruptcy and foreign law.

WHEREFORE, the Agent prays for a judgment against the defendants identified in this count avoiding and preserving for the benefit of the Agent the transfer of SK Foods International and the Cook Islands Asset Transfers, and entering judgment for the value of the Cedenco businesses at the time of the transfer of SK Foods International and the Cook Islands Asset Transfers the amount of which to be proved at trial, plus interest, attorneys' fees and costs, including, without limitation, pre-judgment and post-judgment interest, the exact amount to be proven and determined at trial, and such other and further relief as this Court deems just and equitable.

COUNT X:  UNJUST ENRICHMENT AGAINST SALYER, SAS 1999 TRUST, CGS 1999 TRUST, SAS 2007 TRUST, CGS 2007 TRUST, STEFANIE A. SALYER, CAROLINE G. SALYER AND MONTEREY PENINSULA FARMING LLC FOR THE UNAUTHORIZED COOK ISLANDS ASSET TRANSFERS

263.   The Agent incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein, and makes the following allegations in this Count X in the alternative to the counts set forth in Count IX above.

- 33 -

264. In light of the wrongful scheme identified in Count IX above, the Salyer Defendants obtained benefits that should have otherwise been retained and used to repay the creditors of SK Foods LLC.

265. Upon information and belief, Monterey LLC received consideration on account of the transfer of SK Foods International to the Cook Islands trust that should have otherwise been retained and used to repay the creditors of SK Foods LLC and inured to the benefit of the Agent.

266. Upon information and belief, the Salyer Defendants retain control and/or possession of a portion of the Cook Islands Asset Transfers identified above, and Monterey LLC retains the benefit of any consideration given on account of the transfer of SK Foods International to the Cook Islands trust.

267. The Agent was entitled to the benefit, use, and value of the Cook Islands Asset Transfers for the benefit of creditors and on account of its security interest.

268. It would be inequitable to permit the Salyer Defendants to retain the Cook Islands Asset Transfers or to permit Monterey LLC to retain the benefits received on account of the transfer of SK Foods International.

269. There is no written contract between the Salyer Defendants or Monterey LLC and the Agent that provides the Agent with a claim for breach of the same against the Salyer Defendants.

270. The Agent has an inadequate remedy at law and is entitled to a judgment against the Salyer Defendants and Monterey LLC for unjust enrichment.

271. As a result, principles of equity dictate that the Salyer Defendants and Monterey LLC be held liable for all damages suffered by the Agent as a result of the Cook Islands Asset Transfers and the transfer of SK Foods International.

ADVERSARY COMPLAINT

272.   The Salyer Defendants have no equitable right to retain the Cook Islands Asset Transfers, as it is value that would not have otherwise been received by the Salyer Defendants and properly belongs to the Agent and the creditors of SK Foods LLC.

273.   Monterey LLC has no equitable right to retain any value received on account of the transfer of SK Foods International as it is value that would not have otherwise been received by Monterey LLC and properly belongs to the Agent and the creditors of SK Foods LLC.

274.   The Agent requests, *inter alia*, that the Court impose a constructive trust in favor of the Agent as to the Cook Islands Asset Transfers and transfer of SK Foods International identified above, the exact value to which the Trustee is entitled to be proven and determined at trial.

275.   The Agent was impoverished by the Cook Islands Asset Transfers and transfer of SK Foods International because these payments were made during a time when SK Foods LLC was experiencing financial difficulty, and because the Salyer Defendants have failed and refused to return these transfers or their value.

276.   There is a direct relationship between the Cook Islands Asset Transfers, the transfer of SK Foods International and the impoverishment of the Agent.

277.   The Salyer Defendants appreciated and had knowledge of the benefit that the they received regarding the Cook Islands Asset Transfers and transfer of SK Foods International because they were made in an attempt to place control of Cedenco in the hands of Salyer, Stefanie A. Salyer, Caroline G. Salyer, SAS 1999 Trust, CGS 1999 Trust, SAS 2007 Trust, CGS 2007 Trust and Salyer's grandchildren.

278.   There is no valid reason why the Salyer Defendants are entitled to retain the Cook Islands Asset Transfers or the value thereof as they knew that they were subject to the claims of the Agent and have no equitable right to retain these transfers.

ADVERSARY COMPLAINT

279.   There is no valid reason why Monterey LLC is entitled to retain the value of the transfer of SK Foods International as the Salyer Defendants knew that they were subject to the claims of the Agent and they have no equitable right to retain these transfers.

280.   Upon information and belief, the Salyer Defendants retain control and/or possession of a portion of the Cook Islands Asset Transfers identified above.

281.   The Agent is entitled to the benefit, use, and value of those transfers for its own benefit and the benefit of creditors.

282.   It would be inequitable to permit the Salyer Defendants to retain such transfers and/or any distributions from the Cook Islands trust.   Unless corrected by the Court, the Cook Islands Asset Transfers or the value thereof would inure exclusively to the Salyer Defendants benefit to the detriment of the Agent.

283.   It would be inequitable to permit Monterey LLC to retain the value of the transfer of SK Foods International and/or any other value received.   Unless corrected by the Court, the value of the transfer of SK Foods International by Monterey LLC would inure exclusively to the Salyer Defendants benefit to the detriment of the Agent.

WHEREFORE, the Agent prays for a judgment against the defendants identified in this count in an amount not less than the value of the Cook Islands Asset Transfers and transfer of SK Foods International, to be proven at trial, together with the value of any additional transfer of assets made by the Salyer Defendants to the Cook Islands on account of Cedenco or other property subject to claims by the Agent, plus interest, attorneys' fees and costs, including, without limitation, pre-judgment and post-judgment interest, the exact amount to be proven and determined at trial, the imposition of a constructive trust on the assets of the Salyer Defendants in the amounts described herein, and such other and further relief as this Court deems just and equitable.

ADVERSARY COMPLAINT

GENERAL RESERVATION OF RIGHTS AND REMEDIES

284. Further investigations may require the addition of other causes of action or additional defendants. The Trustee hereby reserves the right to assert claims for other and additional causes of action, including but not limited to recovery of additional transfers and refunds to the extent payments or refunds are discovered against the defendants named herein or any other defendants, either in this proceeding or in separate suits, adversary proceedings, or contested matters as may be appropriate.

Dated: May 4, 2011

James E. Spiotto
Ann E. Acker
Todd J. Dressel
James M. Heiser
CHAPMAN AND CUTLER LLP

/s/ Todd J. Dressel
TODD J. DRESSEL
Attorneys for Bank of Montreal

ADVERSARY COMPLAINT

# RJN
# EXHIBIT L

**FILED**

JUN 2 8 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA



# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: ) | Case No. 09-29162-D-11 |
| SK FOODS, L.P., ) | |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| BANK OF MONTREAL, as ) | Adv. Pro. No. 11-2340-D |
| Administrative Agent, ) | |
| ) | Docket Control No. NMM-1 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CARL SCOTT COLLINS, et al., ) | DATE:  June 22, 2011 |
| ) | Time:  9:30 a.m. |
| Defendants. ) | Dept:  D |
| _____ ) | |

### ORDER

The court having issued findings and analysis in the matter
of Motion to Stay Adversary Proceeding, Docket Control No. NMM-1
(the "Motion"), which are included in the civil minutes, a copy
of which is attached hereto, and good cause appearing,

IT IS HEREBY ORDERED that the Motion is granted and this
adversary proceeding is stayed pending further order of this
court.

Dated: ___June 27___, 2011      _Robert Bardwil_____
ROBERT S. BARDWIL
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### CIVIL MINUTES

| | | | |
|---|---|---|---|
| **Adversary Title :** | Bank of Montreal v. Collins et al | **Case No :** | 09–29162 – D – 11 |
| | | **Adv No :** | 11–02340 – D |
| | | **Date :** | 6/22/11 |
| | | **Time :** | 10:00 |

| | | |
|---|---|---|
| **Matter :** | [11] – Motion/Application to Stay Adversary Proceeding [NMM–1] Filed by Defendants Monterey Peninsula Farming, LLC, Frederick Scott Salyer (dhes) | OPPOSED |

**Judge :** Robert S. Bardwil
**Courtroom Deputy :** Nancy Williams
**Reporter :** Diamond Reporters
**Department :** D

**APPEARANCES for :**
**Movant(s) :**
  Defendant's Attorney – Eric Safire
**Respondent(s) :**
  Trustee's Attorney – Kevin Coleman, Gregory Nuti
  Creditor's Attorney – James Keowen, Paul Pascuzzi, Todd Dressel, Robert Asperger, James Deher, Micaehl Kuzmich, Warren Felger (phone), Caroline Newman (phone)

MOTION was :

ORDER TO BE PREPARED BY :        Chambers

Final ruling:

This is the motion of defendants Scott Salyer and Monterey Peninsula Farms, LLC (collectively, the defendants) to stay this adversary proceeding. The Bank of Montreal (BMO), who is the plaintiff in this adversary proceeding as successor by assignment to the chapter 11 trustee in this case, opposes the motion. For the reasons set forth below, the court intends to grant the motion.

In April 2010, Salyer and various entities related to him (the Salyer Parties) filed a motion for a stay of certain other adversary proceedings. This adversary proceeding had not yet been commenced at that time. This court denied the April 2010 motion, based in large part on what it perceived to be significant distinctions between the factual allegations in the criminal indictment against Scott Salyer and those in the adversary proceedings. On appeal by the Salyer Parties, the district court for this district reversed and, on April 14, 2011, remanded to this court to decide, in the first instance, whether discovery from or testimony of Salyer or his criminal counsel is reasonably necessary [fn] to dispose of a particular matter before the Bankruptcy Court in the adversary proceedings. Sharp v. SSC Farms I, LLC, United States District Court, Eastern District of California, Civ. No. S–10–1492 LKK (the District Court Action), Order filed April 14, 2011, at 5:11–15. The court defined the applicable standard as follows: A matter is reasonably necessary if [the Salyer Parties] cannot adequately defend themselves in an adversary proceeding without evidence from Salyer or his criminal counsel. Id., 5:15–18.

As a technical matter, the district courts order does not pertain to this adversary proceeding, which had not yet been commenced at the time that order was issued. However, the court finds that the district courts initial ruling, in which it reversed this courts first stay motions in the other adversary proceedings, pertains equally to the facts alleged in this adversary proceeding. See District Court Action, Order filed December 10, 2010. In other words, this court is of the opinion that if the district court

were to consider the facts alleged in this adversary proceeding, it would rule as it did in the other adversary proceedings.

Thus, the court will examine the issues in this particular adversary proceeding in light of the standard set forth by the district court in its April 14, 2011 order. In this adversary proceeding, BMO, as successor by assignment to the trustee, seeks to recover from Scott Salyer, his daughters and their respective trusts, and Cary Collins, alleged to be Salyers accountant, certain tax refunds Collins and/or Salyer received after the filing of the debtors bankruptcy petitions on account of unauthorized and improper tax returns filed by Collins on behalf of the debtors using fabricated figures or estimates. BMO alleges that Collins sent the refunds to overseas bank accounts over which Salyer had control, that Salyer directed and controlled Collins transfers of the refunds to assist in Salyers attempt to hide assets from creditors and to flee criminal prosecution, and that the transfers were made for the benefit of Salyer and his daughters.

As with the other adversary proceedings on this calendar, Salyer is at the center of the factual allegations here. In addition, he is a named defendant in this adversary proceeding. BMO, however, seeks to distinguish this case by pointing out that the defendants have not yet filed an answer or raised any affirmative defenses in this action. The Motions do not even offer speculation as to any future defense; they simply contain a reservation of rights to offer unspecified future defenses. Response and Objection to Movants Motion to Stay, filed June 1, 2011 (Response), 2:5−7.

The court does not agree that this is a significant distinguishing factor considering the allegations contained in BMOs complaint that Salyer essentially directed and controlled Collins actions for the benefit of himself and his daughters, the court rejects BMOs contention that it is impossible . . . to determine what is at issue in this matter or how Salyers testimony is relevant to any disputed claim or defense. Response, 1:14−16.

BMOs next arguments seek to set up higher standards than the one articulated by the district court. BMO contends the defendants must show, and have not shown, a particular defense for which they require evidence from Salyer. Absent any specific defense that Salyers testimony would purportedly support, the Movants have failed to make the requisite showing required by Judge Karlton that Salyers testimony is necessary or required for any defense they wish to raise. 5:6−8. Similarly,

[i]f Salyer chooses to assert his Fifth Amendment rights and remain silent, Movants can only be prejudiced if the testimony Salyer would have offered would have been helpful to their case. However, the Movants have made no effort to suggest how any such incriminating testimony could help them defend on the merits in this civil case. Id. 7:9−12.

This court does not interpret the district courts April 14, 2011 order as requiring the defendants to make either of these showings. Instead, the test this court is to apply is simple is discovery from or testimony of Salyer or his criminal counsel reasonably necessary for the defendants to adequately defend themselves in this adversary proceeding? BMO suggests Salyer is free to offer non−incriminating testimony, that the trustees allegations are based on publicly filed documents and center around issues of law, and that any valid defenses the defendants may have would be most likely substantiated by documentary evidence, and not by Salyers testimony. Response, 8:1−2. On the contrary, based on the factual allegations in the adversary proceeding, the court is satisfied that Salyer is central to the disputes raised; the court need not speculate on what other sources might be available if Salyer is not, and the defendants will not be required to disprove the existence or adequacy of such other sources.

BMOs remaining arguments were addressed in connection with the Salyer Parties first motion for a stay in the other adversary proceedings; they were discussed in this courts ruling on that motion, which has been reversed by the district court: (1) that Salyer has not properly invoked his privilege against self−incrimination because he has done nothing more than assert a blanket Fifth Amendment claim; (2) that the events involved in the adversary proceedings are distinct from those involved in the criminal indictment; (3) that if a stay is imposed, the plaintiff will have to sit idle for perhaps years, even if the defendants assets are being depleted; and (4) the Keating factors do not warrant the imposition of a stay (see Keating v. Office of Thrift Supervision, 45 F.3d 322, 324−25 (9th Cir. 1995)). Although the district court did remand the stay matter to this court, it in no way reversed its position on these arguments, which it rejected in the original appeal, and it did not indicate in any way that these issues were again on the table. As indicated above, this court believes the district court would rule on these issues in this adversary proceeding as it did in the other adversary proceedings; this court will not revisit them here.

The real problem with BMOs opposition to the motion is that it does not apply the standard set by the district court, but merely cites broad principles, draws broad conclusions, and charges the defendants with failing to provide sufficient particulars of the necessity of Salyers testimony. In the courts view, the factual allegations of the complaint are such that Salyers testimony (and possibly that of his criminal counsel) is likely to be central to resolution of the issues. Thus, the court concludes that evidence from Salyer and/or

his criminal counsel is reasonably necessary for the defendants to adequately defend themselves in this proceeding, and applying the district courts standard as set forth in its April 14, 2011 order, the court will grant the motion.

Finally, the Salyer Parties motions to stay certain other adversary proceedings in this case, which are also on this calendar, were met with a suggestion by the trustee that discovery could proceed against the employees, directors, officers, witnesses or other third parties related to the Defendants who would also have knowledge and information relevant to the defense without impairing Salyers Fifth Amendment rights. Sharp v. Salyer, Adv. No. 10-2014, Opposition to Defendants Supplemental Motion to Stay Adversary Proceedings, filed June 1, 2011, 20:17-20. The trustee quoted from an exchange at the April 11, 2011 district court hearing, and concluded in his opposition to the stay motion that all parties are in agreement that any stay that this Court might enter should not prevent the Trustee and the Defendants from taking discovery from other third parties, who have evidence related to the Adversary Proceedings. Id., 21:4-6. The Salyer Parties filed a reply to the trustees opposition, in which they did not take issue with this conclusion.

However, at the hearing on the present motion, the Salyer Parties stated that they do oppose permitting the trustee to take third-party discovery. The court has reviewed the transcript of the April 11, 2011 hearing in the district court, together with the order issued following that hearing, on April 14, 2011. Although the issue of third-party discovery was discussed at the hearing, there is nothing in the order to suggest that if this court finds that the Salyer Parties cannot adequately defend themselves in a particular adversary proceeding without discovery from or testimony of Salyer or his criminal counsel, it may nevertheless allow discovery to proceed against third parties. In short, this court has found, above, that Salyer is sufficiently at the center of the disputes in this adversary proceeding that the defendants cannot adequately defend themselves without testimony of or discovery from Salyer and/or his criminal counsel. Thus, the language of the April 14, 2011 order suggests to this court that the adversary proceeding should be stayed, with no exception for third-party discovery. Accordingly, the motion will be granted and the adversary proceeding will be stayed. The court will issue an appropriate order.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**CERTIFICATE OF MAILING**

    The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities at the addresses shown below or on the attached list.

SEE ATTACHED LIST

DATED: 6/28/11         By: _____
                                   Deputy Clerk

EDC 3-070 (Rev. 6/28/10)

1

2   Kevin Coleman
    Schnader Harrison Segal & Lewis
    One Montgomery Street, Suite 2200
3   San Francisco, CA 94104-5501

4   Jaime Dreher
    Downey Brand, LLP
5   621 Capitol Mall, 18th Floor
    Sacramento, CA 95814-4731

6

7   Marc Levinson
    Orrick Herrington & Sutcliffe
    400 Capitol Mall, Suite 3000
8   Sacramento, CA 95814-4497

9

10  Paul Pascuzzi
    Felderstein Fitzgerald
      Willoughby & Pascuzzi
11  400 Capitol Mall, Suite 1450
    Sacramento, CA 95814

12

13  Todd Dressel
    Chapman and Cutler, LLP
    595 Market Street, 26th Floor
14  San Francisco, CA 94105

15  James Keowen
    Nageley Meredith & Miller, Inc.
16  8001 Folsom Blvd., Suite 100
    Sacramento, CA 95826

17

18  Larry Lichtenegger
    Lichtenegger Law Offices
19  3850 Rio Road, Suite 58
    Carmel, CA 93926

20  Malcolm Segal
    Segal & Kirby, LLP
21  770 L Street, 1440
    Sacramento, CA 95814

22

23  Eric Safire
24  2431 Fillmore St.
    San Francisco, CA 94115

25

26  Robert Asperger
    Office of the Attorney General
    1300 I Street
27  Sacramento, CA 95814

28

1  Michael Kuzmich
   Boutin Gibson DiGiusto Hodell, Inc.
2  555 Capitol Mall, Suite 1500
   Sacramento, CA 95814
3
   Warren Felger
4  Felger & Associates
   726 W. Barstow Ave., #106
5  Fresno, CA 93704

6  Caroline Newman
   Internal Revenue Service
7  P.O. Box 683
   Washington, DC 20044
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# RJN
# EXHIBIT M

**FILED**

JUN 2 8 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

1

2

3 UNITED STATES BANKRUPTCY COURT

4 EASTERN DISTRICT OF CALIFORNIA

5

6 In re:                                )    Case No. 09-29162-D-11
                                        )
7 SK FOODS, L.P.,                       )
                                        )
8                                       )
                    Debtor.             )
9 _____   )
                                        )
10 BANK OF MONTREAL, as                 )    Adv. Pro. No. 11-2339-D
   Administrative Agent,                )
11                                      )    Docket Control No. RSJ-1
                        Plaintiff,      )
12                                      )
   v.                                   )
13                                      )
   CALIFORNIA FRANCHISE TAX BOARD,      )    DATE:  June 22, 2011
14 et al.,                              )    Time:  9:30 a.m.
                                        )    Dept:  D
15                     Defendants.      )
   _____  )

16

17                          <u>ORDER</u>

18       The court having issued findings and analysis in the matter

19 of Motion to Stay Adversary Proceeding, Docket Control No. RSJ-1

20 (the "Motion"), which are included in the civil minutes, a copy

21 of which is attached hereto, and good cause appearing,

22       IT IS HEREBY ORDERED that the Motion is granted and this

23 adversary proceeding is stayed pending further order of this

24 court.

25
   Dated: _June 27_ , 2011        _Robert Bardwil_____
26                                ROBERT S. BARDWIL
                                  United States Bankruptcy Judge
27

28

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA
# CIVIL MINUTES

| | | | |
|---|---|---|---|
| **Adversary Title :** | Bank of Montreal v. California Franchise Tax Board et al | **Case No :** | **09−29162 − D − 11** |
| | | **Adv No :** | **11−02339 − D** |
| | | **Date :** | 6/22/11 |
| | | **Time :** | 10:00 |
| **Matter :** | [11] − Motion/Application to Stay Adversary Proceeding [RSJ−1] Filed by Interested Party Robert Pruett, Defendants Caroline G. Salyer, Stefanie A. Salyer (dhes) Modified on 5/18/2011 (dhes). | | OPPOSED |
| **Judge :** | Robert S. Bardwil | | |
| **Courtroom Deputy :** | Nancy Williams | | |
| **Reporter :** | Diamond Reporters | | |
| **Department :** | D | | |

**APPEARANCES for :**
**Movant(s) :**
    Defendant's Attorney − Eric Safire
**Respondent(s) :**
    Trustee's Attorney − Gregory Nuti, Kevin Coleman
    Creditor's Attorney − James Keowen, Paul Pascuzzi, Todd Dressel, Robert Asperger, James Deher, Michael Kuzmich, Warren Felger (phone), Caroline Newman (phone)

MOTION was :

ORDER TO BE PREPARED BY :        Chambers

Final ruling:

This is the motion of defendants Stefanie A. Salyer, Caroline G. Salyer, and Robert Pruett, in his capacity as trustee of the SAS 1999 Trust and of the CGS 1999 Trust (collectively, the defendants) to stay this adversary proceeding. The Bank of Montreal (BMO), who is the plaintiff in this adversary proceeding as successor by assignment to the chapter 11 trustee in this case, opposes the motion. For the reasons set forth below, the court intends to grant the motion.

In April 2010, Salyer and various entities related to him (the Salyer Parties) filed a motion for a stay of certain other adversary proceedings. This adversary proceeding had not yet been commenced at that time. This court denied the April 2010 motion, based in large part on what it perceived to be significant distinctions between the factual allegations in the criminal indictment against Scott Salyer and those in the adversary proceedings. On appeal by the Salyer Parties, the district court for this district reversed and, on April 14, 2011, remanded to this court to decide, in the first instance, whether discovery from or testimony of Salyer or his criminal counsel is reasonably necessary [fn] to dispose of a particular matter before the Bankruptcy Court in the adversary proceedings. Sharp v. SSC Farms I, LLC, United States District Court, Eastern District of California, Civ. No. S−10−1492 LKK (the District Court Action), Order filed April 14, 2011, at 5:11−15. The court defined the applicable standard as follows: A matter is reasonably necessary if [the Salyer Parties] cannot adequately defend themselves in an adversary proceeding without evidence from Salyer or his criminal counsel. Id., 5:15−18.

As a technical matter, the district courts order does not pertain to this adversary proceeding, which had not yet been commenced at the time that order was issued. However, the court finds that the district courts

initial ruling, in which it reversed this courts orders on the Salyer Parties first stay motions in the other adversary proceedings, pertains equally to the facts alleged in this adversary proceeding. See District Court Action, Order filed December 10, 2010. In other words, this court is of the opinion that if the district court were to consider the facts alleged in this adversary proceeding, it would rule as it did in the other adversary proceedings.

Thus, the court will examine the issues in this particular adversary proceeding in light of the standard set forth by the district court in its April 14, 2011 order. In this adversary proceeding, BMO, as successor by assignment to the trustee, seeks to recover from the California Franchise Tax Board payments alleged to have been made by the debtors, SK Foods and RHM Industrial Specialty Foods, Inc., on account of Scott Salyers and his daughters income tax obligations for which the debtors had no liability. BMO also seeks to recover from Salyer, his daughters, and their respective trusts the value of the transfers, including certain tax refunds. BMO alleges in its complaint that all the payments in question were made at Salyers direction.

As with the other adversary proceedings on this calendar, Salyer is at the center of the factual allegations here. BMO, however, seeks to distinguish this case by focusing on the presence of the Franchise Tax Board an entity completely unrelated to Scott Salyer as the primary defendant: This case is primarily against the California Franchise Tax Board (the FTB), who was the initial transferee of tax payments made by the Debtors to satisfy the personal tax obligations of the Movants. The Movants are only named in this case as subsequent transferees and beneficiaries of these transfers. Response and Objection to Movants Motion to Stay, filed June 1, 2011 (Response), 1:27–2:3. As a second point of distinction, BMO points out that the defendants have not yet filed an answer or raised any affirmative defenses in this action. The Motions do not even offer speculation as to any future defense; they simply contain a reservation of rights to offer unspecified future defenses. Response, 2:11–12.

The court does not agree that these are significant distinguishing factors. First, neither the letter nor the spirit of the district courts order suggests this court is to consider whether the parties moving for a stay are primary or secondary defendants. The defendants are clearly key players in this proceeding whose rights are to be protected in the face of Salyers invocation of his Fifth Amendment privilege. Further, BMO itself recognizes that the Franchise Tax Board might file cross–claims against the defendants; for this reason, the court rejects BMOs suggestion that the action be allowed to proceed against the Franchise Tax Board. Second, the fact that the defendants have not yet responded to BMOs complaint is not a determining issue considering the allegations contained in BMOs complaint that the debtors made all the payments in question at Salyers direction, the court rejects BMOs contention that it is impossible . . . to determine what is at issue in this matter or how Salyers testimony is relevant to any disputed claim or defense. Response, 1:16–18.

BMOs next arguments seek to set up higher standards than the one articulated by the district court. BMO contends the defendants must show, and have not shown, a particular defense for which they require evidence from Salyer. Absent any specific defense that Salyers testimony would purportedly support, the Movants have failed to make the requisite showing required by Judge Karlton that Salyers testimony is necessary or required for any defense they wish to raise. 5:6–8. Similarly,

if Salyer chooses to assert his Fifth Amendment rights and remain silent, Movants can only be prejudiced if the testimony Salyer would have offered would have been helpful to their case. However, the Movants have made no effort to suggest how any such incriminating testimony could help them defend on the merits in this civil case. Id. 7:9–12.

This court does not interpret the district courts April 14, 2011 order as requiring the defendants to make either of these showings. Instead, the test this court is to apply is simple is discovery from or testimony of Salyer or his criminal counsel reasonably necessary for the defendants to adequately defend themselves in this adversary proceeding? BMO suggests Salyer is free to offer testimony that does not incriminate himself, and that any valid defenses the defendants may have would be most likely substantiated by documentary evidence or expert testimony regarding solvency, and not by Salyers testimony. Response, 7:27–8:2. On the contrary, based on the factual allegations in the adversary proceeding, the court is satisfied that Salyer is central to the disputes raised; the court need not speculate on what other sources might be available if Salyer is not, and the defendants will not be required to disprove the existence or adequacy of such other sources.

BMOs remaining arguments were addressed in connection with the Salyer Parties first motion for a stay in the other adversary proceedings; they were discussed in this courts ruling on that motion, which has been reversed by the district court: (1) that Salyer has not properly invoked his privilege against self–incrimination because he has done nothing more than assert a blanket Fifth Amendment claim; (2) that the events involved in the adversary proceedings are distinct from those involved in the criminal indictment; (3) that if a stay is imposed, the plaintiff will have to sit idle for perhaps years, even if the defendants assets

are being depleted; and (4) the Keating factors do not warrant the imposition of a stay (see Keating v. Office of Thrift Supervision, 45 F.3d 322, 324-25 (9th Cir. 1995)). Although the district court did remand the stay matter to this court, it in no way reversed its position on these arguments, which it rejected in the original appeal, and it did not indicate in any way that these issues were again on the table. As indicated above, this court believes the district court would rule on these issues in this adversary proceeding as it did in the other adversary proceedings; this court will not revisit them here.

The real problem with BMOs opposition to the motion is that it does not apply the standard set by the district court, but merely cites broad principles, draws broad conclusions, and charges the defendants with failing to provide sufficient particulars of the necessity of Salyers testimony. In the courts view, the factual allegations of the complaint are such that Salyers testimony (and possibly that of his criminal counsel) is likely to be central to resolution of the issues. Thus, the court concludes that evidence from Salyer and/or his criminal counsel is reasonably necessary for the defendants to adequately defend themselves in this proceeding, and applying the district courts standard as set forth in its April 14, 2011 order, the court will grant the motion.

Finally, the Salyer Parties motions to stay certain other adversary proceedings in this case, which are also on this calendar, were met with a suggestion by the trustee that discovery could proceed against the employees, directors, officers, witnesses or other third parties related to the Defendants who would also have knowledge and information relevant to the defense without impairing Salyers Fifth Amendment rights. Sharp v. Salyer, Adv. No. 10-2014, Opposition to Defendants Supplemental Motion to Stay Adversary Proceedings, filed June 1, 2011, 20:17-20. The trustee quoted from an exchange at the April 11, 2011 district court hearing, and concluded in his opposition to the stay motion that all parties are in agreement that any stay that this Court might enter should not prevent the Trustee and the Defendants from taking discovery from other third parties, who have evidence related to the Adversary Proceedings. Id., 21:4-6. The Salyer Parties filed a reply to the trustees opposition, in which they did not take issue with this conclusion.

However, at the hearing on the present motion, the Salyer Parties stated that they do oppose permitting the trustee to take third-party discovery. The court has reviewed the transcript of the April 11, 2011 hearing in the district court, together with the order issued following that hearing, on April 14, 2011. Although the issue of third-party discovery was discussed at the hearing, there is nothing in the order to suggest that if this court finds that the Salyer Parties cannot adequately defend themselves in a particular adversary proceeding without discovery from or testimony of Salyer or his criminal counsel, it may nevertheless allow discovery to proceed against third parties. In short, this court has found, above, that Salyer is sufficiently at the center of the disputes in this adversary proceeding that the defendants cannot adequately defend themselves without testimony of or discovery from Salyer and/or his criminal counsel. Thus, the language of the April 14, 2011 order suggests to this court that the adversary proceeding should be stayed, with no exception for third-party discovery. Accordingly, the motion will be granted and the adversary proceeding will be stayed. The court will issue an appropriate order.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United
States Bankruptcy Court for the Eastern District of California
hereby certifies that a copy of the document to which this
certificate is attached was mailed today to the following
entities at the addresses shown below or on the attached list.

SEE ATTACHED LIST

DATED: 6/28/11                By: _____
                                      Deputy Clerk

EDC 3-070 (Rev. 6/28/10)

1

Kevin Coleman
2    Schnader Harrison Segal & Lewis
One Montgomery Street, Suite 2200
3    San Francisco, CA 94104-5501

4    Jaime Dreher
Downey Brand, LLP
5    621 Capitol Mall, 18th Floor
Sacramento, CA 95814-4731
6

Marc Levinson
7    Orrick Herrington & Sutcliffe
400 Capitol Mall, Suite 3000
8    Sacramento, CA 95814-4497

9

Paul Pascuzzi
10   Felderstein Fitzgerald
      Willoughby & Pascuzzi
11   400 Capitol Mall, Suite 1450
Sacramento, CA 95814
12

Todd Dressel
13   Chapman and Cutler, LLP
595 Market Street, 26th Floor
14   San Francisco, CA 94105

15   James Keowen
Nageley Meredith & Miller, Inc.
16   8001 Folsom Blvd., Suite 100
Sacramento, CA 95826
17

18   Larry Lichtenegger
Lichtenegger Law Offices
19   3850 Rio Road, Suite 58
Carmel, CA 93926
20

Malcolm Segal
21   Segal & Kirby, LLP
770 L Street, 1440
22   Sacramento, CA 95814

23

Eric Safire
24   2431 Fillmore St.
San Francisco, CA 94115
25

Robert Asperger
26   Office of the Attorney General
1300 I Street
27   Sacramento, CA 95814

28

1   Michael Kuzmich
    Boutin Gibson DiGiusto Hodell, Inc.
2   555 Capitol Mall, Suite 1500
    Sacramento, CA 95814

3

    Warren Felger
4   Felger & Associates
    726 W Barstow Ave., #106
5   Fresno, CA 93704

6   Caroline Newman
    Internal Revenue Service
7   P.O. Box 683
    Washington, DC 20044

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# RJN
# EXHIBIT N

2011-02337
FILED
May 04, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003469714

1  Gregory C. Nuti (CSBN151754)
   E-Mail: gnuti@schnader.com
2  Christopher H. Hart (CSBN 184117)
   E-Mail: chart@schnader.com
3  Natalie Bush-Lents (CSBN 253124)
   E-Mail: nbush-lents@schnader.com
4  SCHNADER HARRISON SEGAL & LEWIS LLP
   One Montgomery Street, Suite 2200
5  San Francisco, California  94104-5501
   Telephone: 415-364-6700
6  Facsimile: 415-364-6785

7  Attorneys for Bradley D. Sharp,
   Chapter 11 Trustee

8

9                    UNITED STATES BANKRUPTCY COURT

10                    EASTERN DISTRICT OF CALIFORNIA

11                         SACRAMENTO DIVISION

12  In re:                                  Case No. 09-29162-D-11

13  SK FOODS, L.P., a California limited     Chapter 11
14  partnership,
                                            Adversary Proceeding No.
15               Debtor.

16  ────────────────────────────────

17  BRADLEY D. SHARP, Chapter 11 Trustee,   COMPLAINT FOR:

                Plaintiff,                  1.  AVOIDANCE AND RECOVERY OF
18                                              TRANSFERS OF PROPERTY
        vs.                                     PURSUANT TO 11 U.S.C. §§ 544, 548,
19                                              AND 550 AND CALIFORNIA CIVIL
    SKPM Corp., Inc., SSC&L 2007 Trust,         CODE  §§3439.04, 3439.05, AND
20  Monterey Peninsula Farms, LLC, Fredrick     3439.07;
    Scott Salyer aka Scott Salyer in his capacity  2.  WILLFUL VIOLATION OF THE
21  as trustee of the Scott Salyer Revocable        AUTOMATIC STAY
    Trust and trustee of the SSC&L 2007 Trust,
22  Scott Salyer Revocable Trust, Fast Falcon,
    LLC, Henry John Heath, and Does 1-5,
23
                Defendants.
24

25

26       Bradley D. Sharp (the "Trustee" or "Plaintiff"), the duly appointed and acting chapter

27  11 trustee for substantively consolidated debtors SK Foods, L.P., a California limited

28  partnership ("SK Foods"), and RHM Industrial/Specialty Foods, Inc., a California corporation,

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

d/b/a Colusa County Canning Co. ("RHM" and collectively with SK Foods, the "Debtors"),

alleges as follows:

## INTRODUCTION

1. By this complaint, the Trustee seeks to recover certain transfers of SK Foods' property to the extent that such transfers occurred. Specifically, the Trustee seeks to recover SK Foods' equity interest in SK Foods Australia Pty Ltd. ("Cedenco") that was allegedly transferred to or by various entities owned and controlled by Scott Salyer as set forth below. Additionally, the Trustee seeks to recover an intercompany claim for a loan that SK Foods made to Cedenco that was also allegedly transferred to or by various entities owned and controlled by Scott Salyer as set forth below.

2. In connection with attempting to effectuate the alleged transfers, Henry John Heath, a former director of Cedenco took actions post-petition in an attempt to effectuate the alleged transfers describes herein in violation of 11 U.S.C. § 362.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(H).

4. Venue properly lies in this judicial district pursuant to 28 U.S.C. §1409(a) in that the instant adversary proceeding is related to the above-captioned case under Title 11 of the United States Code.

## THE PARTIES

5. Plaintiff Bradley D. Sharp is the duly appointed and acting Chapter 11 Trustee in the cases of SK Foods, L.P., a California limited partnership ("SK Foods"), and RHM Industrial Specialty Foods, Inc., a California corporation, d/b/a Colusa County Canning Co. ("RHM") (collectively, "the Debtors").

6. Fredrick Scott Salyer aka Scott Salyer ("Salyer") is an individual residing in the State of California. The Trustee is informed and believes and thereon alleges that Salyer is trustee of Scott Salyer Revocable Trust and the SSC&L 2007 Trust.

SCHRADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

2

**COMPLAINT**

SCHRADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

1    7.    The Trustee is informed and believes and thereon alleges that the Scott Salyer

2  Revocable Trust ("SSRT") is a California trust whose beneficiary is Salyer.  SSRT is the sole

3  limited partner of SK Foods.

4    8.    The Trustee is informed and believes and thereon alleges that SKPM

5  Corporation ("SKPM"), a California corporation, is the general partner of SK Foods and is

6  wholly owned by the Scott Salyer Revocable Trust.

7    9.    The Trustee is informed and believes and thereon alleges that the SSC&L 2007

8  Trust ("SSC&L") is a California trust whose beneficiary is Salyer.

9    10.    The Trustee is informed and believes and thereon alleges that Fast Falcon, LLC

10  is an entity of unknown capacity whose address is 3450 21st Street, San Francisco, California

11  94104.  Cary S. Collins is its manager.

12    11.    Monterey Peninsula Farms, LLC ("MPF") is a California limited liability

13  company.  Salyer, SKPM, SSRT, SSC&L, MPF, Fast Falcon, and MPF are collectively

14  referred to as the "Salyer Defendants".

15    12.    Henry John Heath ("Heath") is an individual and resident of Australia.  Heath is

16  a former director of Cedenco.

17    13.    The true names and capacities of Defendants DOES 1 through 5, inclusive, are

18  unknown to Plaintiff at this time.  Therefore, the Trustee sues said Defendants by such

19  fictitious names.  The Trustee believes that each of these fictitiously named Defendants is

20  responsible in some manner for the occurrences alleged herein and is believed to have

21  proximately caused damages.  The Trustee will seek leave of Court to amend this Complaint to

22  insert the true names and capacities of said fictitiously named Defendants when the same have

23  been ascertained.

24                              **GENERAL ALLEGATIONS**

25    14.    On May 5, 2009 (the "Petition Date"), involuntary bankruptcy petitions were

26  filed against Debtors SK Foods and RHM.  Thereafter, on May 7, 2009, the Debtors filed a

27  voluntary petition for relief (the "Bankruptcy Case") under chapter 11 of Title 11 of the United

28

PHDATA 3369682_1

**COMPLAINT**

SCHRADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

1  States Code, 11 U.S.C. § 101, et. seq. (the "Bankruptcy Code"). The Plaintiff was appointed

2  the chapter 11 trustee in the Bankruptcy Case and presently serves in that capacity.

**The Intercompany Loan**

4      15.    On February 27, 2002, SK Foods transferred US$6,250,000.00 from Mid-

5  Peninsula Bank to Banc One, NA Australian Branch for the benefit of Cedenco. At the

6  exchange rate at that time, that resulted in a deposit of AU$12,131,152.95. Cedenco entered

7  this transaction on its books as a loan from SK Foods. Scott Salyer signed a promissory note

8  payable to SK Foods from Cedenco dated February 25, 2002 for AU$12,131,152.95

9  ("Intercompany Loan").

10      16.    Cedenco at all times treated the Intercompany Loan as a loan from SK Foods.

11      17.    The amount owing on the Intercompany Loan as of the date of this complaint is

12  in excess of US$17,074,283.00 plus accruing interest and other charges.

**Equity Interest in Cedenco**

14      18.    In January 2002, Cedenco issued 100 shares to SK Foods and SK Foods

15  consented to becoming a member of Cedenco. Attached as Exhibit A is Cedenco's statutory

16  register indicating SK Foods ownership of 100 shares of Cedenco.

17      19.    On February 28, 2002, SK Foods instructed Banc One, NA Australian Branch

18  to transfer AU$12,040,438.02 from Cedenco to Cerebosa, the then other interest holder in

19  Cedenco in full satisfaction of Cerebosa's interest in Cedenco. Thereafter, SK Foods held

20  99.01% of the equity in Cedenco ("Equity Interest").

**Liquidation of Cedenco**

22      20.    Cedenco is subject to liquidation proceedings in Australia which has resulted in

23  its sale ("Australian Liquidation"). The Australian Liquidation has produced proceeds

24  sufficient to pay all creditors of Cedenco in full, including the Intercompany Loan, and provide

25  payment on account of SK Food's Equity Interest in an amount in excess of $32 million.

26      21.    The Australian Liquidation is currently being administered by Sheahan Lock

27  Partners in Adelaide, Australia ("Liquidator"). The Liquidator has requested anyone asserting

28  a claim to the proceeds of the Australian Liquidation to submit such claims to the Liquidator.

4

**COMPLAINT**

1    22.    The Trustee has submitted claims to the Liquidator for payment on account of

2 the Intercompany Loan and the Equity Interest.

3    23.    The Salyer Defendants have also submitted claims to the Liquidator for

4 payment on account of the Intercompany Loan and Equity Interest claiming SK Foods

5 transferred these assets pre-petition as set forth below.

6                    **ALLEGED TRANSFER OF INTERCOMPANY LOAN**

7    24.    The Trustee is informed and believe and thereon alleges that the Salyer

8 Defendants claim SK Foods transferred the Intercompany Loan to SSC&L ("Initial

9 Intercompany Loan Transfer").  Although the Salyer Defendants do not disclose the date of the

10 alleged transfer, the earliest this transfer could have occurred, if at all, is December 18, 2007.

11    25.    The Trustee is informed and believe and thereon alleges that SSC&L did not

12 pay any consideration to SK Foods for the Initial Intercompany Loan Transfer.

13    26.    The Trustee is informed and believe and thereon alleges that the Salyer

14 Defendants claim that SSC&L thereafter transferred the Intercompany Loan to Fast Falcon

15 ("Subsequent Intercompany Loan Transfer").

16    27.    The Trustee is informed and believe and thereon alleges that Fast Falcon did not

17 pay any consideration to SSC&L for the Subsequent Intercompany Loan Transfer.

18    28.    The Trustee contends the Initial Intercompany Loan Transfer and Subsequent

19 Intercompany Loan Transfer (collectively, "Loan Transfers") each were invalid and of no

20 effect such that SK Foods at all relevant times retained complete ownership and title to the

21 Intercompany Loan.  Whether the Loan Transfers transferred the Intercompany Loan is an

22 issue being decided in the context of the Australian Liquidation.  In the event the Liquidator

23 finds either or both of the Loan Transfers valid, then the Trustee may avoid either or both Loan

24 Transfer as fraudulent conveyances as set forth below.

25                    **ALLEGED TRANSFER OF THE EQUITY INTEREST**

26

27    29.    The Trustee is informed and believe and thereon alleges that the Salyer

28 Defendants claim SK Foods transferred the Equity Interest to SKPM and SSRT, transferring

SCHRADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

5

PHDATA 3369682_1

COMPLAINT

SCHRADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

1  54.45% to SKPM ("SKPM Interest") and 45.55% to SSRT ("SSRT Interest"). The transfer of

2  the SKPM Interest and SSRT Interest shall be referred to collectively as the "Initial Equity

3  Transfer". The Initial Equity Transfer could not have occurred, if at all, prior to March 28,

4  2008.

5        30.    The Trustee is informed and believe and thereon alleges that SK Foods did not

6  receive any consideration for the Initial Equity Transfer.

7        31.    The Trustee is informed and believe and thereon alleges that the Salyer

8  Defendants claim that SKPM thereafter transferred the SKPM Interest to MPF on or about

9  January 17, 2009 (the "SKPM Subsequent Transfer").

10        32.    The Trustee is informed and believe and thereon alleges that SKPM did not

11  receive any consideration in exchange for the SKPM Subsequent Transfer.

12        33.    The Trustee is informed and believe and thereon alleges that the Salyer

13  Defendants claim that SSRT thereafter transferred the SSRT Interest to MPF on or about

14  January 17, 2009 (the "SSRT Subsequent Transfer").

15        34.    The Trustee is informed and believe and thereon alleges that SSRT did not

16  receive any consideration in exchange for the SSRT Subsequent Transfer.

17        35.    The Trustee is informed and believe and thereon alleges that the Salyer

18  Defendants claim that MPF thereafter transferred the SKPM Interest and SSRT Interest to Fast

19  Falcon on or about June 29, 2009 (collectively, the "MPF Subsequent Transfers").

20        36.    The Trustee is informed and believe and thereon alleges that MPF did not

21  receive any consideration in exchange for the MPF Subsequent Transfers.

22        37.    The Trustee contends the Initial Equity Transfer, SKPM Subsequent Transfer,

23  SSRT Subsequent Transfer and MPF Subsequent Transfer (collectively, "Equity Transfers")

24  each were invalid and of no effect such that SK Foods at all relevant times retained complete

25  ownership and title to the Australian Equity. Whether the Equity Transfers transferred the

26  Australian Equity is an issue being decided in the context of the Australian Liquidation. In the

27  event the Liquidator finds any or all of the Equity Transfers valid, then the Trustee may avoid

28  any and all of the Equity Transfers as fraudulent conveyances as set forth below.

6

PHDATA 3369682_1

COMPLAINT

38.     Realizing the documentation of the Initial Equity Transfer was insufficient to effectuate a transfer of the Equity Interest, on or about July 10, 2009, Heath prepared and filed an Australian Securities & Investments Commission form entitled "Change to company details" (the "ASIC Form").  A copy of the ASIC form is attached as Exhibit B.  Heath prepared and filed the ASIC Form with the intent to cure a legal defect in the documentation of Initial Equity Transfer and thus effectuate the intended transfer.

**COUNT I**
**To Avoid and Recover Fraudulent Transfers**
**(Loan Transfers)**
**11  U.S.C. §§548(a)(1)(B) and 550(a) and Cal. Civil Code §§3439.05 and 3439.07**
**Against Defendant SSC&L 2007 Trust, Fast Falcon and Does 1 through 5**

39.     The Trustee hereby refers to Paragraphs 1 through 38, inclusive, and by such reference hereby incorporates and re-alleges them herein.

40.     To the extent they occurred, the Loan Transfers were transfers of SK Foods' property.

41.     To the extent they occurred, the Loan Transfers were made within four years of the date of the Petition.

42.     To the extent they occurred, the Loan Transfers were made without SK Foods receiving a reasonably equivalent value from the SSC&L or Fast Falcon in exchange for the Loan Transfers.

43.     To the extent the Loan Transfers occurred, SK Foods was insolvent on the date of the Initial Loan Transfer was made or became insolvent as a result of the Initial Loan Transfer, or was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with SK Foods was unreasonably small capital, or intended to incur, or believed that SK Foods would incur debts that would be beyond SK Foods' ability to pay such debts as they matured.

44.     To the extent the Loan Transfers occurred, the Trustee is entitled to avoid and recover the Loan Transfers or the value of the Loan Transfers from SSC&L and Fast Falcon

SCHRADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA  94104-5501
TELEPHONE: (415) 564-6700
FAX: (415) 564-6783

7

**COMPLAINT**

1    for the benefit of the estate pursuant to the provisions of 11 U.S.C. §§548(a)(1)(B) and 550(a)

2    and California Civil Code §§3439.07 and 3439.05.

3         Wherefore, the Trustee prays for judgment as set forth below.

4                                    **COUNT II**
                        **To Avoid and Recover Fraudulent Transfers**
5                                  **Equity Transfers**
6      **11 U.S.C. §§548(a)(1)(B) and 550(a) and Cal. Civil Code §§3439.05 and 3439.07**
                **Against Defendants SKPM, SSRT, MPF, Fast Falcon, and Does 1 through 5**

7         45.    The Trustee hereby refers to Paragraphs 1 through 44, inclusive, and by such

8    reference hereby incorporates and re-alleges them herein.

9         46.    To the extent they occurred, the Equity Transfers were transfers of SK Foods'

10   property.

11        47.    To the extent they occurred, the Equity Transfers were made within four years

12   of the date of the Petition.

13        48.    To the extent they occurred, the Equity Transfers were made without SK Foods

14   receiving a reasonably equivalent value from SKPM.

15        49.    To the extent the Equity Transfers occurred, SK Foods was insolvent on the

16   date of the Initial Equity Transfer was made or became insolvent as a result of the Initial

17   Equity Transfer, or was engaged in business or a transaction, or was about to engage in

18   business or a transaction, for which any property remaining with SK Foods was unreasonably

19   small capital, or intended to incur, or believed that SK Foods would incur debts that would be

20   beyond SK Foods' ability to pay such debts as they matured.

21        50.    To the extent the Equity Transfers occurred, Plaintiff is entitled to avoid and

22   recover the Equity Transfers or the value of the Equity Transfers from SSC&L, SSRT, MPF

23   and Fast Falcon for the benefit of the estate pursuant to the provisions of 11 U.S.C.

24   §§548(a)(1)(B) and 550(a) and California Civil Code §§3439.07 and 3439.05.

25                                   **COUNT III**
         **Damages for Willful Violation of the Automatic Stay Pursuant to 11 U.S.C. § 362**
26                   **Against Defendant Henry John Heath and Does 1 through 5**

27        51.    The Trustee hereby refers to Paragraphs 1 through 50, inclusive, and by such

28   reference hereby incorporates and re-alleges them herein.

SCHRADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

8

PHDATA 3369682_1

**COMPLAINT**

52.    Pursuant to 11 U.S.C. § 362(a) the filing of the Debtor's bankruptcy petition stayed any act by the Salyer Defendants and Heath to, *inter alia,* obtain possession of, perfect an interest in, enforce a lien against, or take any other action to deprive SK Foods of the Equity Interest.

53.    Salyer Defendants and Heath had actual or constructive knowledge of SK Foods' bankruptcy case and the existence of the automatic stay.

54.    By filing the ASICS Form Heath willfully attempted to perfect or effectuate the Equity Transfers or obtain possession or title to the Equity Interest in violation of 11U.S.C § 362(a).

55.    Heath's actions have caused damage to the SK Foods and the estate.

Wherefore, the Trustee prays for judgment as set forth below.

## PRAYER

WHEREFORE, the Trustee prays for judgment as follows:

1.    On the First Count, against SSC&L and Fast Falcon, jointly and severally:

    i.    For judgment avoiding and preserving for the benefit of the estate the Loan Transfers, including both the Initial Loan Transfer and Subsequent Loan Transfer;

    ii.    For judgment against SSC&L and Fast Falcon, jointly and severally in an amount not less than $17,074,283.00 together with prejudgment and post judgment interest thereon at the legal rate allowed under 28 U.S.C. §1961 from the date of the Initial Loan Transfer;

2.    On the Second Count against SKPM, SSRT, MPF, and Fast Falcon, jointly and severally:

    i.    For judgment avoiding and preserving for the benefit of the estate the Equity Transfers, including the Initial Equity Transfer, SKPM Subsequent Transfer, SSRT Subsequent Transfer and MPF Subsequent Transfer;

SCHRADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-5700
FAX: (415) 364-6785

9

PHDATA 3369682_1

**COMPLAINT**

1      ii.   For judgment against SKPM, SSRT, MPF, and Fast Falcon in an amount

2            equal to the value of the Equity Transfers to be proved at trial together

3            with prejudgment and post judgment interest thereon at the legal rate

4            allowed under 28 U.S.C. §1961 from the date of the Initial Equity

5            Transfer;

6    3.    On the Third Count against Heath and Does 1 through 5:

7      i.    For judgment finding Heath and Does 1 through 5 willfully violated 11

8            U.S.C. § 362(a) and awarding damages according to proof at trial

9    4.    For costs of suit herein;

10   5.    For such other and further relief as the Court may deem just and proper.

11

12   Dated: May 4, 2011                        SCHNADER HARRISON SEGAL & LEWIS LLP

13

14                                             /s/ Gregory C. Nuti
                                               Gregory C. Nuti
15                                             Kevin W. Coleman
                                               Attorneys for Bradley D. Sharp,
16                                             Chapter 11 Trustee

17

18

19

20

21

22

23

24

25

26

27

28

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

COMPLAINT

10

PHDATA 3369682_1

# EXHIBIT A

# SK Foods Australia Pty Ltd
A.C.N.: 099 245 735
## Members Register 7/03/2002

Ordinary

SK Foods LP

| Fair Value | Amount Due | Certificate Number | Transaction Type | Date | Registration Date | Number Acquired | Number Disposed | Balance Held Beneficially | Balance Held Non-Beneficially |
|---|---|---|---|---|---|---|---|---|---|
| $1.00 | $0.00 | 1 | Allotment | 11/01/2002 | 11/01/2002 | 100 | | 100 | |

# SK Foods Australia Pty Ltd (Company)

# Member's consent

## 1    Consent to become a member

SK Foods LP of Suite 203, 300 Sky Park Drive, Moneterey, California, USA 93940 consents to become a member of the Company and being named in an application for registration of the Company as a proposed member.

## 2    Agreement to the terms of the constitution

SK Foods LP agrees to the terms of the proposed constitution of the Company dated        January 2002.

## 3    Agreement to take up shares

SK Foods LP agrees to take up 100 shares in the capital of the Company at a price of $1.00 per share and agrees to pay the full amount for the shares on registration of the Company.

**Dated:**

**Signed** by

**SK Foods LP**

by:

_____          _____
Secretary/Director                        Director

_Richard B. Washburn_                     _Scott Salyer_
Name (please print)                       Name (please print)

nt - Frederick Scott Salyer

(c)     The offices and property that I hold where duties or interests might be created in conflict with my duties or interests as a director of the company, and the nature, character and extent of the conflict, are:

(d)     Details of the nature and extent of interests in matters that relate to the affairs of the company not disclosed above are as follows:

## 3     Notification of change in personal details

I agree to notify the company of any change in my personal details within 7 days after the change.[4]

Signature:           Date: 9-10-02

---

[1]     If you need more space attach a separate page. This information in paragraph 1 of the Consent is required so that the company can notify the ASIC of the personal details of each director of the company within 14 days of appointment, as required by section 205B of the Corporations Act.

        A company will be in breach of section 201D of the Corporations Act if a person does not give the company a signed consent to act as a director of the company before being appointed.

[2]     A person's address must be their usual residential address, unless either:

(a)     their name, but not their residential address, is on an electoral roll under the Commonwealth Electoral Act 1918 because of section 104 of that Act (which allows a person to request that his or her name not appear on an electoral roll on the grounds that it would place that person or a member of that person's family at risk); or

(b)     their name is not on an electoral roll under that Act and the ASIC has determined, in writing, that including their residential address in the notices required by section 205B of the Corporations Act would put at risk their personal safety or that of their family. A person may apply to use an alternative address using form 378: (see section 205D(2)).

        If either (a) or (b) applies, you are entitled to provide an alternative address which must be in Australia and be one at which documents can be served on you. A person who is entitled to use an alternative address

---

# EXHIBIT B

**Australian Securities &
Investments Commission**

**Form 484**
Corporations Act 2001

# Change to company details

Sections A, B or C may be lodged independently with this signed cover page to notify ASIC of:

A1 Change of address
A2 Change of name - officeholders and proprietary
   company members
A3 Change - ultimate holding company

B1 Cease company officeholder
B2 Appoint company officeholder
B3 Special purpose company

C1 Cancellation of shares
C2 Issue of shares
C3 Change to share structure
C4 Changes to the register of members for proprietary
   companies

If there is insufficient space in any section of the form, you may photocopy the relevant page(s) and submit as part of this lodgement

## Company details

Refer to guide for information about corporate key

**Company name**
SK FOODS AUSTRALIA PTY LTD

**ACN/ABN**
099 245 735

**Corporate key**
52792603

## Lodgement details

**Who should ASIC contact if there is a query about this form?**

**Firm/organisation**
DELOITTE PRIVATE PTY LIMITED

**Contact name/position description**

**ASIC registered agent number (if applicable)**
321

**Telephone number**

**Postal address or DX address**
LEVEL 9 550 BOURKE STREET

MELBOURNE, VIC, 3000

**Total number of pages including this cover sheet**

## Signature

This form must be signed by a current officeholder of the company.

I certify that the information in this cover sheet and the attached sections of this form are true and complete.

**Name**
HEATH, HENRY JOHN

**Capacity**
[✓] Director
[ ] Company secretary

**Signature**

**Date signed**
| 1 | 0 | , | 0 | 7 | , | 0 | 9 |
|---|---|---|---|---|---|---|---|
| [D | D] | [M | M] | [Y | Y] |

## Lodgement

Send completed and signed forms to:
Australian Securities and Investments Commission,
PO Box 4000, Gippsland Mail Centre VIC 3841.

Or lodge the form electronically by visiting the ASIC website
www.asic.gov.au

**For help or more information**
Telephone   1300 300 630
Email       info.enquiries@asic.gov.au
Web         www.asic.gov.au

ASIC Form 484        Reference:  0815055        6 September 2007        Trace:        Cover page

## C4 Changes to the register of members for proprietary companies

Use this section to notify changes to the register of members for your proprietary company (changes to the shareholdings of members):
- If there are 20 members or less in a share class, all changes need to be notified
- If there are more than 20 members in a share class, only changes to the top twenty need be notified (s 178B)
- If shares are jointly owned, you must also provide names and addresses of all joint owners on a separate sheet (annexure), clearly indicating the share class and with whom the shares are jointly owned

The changes apply to
Please indicate the name and address
of the member whose shareholding has
changed

☐ Family name                        Given names

OR

☑ Company name

SK PM CORPORATION

ACN/ARBN/ ABN

Office, unit, level, or PO Box number

21 LOWER RAGSDALE DRIVE

Street number and Street name

MONTEREY

Suburb/City                                   State/Territory

CALIFORNIA 93940

Postcode            Country (if not Australia)

                   UNITED STATES OF AMERICA

Earliest date of change
Please indicate the earliest date that any
of the following changes occurred.

Date of change

| 0 | 1 | , | 1 | 1 | , | 0 | 6 |
[D    D]  [M    M]  [Y    Y]

The changes are

| Share class code | Shares increased by . . . (number) | Shares decreased by . . . (number) | Total number now held | Total $ paid on these shares | Total $ unpaid on these shares | Fully paid (y/n) | Beneficially held (y/n) | Top 20 member (y/n) |
|---|---|---|---|---|---|---|---|---|
| ORD | 55 | | 55 | 3,490,058.55 | 0.00 | Yes | Yes | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

Date of entry of member's name in
register
(New members only)

Date of entry

| 0 | 1 | , | 1 | 1 | , | 0 | 6 |
[D    D]  [M    M]  [Y    Y]

## C4 Changes to the register of members for proprietary companies

Use this section to notify changes to the register of members for your proprietary company (changes to the shareholdings of members):
- If there are 20 members or less in a share class, all changes need to be notified
- If there are more than 20 members in a share class, only changes to the top twenty need be notified (s1788)
- If shares are jointly owned, you must also provide names and addresses of all joint owners on a separate sheet (annexure), clearly indicating the share class and with whom the shares are jointly owned

**The changes apply to**
Please indicate the name and address of the member whose shareholding has changed

[✓] Family name: SALYER       Given names: SCOTT

OR

[ ] Company name:

ACN/ARBN/ABN:

Office, unit, level, or PO Box number: 200 SKY PARK DRIVE

Street number and Street name: MONTEREY

Suburb/City: CALIFORNIA 93940        State/Territory:

Postcode:        Country (if not Australia): UNITED STATES OF AMERICA

**Earliest date of change**
Please indicate the earliest date that any of the following changes occurred.

Date of change: 0 1 , 1 1 , 0 6
[D  D] [M  M] [Y  Y]

**The changes are**

| Share class code | Shares increased by . . . (number) | Shares decreased by . . . (number) | Total number now held | Total $ paid on these shares | Total $ unpaid on these shares | Fully paid (y/n) | Beneficially held (y/n) | Top 20 member (y/n) |
|---|---|---|---|---|---|---|---|---|
| ORD | 45 | | 45 | 2,855,502.45 | 0.00 | Yes | No | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

**Date of entry of member's name in register**
(New members only)

Date of entry: 0 1 , 1 1 , 0 6
[D  D] [M  M] [Y  Y]

# C4 Changes to the register of members for proprietary companies

Use this section to notify changes to the register of members for your proprietary company (changes to the shareholdings of members):
- If there are 20 members or less in a share class, all changes need to be notified
- If there are more than 20 members in a share class, only changes to the top twenty need be notified (s178B)
- If shares are jointly owned, you must also provide names and addresses of all joint owners on a separate sheet (annexure), clearly indicating the share class and with whom the shares are jointly owned

**The changes apply to**
Please indicate the name and address of the member whose shareholding has changed

| Family name | Given names |
|---|---|
| | |

OR

[✓] Company name

SK FOODS LP

ACN/ARBN/ABN

Office, unit, level, or PO Box number
SUITE 203

Street number and Street name
300 SKY PARK DRIVE

Suburb/City                                         State/Territory
MONTEREY, CALIFORNIA, 93940

Postcode          Country (if not Australia)
                  UNITED STATES OF AMERICA

**Earliest date of change**
Please indicate the earliest date that any of the following changes occurred.

Date of change
| 0 | 1 | / | 1 | 1 | / | 0 | 6 |
| [D | D] | | [M | M] | | [Y | Y] |

**The changes are**

| Share class code | Shares increased by . . . (number) | Shares decreased by . . . (number) | Total number now held | Total $ paid on these shares | Total $ unpaid on these shares | Fully paid (y/n) | Beneficially held (y/n) | Top 20 member (y/n) |
|---|---|---|---|---|---|---|---|---|
| ORD | | 100 | 0 | 0.00 | 0.00 | Yes | Yes | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

**Date of entry of member's name in register**
(New members only)

Date of entry
| | | / | | | / | | |
| [D | D] | | [M | M] | | [Y | Y] |

# RJN
# EXHIBIT O



**FILED**

JUN 2 8 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

1

2

3         UNITED STATES BANKRUPTCY COURT

4         EASTERN DISTRICT OF CALIFORNIA

5

6 In re:                   )     Case No. 09-29162-D-11
                          )

7 SK FOODS, L.P.,         )
                          )

8                           )
              Debtor.    )

9 _____)
                          )

10 BRADLEY D. SHARP, Chapter 11   )     Adv. Pro. No. 09-2692-D
Trustee,                )

11                           )     Docket Control No. MSS-2

12             Plaintiff,  )

13 v.                     )
                          )     DATE:   June 22, 2011

14 SSC FARMS I, LLC, et al.,     )     Time:   9:30 a.m.
                          )     Dept:   D

15            Defendants. )
_____)

16

17                       <u>ORDER</u>

18      The court having issued findings and analysis in the matter

19 of Defendants' Supplemental Motion to Stay Adversary Proceedings,

20 Docket Control No. MSS-2 (the "Motion"), which are included in

21 the civil minutes, a copy of which is attached hereto, and good

22 cause appearing,

23      IT IS HEREBY ORDERED that:

24      1.   The Motion is granted and this adversary proceeding is

25 stayed pending further order of this court, except as set forth

26 below;

27 / / /

28 / / /

1    2.   The stay shall not prevent actions by any party to

2  investigate the extent of compliance or non-compliance with the

3  preliminary injunction filed March 20, 2010 in this adversary

4  proceeding, as the same has been modified by orders of this court

5  filed October 13, 2010; January 20, 2011; February 16, 2011; May

6  1, 2011; and May 10, 2011 (collectively, the "Preliminary

7  Injunction Orders");

8    3.   The stay shall not prevent actions by the plaintiff

9  necessary to ensure the Preliminary Injunction Orders are

10  complied with, including actions seeking to modify the

11  Preliminary Injunction Orders or seeking additional relief from

12  this court intended to ensure that the assets covered by the

13  Preliminary Injunctions Orders are preserved.

14
Dated: ___June 27___ , 2011     *Robert Bardwil*
15                                ROBERT S. BARDWIL
                                  United States Bankruptcy Judge
16

- 2 -

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### CIVIL MINUTES

| | | | |
|---|---|---|---|
| **Adversary Title :** | Sharp v. SSC Farms I, LLC et al | Case No : | 09−29162 − D − 11 |
| | | Adv No : | 09−02692 − D |
| | | Date : | 6/22/11 |
| | | Time : | 9:30 |

| | | |
|---|---|---|
| **Matter :** | [229] − Supplemental Motion/Application to Stay Adversary Proceedings [MSS−2] Filed by Defendants SSC Farming, LLC., SSC Farms I, LLC, SSC Farms II, LLC. (dhes) | OPPOSED |

**Judge :**            Robert S. Bardwil
**Courtroom Deputy :**   Nancy Williams
**Reporter :**        Diamond Reporters
**Department :**     D

**APPEARANCES for :**
**Movant(s) :**
       Defendant's Attorney − James Koewen
**Respondent(s) :**
       Plaintiff's Attorney − Kevin W. Coleman
       Plaintiff's Attorney − Gregory Nuti
       Defendant's Attorney − Eric Safire, Paul Pascuzzi, Todd Dressel, Robert Asperger, Jamie Deher, Michel Kuzmich, Warren Felger (phone), Caroline Newman (phone)

MOTION was :

ORDER TO BE PREPARED BY :     chambers

Final ruling:

Scott Salyer, individually and as trustee of the Scott Salyer Revocable Trust; the Scott Salyer Revocable Trust; SK PM Corporation; SK Foods, LLC; SKF Canning, LLC; Blackstone Ranch Corporation; Monterey Peninsula Farms, LLC; Salyer Management Company, LLC; SK Farms Services, LLC; SK Frozen Foods, LLC; SS Farms, LLC; SSC Farming, LLC; SS Farms I, LLC; SS Farms II, LLC; SS Farms III, LLC; SKF Aviation, LLC; and CSSS, LP, dba Central Valley Shippers (the Salyer Parties), have filed a supplemental motion to stay several adversary proceedings, including this one. (The motion is a supplemental one because the Salyer Parties filed an earlier motion for a stay that was denied. See below.) The chapter 11 trustee, Bradley D. Sharp (the trustee), opposes the motion. For the reasons set forth below, the court intends to grant the motion.

In April 2010, the Salyer Parties filed their first motion for a stay of the adversary proceedings. This court denied the motion based in large part on what it perceived to be significant distinctions between the factual allegations in the criminal indictment against Scott Salyer and those in the adversary proceedings. On appeal by the Salyer Parties, the district court for this district reversed and, on April 14, 2011, remanded to this court to decide, in the first instance, whether discovery from or testimony of Salyer or his criminal counsel is reasonably necessary [fn] to dispose of a particular matter before the Bankruptcy Court in the adversary proceedings. Sharp v. SSC Farms I, LLC, United States District Court, Eastern District of California, Civ. No. S−10−1492 LKK, Order filed April 14, 2011, at 5:11−15. The court defined the applicable standard as follows: A matter is reasonably necessary if [the Salyer Parties] cannot adequately defend themselves in an adversary proceeding without evidence from Salyer or his criminal counsel. Id., 5:15−18.

Thus, the court will examine the issues in this particular adversary proceeding in light of this standard. In this adversary proceeding, the trustee seeks to quiet title to certain real properties the so–called waste water land as against the interests of SSC Farms I, LLC; SSC Farms II, LLC; and SSC Farming, LLC. The trustee alleges that Scott Salyer, an entity controlled by him, or those acting at his direction, operates, manages, and/or controls all three defendants. The crux of the factual allegations contained in the complaint is that Scott Salyer was aware of the transactions by which the defendants acquired the properties using the debtors resources, that he breached his fiduciary duties to the debtor to ensure that title to the properties was taken in the debtors name, and that the defendants were the instruments through which Salyer carried out this breach, and as such, should be deemed to be his alter egos. The trustee seeks a determination that as a result, the debtor is the equitable owner of the real properties.

Given these allegations, it appears virtually impossible that significant proceedings could be undertaken in this adversary proceeding without evidence from Salyer and/or his criminal counsel. At a minimum, the court believes the defendants in this action are likely to require evidence from Salyer and/or his criminal counsel in order to adequately defend themselves. As with the substantive consolidation action, Salyer is the individual who is at the center of the trustees allegations in this adversary proceeding. It simply strains credibility for the trustee to now suggest there is no showing that Salyer alone has any unique knowledge, necessary to the defense, which cannot be provided by other third parties who can adequately testify. Opposition to Defendants Supplemental Motion to Stay Adversary Proceedings, filed June 1, 2011 (the Opposition), at 2:3–4.

The defects in the trustees reasoning are readily apparent. First, the trustee claims the gravamen of the complaint is that officers and directors of the debtor, including Salyer, had fiduciary duties to the debtor, which were breached. However, the only individual alleged in the complaint to have had or to have breached a fiduciary duty to the debtor in connection with the waste water land is Salyer. Second, the trustee names seven other individuals he claims could testify about the circumstances surrounding the defendants acquisition of the waste water properties; he summarizes the role each one played, albeit briefly, and concludes that he does not believe any discovery from or testimony by Salyer or his criminal counsel is necessary to proceeding with the Trustees case in the Quiet Title Action. Opposition, 9:7–8. However, under the standard articulated by the district court, the point is not whether the trustee could make his case, it is whether the defendants could make their case.

The trustee also misstates the burden allocated to the defendants by the district court: The District Court has placed the burden on Defendants to explain what evidence that Salyer alone possesses, without which it is unreasonably difficult for them to defend themselves. Opposition, 9:16–17.

[T]he Defendants [conclusion that Salyers testimony is necessary] falls far short of identifying what evidence Salyer could provide about any of the issues in the Quiet Title Action, how that evidence would be reasonably necessary to Defendants defense and why that evidence could not be obtained from an alternative source.

Id., 10:3–6.

Simply stated, this court does not interpret the district courts April 14, 2011 order as requiring the defendants to make such a showing. Instead, based on the factual allegations in the adversary proceeding, the court is satisfied that Salyer is central to the disputes raised; the court need not speculate on what other sources might be available if Salyer is not, and the defendants will not be required to disprove the existence or adequacy of such other sources. (The trustees related argument that the defendants have not shown that obtaining the evidence needed for [their] defense would threaten Salyers Fifth Amendment rights (Opposition, 9:19–21) is a matter that was addressed in this courts ruling on the Salyer Parties first motion for a stay, which has been reversed by the district court; the court will not revisit the issue here.)

The real problem with the trustees opposition to the motion is that it does not apply the standard set by the district court and does not address the specific factual allegations of the complaint, but merely cites broad principles, draws broad conclusions, and charges the defendants with failing to provide sufficient particulars of the necessity of Salyers testimony. In the courts view, the factual allegations of the complaint are such that Salyers testimony (and possibly that of his criminal counsel) is likely to be central to resolution of the issues. Thus, the court concludes that evidence from Salyer and/or his criminal counsel is reasonably necessary for the defendants to adequately defend themselves in this proceeding. Accordingly, the court will grant the motion except as limited below.

The trustee cites three recent developments as suggesting that there is a risk the preliminary injunction previously issued by this court is not adequately safeguarding the assets that are the subject of the injunction. The Salyer Parties have not adequately responded to these allegations in particular, the court does not share their belief that the trustees concerns are exaggerated, does not agree that any potential

harm was remedied precisely because the Preliminary Injunction was in place (Defendants Omnibus Reply to Oppositions to Motions to Stay Adversary Proceedings, filed June 8, 2011, 10:19-20, emphasis in original), and does not view the trustees bringing these matters to the courts attention as litigation tactics. Id., 11:5-7.

The court does not perceive denial of the stay motion as an effective way to address these issues, and does not view them as tilting the balance of the Keating factors (see Keating v. Office of Thrift Supervision, 45 F.3d 322, 324-25 (9th Cir. 1995)). For one thing, if the stay motion is not granted and the litigation proceeds with respect to Salyer, the assets remain at risk in the meantime. In short, the court simply does not see a denial of the stay motion as an effective remedy for the concerns the trustee has raised. The court will, however, modify the stay of this adversary proceeding to the extent necessary to permit the trustee to take actions to investigate the extent of compliance or non-compliance with the preliminary injunction. The court will also modify the stay to ensure the injunction is complied with, including to permit the injunction to be amended or other relief to be granted to ensure the assets are preserved.

Finally, the trustee suggests that discovery could proceed against the officers, witnesses, or other third parties related to the Defendants who would also have knowledge and information relevant to the defense without impairing Salyers Fifth Amendment rights. Opposition, 18:16-19. The trustee quotes from an exchange at the April 11, 2011 district court hearing, and concludes that all parties are in agreement that any stay that this Court might enter should not prevent the Trustee and the Defendants from taking discovery from other third parties. Id., 19:4-6. There is nothing in the Salyer Parties written reply to indicate that they take issue with this conclusion.

However, at the hearing on the present motion, the Salyer Parties stated that they do oppose permitting the trustee to take third-party discovery. The court has reviewed the transcript of the April 11, 2011 hearing in the district court, together with the order issued following that hearing, on April 14, 2011. Although the issue of third-party discovery was discussed at the hearing, there is nothing in the order to suggest that if this court finds that the Salyer Parties cannot adequately defend themselves in a particular adversary proceeding without discovery from or testimony of Salyer or his criminal counsel, it may nevertheless allow discovery to proceed against third parties. In short, this court has found, above, that Salyer is sufficiently at the center of the disputes in this adversary proceeding that the defendants cannot adequately defend themselves without testimony of or discovery from Salyer and/or his criminal counsel. Thus, the language of the April 14, 2011 order suggests to this court that the adversary proceeding should be stayed, with no exception for third-party discovery. Accordingly, the motion will be granted and the adversary proceeding will be stayed, except with respect to the preliminary injunction, as discussed above. The court will issue an appropriate order.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United
States Bankruptcy Court for the Eastern District of California
hereby certifies that a copy of the document to which this
certificate is attached was mailed today to the following
entities at the addresses shown below or on the attached list.

SEE ATTACHED LIST

DATED: 6/28/11                    By: _____
                                      Deputy Clerk

EDC 3-070 (Rev. 6/28/10)

1

2   Kevin Coleman
    Schnader Harrison Segal & Lewis
    One Montgomery Street, Suite 2200
3   San Francisco, CA 94104-5501

4   Jaime Dreher
    Downey Brand, LLP
5   621 Capitol Mall, 18th Floor
    Sacramento, CA 95814-4731
6

7   Marc Levinson
    Orrick Herrington & Sutcliffe
    400 Capitol Mall, Suite 3000
8   Sacramento, CA 95814-4497

9

10  Paul Pascuzzi
    Felderstein Fitzgerald
      Willoughby & Pascuzzi
11  400 Capitol Mall, Suite 1450
    Sacramento, CA 95814
12
    Todd Dressel
13  Chapman and Cutler, LLP
    595 Market Street, 26th Floor
14  San Francisco, CA 94105

15  James Keowen
    Nageley Meredith & Miller, Inc.
16  8001 Folsom Blvd., Suite 100
    Sacramento, CA 95826

17

18  Larry Lichtenegger
    Lichtenegger Law Offices
19  3850 Rio Road, Suite 58
    Carmel, CA 93926
20
    Malcolm Segal
21  Segal & Kirby, LLP
    770 L Street, 1440
22  Sacramento, CA 95814

23
    Eric Safire
24  2431 Fillmore St.
    San Francisco, CA 94115
25
    Robert Asperger
26  Office of the Attorney General
    1300 I Street
27  Sacramento, CA 95814

28

1   Michael Kuzmich
   Boutin Gibson DiGiusto Hodell, Inc.
2   555 Capitol Mall, Suite 1500
   Sacramento, CA 95814
3

   Warren Felger
4   Felger & Associates
   726 W Barstow Ave., #106
5   Fresno, CA 93704

6

   Caroline Newman
   Internal Revenue Service
7   P.O. Box 683
   Washington, DC 20044
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# RJN
# EXHIBIT P

**FILED**

JUN 28 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

1

2

3              UNITED STATES BANKRUPTCY COURT

4              EASTERN DISTRICT OF CALIFORNIA

5

6  In re:                          )   Case No. 09-29162-D-11
                                   )
7  SK FOODS, L.P.,                 )
                                   )
8                                  )
              Debtor.              )
9  _____)
                                   )
10 BRADLEY D. SHARP, Chapter 11    )   Adv. Pro. No. 09-2543-D
   Trustee,                        )
11                                 )   Docket Control No. MSS-2
              Plaintiff,           )
12                                 )
   v.                              )
13                                 )
   CSSS, LP, a California limited  )   DATE:  June 22, 2011
14 partnership,                    )   Time:  9:30 a.m.
                                   )   Dept:  D
15            Defendant.           )
   _____)

16

17                          <u>ORDER</u>

18      The court having issued findings and analysis in the matter

19 of Motion to Stay Adversary Proceeding, Docket Control No. MSS-2

20 (the "Motion"), which are included in the civil minutes, a copy

21 of which is attached hereto, and good cause appearing,

22      IT IS HEREBY ORDERED that the Motion is granted and this

23 adversary proceeding is stayed pending further order of this

24 court.

25

   Dated:  June 27 , 2011      _Robert Bardwil_____
26                             ROBERT S. BARDWIL
                               United States Bankruptcy Judge
27

28

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### CIVIL MINUTES

| | | | |
|---|---|---|---|
| **Adversary Title :** | Sharp et al v. CSSS, LP | **Case No :**<br>**Adv No :**<br>**Date :**<br>**Time :** | **09−29162 − D − 11**<br>**09−02543 − D**<br>6/22/11<br>9:30 |

| | | |
|---|---|---|
| **Matter :** | [269] − Supplemental Motion/Application to Stay Adversary Proceedings [MSS−2] Filed by Defendant CSSS, LP (dhes) | **OPPOSED** |

| | |
|---|---|
| **Judge :** | Robert S. Bardwil |
| **Courtroom Deputy :** | Nancy Williams |
| **Reporter :** | Diamond Reporters |
| **Department :** | D |

**APPEARANCES for :**
**Movant(s) :**
   Defendant's Attorney − James Keowen
**Respondent(s) :**
   Trustee's Attorney − Gregory Nuti, Kevin Coleman
   Creditor's Attorney − Eric Safire, Paul Pascuzzi, Todd Dressel, Robert Asperger, James Deher, Micaehl Kuzmich, Warren Felger (phone), Caroline Newman(phone)

MOTION was :

ORDER TO BE PREPARED BY :  Chambers

Final ruling:

Scott Salyer, individually and as trustee of the Scott Salyer Revocable Trust; the Scott Salyer Revocable Trust; SK PM Corporation; SK Foods, LLC; SKF Canning, LLC; Blackstone Ranch Corporation; Monterey Peninsula Farms, LLC; Salyer Management Company, LLC; SK Farms Services, LLC; SK Frozen Foods, LLC; SS Farms, LLC; SSC Farming, LLC; SS Farms I, LLC; SS Farms II, LLC; SS Farms III, LLC; SKF Aviation, LLC; and CSSS, LP, dba Central Valley Shippers (the Salyer Parties), have filed a supplemental motion to stay several adversary proceedings, including this one. (The motion is a supplemental one because the Salyer Parties filed an earlier motion for a stay that was denied. See below.) The Bank of Montreal (BMO), which has acquired the trustees claims in this adversary proceeding by assignment, opposes the motion. For the reasons set forth below, the court intends to grant the motion.

In April 2010, the Salyer Parties filed their first motion for a stay of the adversary proceedings. This court denied the motion, based in large part on what it perceived to be significant distinctions between the factual allegations in the criminal indictment against Scott Salyer and those in the adversary proceedings. On appeal by the Salyer Parties, the district court for this district reversed and, on April 14, 2011, remanded to this court to decide, in the first instance, whether discovery from or testimony of Salyer or his criminal counsel is reasonably necessary [fn] to dispose of a particular matter before the Bankruptcy Court in the adversary proceeding. Sharp v. SSC Farms I, LLC, United States District Court, Eastern District of California, Civ. No. S−10−1492 LKK, Order filed April 14, 2011, at 5:11−15. The court defined the applicable standard as follows: A matter is reasonably necessary if [the Salyer Parties] cannot adequately defend themselves in an adversary proceeding without evidence from Salyer or his criminal counsel. Id., 5:15−18.

Thus, the court will examine the issues in this particular adversary proceeding in light of this standard. This court previously considered and denied a motion of Larry Lichtenegger for summary judgment on the

trustees contempt motion in this adversary proceeding. (Lichtenegger is not a defendant in the adversary proceeding, but is a respondent to the contempt motion.) The evidence submitted in connection with that motion concerned telephone conversations and e–mails among Salyer, his attorneys, and some of the Salyer Parties attorneys. That evidence was sufficient to allow the court to consider and reject Lichteneggers allegation that he had no involvement with the events leading up to the drum line being shipped to New Zealand. Thus, the court determined it was in a position to deny the motion without the need for testimony of or further evidence from Salyer and/or his attorneys. (Neither Lichtenegger nor BMO had contended that the stay order prevented this court from ruling on the summary judgment motion, although BMO argued that granting the motion would be inappropriate because the stay order had prevented the trustee from completing discovery.)

However, it appears unlikely that any further significant proceedings could be undertaken in this adversary proceeding without evidence from Salyer and/or his criminal counsel. At a minimum, the court believes the defendant in the action, CSSS, LP (CSSS), is likely to require evidence from Salyer and/or his criminal counsel in order to adequately defend itself. Although the contempt motion is but one aspect of this adversary proceeding, it is significant that Lichteneggers summary judgment motion was replete with references to Salyers participation in and direction of the activities by which the drum line was shipped Lichtenegger contended Salyer had taken control of the Drum Line and was arranging its export and was directing all of the activities regarding shipping the Drum Line. Memorandum in Support of Larry J. Lichteneggers Motion for Summary Judgment, filed March 21, 2011, at 4:3–4, 10:6–8. As CSSS has observed, the trustee contended Salyer was the brains behind the shipment and had sought leave to depose him. In support of that motion, the trustee (whose position BMO has acquired by assignment), argued that [n]o other deposition, or cumulative discovery, can replace the potential probative value to Salyers deposition. Memorandum of Points and Authorities in Support of Trustees Motion for Leave to Depose Scott Salyer, filed June 2, 2010, 3:19–20. In addition, the trustee alleged in his complaint in this adversary proceeding that Salyer or an entity controlled by him or persons acting at his direction manage and control CSSS and SK Foods. In short, Salyer is at the center of the trustees allegation that SK Foods fraudulently transferred the drum line to CSSS prior to the commencement of SK Foods bankruptcy case.

BMOs arguments are red herrings. First, the following arguments were addressed in connection with the Salyer Parties first motion for a stay; they are discussed in this courts ruling on that motion, which has been reversed by the district court: (1) that Salyer has not properly invoked his privilege against self–incrimination because he has done nothing more than assert a blanket Fifth Amendment claim; (2) that the events involved in the adversary proceeding are distinct from those involved in the criminal indictment; (3) that if a stay is imposed, the plaintiff will have to sit idle for perhaps years, even if the defendants assets are being depleted; and (4) the Keating factors do not warrant the imposition of a stay (see Keating v. Office of Thrift Supervision, 45 F.3d 322, 324–25 (9th Cir. 1995)). Although the district court did remand the stay matter to this court, it in no way reversed its position on these arguments, if it rejected in the original appeal, and it did not indicate in any way that these issues were again on the table. This court is bound by the district courts ruling on these issues and will not revisit them here.

For similar reasons, the court rejects BMOs argument that as a corporation, CSSS has no Fifth Amendment privilege and should not be allowed to piggyback on Salyers privilege. Quite simply, the district court was aware of the identities and capacities of the various adversary defendants at the time it issued its order; whether a defendant itself has a Fifth Amendment privilege forms no part of the standard articulated in that order.

BMOs next arguments seek to set up higher standards than the one articulated by the district court. BMO contends CSSS must show a particular affirmative defense for which it requires evidence from Salyer: CSSS has not raised any affirmative defense which requires Salyers testimony. Response and Objection to Motion to Stay, filed June 1, 2011 (Response), at 5:7–8. The argument rests on an incorrect formulation of the district courts standard: In order to obtain a stay under the framework established by Judge Karlton, CSSS must show that Salyers testimony is necessary for a specific defense; CSSS cannot obtain a stay based on the flawed supposition that the Trustee cannot meet its burden of proof without Salyers testimony. Id., 2:2–5. Further, the fundamental requirement imposed by Judge Karltons order [is] a showing that the inability to offer specific testimony rises to the level of a violation of CSSS constitutional due process rights. Id. 1:21–24. These standards go beyond the one articulated by the district court and this court will not impose them.

The test this court is to apply is simple is discovery from or testimony of Salyer or his criminal counsel reasonably necessary for CSSS to adequately defend itself in this adversary proceeding? BMO answers no: (1) under FRCP 30(b)(6) (incorporated by FRBP 7030), CSSS may designate someone other than Salyer to testify on CSSSs behalf; (2) Salyer may respond to discovery with information that does not tend to incriminate him; and (3) CSSS can defend by way of business records, which are not protected by the Fifth Amendment. To accept this argument, the court would have to speculate that such other testimony

and documentary evidence would be sufficient for CSSSs defense.

Further, by this argument, BMO attempts to put the burden on CSSS to establish how evidence cannot be obtained just as well (or better) from sources other than Salyer or [his criminal counsel]. Response, 2-3. First, this court does not interpret the district courts April 14, 2011 order as requiring CSSS to make such a showing. And based on the factual allegations in the adversary proceeding, the court is satisfied that Salyer is central to the disputes raised; the court need not speculate on what other sources might be available if Salyer is not, and CSSS will not be required to disprove the existence or adequacy of such other sources.

Finally, BMO suggests it is unlikely that Salyer could offer testimony in this adversary proceeding that would tend to incriminate him in the criminal matter but at the same time, would tend to support CSSSs position in the adversary proceeding. [G]iven the emails produced in this matter suggesting that Salyer orchestrated the transfer of the Drum Line, it is difficult to imagine any incriminating testimony that Salyer could give regarding the transfer of the Drum Line that would exonerate CSSS from liability, and CSSS had identified none. Response, 8:10–14. However, in this courts view, it is counter–intuitive that a party invoking the Fifth Amendment privilege should be called upon to disclose incriminating information in order to protect it.

The real problem with BMOs opposition to the motion is that it does not apply the standard set by the district court and does not address the specific factual allegations of the complaint or the contempt motion, but merely cites broad principles, draws broad conclusions, and charges CSSS with failing to provide sufficient particulars of the necessity of Salyers testimony. In the courts view, the factual allegations of the complaint and the contempt motion are such that Salyers testimony (and possibly that of his criminal counsel) is likely to be central to resolution of the issues. Thus, the court concludes that evidence from Salyer and/or his criminal counsel is reasonably necessary for CSSS to adequately defend itself in this proceeding, and applying the district courts standard as set forth in its April 14, 2011 order, the court will grant the motion.

Finally, the Salyer Parties motions to stay certain other adversary proceedings in this case, which are also on this calendar, were met with a suggestion by the trustee that discovery could proceed against the employees, directors, officers, witnesses or other third parties related to the Defendants who would also have knowledge and information relevant to the defense without impairing Salyers Fifth Amendment rights. Sharp v. Salyer, Adv. No. 10–2014, Opposition to Defendants Supplemental Motion to Stay Adversary Proceedings, filed June 1, 2011, 20:17–20. The trustee quoted from an exchange at the April 11, 2011 district court hearing, and concluded in his opposition to the stay motion that all parties are in agreement that any stay that this Court might enter should not prevent the Trustee and the Defendants from taking discovery from other third parties, who have evidence related to the Adversary Proceedings. Id., 21:4–6. The Salyer Parties filed a reply to the trustees opposition, in which they did not take issue with this conclusion.

However, at the hearing on the present motion, the Salyer Parties stated that they do oppose permitting the trustee to take third–party discovery. The court has reviewed the transcript of the April 11, 2011 hearing in the district court, together with the order issued following that hearing, on April 14, 2011. Although the issue of third–party discovery was discussed at the hearing, there is nothing in the order to suggest that if this court finds that the Salyer Parties cannot adequately defend themselves in a particular adversary proceeding without discovery from or testimony of Salyer or his criminal counsel, it may nevertheless allow discovery to proceed against third parties. In short, this court has found, above, that Salyer is sufficiently at the center of the disputes in this adversary proceeding that the defendants cannot adequately defend themselves without testimony of or discovery from Salyer and/or his criminal counsel. Thus, the language of the April 14, 2011 order suggests to this court that the adversary proceeding should be stayed, with no exception for third–party discovery. Accordingly, the motion will be granted and the adversary proceeding will be stayed. The court will issue an appropriate order.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

    The undersigned deputy clerk in the office of the United
States Bankruptcy Court for the Eastern District of California
hereby certifies that a copy of the document to which this
certificate is attached was mailed today to the following
entities at the addresses shown below or on the attached list.

SEE ATTACHED LIST

DATED: 6/28/11                    By: _____
                                        Deputy Clerk

EDC 3-070 (Rev. 6/28/10)

Kevin Coleman
Schnader Harrison Segal & Lewis
One Montgomery Street, Suite 2200
San Francisco, CA 94104-5501

Jaime Dreher
Downey Brand, LLP
621 Capitol Mall, 18th Floor
Sacramento, CA 95814-4731

Marc Levinson
Orrick Herrington & Sutcliffe
400 Capitol Mall, Suite 3000
Sacramento, CA 95814-4497

Paul Pascuzzi
Felderstein Fitzgerald
    Willoughby & Pascuzzi
400 Capitol Mall, Suite 1450
Sacramento, CA 95814

Todd Dressel
Chapman and Cutler, LLP
595 Market Street, 26th Floor
San Francisco, CA 94105

James Keowen
Nageley Meredith & Miller, Inc.
8001 Folsom Blvd., Suite 100
Sacramento, CA 95826

Larry Lichtenegger
Lichtenegger Law Offices
3850 Rio Road, Suite 58
Carmel, CA 93926

Malcolm Segal
Segal & Kirby, LLP
770 L Street, 1440
Sacramento, CA 95814

Eric Safire
2431 Fillmore St.
San Francisco, CA 94115

Robert Asperger
Office of the Attorney General
1300 I Street
Sacramento, CA 95814

1   Michael Kuzmich
    Boutin Gibson DiGiusto Hodell, Inc.
2   555 Capitol Mall, Suite 1500
    Sacramento, CA 95814

3

    Warren Felger
4   Felger & Associates
    726 W. Barstow Ave., #106
5   Fresno, CA 93704

6   Caroline Newman
    Internal Revenue Service
7   P.O. Box 683
    Washington, DC 20044

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# RJN
# EXHIBIT Q

**FILED**

JUN 2 8 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re: | ) | Case No. 09-29162-D-11 |
| | ) | |
| SK FOODS, L.P., | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| BRADLEY D. SHARP, Chapter 11 | ) | Adv. Pro. No. 10-2016-D |
| Trustee, | ). | |
| | ) | Docket Control No. MSS-2 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ). | DATE:   June 22, 2011 |
| SKF AVIATION, LLC, et al., | ) | Time:   9:30 a.m. |
| | ) | Dept:  D |
| Defendants. | ) | |

<u>ORDER</u>

The court having issued findings and analysis in the matter of Defendants' Supplemental Motion to Stay Adversary Proceedings, Docket Control No. MSS-2 (the "Motion"), which are included in the civil minutes, a copy of which is attached hereto, and good cause appearing,

IT IS HEREBY ORDERED that:

1.   The Motion is granted and this adversary proceeding is stayed pending further order of this court, except as set forth below;

/ / /

1      2.  The stay shall not prevent actions by any party to

2  investigate the extent of compliance or non-compliance with the

3  preliminary injunction filed March 20, 2010 in this adversary

4  proceeding, as the same has been modified by orders of this court

5  filed October 13, 2010; January 20, 2011; February 16, 2011; May

6  1, 2011; and May 10, 2011 (collectively, the "Preliminary

7  Injunction Orders");

8      3.  The stay shall not prevent actions by the plaintiff

9  necessary to ensure the Preliminary Injunction Orders are

10  complied with, including actions seeking to modify the

11  Preliminary Injunction Orders or seeking additional relief from

12  this court intended to ensure that the assets covered by the

13  Preliminary Injunctions Orders are preserved.

14  Dated: _June 27_, 2011      *Robert Bardwil*

15                           ROBERT S. BARDWIL
                                  United States Bankruptcy Judge

- 2 -

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## CIVIL MINUTES

| | | | |
|---|---|---|---|
| **Adversary Title :** | Sharp v. SKF Aviation, LLC et al | **Case No :**<br>**Adv No :**<br>**Date :**<br>**Time :** | 09−29162 − D − 11<br>10−02016 − D<br>6/22/11<br>10:00 |

| | | |
|---|---|---|
| **Matter :** | [204] − Supplemental Motion/Application to Stay Adversary Proceedings [MSS−2] Filed by Defendants CSSS, LP, SKF Aviation, LLC (dhes) | OPPOSED |

**Judge :** Robert S. Bardwil
**Courtroom Deputy :** Nancy Williams
**Reporter :** Diamond Reporters
**Department :** D

**APPEARANCES for :**
**Movant(s) :**
    Defendant's Attorney − James Koewen
**Respondent(s) :**
    Plaintiff's Attorney − Kevin Coleman
    Creditor's Attorney − Eric Safire, Paul Pascuzzi, Todd Dressel, Robert Asperger, James Deher, Michael Kuzmich, Warren Felger (phone), Caroline Newman (phone)

MOTION was :

ORDER TO BE PREPARED BY :    Chambers

Final ruling:

Scott Salyer, individually and as trustee of the Scott Salyer Revocable Trust; the Scott Salyer Revocable Trust; SK PM Corporation; SK Foods, LLC; SKF Canning, LLC; Blackstone Ranch Corporation; Monterey Peninsula Farms, LLC; Salyer Management Company, LLC; SK Farms Services, LLC; SK Frozen Foods, LLC; SS Farms, LLC; SSC Farming, LLC; SS Farms I, LLC; SS Farms II, LLC; SS Farms III, LLC; SKF Aviation, LLC; and CSSS, LP, dba Central Valley Shippers (the Salyer Parties), have filed a supplemental motion to stay several adversary proceedings, including this one. (The motion is a supplemental one because the Salyer Parties filed an earlier motion for a stay that was denied. See below.) The chapter 11 trustee, Bradley D. Sharp (the trustee), opposes the motion. For the reasons set forth below, the court intends to grant the motion.

In April 2010, the Salyer Parties filed their first motion for a stay of the adversary proceedings. This court denied the motion, based in large part on what it perceived to be significant distinctions between the factual allegations in the criminal indictment against Scott Salyer and those in the adversary proceedings. On appeal by the Salyer Parties, the district court for this district reversed and, on April 14, 2011, remanded to this court to decide, in the first instance, whether discovery from or testimony of Salyer or his criminal counsel is reasonably necessary [fn] to dispose of a particular matter before the Bankruptcy Court in the adversary proceedings. Sharp v. SSC Farms I, LLC, United States District Court, Eastern District of California, Civ. No. S−10−1492 LKK, Order filed April 14, 2011, at 5:11−15. The court defined the applicable standard as follows: A matter is reasonably necessary if [the Salyer Parties] cannot adequately defend themselves in an adversary proceeding without evidence from Salyer or his criminal counsel. Id., 5:15−18.

Thus, the court will examine the issues in this particular adversary proceeding in light of this standard. In

this adversary proceeding, the trustee seeks to recover alleged preferential payments and/or fraudulent transfers from the defendants, SKF Aviation, LLC (SKF Aviation), and CSSS, LP, dba Central Valley Shippers (CSSS) (collectively, the defendants). As with the other adversary proceedings on this calendar, Scott Salyer is alleged to have owned, controlled, operated, and/or managed the debtor and the defendants. The trustee alleges that the debtor funded or guaranteed financing for the purchase of aircraft by SKF Aviation, funded the operating costs for flights primarily for Salyers personal use, and financed CSSS with the goal on Salyers part that CSSS would generate only enough income to pay the premium on a life insurance policy covering Salyer so he would not have to pay the premium personally.

Given these allegations, it appears unlikely that significant proceedings could be undertaken in this adversary proceeding without evidence from Salyer and/or his criminal counsel. At a minimum, the court believes the defendants in this action are likely to require evidence from Salyer and/or his criminal counsel in order to adequately defend themselves. As with the other adversary proceedings, Salyer is the individual who is at the center of the trustees allegations here. It simply strains credibility for the trustee to now suggest there is no showing that Salyer alone has any unique knowledge, necessary to the defense, which cannot be provided by other third parties who can adequately testify. Opposition to Defendants Supplemental Motion to Stay Adversary Proceedings, filed June 1, 2011 (the Opposition), at 2:3–4.

The defect in the trustees reasoning is readily apparent. The trustee lists four other individuals he claims could testify about the allegations contained in the complaint; he summarizes the categories of information each one possesses (although very briefly), and concludes that he does not believe any discovery from or testimony by Salyer or his criminal counsel is necessary to proceed with the Trustees case in the Aviation Action. Opposition, 7:12–13. However, under the standard articulated by the district court, the point is not whether the trustee could make his case, it is whether the defendants could make their case.

The trustee also misstates the burden allocated to the defendants by the district court: The District Court has placed the burden on Defendants to explain what evidence that Salyer alone possesses, without which it is impossible for them to defend themselves. Opposition, 7:22–23.

[T]he Defendants fail to identify what evidence Salyer could provide about any of the issues in the Aviation Action, how that evidence would be reasonably necessary to the Defendants defense, and why that evidence could not be obtained from an alternative source.

Id., 8:6–8.

Simply stated, this court does not interpret the district courts April 14, 2011 order as requiring the defendants to make such a showing. Instead, based on the factual allegations in the adversary proceeding, the court is satisfied that Salyer is central to the disputes raised; the court need not speculate on what other sources might be available if Salyer is not, and the defendants will not be required to disprove the existence or adequacy of such other sources. (The trustees related argument that the defendants have not shown that obtaining the evidence needed for [their] defense would threaten Salyers Fifth Amendment rights (Opposition, 7:25–26) is a matter that was addressed in this courts ruling on the Salyer Parties first motion for a stay, which has been reversed by the district court; the court will not revisit the issue here.)

The real problem with the trustees opposition to the motion is that it does not apply the standard set by the district court and does not address the specific factual allegations of the complaint, but merely cites broad principles, draws broad conclusions, and charges the defendants with failing to provide sufficient particulars of the necessity of Salyers testimony. In the courts view, the factual allegations of the complaint are such that Salyers testimony (and possibly that of his criminal counsel) is likely to be central to resolution of the issues. Thus, the court concludes that evidence from Salyer and/or his criminal counsel is reasonably necessary for the defendants to adequately defend themselves in this proceeding. Accordingly, the court will grant the motion except as limited below.

The trustee cites three recent developments as suggesting that there is a risk the preliminary injunction previously issued by this court is not adequately safeguarding the assets that are the subject of the injunction. The Salyer Parties have not adequately responded to these allegations in particular, the court does not share their belief that the trustees concerns are exaggerated, does not agree that any potential harm was remedied precisely because the Preliminary Injunction was in place (Defendants Omnibus Reply to Oppositions to Motions to Stay Adversary Proceedings, filed June 8, 2011, 10:19–20, emphasis in original), and does not view the trustees bringing these matters to the courts attention as litigation tactics. Id., 11:5–7.

The court does not perceive denial of the stay motion as an effective way to address these issues, and does not view them as tilting the balance of the Keating factors (see Keating v. Office of Thrift Supervision, 45 F.3d 322, 324–25 (9th Cir. 1995)). For one thing, if the stay motion is not granted and the litigation

proceeds with respect to Salyer, the assets remain at risk in the meantime. In short, the court simply does not see a denial of the stay motion as an effective remedy for the concerns the trustee has raised. The court will, however, modify the stay of this adversary proceeding to the extent necessary to permit the trustee to take actions to investigate the extent of compliance or non-compliance with the preliminary injunction. The court will also modify the stay to ensure the injunction is complied with, including to permit the injunction to be amended or other relief to be granted to ensure the assets are preserved.

Finally, the trustee suggests that discovery could proceed against the officers, witnesses, or other third parties related to the Defendants who would also have knowledge and information relevant to the defense without impairing Salyers Fifth Amendment rights. Opposition, 17:24–18:2. The trustee quotes from an exchange at the April 11, 2011 district court hearing, and concludes that all parties are in agreement that any stay that this Court might enter should not prevent the Trustee and the Defendants from taking discovery from other third parties, who have evidence related to the Adversary Proceedings. Id., 18:6–8. There is nothing in the Salyer Parties written reply to indicate that they take issue with this conclusion.

However, at the hearing on the present motion, the Salyer Parties stated that they do oppose permitting the trustee to take third-party discovery. The court has reviewed the transcript of the April 11, 2011 hearing in the district court, together with the order issued following that hearing, on April 14, 2011. Although the issue of third-party discovery was discussed at the hearing, there is nothing in the order to suggest that if this court finds that the Salyer Parties cannot adequately defend themselves in a particular adversary proceeding without discovery from or testimony of Salyer or his criminal counsel, it may nevertheless allow discovery to proceed against third parties. In short, this court has found, above, that Salyer is sufficiently at the center of the disputes in this adversary proceeding that the defendants cannot adequately defend themselves without testimony of or discovery from Salyer and/or his criminal counsel. Thus, the language of the April 14, 2011 order suggests to this court that the adversary proceeding should be stayed, with no exception for third-party discovery. Accordingly, the motion will be granted and the adversary proceeding will be stayed, except with respect to the preliminary injunction, as discussed above. The court will issue an appropriate order.

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA**

**CERTIFICATE OF MAILING**

    **The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities at the addresses shown below or on the attached list.**

SEE ATTACHED LIST

**DATED:** 6/28/11        **By:** _WDSendrick_
                                              **Deputy Clerk**

**EDC 3-070 (Rev. 6/28/10)**

Kevin Coleman
Schnader Harrison Segal & Lewis
One Montgomery Street, Suite 2200
San Francisco, CA 94104-5501

Jaime Dreher
Downey Brand, LLP
621 Capitol Mall, 18th Floor
Sacramento, CA 95814-4731

Marc Levinson
Orrick Herrington & Sutcliffe
400 Capitol Mall, Suite 3000
Sacramento, CA 95814-4497

Paul Pascuzzi
Felderstein Fitzgerald
  Willoughby & Pascuzzi
400 Capitol Mall, Suite 1450
Sacramento, CA 95814

Todd Dressel
Chapman and Cutler, LLP
595 Market Street, 26th Floor
San Francisco, CA 94105

James Keowen
Nageley Meredith & Miller, Inc.
8001 Folsom Blvd., Suite 100
Sacramento, CA 95826

Larry Lichtenegger
Lichtenegger Law Offices
3850 Rio Road, Suite 58
Carmel, CA 93926

Malcolm Segal
Segal & Kirby, LLP
770 L Street, 1440
Sacramento, CA 95814

Eric Safire
2431 Fillmore St.
San Francisco, CA 94115

Robert Asperger
Office of the Attorney General
1300 I Street
Sacramento, CA 95814

1   Michael Kuzmich
    Boutin Gibson DiGiusto Hodell, Inc.
2   555 Capitol Mall, Suite 1500
    Sacramento, CA 95814
3
    Warren Felger
4   Felger & Associates
    726 W Barstow Ave., #106
5   Fresno, CA 93704

6   Caroline Newman
    Internal Revenue Service
7   P.O. Box 683
    Washington, DC 20044

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# RJN
# EXHIBIT R



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FILED**

JUN 2 8 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

In re:                                    )       Case No. 09-29162-D-11
                                          )
SK FOODS, L.P.,                           )
                                          )
                    Debtor.               )
                                          )
_____)
                                          )
BRADLEY D. SHARP, Chapter 11              )       Adv. Pro. No. 10-2017-D
Trustee,                                  )
                                          )       Docket Control No. MSS-2
                                          )
                    Plaintiff,            )
                                          )
v.                                        )
                                          )       DATE:  June 22, 2011
FRED SALYER IRREVOCABLE TRUST,            )       Time:  9:30 a.m.
                                          )       Dept:  D
                    Defendants.           )
_____)

<u>**ORDER**</u>

The court having issued findings and analysis in the matter

of Defendants' Supplemental Motion to Stay Adversary Proceedings,

Docket Control No. MSS-2 (the "Motion"), which are included in

the civil minutes, a copy of which is attached hereto, and good

cause appearing,

IT IS HEREBY ORDERED that the Motion is granted and this

adversary proceeding is stayed pending further order of this

court.

Dated: ___June 27___, 2011        _Robert Bardwil_____
                                  ROBERT S. BARDWIL
                                  United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## CIVIL MINUTES

| | | | | |
|---|---|---|---|---|
| **Adversary Title :** | Sharp et al v. Fred Salyer Irrevocable Trust et al | **Case No :** | **09–29162 – D – 11** | |
| | | **Adv No :** | **10–02017 – D** | |
| | | **Date :** | 6/22/11 | |
| | | **Time :** | 10:00 | |
| **Matter :** | [87] – Supplemental Motion/Application to Stay Adversary Proceedings [MSS–2] Filed by Defendants Fred Salyer Irrevocable Trust, Gerard Rose (dhes) Modified on 4/28/2011 (dhes). | | | OPPOSED |
| **Judge :** | Robert S. Bardwil | | | |
| **Courtroom Deputy :** | Nancy Williams | | | |
| **Reporter :** | Diamond Reporters | | | |
| **Department :** | D | | | |

**APPEARANCES for :**
**Movant(s) :**
    Defendant's Attorney – James Koewen
**Respondent(s) :**
    Plaintiff's Attorney – Gregory Nuti, Kevin Coleman
    Creditor's Attorney – Eric Safire, Paul Pascuzzi, Todd Dressel, Robert Asperger, James Deher, Michael Kuzmich, Warren Felger (phone), Caroline Newman (phone)

MOTION was :

Final ruling:

Scott Salyer, individually and as trustee of the Scott Salyer Revocable Trust; the Scott Salyer Revocable Trust; SK PM Corporation; SK Foods, LLC; SKF Canning, LLC; Blackstone Ranch Corporation; Monterey Peninsula Farms, LLC; Salyer Management Company, LLC; SK Farms Services, LLC; SK Frozen Foods, LLC; SS Farms, LLC; SSC Farming, LLC; SS Farms I, LLC; SS Farms II, LLC; SS Farms III, LLC; SKF Aviation, LLC; and CSSS, LP, dba Central Valley Shippers (the Salyer Parties), have filed a supplemental motion to stay several adversary proceedings, including this one. (The motion is a supplemental one because the Salyer Parties filed an earlier motion for a stay that was denied. See below.) The chapter 11 trustee, Bradley D. Sharp (the trustee), opposes the motion. For the reasons set forth below, the court intends to grant the motion.

In April 2010, the Salyer Parties filed their first motion for a stay of the adversary proceedings. This court denied the motion, based in large part on what it perceived to be significant distinctions between the factual allegations in the criminal indictment against Scott Salyer and those in the adversary proceedings. On appeal by the Salyer Parties, the district court for this district reversed and, on April 14, 2011, remanded to this court to decide, in the first instance, whether discovery from or testimony of Salyer or his criminal counsel is reasonably necessary [fn] to dispose of a particular matter before the Bankruptcy Court in the adversary proceedings. Sharp v. SSC Farms I, LLC, United States District Court, Eastern District of California, Civ. No. S–10–1492 LKK, Order filed April 14, 2011, at 5:11–15. The court defined the applicable standard as follows: A matter is reasonably necessary if [the Salyer Parties] cannot adequately defend themselves in an adversary proceeding without evidence from Salyer or his criminal counsel. Id., 5:15–18.

Thus, the court will examine the issues in this particular adversary proceeding in light of this standard. In his complaint in this adversary proceeding, the trustee seeks a judgment in the amount of $3,948.630 on account of monies allegedly loaned by the debtor to the Fred Salyer Irrevocable Trust (FSIT) for the purchase of and premiums on a life insurance policy under which Scott Salyer was the beneficiary. The complaint does not allege that the funds were loaned by the debtor at the direction of Scott Salyer; however, it does allege that Salyer, an entity controlled by him, or those acting at his direction, operated, managed, and/or controlled the debtor. Further, in a motion for summary judgment filed in December 2010, the trustee alleged that within the one year prior to the commencement of the debtors bankruptcy case, Scott Salyer caused the loan, which had been carried on the debtors books for nine years as a note receivable, to be reclassified as a long–term investment. The summary judgment motion is set for a continued hearing on July 14, 2011.

Given these allegations, it is unlikely that significant proceedings could be undertaken in this adversary proceeding without evidence from Salyer and/or his criminal counsel. At a minimum, the court believes the defendants in this action are likely to require evidence from Salyer and/or his criminal counsel in order to adequately defend themselves. As with the other adversary proceedings, Salyer is the individual who is at the center of the trustees allegations here. It simply strains credibility for the trustee to now suggest there is no showing that Salyer alone has any unique knowledge, necessary to the defense, which cannot be provided by other third parties who can adequately testify. Opposition to Defendants Supplemental Motion to Stay Adversary Proceedings, filed June 1, 2011 (the Opposition), at 2:3–4.

The defect in the trustees reasoning is readily apparent. The trustee contends Gerard Rose, the trustee of the FSIT, could testify about why the debtor made the payments to or on behalf of FSIT on the insurance policy, and that Shondale Seymour, the debtors former CFO, could testify about the payments and the manner in which they were booked on the debtors records. The trustee concludes that he does not believe any discovery from or testimony by Salyer or his criminal counsel is necessary to proceed with the Trustees case in the FSIT Action. Opposition, 7:3–4. However, under the standard articulated by the district court, the point is not whether the trustee could make his case, it is whether the defendants could make their case. As the defendants point out, it is clear that Seymour will be testifying for the trustee; it is illogical for the trustee to suggest Seymour could play any role in the defendants preparation of their defense. Further, the record is not clear as to when Gerard Rose became trustee of the FSIT; it does appear he was not its trustee throughout the time the loans by the debtor were being made.

The trustee also misstates the burden allocated to the defendants by the district court: The District Court has placed the burden on Defendants to explain what evidence that Salyer alone possesses, without which it is impossible for them to defend themselves. Opposition, 7:10–11. He also complains the defendants have failed to show that the information necessary for their defense could not be obtained from an alternative source. Simply stated, this court does not interpret the district courts April 14, 2011 order as requiring the defendants to make such a showing. Instead, based on the factual allegations in the adversary proceeding, the court is satisfied that Salyer is central to the disputes raised; the court need not speculate on what other sources might be available if Salyer is not, and the defendants will not be required to disprove the existence or adequacy of such other sources. (The trustees related argument that the defendants have not shown that obtaining the evidence needed for [their] defense would threaten Salyers Fifth Amendment rights (Opposition, 7:13–14) is a matter that was addressed in this courts ruling on the Salyer Parties first motion for a stay, which has been reversed by the district court; the court will not revisit the issue here.)

The real problem with the trustees opposition to the motion is that it does not apply the standard set by the district court and does not address the specific factual allegations of the complaint, but merely cites broad principles, draws broad conclusions, and charges the defendants with failing to provide sufficient particulars of the necessity of Salyers testimony. In the courts view, the factual allegations of the complaint are such that Salyers testimony (and possibly that of his criminal counsel) is likely to be central to resolution of the issues. Thus, the court concludes that evidence from Salyer and/or his criminal counsel is reasonably necessary for the defendants to adequately defend themselves in this proceeding.

Finally, the trustee suggests that discovery could proceed against the officers, witnesses, or other third parties related to the Defendants who would also have knowledge and information relevant to the defense without impairing Salyers Fifth Amendment rights. Opposition, 14:15–17. The trustee quotes from an exchange at the April 11, 2011 district court hearing, and concludes that all parties are in agreement that any stay that this Court might enter should not prevent the Trustee and the Defendants from taking discovery from other third parties, who have evidence related to the Adversary Proceedings. Id., 15:4–6. There is nothing in the Salyer Parties written reply to indicate that they take issue with this conclusion.

However, at the hearing on the present motion, the Salyer Parties stated that they do oppose permitting the trustee to take third–party discovery. The court has reviewed the transcript of the April 11, 2011 hearing in

the district court, together with the order issued following that hearing, on April 14, 2011. Although the issue of third-party discovery was discussed at the hearing, there is nothing in the order to suggest that if this court finds that the Salyer Parties cannot adequately defend themselves in a particular adversary proceeding without discovery from or testimony of Salyer or his criminal counsel, it may nevertheless allow discovery to proceed against third parties. In short, this court has found, above, that Salyer is sufficiently at the center of the disputes in this adversary proceeding that the defendants cannot adequately defend themselves without testimony of or discovery from Salyer and/or his criminal counsel. Thus, the language of the April 14, 2011 order suggests to this court that the adversary proceeding should be stayed, with no exception for third-party discovery. Accordingly, the motion will be granted and the adversary proceeding will be stayed. The court will issue an appropriate order.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**CERTIFICATE OF MAILING**

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities at the addresses shown below or on the attached list.

SEE ATTACHED LIST

DATED: 6/28/11                    By: _____
                                        Deputy Clerk

EDC 3-070 (Rev. 6/28/10)

1

2  Kevin Coleman
   Schnader Harrison Segal & Lewis
   One Montgomery Street, Suite 2200
3  San Francisco, CA 94104-5501

4  Jaime Dreher
   Downey Brand, LLP
5  621 Capitol Mall, 18th Floor
   Sacramento, CA 95814-4731
6
   Marc Levinson
7  Orrick Herrington & Sutcliffe
   400 Capitol Mall, Suite 3000
8  Sacramento, CA 95814-4497

9
   Paul Pascuzzi
10 Felderstein Fitzgerald
      Willoughby & Pascuzzi
11 400 Capitol Mall, Suite 1450
   Sacramento, CA 95814
12
   Todd Dressel
13 Chapman and Cutler, LLP
   595 Market Street, 26th Floor
14 San Francisco, CA 94105

15 James Keowen
   Nageley Meredith & Miller, Inc.
16 8001 Folsom Blvd., Suite 100
   Sacramento, CA 95826
17

18 Larry Lichtenegger
   Lichtenegger Law Offices
19 3850 Rio Road, Suite 58
   Carmel, CA 93926
20
   Malcolm Segal
21 Segal & Kirby, LLP
   770 L Street, 1440
22 Sacramento, CA 95814

23
   Eric Safire
24 2431 Fillmore St.
   San Francisco, CA 94115
25
   Robert Asperger
26 Office of the Attorney General
   1300 I Street
27 Sacramento, CA 95814

28

1   Michael Kuzmich
     Boutin Gibson DiGiusto Hodell, Inc.
2   555 Capitol Mall, Suite 1500
     Sacramento, CA 95814
3

4   Warren Felger
     Felger & Associates
     726 W. Barstow Ave., #106
5   Fresno, CA 93704

6   Caroline Newman
     Internal Revenue Service
7   P.O. Box 683
     Washington, DC 20044

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28