Todd J. Dressel (State Bar No. 220812)
CHAPMAN AND CUTLER LLP
595 Market Street, 26th Floor
San Francisco, CA  94105
Telephone:    (415) 278-9088
Facsimile:    (415) 541-0506
dressel@chapman.com

James E. Spiotto *(Admitted Pro Hac Vice)*
Ann E. Acker *(Admitted Pro Hac Vice)*
James M. Heiser *(Admitted Pro Hac Vice)*
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, IL  60603
Telephone:    (312) 845-3000
Facsimile:    (312) 516-1900
spiotto@chapman.com
acker@chapman.com
heiser@hapman.com

Attorneys for Bank of Montreal, as Administrative Agent

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| BANK OF MONTREAL, as Administrative Agent,<br><br>                         Plaintiff<br><br>                 v.<br><br>SK FOODS, LLC<br><br>                         Defendant. | Case No. 11-CV-80133 MISC - EJD (HRL)<br><br>NOTICE REGARDING BANK OF MONTREAL'S SUBMITTED MOTION FOR RULE TO SHOW CAUSE WHY JUDGMENT SHOULD NOT BE AMENDED TO ADD RESPONDENTS AS JUDGMENT DEBTORS |
|                v.<br><br>SK PM CORP. and FREDERICK SCOTT SALYER, as Trustee for the Scott Salyer Revocable Trust, FREDERICK SCOTT SALYER, in his Individual Capacity<br><br>                 Respondents. | Honorable Edward J. Davila<br><br>Place:  Robert F. Peckham Federal Building<br>             280 South 1st Street<br>             San Jose, CA  95113 |

TO:    THE HONORABLE EDWARD J. DAVILA AND THE PARTIES LISTED ON THE ATTACHED CERTIFICATE OF SERVICE

NOTICE OF SUBMITTED MATTER

**PLEASE TAKE NOTICE**, pursuant to Civil L.R. 7-13, that the Bank of Montreal's Motion for Rule to Show Cause Why Judgment Should Not be Amended to Add Respondents as Judgment Debtors (the "Show Cause Motion"), has been under submission by this Court since September 26, 2012, approximately seven months, following briefing and hearings before this Court without a final determination.

**PLEASE TAKE FURTHER NOTICE** that approximately on March 23, 2012, Respondent Frederick Scott Salyer pleaded guilty to one count of racketeering and one count of price fixing before the Honorable Lawrence K. Karlton in the United States District Court for the Eastern District of California (Case No. 10-cr-00061-LKK).  A copy of the Plea Agreement dated March 23, 2012 is attached hereto as Exhibit A.  Mr. Salyer had previously opposed the relief sought by Bank of Montreal, as Administrative Agent, in this proceeding on various grounds relating to his criminal prosecution, including, *inter alia*, its alleged impact on his Fifth Amendment rights in his criminal proceeding.

**PLEASE TAKE FURTHER NOTICE** that counsel for the Respondents, the law firm of Farella Braun & Martell LLP, has filed motions to withdraw from its representation of the Respondents, as well as other related entities, in the vast majority of matters pending before the United States District and Bankruptcy Courts for the Eastern District of California.  Despite request, counsel has not informed Plaintiff whether or not they will continue to represent Respondents in this matter.

Dated: April 26, 2012

James E. Spiotto
Ann E. Acker
Todd J. Dressel
James M. Heiser
CHAPMAN AND CUTLER LLP

_____/s/ *Todd J. Dressel*_____
Todd J. Dressel
Attorneys for Bank of Montreal

# EXHIBIT A

BENJAMIN B. WAGNER
United States Attorney
R. STEVEN LAPHAM
MATTHEW D. SEGAL
JARED C. DOLAN
Assistant U.S. Attorneys
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2700

ANNA TRYON PLETCHER
TAI S. MILDER
Trial Attorneys
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue, Room 10-0101
San Francisco, CA 94102
Telephone: (415) 436-6660

**FILED**

MAR 2 3 2012

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>FREDERICK SCOTT SALYER,<br><br>                    Defendant. | CASE NO.   2:10-CR-61 LKK<br><br>**PLEA AGREEMENT**<br><br>DATE:   March 23, 2012<br>TIME:   10:00 a.m.<br>COURT: Hon. Lawrence K. Karlton |

## I.

## INTRODUCTION

**A.  Scope of Agreement:**  The Second Superseding Indictment in this case charges the defendant with racketeering, racketeering conspiracy, wire fraud, alteration of records in a federal

1

1   investigation, and conspiracy in restraint of trade.  This document

2   contains the complete plea agreement between the United States

3   Attorney's Office for the Eastern District of California and the

4   Antitrust Division of the United States Department of Justice (the

5   "government") and the defendant regarding this case.  This plea

6   agreement is limited to the United States Attorney's Office for the

7   Eastern District of California and the Antitrust Division of the

8   United States Department of Justice and cannot bind any other

9   federal, state, or local prosecuting, administrative, or regulatory

10  authorities.

11      **B.   Rule 11(c)(1)(C) Specific Sentence Agreement:**   The

12  government and the defendant agree that the total term of

13  imprisonment in this case should be no less than four years and no

14  more than seven years.  Consequently, this plea agreement is being

15  offered to the Court pursuant to Rule 11(c)(1)(C) of the Federal

16  Rules of Criminal Procedure.  Under the provisions of Rule 11(c)(3),

17  the Court may accept or reject the plea agreement, or may defer its

18  decision as to the acceptance or rejection until there has been an

19  opportunity to consider the presentence report.  If the Court accepts

20  the plea agreement, the Court will inform the parties that it will

21  embody in the judgment and sentence the disposition provided for in

22  this plea agreement.  If the Court rejects this plea agreement, the

23  Court shall so advise the parties, allow the defendant the

24  opportunity to withdraw his pleas, and advise him that if he persists

25  in a guilty plea the disposition of the case may be less favorable to

26  him than is contemplated by this plea agreement.

27  ///

28  ///

1

## II.

2

## DEFENDANT'S OBLIGATIONS

3   **A. Guilty Pleas:** The defendant will plead guilty to Count One,
4   alleging racketeering in violation of Title 18, United States Code,
5   Section 1962(c), and Count Eight, alleging price fixing, in violation
6   of Title 15, United States Code, Section 1, based on the facts set
7   forth in Exhibit A. The defendant agrees that he is in fact guilty
8   of these charges and that the facts set forth in the Factual Basis
9   For Plea attached hereto as Exhibit A are accurate.

10   **B. Restitution:** The Mandatory Victim Restitution Act requires
11   the Court to order restitution to the victims of the offenses to
12   which the defendant is agreeing to plead guilty. The defendant and
13   the government have no agreement on the appropriate amount of
14   restitution. The defendant reserves the right to contest any
15   restitution claim in this criminal case, and herein merely
16   acknowledges that he has notice of the claims that have been made
17   against the bankruptcy estate of SK Foods L.P. based on the facts
18   alleged in this case. The defendant understands that this agreement
19   cannot bind any third party. If the Court does order restitution,
20   payment should be by cashier's or certified check made payable to the
21   Clerk of the Court. The defendant further agrees that he will not
22   seek to discharge any restitution obligation or any part of such
23   obligation in any personal bankruptcy proceeding. The defendant
24   further understands that it is Department of Justice policy, whenever
25   possible, to use forfeiture proceeds to compensate victims of the
26   crimes underlying the forfeiture, and under the law, such payments
27   are credited against the amount of any restitution order.

28   **C. Fine:** There is no agreement as to the appropriate fine in

3

1  this case.  The defendant reserves the right to argue that he is
2  unable to pay a fine because of the forfeiture and restitution orders
3  in this case.

4  **D.  Special Assessment:**  The defendant agrees to pay a special
5  assessment of $200 at the time of sentencing by delivering a check or
6  money order payable to the United States District Court to the United
7  States Probation Office immediately before the sentencing hearing.
8  The defendant understands that this plea agreement is voidable by the
9  government if he fails to pay the assessment prior to that hearing.

10  **E.  Forfeiture:**  The defendant agrees to forfeit to the United
11  States voluntarily and immediately all of his direct and/or indirect
12  right title and interest in the following assets subject to
13  forfeiture pursuant to Title 18, United States Code, Section 1963(a)
14  and (b):

15  all funds ever at Volksbank in Liechtenstein (Acct. No. 10-
16  502063-0 100) and Credit Andorra in Andorra (IBAN No. AD41 0003 0012
17  0000 0095 B200), including $3,250,000 transferred from Volksbank to
18  Credit Andorra on or about January 5, 2010.

19  The defendant agrees that his direct and/or indirect interests
20  in the listed assets constitute interests the defendant has acquired
21  or maintained in violation of Section 1962; interests in, securities
22  of, claims against, and property or contractual rights of any kind
23  affording a source of influence over an enterprise which the
24  defendant established, operated, controlled, conducted, and
25  participated in the conduct of in violation of Section 1962.

26  The defendant agrees to fully assist the government in bringing
27  the listed assets into the United States and within the control of
28  the Court for forfeiture proceedings, including ancillary

4

1  proceedings.  The defendant shall not sell, transfer, convey, or
2  otherwise dispose of any of his assets, including but not limited to,
3  the above-listed assets.

4      The defendant agrees not to file a claim to any of the listed
5  property in any civil proceeding, administrative or judicial, which
6  may be initiated.  The defendant agrees to waive his right to notice
7  of any forfeiture proceeding involving this property, and agrees to
8  not file a claim or assist others in filing a claim in that
9  forfeiture proceeding.  This waiver does not limit the right of any
10  third party to invoke rights under Fed. R. Crim. P. 32.2.(c).

11      The defendant knowingly and voluntarily waives his right to a
12  jury trial on the forfeiture of assets.  The defendant knowingly and
13  voluntarily waives all constitutional, legal and equitable defenses
14  to the forfeiture of these assets in any proceeding.  The defendant
15  agrees to waive any jeopardy defense, and agrees to waive any claim
16  or defense under the Eighth Amendment to the United States
17  Constitution, including any claim of excessive fine, to the
18  forfeiture of the assets by the United States, the State of
19  California or its subdivisions.

20      The defendant waives oral pronouncement of forfeiture at the
21  time of sentencing, and any defects that may pertain to the
22  forfeiture.

23      **F.**    **Incarceration:** The defendant agrees not to ask for a
24  sentence of less than four years.  If the defendant breaches this
25  provision, the government shall be relieved of all of it obligations
26  under the plea agreement.  This provision does not affect the
27  defendant's right to credit toward the service of his term of
28  imprisonment pursuant to Title 18, United States Code, Section 3585.

5

1    **G.    Financial Disclosure:** The defendant agrees to personally
2    complete and sign the attached financial disclosure form.   If a
3    preponderance of the evidence demonstrates that the completed form
4    contains any materially false statement or omission, as determined
5    after a hearing by the District Court, the government shall be
6    relieved of all of its obligations under this plea agreement and the
7    defendant shall not be permitted to withdraw his plea.   The completed
8    financial disclosure form shall be filed under seal with the Court.
9    The defendant represents that Credit Andorra advised him that on May
10   4, 2010, it transferred the balance of the above-listed Credit
11   Andorra account ($3,179,142.24 and €3,773.07) to the Institut
12   Nacional Andorrà de Finances and the defendant knows of no subsequent
13   transfer of those funds.

14                                    **III.**

15                      **THE GOVERNMENT'S OBLIGATIONS**

16   **A.    Dismissals and Non-Prosecution:** The government agrees to
17   move, at the time of sentencing, to dismiss without prejudice the
18   remaining counts in the pending Second Superseding Indictment.   The
19   government also agrees not to reinstate any dismissed count except as
20   provided in Paragraphs II. above and VII.B. below.   The government
21   agrees not to prosecute the defendant for any other completed conduct
22   presently known to the government.

23   **B.    Recommendations:** The government agrees not to seek a total
24   term of incarceration in excess of seven years.

25   **C.    Assignment:** The government agrees not to oppose the
26   defendant's request that the Court recommend, subject to security
27   classification and space availability, that he be imprisoned at the
28   satellite prison camp adjacent to USP Lompoc.

1    **D.  Self-Surrender:**  The government agrees not to oppose the
2    defendant's request that he be allowed to self-surrender within 60
3    days of sentencing.  If there has been no facility designation, the
4    defendant may seek the Court's leave to continue his self-surrender
5    date.

## IV.

### ELEMENTS OF THE OFFENSE

**A.  Elements of RICO:**

**1.  Ninth Circuit Pattern Instruction 8.160**

10       With respect to Count One of the Second Superseding Indictment,
11   which charges the defendant with conducting the affairs of an
12   enterprise through a pattern of racketeering activity in violation of
13   18 U.S.C. § 1962(c), at trial the government would have to prove
14   beyond a reasonable doubt the following elements:

15       First, the defendant was employed by or associated with SK
16   Foods, L.P. (hereinafter, "SK Foods") and that SK Foods constituted
17   an enterprise, that is, a legal entity, a partnership, or group of
18   individuals associated in fact;

19       Second, the defendant conducted or participated, directly or
20   indirectly, in the conduct of the affairs of SK Foods through a
21   pattern of racketeering activity, as described in the Second
22   Superseding Indictment; and

23       Third, SK Foods engaged in or its activities in some way
24   affected commerce between one state and at least one other state, or
25   the United States and a foreign country.

26       **2.  Elements of Racketeering Acts**

27           **Ninth Circuit Pattern Instructions 8.121, 8.156, 8.123**

28               i.  Scheme to Defraud Mail/Wire Fraud

1    The crimes of "scheme to defraud" mail fraud and wire fraud are
2    racketeering acts. To prove any one of these racketeering acts at
3    trial, the government would have to prove beyond a reasonable doubt
4    the following elements:

5    First, the defendant knowingly participated in, devised, or
6    intended to devise a scheme or plan to defraud, or a scheme or plan
7    for obtaining money or property by means of false or fraudulent
8    pretenses, representations, or promises;

9    Second, the statements made or facts omitted as part of the
10   scheme were material; that is, they had a natural tendency to
11   influence, or were capable of influencing, a person to part with
12   money or property;

13   Third, the defendant acted with the intent to defraud; that is,
14   the intent to deceive or cheat; and

15   Fourth, for mail fraud, the defendant used, or caused to be
16   used, the mails to carry out or attempt to carry out an essential
17   part of the scheme, or for wire fraud, the defendant used, or caused
18   to be used, an interstate wire communication to carry out or attempt
19   to carry out an essential part of the scheme.

20              ii.   Honest Services Mail/Wire Fraud

21   The crimes of "honest services" mail fraud and wire fraud are
22   racketeering acts. To prove any one of these racketeering acts at
23   trial, the government would have to prove beyond a reasonable doubt
24   the following elements:

25   First, the defendant devised or knowingly participated in a
26   scheme or plan to deprive one of SK Foods's customers of its right of
27   honest services;

28   Second, the scheme or plan consisted of a bribe or kickback in

8

1 exchange for the recipient's services.  The "exchange" may be express
2 or may be implied from all the surrounding circumstances;

3     Third, the defendant acted with the intent to defraud by
4 depriving SK Foods's customer of its right of honest services;

5     Fourth, the defendant's act was material; that is, it had a
6 natural tendency to influence, or was capable of influencing, an
7 entity's acts; and

8     Fifth, the defendant used, or caused someone to use, the mails
9 or an interstate wire communication to carry out or to attempt to
10 carry out the scheme or plan.

11     The jury would have to be unanimous as to the same two
12 racketeering acts that the defendant committed or aided and abetted
13 in committing.

14            **3.  Pattern of Racketeering Activity**
15            **Ninth Circuit Pattern Instruction 8.157**

16     To establish a pattern of racketeering activity, the government
17 must prove each of the following beyond a reasonable doubt:

18     First, at least two acts of racketeering were committed;

19     Second, the acts of racketeering had a relationship to each
20 other which posed a threat of continued criminal activity; and

21     Third, the acts of racketeering embraced the same or similar
22 purposes, results, participants, victims, or methods of commission,
23 or were otherwise interrelated by distinguishing characteristics.
24 Sporadic, widely separated, or isolated criminal acts do not form a
25 pattern of racketeering activity.  Two racketeering acts are not
26 necessarily enough to establish a pattern of racketeering activity.

27     **B.  Conspiracy in Restraint of Trade**

28     With respect to Count Eight of the Second Superseding

9

1  Indictment, which charges the defendant with price fixing in

2  violation of 15 U.S.C. § 1, at trial the government would have to

3  prove beyond a reasonable doubt the following elements:

4       First, that the defendant entered into a conspiracy;

5       Second, that the conspiracy was an unreasonable restraint of

6  trade; and

7       Third, that the conspiracy was in or affected interstate

8  commerce in the United States.

9                              **V.**

10                       **MAXIMUM SENTENCE**

11       **A.   Maximum Penalties:**

12       For racketeering, the maximum sentence that the Court can impose

13  is twenty years of incarceration; a fine of the greatest of $250,000,

14  twice the gross gain, or twice the gross loss from the offense; a

15  three-year period of supervised release, and a special assessment of

16  $100.  By signing this plea agreement, the defendant also agrees that

17  the Court can order the payment of restitution for the full loss

18  caused by the defendant's wrongful conduct.  The defendant agrees

19  that the restitution order is not restricted to the amounts alleged

20  in the specific counts to which the defendant is pleading guilty.

21  The defendant further agrees that he will not attempt to discharge in

22  any present or future personal bankruptcy proceeding any restitution

23  imposed by the Court.

24       For conspiracy in restraint of trade in violation of 15 U.S.C. §

25  1, the maximum sentence the Court can impose is ten years

26  incarceration; a fine in an amount equal to the greatest of (1)

27  $1,000,000, (2) twice the gross pecuniary gain the conspirators

28  derived from the crime, or (3) twice the gross pecuniary loss caused

                              10

1  to the victims of the crime by the conspirators; a three-year period
2  of supervised release; and a special assessment of $100.

3  **B. Violations of Supervised Release:** The defendant understands
4  that if he violates a condition of supervised release at any time
5  during the term of supervised release, the Court may revoke the term
6  of supervised release and require the defendant to serve up to two
7  additional years imprisonment for racketeering and two additional
8  years imprisonment for conspiracy in restraint of trade.

9                                    **VI.**

10                      **SENTENCING DETERMINATION**

11  **A. Statutory Authority:** The defendant understands that the
12  Court must consult the Federal Sentencing Guidelines (as promulgated
13  by the Sentencing Commission pursuant to the Sentencing Reform Act of
14  1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as
15  modified by United States v. Booker and United States v. Fanfan,
16  543 U.S. 220 (VI), 125 S.Ct. 738 (2005).) and must take them into
17  account when determining a final sentence. The defendant understands
18  that the Court will determine a non-binding and advisory guideline
19  sentencing range for this case pursuant to the Sentencing Guidelines.
20  The defendant further understands that the Court will consider whether
21  there is a basis for departure from the guideline sentencing range
22  (either above or below the guideline sentencing range) because there
23  exists an aggravating or mitigating circumstance of a kind, or to a
24  degree, not adequately taken into consideration by the Sentencing
25  Commission in formulating the Guidelines. The defendant further
26  understands that the Court, after consultation and consideration of
27  the Sentencing Guidelines, must impose a sentence that is reasonable
28  in light of the factors set forth in 18 U.S.C. § 3553(a).

                                    11

1    **B.  Sentencing Agreement as to Incarceration:**  The only agreement
2  related to the appropriate term of incarceration in this case is that
3  the government will not ask for a sentence in excess of seven years
4  and the defendant will not ask for a sentence of less than four years.
5  Each party reserves the right to make any argument of any kind in
6  support of its position as to the appropriate amount of incarceration.

**VII.**

**WAIVERS**

9    **A.  Waiver of Constitutional Rights:**  The defendant understands
10  that by pleading guilty he is waiving the following constitutional
11  rights:   (a) to plead not guilty and to persist in that plea if
12  already made; (b) to be tried by a jury; (c) to be assisted at trial
13  by an attorney, who would be appointed if necessary; (d) to subpoena
14  witnesses to testify on his behalf; (e) to confront and cross-examine
15  witnesses against him; and (f) not to be compelled to incriminate
16  himself.

17    **B.  Waiver of Appeal and Collateral Attack:**  The defendant
18  understands that the law gives him a right to appeal his conviction
19  and sentence.  He unconditionally agrees as part of his pleas,
20  however, to give up the right to appeal the conviction and the right
21  to appeal any aspect of the sentence imposed in this case.   He
22  specifically gives up his right to appeal any order of restitution the
23  Court may impose.

24     Regardless of the sentence he receives, the defendant also gives
25  up any right he may have to bring a post-appeal attack on his
26  conviction or his sentence.  He specifically agrees not to file a
27  motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or
28  sentence.

12

1    Notwithstanding the agreement in Paragraph III.A. above that the
2  government will move to dismiss counts against the defendant, if the
3  defendant ever attempts to vacate his pleas, dismiss the underlying
4  charges, or reduce or set aside his sentence, or challenge the
5  restitution order, on any of the counts to which he is pleading
6  guilty, the government shall have the right (1) to prosecute the
7  defendant on any of the counts to which he pleaded guilty; (2) to
8  reinstate any counts that may be dismissed pursuant to this plea
9  agreement; and (3) to file any new charges that would otherwise be
10 barred by this plea agreement.  The decision to pursue any or all of
11 these options is solely in the discretion of the United States
12 Attorney's Office, provided that one of the triggering events listed
13 above has occurred.  By signing this plea agreement, the defendant
14 agrees to waive any objections, motions, and defenses he might have to
15 the government's decision.  In particular, he agrees not to raise any
16 objections based on the passage of time with respect to such counts
17 including, but not limited to, any statutes of limitation or any
18 objections based on the Speedy Trial Act or the Speedy Trial Clause of
19 the Sixth Amendment.

20    **C.  Waiver of Attorneys' Fees and Costs:**  The defendant agrees to
21 waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119
22 (Nov. 26, 1997), to recover attorneys' fees or other litigation
23 expenses in connection with the investigation and prosecution of all
24 charges in the above-captioned matter and of any related allegations
25 (including without limitation any charges to be dismissed pursuant to
26 this plea agreement and any charges previously dismissed).
27 ///
28 ///

13

# VIII.

## ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

# IX.

## APPROVALS AND SIGNATURES

**A. Defense Counsel:** I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

DATED: 3/23/12

ELLIOT PETERS
Attorney for Defendant

**B. Defendant:** I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this

///
///
///
///
///

14

1  plea agreement.  In addition, no one has threatened or forced me in

2  any way to enter into this plea agreement.  Finally, I am satisfied

3  with the representation of my attorney in this case.

4

5  DATED:  *March 24, 2012*

   _____
   FREDERICK SCOTT SALYER, Defendant

6

7       **C.  Attorneys for United States:**  I accept and agree to this plea

8  agreement on behalf of the government.

9                                    BENJAMIN B. WAGNER
                                     United States Attorney
10

11 DATED:  *March 23, 2012*       By: _____
12                                    R. STEVEN LAPHAM
                                     MATTHEW D. SEGAL
13                                   JARED C. DOLAN
                                     Assistant U.S. Attorneys
14

15                                   SHARIS A. POZEN
                                     Acting Assistant Attorney General
16

17 DATED:  *March 23, 2012*       By: _____
18                                    ANNA TRYON PLETCHER
                                     TAI S. MILDER
19                                   Trial Attorneys
                                     U.S. Department of Justice
20                                   Antitrust Division

21

22

23

24

25

26

27

28

15

1
2

### EXHIBIT "A"

### Factual Basis for Plea

3  At trial, the government would prove the following facts beyond a
   reasonable doubt:
4

   SK Foods, L.P. ("SK Foods") was a limited partnership doing
5  business in Ripon and Lemoore, in the State and Eastern District of
   California, and in Monterey, California.  SK Foods was a grower and
6  processor of tomato and other food products.  SK Foods conducted all
   of its tomato paste processing in the Eastern District of California.
7  SK Foods sold tomato paste and other processed agricultural products
   to food manufacturers in interstate commerce.
8

   Frederick Scott Salyer ("Salyer") was the Chief Executive Officer
9  of SK Foods.  Through the Scott Salyer Revocable Trust, he also
   exercised ownership rights over SK Foods.
10

11                              Count One

   Randall Lee Rahal ("Rahal") was the president of Intramark USA,
12 Inc. ("Intramark"), a New Jersey wholesaler of food ingredients,
   including SK Foods tomato products.  Rahal oversaw, among other
13 things, the negotiation of contracts between SK Foods and some of its
   customers.  Rahal acted as an agent of SK Foods.
14

   Between no later than January 2004 and continuing until in or
15 about April 2008, with Salyer's knowledge and encouragement, Rahal
   routinely paid bribes and kickbacks to the purchasing agents of
16 several SK Foods customers.  These payments and their purposes were
   concealed from SK Foods's customers through various means.  In return
17 for the routine payments, the purchasing managers promoted SK Foods's
   interests at the expense of the interests of their employers.  Between
18 January 2004 and April 2008, Rahal paid concealed bribes and kickbacks
   to, among others, the Director of Purchasing at B&G Foods, Inc.,
19 Robert C. Turner, Jr. ("Turner"); the Senior Group Manager for
   Ingredients Purchasing at Frito-Lay, Inc., James Richard Wahl, Jr.
20 ("Wahl"); and a Purchasing Manager at Kraft Foods, Inc., Robert Watson
   ("Watson").  B&G Foods, Frito-Lay, and Kraft would not have allowed
21 the bribe and kickback payments had those companies been aware of
   them.  The payments violated the conflict of interest policy of each
22 company.

23 At all times material, B&G was a multinational manufacturer,
   seller and distributor of various food products with a principal place
24 of business in Parsippany, New Jersey.  B&G was a regular customer of
   SK Foods.  Turner worked out of the company's Parsippany, New Jersey
25 headquarters.

26 In May 2007, SK Foods and B&G entered into a "cost-plus" contract
   whereby SK Foods agreed to sell B&G chili and jalapeno peppers at a
27 price of $0.22 per pound.  Subsequent to entering into the agreement,
   Rahal convinced Turner to increase the amount B&G would pay for the
28 order.  In exchange, Rahal agreed to pay Turner a 0.5 cent per pound

                                A-1

1  kickback for the price increase.

2      Rahal reported his activities to Salyer for the purpose of
   planning and promoting SK Foods's business. In an intercepted
3  telephone conversation on June 22, 2007, Rahal explained to Salyer
   that he had gotten Turner to commit B&G to paying extra in exchange
4  for the bribe. Salyer acknowledged the arrangement with B&G and the
   bribe payment to Turner, and planned SK Foods's business affairs
5  accordingly.

6      On July 11, 2007, Rahal made a concealed bribe to Turner  by
   mailing a $2,000 check to Turner's wife. This transaction is charged
7  as Racketeering Act 3D.

8      At Salyer's direction, beginning no later than 2003, and
   continuing until April 2008, SK Foods routinely materially falsified
9  the values of the various grading factors and data contained on the
   certificates of analysis, bills of lading, invoices and bin labels
10 that SK Foods sent to its customers. Former employees Alan Huey and
   Jennifer Dahlman falsified and directed other SK Foods employees to
11 falsify these documents to appear to meet customer specifications
   and/or regulatory requirements concerning the percentage of natural
12 tomato soluble solids, mold count, screen size, production date,
   viscosity, and whether the tomato paste qualified as "organic."  SK
13 Foods falsified this data for the purpose of inducing its customers to
   accept product that the customers may otherwise have rejected.  In his
14 position as CEO and owner of SK Foods, Salyer ordered his subordinates
   to falsify grading factors.
15
      In a transaction charged as Racketeering Act 8, on July 18, 2003,
16 SK Foods, in Lemoore, California, mailed an invoice for 9,217 pounds
   of tomato paste to a customer in Pennsylvania.  Consistent with
17 Salyer's instructions to falsify information to match customers'
   contractual specifications, the tomato paste classification was
18 falsified from conventional to organic.  If the customer had known
   that the paste was not organic under FDA regulations, the customer
19 would not have accepted it or paid for it.

20                            Count Eight

21     Beginning at least as early as January 2006 and continuing until
   approximately June 2007, in the Eastern District of California and
22 elsewhere, Salyer participated in a conspiracy to fix prices of tomato
   paste sold to McCain Foods, USA, Inc. ("McCain").  The primary purpose
23 of this conspiracy was to fix the price of tomato paste sold to McCain
   in the United States.  During the relevant time, Salyer was the Chief
24 Executive Officer of SK Foods and had ultimate authority to make
   pricing decisions.
25
      In or about January 2007, McCain solicited bids for approximately
26 2.5 million pounds of tomato paste to be used in making Ellio's Pizza,
   which is sold only in the United States.  Rahal, on behalf of SK
27 Foods, submitted a bid at 34 cents per pound.

28     Around the same time, Salyer and his co-conspirators discussed

                              A-2

1    setting a target price of 34 cents per pound for tomato paste sold to
     certain customers, including McCain.
2

3        Sometime later, one of Salyer's co-conspirators submitted a bid
     to McCain for 33 cents per pound.  When Salyer learned that the
     co-conspirator had offered less than 34 cents per pound, he confronted
4    that co-conspirator.  After further discussions with Salyer and
     others, the coconspirator withdrew the 33-cent per pound offer to
5    McCain.

6        During the relevant period, tomato paste sold to McCain by one or
     more of the conspirators, as well as payment for such tomato paste,
7    traveled from facilities located in the Eastern District of California
     to customers located outside California.  The business activities of
8    the defendant and co-conspirators were within the flow of, and
     substantially affected, interstate trade and commerce.
9

10       The foregoing would be proven by recorded conversations, emails,
     SK Foods's own test results as compared to the representations that it
     made to its customers, financial records, and the testimony of
11   witnesses including Rahal, Wahl, Huey, Dahlman, and representatives of
     former customers of SK Foods.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A-3

**U.S. DEPARTMENT OF JUSTICE**

*United States Attorney*
*Eastern District of California*

## INDIVIDUAL FINANCIAL DISCLOSURE STATEMENT

Complete this questionnaire for you and your spouse.
If more space is needed use page provided at end of document.

### Section 1: Personal Information

1. Full Name: _____ Maiden name: _____

2. Other names ever used: _____

3. Birth date: _____ Social Security Number (SSN): _____

   Place of birth (city, state & country): _____

4. Driver's license #: _____ State: _____ Exp. date: _____

5. Marital Status: ☐ Single   ☐ Married   ☐ Separated   ☐ Divorced   ☐ Widowed

6. Home address: _____

   City: _____ State: _____ Zip: _____

   Home phone: _____ Work phone: _____

   Cell phone: _____ Email address: _____

7. Previous addresses (past 10 years): _____

   City: _____ State: _____ Zip: _____

   Dates at this address: _____

   Prior to above address: _____

   City: _____ State: _____ Zip: _____

   Dates at this address: _____

8. Education. List all schools attended after high school (including trade schools and any other formal or informal training), years attended and degree obtained (if any):

   _____

   _____

9. Professional licenses:

   Type: _____ Number: _____ Exp. date: _____

   Type: _____ Number: _____ Exp. date: _____

## Section 2: Family Information

10. Spouse/Companion's full name[1]: _____   Maiden name: _____

11. Other names ever used: _____

12. Date of marriage: _____   Place of marriage: _____

13. Spouse's birth date: _____   Spouse's SSN: _____

14. Spouse's driver's license #: _____   State: _____   Exp. date: _____

15. Spouse's parents' full names: _____

16. List each family members full name and date of birth (include step parents, siblings and children):

    Father: _____   DOB: _____

    Mother: _____   DOB: _____

    Brothers: _____   DOB: _____

    _____   DOB: _____

    Sisters: _____   DOB: _____

    _____   DOB: _____

    Sons: _____   DOB: _____

    _____   DOB: _____

    _____   DOB: _____

    Daughters: _____   DOB: _____

    _____   DOB: _____

    _____   DOB: _____

17. Identify all persons living in your home and their relationship to you:

    Name: _____   Relationship: _____

    Name: _____   Relationship: _____

    Name: _____   Relationship: _____

    Name: _____   Relationship: _____

    Name: _____   Relationship: _____

---

[1] If you do not have a spouse but do have a companion or partner then answer all questions in this document that say spouse as if it said companion or partner.

## Section 3: Employment Information

18. Current employer/business information.  Check appropriate box:

☐ Wage Earner          ☐ Partner              ☐ Retired
☐ Self-Employed        ☐ Corporate Owner      ☐ Unemployed

Occupation: _____   Position/title: _____

Name of business: _____

Primary business activity: _____

Business address: _____

City: _____   State: _____   Zip: _____

Business website: _____

Person to Contact: _____   Phone No.: _____

Annual pay (including overtime and bonuses):  $ _____   Years at this business: _____

---

If business owner or stock holder:  How long have you owned this business: _____

Employer Identification No.: _____   Percentage of ownership: _____

What is your investment worth in this business at current market value:  $ _____
Current market value is the amount that you would expect to receive if you sold business today.

---

19. Other full and/or part-time employment within the last 5 years:

| Business Name | Address | Owner? | Employment Dates |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

20. Spouse's current employer/business information.  Check appropriate box:

☐ Wage Earner          ☐ Partner              ☐ Retired
☐ Self-Employed        ☐ Corporate Owner      ☐ Unemployed

Occupation: _____   Position/title: _____

Name of business: _____

Primary business activity: _____

Business address: _____

City: _____   State: _____   Zip: _____

Business website: _____

Person to Contact: _____   Phone No.: _____

Annual pay (including overtime and bonuses):  $ _____   Years at this business: _____

Individual Financial Disclosure Statement                                    Page 3 of 16

If business owner or stock holder:  How long have you owned this business: _____

Employer Identification No.: _____   Percentage of ownership: _____

What is your investment worth in this business at current market value:  $ _____
Current market value is the amount that you would expect to receive if you sold business today.

21.  Spouse's other full and/or part-time employment within the last 5 years:

| Business Name | Address | Owner? | Employment Dates |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

## Section 4: Taxes

22.  Did you file a Federal Income Tax Return last year?  ☐ Yes  ☐ No   If yes: ☐ Joint   ☐ Individual

Form No.: _____   Adjusted Gross Income reported: $ _____   Where filed: _____

23.  Do you expect to receive a tax refund from any federal, state, or local government?  ☐ Yes   ☐ No
If yes, provide details:

| Government Entity | Type of Tax | Year(s) | Amount |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

24.  Do you or your spouse owe any delinquent taxes?  ☐ Yes   ☐ No    If yes, provide details:

| Government Entity | Type of Tax | Year(s) | Amount of Debt |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

**Section 5: Income**

25. State monthly income for each category below for you and your spouse. If income varies, add your income over the last 12 months and divide by 12. If you or your spouse own a business attach Profit & Loss Statements, Balance Sheets, Statements of Cash Flows, and business income tax returns for the last two years and part-year statements for the period between the end of the last fiscal year and today's date. If employed attach most recent pay stub(s). Also attach personal income tax returns for the last two years and supporting documentation for all other types of income listed:

| Your Monthly Income | | Spouse's Monthly Income | |
|---|---|---|---|
| Total Salary / Wages | $ | Total Salary / Wages | $ |
| Take-home Salary / Wages | $ | Take-home Salary / Wages | $ |
| Commissions | $ | Commissions | $ |
| Bonus Income | $ | Bonus Income | $ |
| Total Business Income | $ | Business Income | $ |
| Take-home Business Income | $ | Take-home Business Income | $ |
| Profit Sharing | $ | Profit Sharing | $ |
| Rental Income | $ | Rental Income | $ |
| Interest / Dividends | $ | Interest / Dividends | $ |
| Unemployment | $ | Unemployment | $ |
| Disability | $ | Disability | $ |
| AFDC / Food Stamps | $ | AFDC / Food Stamps | $ |
| Pensions / Annuities | $ | Pensions / Annuities | $ |
| Social Security | $ | Social Security | $ |
| Child Support | $ | Child Support | $ |
| Alimony | $ | Alimony | $ |
| Gifts from Relatives | $ | Gifts from Relatives | $ |
| Other Gifts | $ | Other Gifts | $ |
| Other [2] | $ | Other [2] | $ |
| Totals | $ | Totals | $ |

26. Date to begin receiving pension, profit sharing, IRA distribution, Social Security, and/or life insurance, if in the future: _____ Amount per month: $ _____

    Name of Company: _____ Point of Contact and Phone No.: _____

27. Whole life / universal life insurance: do you anticipated receiving any distributions from a whole life or universal life insurance policy in next 12 months? ☐ Yes ☐ No If yes, amount $ _____

    Name of insurance company: _____ Policy No.: _____

---

[2] Any other income including periodic income, such as rebates, lottery winnings, tax refunds, royalties, user fees, etc. (please specify, use separate sheet if necessary).

## Section 6: Expenses

28. State monthly household expenses. Average over 12 months if necessary. Do not include any expenses paid by your business:

| Monthly Expenses | |
|---|---|
| Rent / Mortgage (primary) | $ |
| Other Rent / Mortgage | $ |
| Property Taxes | $ |
| Home Maintenance | $ |
| Electricity | $ |
| Natural Gas / Propane | $ |
| Telephone | $ |
| Water | $ |
| Sewer | $ |
| Trash | $ |
| Other Utilities | $ |
| Cable TV | $ |
| Internet | $ |
| Cell Phone | $ |
| Car / Truck Payment(s) | $ |
| Boat / RV / Plane Payment(s) | $ |
| Vehicle License Fees | $ |
| Vehicle Maintenance | $ |
| Gasoline | $ |
| Other: | $ |
| Sub-Total Column 1 | $ |

| Monthly Expenses | |
|---|---|
| Food | $ |
| Clothing & Misc. | $ |
| Entertainment | $ |
| Healthcare / Medical | $ |
| Alimony | $ |
| Child Support | $ |
| Child / Dependent Care | $ |
| Educational | $ |
| Other Secured Debt | $ |
| Credit Cards | $ |
| Auto Insurance | $ |
| Life Insurance | $ |
| Home / Rental Insurance | $ |
| Health Insurance | $ |
| Other Insurance (Umbrella) | $ |
| Accounting (Personal) | $ |
| Legal (Personal) | $ |
| Charitable Contributions | $ |
| Gifts | $ |
| Other Personal Expenses [3] | $ |
| Sub-Total Column 2 | $ |

Total of columns 1 and 2: $ _____

---

[3] Please itemize on separate sheet if amount exceeds $50 per month.

## Section 7: Assets

Identify all assets held by you and/or your spouse. Specify if asset is held (owned) separately by husband (H), wife (W), jointly (J), Business (B) or in a trust account (T). Attach the last three account statements for all checking, other, and investment accounts listed:

29.  Checking account(s):

| Owner | Name(s) on Account | Name of Institution and Address | Account # | Balance |
|---|---|---|---|---|
| | | | | $ |
| | | | | $ |
| | | | | $ |

30.  Other accounts (savings, certificates of deposit, pension, IRA, KEOGH, 401(k), deferred compensation, retirement, etc.):

| Owner | Name(s) on Account | Name of Institution and Address | Account # | Balance |
|---|---|---|---|---|
| | | | | $ |
| | | | | $ |
| | | | | $ |

31.  Investments (stocks, bonds, mutual funds, government securities, etc.). Also indicate if used as collateral on a loan:

| Owner | Name of Company | Account # | # of Shares | Purchase Date | Value |
|---|---|---|---|---|---|
| | | | | | $ |
| | | | | | $ |
| | | | | | $ |

32. Other personal investments valued at current market value:

| Owner | Description | Purchase Date | Value |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

33. Other business investments at current market value:

| Owner | Description | Purchase Date | Value |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

34. Business assets (not listed elsewhere) at current market value:

| Owner | Description | Purchase Date | Value |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

35. Self-employment business assets not listed elsewhere as personal property:

| Owner | Description | Purchase Date | Value |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

36. Primary and secondary home financial information. Current value is the amount that you would expect to receive if you sold your home today. Do not include the loan amount in the total liens. Attach copies of recent loan and lien statements:

Primary home address: _____

Original purchase price: $ _____ Date of purchase: _____

Home current market value: $ _____ Loan(s) balance: $ _____

Total Liens: $ _____ Lien Holders: _____

Individual Financial Disclosure Statement                    Page 8 of 16

Secondary home address: _____

Original purchase price: $ _____ Date of purchase: _____

Home current market value: $ _____ Loan(s) balance: $ _____

Total Liens: $ _____ Lien Holders: _____

37. Other investment property. Indicate type of property, e.g., apartment, condo, house, commercial, etc. Current value is the amount that you would expect to receive if you sold this property today. Do not include the loan balance as part of the total liens. Attach copies of recent loan and lien statements:

Address: _____ Type: _____

Original purchase price: $ _____ Date of purchase: _____

Current market value: $ _____ Loan balance: $ _____

Total Liens: $ _____ Lien Holders: _____

Address: _____ Type: _____

Original purchase price: $ _____ Date of purchase: _____

Current market value: $ _____ Loan balance: $ _____

Total Liens: $ _____ Lien Holders: _____

Address: _____ Type: _____

Original purchase price: $ _____ Date of purchase: _____

Current market value: $ _____ Loan balance: $ _____

Total Liens: $ _____ Lien Holders: _____

38. Cars, trucks and other vehicles:

| Make & Model | Year | License No. & St. | Mileage | Value | Loan Bal. |
|---|---|---|---|---|---|
|  |  |  |  | $ | $ |
|  |  |  |  | $ | $ |
|  |  |  |  | $ | $ |
|  |  |  |  | $ | $ |

39. Boat, RV, Aircraft, motorcycles, ATV's and other recreational vehicles:

| Make & Model | Year | License No. & St. | Hours/Miles | Value | Loan Bal. |
|---|---|---|---|---|---|
| | | | | $ | $ |
| | | | | $ | $ |
| | | | | $ | $ |
| | | | | $ | $ |
| | | | | $ | $ |

40. Total current value of all personal assets:

| | |
|---|---|
| Televisions, VCRs, CD or DVD players, computers, printers, stereos, video and digital cameras, IPODS, cell phones, etc.: | $ |
| Sporting goods, guns, fishing equipment, etc.: | $ |
| Furniture, jewelry, antiques, art objects, stamp or coin collections, etc.: | $ |
| Other (describe): | $ |

41. Money owed to you (list source and reason for debt):

| Debtor Name & Phone Number | Reason for Debt | Amount |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |
| | | $ |

42. Money, or other assets, held by someone else on your behalf:

| Person Holding Asset & Phone Number | Description of Asset | Value |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |
| | | $ |

Individual Financial Disclosure Statement

43. Anticipated inheritance or benefit from a trust or claim:

Description: _____   $ _____

Trustee name: _____   Phone No.: _____

44. Cash on hand (include any money that you have that is not in the bank):   $ _____

45. Lawsuits in which you might receive something of value (include contact name and phone number):

| Jurisdiction | Court & Case No. | Persons Involved and Status | Value |
|---|---|---|---|
|  |  |  | $ |
|  |  |  | $ |
|  |  |  | $ |

46. Other assets or anticipated assets (e.g., timeshare property, patents, copyrights, retainers, advance payments, deposits, mineral interest and leases, etc.).  Include contact name and phone number:

| Description of Asset | Value |
|---|---|
|  | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |

47. Life insurance.  Do you have life insurance with a cash value?  ☐ Yes   ☐ No
If yes, provide details (term life insurance does not have a cash value):

| Name and Address of Insurance Company | Policy Number | Type of Policy | Face Amount | Cash Surrender Value | Amount Borrowed | Amount You can Borrow |
|---|---|---|---|---|---|---|
|  |  |  | $ | $ | $ | $ |
|  |  |  | $ | $ | $ | $ |
|  |  |  | $ | $ | $ | $ |

## Section 8: Liabilities

48. Mortgage/loan on home.    Primary loan current Balance:    $ _____

Secondary loan current Balance:    $ _____

Attach copy of recent mortgage statement and if refinanced or purchased within the last 3 years, attached copy of the loan application.

49. Credit cards. Do you or your spouse have any credit cards?  ☐ Yes  ☐ No    If yes, provide details and attach copies of the most recent statements:

| Creditor Card Company | Account No. Last 4 Digits | Balance | Monthly Payments |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

50. Other loans. Do you or your spouse have any other loans payable?  ☐ Yes  ☐ No
If yes, provide details and attach copies of the most recent statements and loan applications submitted within the last 3 years:

| Creditor Name and Address | Type | Balance | Monthly Payments |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

51. Are there any judgements against you?  ☐ Yes  ☐ No    If yes, provide details:

| Creditor Name | Date of Judgement | Amount of Debt |
|---|---|---|
|  |  | $ |
|  |  | $ |
|  |  | $ |

52. Are there any garnishments against your or your spouse's wages?   ☐ Yes   ☐ No
If yes, provide details:

| Creditor Name | Date of Judgement | Amount of Debt |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |

53. Do you anticipated owing money from a pending judgment or claim?   ☐ Yes   ☐ No
If yes, provide details:

| Description | Anticipated Debt |
|---|---|
| | $ |
| | $ |
| | $ |

54. Do you or your spouse owe any large medical bills?   ☐ Yes   ☐ No      If yes, provide details:

| Creditor Name | Amount of Debt |
|---|---|
| | $ |
| | $ |
| | $ |

55. Do you or your spouse have any other liabilities?   ☐ Yes   ☐ No      If yes, provide details:

| Description | Amount of Debt |
|---|---|
| | $ |
| | $ |
| | $ |
| | $ |

## Section 9: Other Information

56. Have you ever been divorced?  ☐ Yes  ☐ No   If yes, attach a copy of divorce settlement or decree and provide details below:

| | |
|---|---|
| Date of divorce: _____ | Location where filed: _____ |
| Name of former spouse: _____ | SSN: _____ |

57. List all transfers of property (including cash) by loan, gift, sale, barter, exchange, etc. that you and/or your spouse have made within the last five years (items worth $2,500 or more):

| Description of Asset | Date of Transfer | FMV When Transferred | Amount Received | Transferee Name and Relationship to Defendant |
|---|---|---|---|---|
| | | $ | $ | |
| | | $ | $ | |
| | | $ | $ | |

58. Have you ever been involved in any bankruptcy proceedings? ☐ Yes ☐ No  If yes, provide details:

| Date | Jurisdiction | Case Number | Status |
|---|---|---|---|
| | | | |
| | | | |

59. Have you ever been a party to any civil suit?  ☐ Yes  ☐ No   If yes, provide details:

| Date | Jurisdiction | Case Number | Persons Involved and Status |
|---|---|---|---|
| | | | |
| | | | |

60. Are you affiliated with any partnerships or joint ventures? ☐ Yes ☐ No   If yes, provide details:

| Company Name & Address | Percent Interest | Current Value |
|---|---|---|
| | % | $ |
| | % | $ |

61. Are you an officer or director of any corporation?  ☐ Yes  ☐ No   If yes, provide details:

| Company Name & Address | Begin and End Dates | Remuneration |
|---|---|---|
| | | $ |
| | | $ |

62. Are you a participant in a profit sharing plan?  ☐ Yes  ☐ No

If yes, name of plan: _____  Value in plan: $ _____

63. Do you have a will and/or living trust?  ☐ Yes  ☐ No  If yes, attach copy.

64. Are you a trustee, executor, beneficiary, or administrator under any will or testament, insurance policy, or trust agreement (including a family trust)?  ☐ Yes  ☐ No  If yes, provide details:

| Description | Type | Relationship to You |
|---|---|---|
|  |  |  |
|  |  |  |

65. • Do you have a safe deposit box?  ☐ Yes  ☐ No  If yes, provide information below for each box:

• Do you have assets or documents in someone else's safe deposit box?  ☐ Yes  ☐ No
If yes, provide information below for each box:

• Are you a designated deputy and/or do you have access to someone else's safe deposit box?

☐ Yes  ☐ No  If yes, provide information below for each box:

| Name and Address of Location of Safe Deposit Box | Box No. | Contents |
|---|---|---|
|  |  |  |
|  |  |  |

66. Provide details for all insurance policies held (except life insurance list earlier). Include details about riders or supplemental insurance on personal assets (e.g., jewelry, antiques, etc.):

| Type of Policy | Company Name | Policy Number | Coverage Limits |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

67. List any other assets not listed previously including any assets outside the United States:

| Asset Description | Location | Value |
|---|---|---|
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  |  | $ |

**Following is a summary of document copies you are required to attach:**

1. Profit & Loss Statements, Balance Sheets and Statements of Cash Flows for the last two years for your and/or your spouse's business(es) and /or interest in partnerships. Also attach part-year Profit and Loss Statement and Balance Sheet for period between the end of the last fiscal year and today's date.
2. Your and your spouse's most recent pay stub(s) or direct deposit statement(s), if employed.
3. Federal and State tax returns for the last two years (both business and individual). Attach copy of entire tax return and all forms W-2 and 1099.
4. The most recent mortgage/loan statement(s) and lien documents.
5. The three most recent bank, financial institution, investment or other account statements for all of your and/or your spouse's business and personal accounts.
6. All loan and line-of-credit applications submitted by you or your spouse within the last 3 years.
7. Credit card statements.
8. Divorce settlement or decree(s), if any.
9. Will and/or living trust documents.
10. Signed "Authorization to Release Information" form (separate document).

## PLEASE READ CAREFULLY BEFORE SIGNING

**With knowledge of the penalties and liability for false statements provided by Title 18, United States Code, Section 1001, with knowledge of the penalties and liability for false claims provided by Title 31, United States Code, Section 3729 et seq., and with knowledge that this financial disclosure statement is submitted by me to affect action by the United States Department of Justice, I hereby certify under penalty of perjury that the above statements are true, accurate and correct and that it is a complete statement of all my income and assets, real and personal, whether held in my name or by any other.**

| | |
|---|---|
| _____ | _____ |
| Date | Signature |
| | |
| | _____ |
| | Print Full Name |
| | |
| _____ | _____ |
| Date | Signature of Spouse/Companion |
| | |
| | _____ |
| | Print Full Name of Spouse/Companion |

If you were assisted by someone in filling out this financial disclosure statement, please state that person's name and relationship to you, and have that person sign below:

| | |
|---|---|
| _____ | _____ |
| Date | Signature |
| | |
| _____ | _____ |
| Relationship | Print Full Name |

Note: If you have added additional sheets to this form or added information on the back of any page, you must also sign these sheets.

Revised February 2010

Make copies of this sheet when additional space is needed.  Indicate the question numbers on the left.

| # | Details |
|---|---------|
|   |         |

_____        _____

Date                          Signature

Individual Financial Disclosure Statement                    Add-on Page _____ of _____