United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BANK OF MONTREAL,<br><br>    Plaintiff,<br>  v.<br><br>SK FOODS, LLC,<br><br>    Defendant,<br>  v.<br><br>SK PM CORP., FREDERICK SCOTT SALYER as Trustee for the Scott Salyer Revocable Trust, and FREDERICK SCOTT SALYER in his individual capacity,<br><br>    Respondents. | CASE NO. 5:11-mc-80133-EJD<br><br>**ORDER DENYING RESPONDENTS' MOTION TO TRANSFER OR DISMISS AND GRANTING IN PART BMO'S MOTION TO AMEND THE JUDGMENT**<br><br>[Re: Docket Item Nos. 2, 28, 49, 52] |

Presently before the court are the motions of Respondents SK PM Corp., Frederick Scott Salyer as trustee for the Scott Salyer Revocable Trust, and Frederick Scott Salyer in his individual capacity to stay this action or to transfer it to the Bankruptcy Court for the Eastern District of California. Also before the court is Bank of Montreal's motion to amend the judgment to add the Respondents. For the reasons set forth below, the Respondents' motions are denied and the bank's motion is granted in part.

/

/

/

## I. BACKGROUND

A. Factual Background

On September 28, 2007, SK Foods LP and Bank of Montreal ("BMO") executed a Credit Agreement by which SK Foods LP received access to $195 million of financing.[1] SK Foods LLC unconditionally guaranteed SK Foods LP's obligations under the Agreement. See Amended and Restated Credit Agreement ("Credit Agreement") §§ 4.1–4.2, 12, Heiser Decl. Ex. 2 at BMO 40, 93–96.[2] Scott Salyer, the president and sole owner of SK Foods LP and SK Foods LLC, signed for both companies. Id. at BMO 109. By April 16, 2009, SK Foods LP was in default, and BMO demanded payment from both SK Foods LP and SK Foods LLC.

B. The Eastern District Bankruptcy Proceedings

Unable to fulfil its obligations to BMO and other creditors, SK Foods LP filed a Chapter 11 bankruptcy petition on May 7, 2009, in the U.S. Bankruptcy Court for the Eastern District of California. In re SK Foods LP, No. 09-29162. The bankruptcy trustee in that case has initiated a number of adversary proceedings in the exercise of his duty to marshal the debtor's assets. In one of those proceedings, the trustee seeks to substantively consolidate the assets of numerous Salyer-owned entities into the bankruptcy estate—including all the assets of Respondents SK PM Corp. and the Scott Salyer Revocable Trust—on the grounds that each of those entities is an alter ego of what was really one single enterprise. Adv. Proc. No. 10-02014 (the "Substantive Consolidation Proceeding"), filed Jan. 11, 2011.

C. The Chicago Action

On June 9, 2009, Bank of Montreal brought an action in the U.S. District Court for the Northern District of Illinois against SK Foods LLC for breach of the Credit Agreement guaranteeing SK Foods LP's obligations. N.D. Ill. Case No. 09 C 3479 (the "Chicago Action"). SK Foods LLC was initially represented by counsel, but its attorneys withdrew while BMO's summary judgment

---

[1] Two irrelevant details are omitted from this discussion: First, BMO was not the only lender, but rather acted as the administrative agent for several lenders who together agreed to provide the financing. Second, there was another borrower, RHM Industrial/Specialty Foods Inc.

[2] Here and throughout, pages in BMO's exhibits are cited by their Bates number.

United States District Court
For the Northern District of California

motion was pending and without ever filing a response. See Chicago Action ECF Nos. 11, 27, 71. That court granted BMO's unopposed motion for summary judgment and, following a prove-up, entered a judgment in the amount of $128,256,391 against SK Foods LLC on September 28, 2010. Chicago Action ECF Nos. 72, 73, 81.

### D. The Eastern District Criminal Case

Meanwhile, Scott Salyer faces criminal charges of racketeering, wire fraud, falsification of records in a federal investigation, and price fixing in the U.S. District Court for the Eastern District of California. E.D. Cal. Case No. 2:10-CR-0061-LKK. The criminal case was filed on January 5, 2010, while the Chicago action was ongoing. On March 23, 2012—while the present motion to amend the Chicago judgment was pending in this case—Salyer and the prosecuting federal agency entered into a plea agreement which would resolve all the charges against him. Judge Karlton has yet to accept or reject the plea agreement; judgment and sentencing were scheduled for July 10, 2012, but have been continued to September 5, 2012.

### E. Stay Orders in the Criminal and Bankruptcy Cases

In April 2010, shortly after criminal charges were filed against Salyer, various Salyer-owned entities moved to stay the bankruptcy adversary proceedings. Bankruptcy Judge Bardwil denied the motions, but District Judge Karlton reversed on appeal and remanded with specific instructions to the parties and the bankruptcy court. All adversary proceedings were subsequently stayed. On June 6, 2012, after Salyer entered his guilty plea, Judge Karlton ordered the bankruptcy court to vacate the stays.

### F. This Action

On June 13, 2011, BMO registered the judgment from the Chicago Action in this district pursuant to 28 U.S.C. § 1963, which opened this case file. Two weeks later, BMO filed in this case a request to amend the judgment to add three parties as judgment-debtors: (1) SK PM Corp., (2) the Scott Salyer Revocable Trust ("the Trust"), and (3) Scott Salyer in his individual capacity (collectively, the "Respondents"). BMO's request is based on allegations that Scott Salyer controls all of the companies and has disregarded all corporate formalities, and argues that the Respondents are therefore liable as alter egos of SK Foods LLC.

On August 8, 2011, the Respondents filed a one-page request to stay the determination of whether the Respondents should be added to the judgment until the resolution of the alter ego adversary proceeding in the Eastern District of California Bankruptcy Court. This court heard both parties' motions on August 19, 2011. The court requested further briefing and held another hearing on September 23, 2011. In the briefing, the Respondents moved to stay the case or to transfer it to the Eastern District of California.

On May 15, 2012, after the plea agreement was entered in Salyer's criminal case, this court issued an order to show cause in order to give the Respondents an opportunity to explain what defenses they had been unable to present earlier. In response, the Respondents renew their request for a stay or transfer and, for the first time, oppose BMO's motion to amend the judgment on its merits.

## II. RESPONDENTS' EVIDENTIARY OBJECTIONS

As an initial matter, the court must address the Respondents' cursory challenge to the entire body of evidence that BMO has submitted in support of its motion to amend the judgment. Over the course of this action, BMO has submitted more than one hundred exhibits in support of its several briefs. See, e.g., ECF Nos. 3–7, 37. In the Respondents' most recent filing (their response to the order to show cause), they complain that "much of BMO's evidence is inadmissible hearsay, irrelevant and otherwise objectionable," and purport to "preserve their objections to all evidence BMO submitted." Resp. Order Show Cause at 4:20–21 & n.2, ECF No. 54.

The Respondents have no preservable right to object to the evidence that BMO submitted more than nine months ago. BMO's motion to amend the judgment was taken under submission by the court on September 23, 2011. The recent order to show cause allowed the Respondents to supplement the record with any evidence that it was unable or unwilling to submit while the investigation phase of the criminal proceeding was ongoing and to explain that evidence through briefing, but did not invite new theories on submitted matters. Respondents' objections—if they can even be so characterized—are overruled.

### III. DISCUSSION

In the briefing, the Respondents make two arguments why this court should not address the merits of BMO's motion at this time. First, they contend that the alter ego contentions should be resolved in the Substantive Consolidation Proceeding since they were first raised there and that this action should therefore be dismissed, stayed, or transferred to the Eastern District of California under the first-to-file rule. In the alternative, Respondents argue that this matter should be stayed pending resolution of the criminal proceedings against Scott Salyer because his testimony—which cannot be obtained because he invokes his Fifth Amendment privilege—is necessary to the Respondents' defense. Both of Respondents' requests appeal to the discretion of this court. See Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 95, 97 (9th Cir. 1982) (affirming decision to decline jurisdiction where a related case had been filed earlier elsewhere under abuse-of-discretion standard); Keating v. Office of Thrift Supervision, 45 F.3d 322, 324, 326 (9th Cir. 1995) (affirming an ALJ's decision not to postpone a hearing until the end of a related criminal proceeding under abuse-of-discretion standard).

Respondents' most recent filing (their June 14 response to the order to show cause) contains their first effort to oppose BMO's motion on its merits. They argue that none of the requirements for imposing alter ego liability are met—in particular, that no showing has been made of a unity of interest and ownership between the Respondents and SK Foods LLC; that BMO would suffer no inequitable result from such a finding; and that the Respondents did not have the necessary control over the defense of the Chicago Action. Resp'ts' Resp. to OSC at 4–9, ECF No. 54. No evidence is offered in support of their opposition.

The Respondents' requests are addressed in turn; finding no grounds for a stay or transfer, the court then turns to BMO's motion.

A. Respondents' Motion to Stay

The determination of whether a stay is justified is left to the discretion of the district court. Id. In deciding whether a civil action should be stayed pending the outcome of a criminal case, courts in this circuit consider "the extent to which the [criminal] defendant's [F]ifth [A]mendment rights are implicated," in addition to the following five factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay;
> (2) the burden which any particular aspect of the proceedings may impose on defendants;
> (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources;
> (4) the interests of persons not parties to the civil litigation; and
> (5) the interest of the public in the pending civil and criminal litigation.

Keating v. Office of Thrift Supervision, 45 F.3d 322, 324–25 (9th Cir. 1995) (citation omitted). As always, "[t]he proponent of a stay bears the burden of establishing its need." Clinton v. Jones, 520 U.S. 681, 708 (1997).

Citing Mitchell v. United States, 526 U.S. 314, 325–27 (1999), the Respondents stress that Salyer's Fifth Amendment right not to testify persists until his sentencing. They argue that this Court should wait until Judge Karlton accepts Salyer's plea agreement in the criminal case so that they are not prejudiced by his continued invocation of his Fifth Amendment rights. Of course, Salyer controls and is the sole shareholder of Respondent SK PM Corp. and is the trustee and sole beneficiary of the Respondent Trust. Salyer has chosen to continue to assert his Fifth Amendment right not to testify even as the criminal case reaches its close.

There is no right to a stay of a civil action when a related criminal case is pending; civil and criminal proceedings often proceed in parallel. Keating, 45 F.3d at 324. Indeed "it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding." Id. at 326 (citation omitted).

This Court cannot allow BMO's motion to continue to linger any longer waiting for the criminal case to finish. This court accepts Judge Karlton's assessment that the possibility of Salyer's plea agreement dissolving is "remote," and agrees with his determination that in light of that agreement there is not an adequate justification for further staying civil proceedings pending the outcome of the criminal case. E.D. Cal. Case No. 11-cv-1839, ECF No. 36, June 6, 2012. The values protected by allowing Salyer to continue to rely on his Fifth Amendment privilege to stall this case no longer outweigh the interests of BMO, the public, and the courts in expeditiously resolving this matter—if indeed they ever did. The Court elects not take the severe step of drawing an adverse inference against the Respondents from Salyer's decision not to provide any testimony, though it notes that the Respondents have not even hypothesized about what useful testimony Salyer might be

6
CASE NO. 5:11-mc-80133-EJD
ORDER GRANTING MOTION TO AMEND JUDGMENT

able to offer in their defense. Respondents' motion to stay is denied.

### B. Respondents' Motion to Transfer or Dismiss

In their filings dated August 12, September 2, and September 16, 2011, Respondents asked the court to dismiss or transfer this action to the Eastern District of California Bankruptcy Court because of its relationship to the Substantive Consolidation Proceeding pending there.

A district court may decline to exercise jurisdiction over a case when an action involving substantially the same parties and issues is pending elsewhere. See Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94–95 (9th Cir. 1982); see also Civil L.R. 3-13(d) (contemplating the entry of "appropriate orders" upon learning of pending related proceedings). This "first-to-file" "rule" is grounded in the principles of judicial economy and comity; it also allows courts to police efforts at forum shopping. Id. The "rule" is discretionary to allow the district court to ensure efficiency and judicial economy are achieved. Cedars–Sinai Medical Center v. Shalala, 125 F.3d 765, 769.

Citing Stern v. Marshall, 131 S. Ct. 2594 (2011), BMO contends that the case should not be transferred to the Eastern District Bankruptcy Court because that court would lack the power to amend the judgment. That concern is overstated. By defining the constitutional limits of Congress's power to delegate adjudicatory authority to non-Article III courts, Stern determines which claims bankruptcy courts may finally adjudicate on their own. But bankruptcy courts routinely issue proposed findings of fact and conclusions of law to the district court with respect to those claims which they lack the power to finally determine. Stern, 131 S.Ct. at 2602. The need to resort to such a procedure would not itself defeat a transfer.

But a more serious question looms: would this dispute fall within the statutory jurisdiction of the bankruptcy court at all? The motion to amend the judgment does not directly concern the debtor in the bankruptcy case, SK Foods LP. This issue has been briefed only by BMO, and only briefly. At the very least, a transfer to the Eastern District Bankruptcy Court would precipitate a investigation of that court's jurisdiction to hear and decide the motion; that quandary can be avoided by deciding the motion here. Accordingly, this court declines to transfer or dismiss the case.

/

/

C. BMO's Motion to Amend the Judgment

Federal Rule of Civil Procedure 69(a) "empowers federal courts to rely on state law to add judgment-debtors" to money judgments.[3] In re Levander, 180 F.3d 1114, 1120–21 (9th Cir. 1999). California Civil Procedure Code § 187 allows the amendment of a judgment "to add additional judgment debtors on the grounds that a person or entity is the alter ego of the original judgment debtor." NEC Electronics Inc. v. Hurt, 208 Cal. App. 3d 772, 778 (1989). The judgment-creditor must show both (1) that the party to be added satisfies the alter ego criteria (described in detail below), and (2) that the new party had control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability involved. Id. at 778–79; Katzir's Floor & Home Design, Inc. v. M-MLS.com, 394 F.3d 1143, 1148–49 (9th Cir. 2004).

### 1. Alter Ego

To establish a party as the alter ego of a corporation, the applicant must show "(1) that there [is] such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." Automotriz del Golfo de California v. Resnick, 47 Cal. 2d 792, 796 (1957). Both factors must be found for alter ego liability to be imposed. Associated Vendors Inc. v. Oakland Meat Co., 210 Cal. App. 2d 825, 837 (Cal Ct. App. 1962).

#### a. Unity of Interest and Ownership

To determine whether there is a sufficient unity of interest and ownership to support alter ego liability, courts consider a long list of factors:

> [1] Commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses;
> [2] the treatment by an individual of the assets of the corporation as his own;
> [3] the failure to obtain authority to issue stock or to subscribe to or issue the same;
> [4] the holding out by an individual that he is personally liable for the debts of the corporation;
> [5] the failure to maintain minutes or adequate corporate records, and the confusion

---

[3] Such a request is not subject to the 28-day time limit of Rule 59(e) because adding a party to a judgment is not a substantive amendment going to the merits of the case. Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp., 159 F.3d 412, 421 (9th Cir. 1998).

8
CASE NO. 5:11-mc-80133-EJD
ORDER GRANTING MOTION TO AMEND JUDGMENT

of the records of the separate entities;
[6] the identical equitable ownership in the two entities;
[7] the identification of the equitable owners thereof with the domination and control of the two entities;
[8] identification of the directors and officers of the two entities in the responsible supervision and management;
[9] sole ownership of all of the stock in a corporation by one individual or the members of a family;
[10] the use of the same office or business location;
[11] the employment of the same employees and/or attorney;
[12] the failure to adequately capitalize a corporation;
[13] the total absence of corporate assets, and undercapitalization;
[14] the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation;
[15] the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities;
[16] the disregard of legal formalities and the failure to maintain arm's length relationships among related entities;
[17] the use of the corporate entity to procure labor, services or merchandise for another person or entity;
[18] the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another;
[19] the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions;
[20] and the formation and use of a corporation to transfer to it the existing liability of another person or entity.

Zoran Corp. v. Chen, 185 Cal App. 4th 799, 811–12 (Cal Ct. App. 2010). This list is not exhaustive, and no one factor is determinative. Id.

BMO's arguments for a finding of unity of interest and ownership tend to focus on the group of Salyer-owned companies as a whole. This court is tasked with determining whether the Respondents should be held liable for the judgment against SK Foods LLC in particular. There is damning evidence that many of the Salyer-owned companies operated as one enterprise, but Salyer was somewhat more careful about respecting the corporate form of SK Foods LLC—perhaps precisely because it had guaranteed $190 million in loans. The court is careful to restrict the below analysis to the evidence about SK Foods LLC rather than the many other Salyer-owned companies.

i. Inadequate Capitalization

BMO submits evidence that from November 2007 through August 2009, SK Foods LLC had only $17,911 in its Bank of the West business checking account. Heiser Decl. Ex. 23, BMO 861–885. SK Foods LLC's only other known asset was its interest in SK Foods International, a

corporation organized under the laws of New Zealand. BMO argues that the value of SK Foods LLC's assets was small compared to its $195 million liability arising out of the Credit Agreement, and that this dramatic difference demonstrates that SK Foods LLC was undercapitalized.

SK Foods LLC was not the only source of collateral for the loans, however; both borrowers pledged their assets also. Adequacy of capitalization must be measured against "the business to be done." Automotriz, 47 Cal. 2d at 797. It does not appear that SK Foods LLC did any business, but rather was a holding company; the assets necessary for that purpose are minimal. SK Foods LLC's capitalization does not lend support to a finding of alter ego liability.

### ii.   Sole Ownership and Control

The evidence shows—and no party disputes—that SK PM Corp. and the Scott Salyer Revocable Trust together own 100 percent of SK Foods LLC. See, e.g., Heiser Decl. Ex. 27, BMO 1006. The Trust owns SK PM Corp. See id. The Trust controls SK Foods LLC as its managing member. Heiser Decl. Ex. 24, BMO 886. Scott Salyer controls his own Revocable Living Trust as its trustee, and it is abundantly clear from the many mail and e-mail exchanges in the record that Salyer was the final decisionmaker for all the SK companies.

Thus, BMO has shown that Salyer ultimately owns and controls SK Foods LLC, SK PM Corp., and the Trust. These factors weigh in favor of an alter ego determination as to all Respondents.

### iii.   Commingling of Funds and Assets, Failure to Maintain Records, and Confusion of the Records of Separate Entities

BMO's evidence shows that the Salyer-owned companies frequently transferred assets among themselves for no ascertainable reasons. See, e.g., Heiser Decl. Ex. 27, BMO 992–993. Bank records for SK Foods LLC were mostly quiet, however—only two deposits and one withdrawal were made over a 23-month period—mostly because it held very little cash. This factor lends some support for an alter ego finding.

### iv.   Diversion of Assets

In January 2009, a few months before SK Foods LP's default, SK Foods LLC transferred its primary asset, its interest in SK Foods International, to another Salyer-owned entity, Monterey

Peninsula Farming LLC.[4] Heiser Decl. Ex. 34, BMO 1212. No evidence suggests that any consideration was given for the transfer. Likewise, SK Foods International's main asset, its interest in its operating subsidiary Cedenco Foods, also appears to have been transferred away in 2009 to a trust in the Cook Islands for the benefit of Salyer's children. See Heiser Decl. Ex. 14, BMO 684; Ex. 3, BMO 364.

On September 17, 2009, about two months after the Chicago Action was filed, all of SK Foods LLC's cash was wired to SSC Farms II LLC. Heiser Decl. Ex. 3, BMO 343; Ex. 23, BMO 883. From there, it appears the funds were transferred to offshore accounts in the West Indies and Liechtenstein. Heiser Decl. Ex. 4, BMO 468–69.

These transfers drained assets away from SK Foods LLC which might have been used to satisfy the guaranty. No evidence suggests that SK Foods LLC received anything in exchange for these transfers. This factor weighs heavily in favor of an alter ego finding as to the Trust, and also bears on the inequitable result inquiry which is discussed in more detail below.

### v. Utilization of Same Employees

No showing has been made that the Trust or Scott Salyer (as an individual) has any employees. BMO succeeds in identifying only one person employed by both SK PM Corp. and SK Foods LLC: Lisa Crist is an officer of both companies. See Heiser Decl. Ex. 36 ¶ 1, BMO 1266; Heiser Decl. Ex. 37, BMO 1290. It must be noted that this is likely just a failure of proof: every other entity identified in the web of related companies draws its officers from the same very small pool of people that includes Crist. Even so, without that proof, this factor cannot form the basis of an alter ego finding.

### vi. Use of Same Office

BMO cites two pieces of evidence in an attempt to show that SK Foods LLC shared a business location with the Respondents. SK Foods LLC's registration with the Nevada Secretary of State merely lists the address of the company's managing member, the Respondent Trust. Heiser Decl. Ex. 24, BMO 886. The address of the Trust does not establish the office location of SK Foods

---

[4] The Respondents say otherwise, see Resp. to OSC at 5:27–28, but offer nothing to support their assertion.

LLC. But a series of wire transfer requests do list the same business address for SK Foods LLC and SK PM Corp.—21 Lower Ragsdale, Monterey, California—which is a different Monterey address than that of the Trust.

This factor weighs in favor of an alter ego determination with respect to SK PM Corp., but not with respect to the Trust or Salyer individually.

### vii. Other Considerations

As a result of the diversion of cash and stock, SK Foods LLC was apparently left with no assets at all, rendering it an empty shell. Though the absence of assets does not alone justify an alter ego determination, the knowing transfer of assets away from potential liabilities does raise concerns. Salyer treated SK Foods LLC's assets as his own by transferring the SK Foods International stock to the Cook Islands trust for the benefit of his family. These considerations weigh heavily in favor of an alter ego finding as to the Trust and Salyer individually.

### b. Inequitable Result

The alter ego test's second requirement is that "adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud" or "work an injustice to a third person." Associated Vendors Inc. v. Oakland Meat Co., 210 Cal. App. 2d 825, 837 (Cal Ct. App. 1962); Katzir's Floor & Home Design, 394 F.3d at 1149 (citation omitted) (emphasis removed). "The injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when corporate separateness is illusory." Id. "Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard." Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 539 (2000).

Respondents argue that BMO's complaints about the treatment of the SK Foods International shares are immaterial because BMO never had a security interest in the foreign subsidiaries of SK Foods LLC. Resp'ts' Resp. to OSC at 5:23–6:11, ECF No. 54. Upon review of the Credit Agreement, the court finds this argument disingenuous. At the time the Agreement was made, SK Foods LLC's only apparent assets were $17,911 in cash and its stake in SK Foods International. Although the parties agreed that SK Foods LLC's interest in SK Foods International would not be perfected except in the event of default, SK Foods LLC's guarantee of the debt was unconditional.

See Agreement §§ 4.2, 12. BMO therefore obtained some interest in SK Foods International even if that interest was not perfected.

Moreover, e-mails show that Salyer knew that the interest in SK Foods International mattered to BMO when it funded the loan. Heiser Decl. Ex. 52, BMO 1336. Of course, agreeing not to require perfection of that interest may have been a risky business decision, but it would be unfair to allow Salyer exploit that risk by transferring the stock out of BMO's reach to other entities he owns through the Trust.

### 2. Control

Due process requires that a party added to a judgment on alter ego grounds have had "control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability that was involved." NEC Electronics, 208 Cal. App. 3d at 778–79. "Control of the litigation sufficient to overcome due process objections may consist of a combination of factors, usually including the financing of the litigation, the hiring of attorneys, and control over the course of the litigation. Clearly, some active defense of the underlying claim is contemplated." Id. at 781 (citations omitted).

Two pieces of evidence demonstrate that Scott Salyer controlled the defense of the Chicago Action. First, SK Foods LLC's managing member is the Respondent Scott Salyer Revocable Trust, of which Salyer himself is trustee. Heiser Decl. Ex. 24, BMO 886. Second, in a motion to extend time to respond to BMO's summary judgment motion in the Chicago Action, SK Foods LLC's counsel in that case represented to the court that it needed the extension because the logistical challenge of communicating with Salyer while he was incarcerated was prolonging "the decision of how to proceed in response to the Motion." N.D. Ill. Case No. 09 C 3479, ECF No. 42.

Respondents contend that the fact that BMO's summary judgment motion in the Chicago Action was unopposed shows that they did not have the occasion to conduct that action with the necessary diligence. They cite cases like NEC and Katzir's in which the originally named defendants were on the verge of bankruptcy and elected not to defend the action for that reason. Those are not the circumstances here. SK Foods LLC actively litigated the case, filing and responding to several documents. BMO's summary judgment motion was granted only after SK Foods LLC's counsel

withdrew from the case and failed to respond to the motion despite having requested extensions of time. While this may be akin to a judgment by default, there is no indication that by "defaulting" SK Foods LLC strategically abandoned otherwise valid defenses. Indeed, Respondents concede that SK Foods LLC had no defense at all. See Resp'ts' Resp. to OSC at 5:25–28.

True, the Respondents were not named in the earlier litigation, had no immediate risk of personal liability, and were under no duty to appear or intervene. But in most cases, "the interests of the corporate defendant and the alter ego are similar so that the trial strategy of the corporate defendant effectively represents the interests of the alter ego." NEC Electronics, 208 Cal. App. 3d at 780. That is the case here: SK Foods LLC appeared and litigated despite having no meritorious defense. Accordingly, the Respondents had sufficient control of the defense of the Chicago Action to satisfy the due process concerns of adding them to the judgment.

## IV. CONCLUSION AND ORDER

The Respondents chose not to submit evidence or meaningfully address BMO's motion to amend the judgment on its merits even given two extra chances to do so—first on the court's invitation of supplemental briefing and later in response to the order to show cause. Instead, they The Respondents have not shown that a stay, transfer, or dismissal is warranted. BMO has established that Salyer and his Trust can be considered the alter ego of SK Foods LLC, that they had control of the Chicago action, and that BMO would be unfairly prejudiced if they were allowed to hide behind SK Foods LLC's corporate veil. The registered judgment will be amended to add Salyer and the Trust.

BMO has failed to meet its burden of showing that an alter ego finding would be appropriate against SK PM Corp.[5] There is simply not evidence in the record to connect any wrongdoing to SK PM Corp.

For good cause shown, Respondents' motion to stay or transfer the action (ECF No. 28) is

---

[5] BMO notes that SK PM Corp. can also be held liable for the debt of the borrower SK Foods LP because it is SK Foods LP's general partner. That may be true, but such a finding would be beyond the scope of this case, which seeks only to amend a judgment against SK Foods LLC for breach of its guaranty.

14
CASE NO. 5:11-mc-80133-EJD
ORDER GRANTING MOTION TO AMEND JUDGMENT

1  hereby DENIED. BMO's motion to amend the judgment (ECF No. 2) is GRANTED with respect to
2  Scott Salyer individually and the Scott Salyer Revocable Trust, and DENIED with respect to SK PM
3  Corp. Having ruled on the motion to amend the judgment, BMO's request for a status conference
4  (ECF No. 49) regarding the status of that motion is hereby terminated without prejudice. The order
5  to show cause (ECF No. 52) is DISCHARGED.

**IT IS SO ORDERED.**

Dated:  August 10, 2012



EDWARD J. DAVILA
United States District Judge

CASE NO. 5:11-mc-80133-EJD
ORDER GRANTING MOTION TO AMEND JUDGMENT